# EXHIBIT 3

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| OCEAN TOMO, LLC, an Illinois limited liability company, | |
| Plaintiff, | |
| v. | No. 12 CH 02966 |
| JONATHAN BARNEY, an individual, and PATENTRATINGS, LLC, a California limited liability company, | The Honorable Kathleen M. Pantle |
| Defendant. | |

### NOTICE OF MOTION

To:     Jonathan Barney
        312 Signal Road
        Suite 200
        Newport Beach, CA 92663

On __10 / 17 /2012__ at __9:30 A__ m., or as soon thereafter as counsel may be heard, I shall appear before the Honorable Kathleen M. Pantle or any judge sitting in her stead, in the Courtroom usually occupied by her in Room 2410, the Richard J. Daley Center, and shall then and there present the attached **PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED AND SUPPLEMENTAL VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES**, a copy of which is hereby served upon you.

Respectfully submitted,

OCEAN TOMO, LLC

By: _Rachel J. Copenhaver_
        One of Its Attorneys

M. Derek Zolner
Chad A. Schiefelbein
Rachel T. Copenhaver
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601-1003
T: +1 (312) 609-7500
Firm ID No. 44284

Dated: October 9, 2012

CHICAGO/#2372866 1

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that true and correct copies of the foregoing NOTICE

OF MOTION and attached MOTION FOR LEAVE TO FILE AMENDED AND SUPPLEMENTAL

VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES

were served on:

> Jonathan Barney
> 312 Signal Road
> Suite 200
> Newport Beach, CA 92663

by depositing the same in the U.S. mail, first-class postage prepaid, at 222 North LaSalle Street,

Chicago, Illinois 60601-1003 before the hour of 5:00 p.m. on October 9, 2012.

*Rachel J. Copenhaver*

One of Plaintiff's Attorneys

FIRM I.D. 44284

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

OCEAN TOMO, LLC, an Illinois limited
liability company,

      Plaintiff,

v.

JONATHAN BARNEY, an individual, and
PATENTRATINGS, LLC, a California
limited liability company,

      Defendants.

No.   12 CH 02966

Judge Kathleen M. Pantle

## MOTION FOR LEAVE TO FILE AMENDED AND SUPPLEMENTAL VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES

Plaintiff Ocean Tomo, LLC ("OT"), by its attorneys, Vedder Price P.C., and pursuant to

735 ILCS 5/26-609 and 735 ILCS 5/2-616(a), hereby moves for leave to file its First Amended

and Supplemental Verified Complaint for Injunctive Relief, Declaratory Judgment, and Damages

against Defendants Jonathan Barney ("Barney") and PatentRatings, LLC ("PR") (collectively,

"Defendants"). In support of its Motion, OT states as follows:

      1.      On January 27, 2012, OT initiated this action against Barney by filing its Verified

Complaint for Injunctive Relief and Damages ("Complaint"), alleging causes of action for

breach of contract, breach of fiduciary duty, violation of the Illinois Trade Secrets Act, 765 ILCS

1065/1 *et seq.*, violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and

conversion.

2.     A summons was issued in this action on August 28, 2012. Barney was served with the Summons and Complaint on September 20, 2012. As a result, Barney's appearance and responsive pleading in this matter are due on or before October 22, 2012.

3.     As of the date of this Motion, Barney has neither appeared nor filed a responsive pleading in this matter.

4.     Since filing the Complaint in this matter, OT has discovered supplemental and additional facts relating to the conduct of Barney and PR, the company in which Barney owns a controlling interest. In light of the foregoing, OT seeks leave to file an Amended and Supplemental Verified Complaint for Injunctive Relief and Damages, seeking, in addition to the relief sought in its original Complaint, counts for tortious interference with prospective business advantage and declaratory judgment.

5.     A copy of OT's proposed First Amended and Supplemental Verified Complaint for Injunctive Relief, Declaratory Judgment, and Damages is attached hereto as **Exhibit 1**.

6.     Section 2-609 of the Illinois Code of Civil Procedure provides that "[s]upplemental pleadings, setting up matters which arise after the original pleadings are filed, may be filed within a reasonable time by either party by leave of court and upon terms." 735 ILCS 5/2-609. This provision is to be liberally construed in situations, such as here, where additional matters have arisen since the original pleading was filed. *See Rank v. Rank*, 107 Ill. App. 2d 339, 342–43 (2d Dist. 1969) (granting leave to supplement complaint). Further, the court has broad discretion with respect to the allowance of supplements to pleadings. *Murphy v. Murphy*, 31 Ill. App. 3d 321, 338 (1st Dist. 1975).

7.     Here, upon learning of additional matters that arose after the original pleading was filed, OT is seeking leave to supplement its Complaint within a reasonable time and before Barney has filed an appearance or responsive pleading in this case.

-2-

8.    In addition, Section 2-616 of the Illinois Code of Civil Procedure provides that "[a]t any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as a plaintiff or defendant." 735 ILCS 5/2-616(a). Indeed, "Section 2-616(a) is to be liberally construed, and doubts which exists [sic] concerning the propriety of allowing an amendment must be resolved in favor of the party seeking to make it." *Lykowski v. Bergman*, 299 Ill. App. 3d 157, 162 (1st Dist. 1998); *see also Bank of Northern Illinois v. Nugent*, 223 Ill. App. 3d 1, 13 (2d Dist. 1991) ("[A]mendments to pleadings should be liberally allowed, unless an opposing party would be prejudiced as a result.")

9.    Granting OT leave to amend will not prejudice any party and will not cause undue delay, especially in light of the fact that Barney has not yet filed an appearance or responsive pleading in this matter.

10.    This Motion is not intended for the purposes of harassment or other improper motive.

WHEREFORE, for the reasons set forth above, OT respectfully requests that this Court enter an order: (1) granting OT leave to file its First Amended and Supplemental Verified Complaint for Injunctive Relief, Declaratory Judgment, and Damages; and (2) awarding such other and further relief as this Court deems appropriate and just.

DATED: October 9, 2012

Respectfully submitted,

OCEAN TOMO, LLC

By: _Rachel T. Copenhaver_

One of Its Attorneys

M. Derek Zolner
Chad A. Schiefelbein
Rachel T. Copenhaver
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601-1003
(312) 609-7500
Firm I.D. No. 44284

-4-

FIRM I.D. 44284

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| OCEAN TOMO, LLC, an Illinois limited liability company, | |
| Plaintiff, | |
| v. | No.   12 CH 02966 |
| JONATHAN BARNEY, an individual, and PATENTRATINGS, LLC, a California limited liability company, | Judge Kathleen M. Pantle |
| Defendants. | |

## FIRST AMENDED AND SUPPLEMENTAL VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES

As and for its First Amended and Supplemental Verified Complaint for Injunctive Relief, Declaratory Judgment, and Damages against Defendants Jonathan Barney ("Barney") and PatentRatings, LLC ("PR") (collectively, "Defendants"), Plaintiff Ocean Tomo, LLC ("OT"), by and through its attorneys, Vedder Price P.C., states and alleges as follows:

### NATURE OF ACTION

1.       This is an action for breach of contract, breach of fiduciary duty, violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.* ("ITSA"), violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), conversion, and tortious interference with prospective economic advantage, arising out of Barney's destruction, copying, and use of OT's confidential information and trade secrets, along with his and PR's attempt to divert a business opportunity away from OT. OT likewise seeks a declaratory judgment establishing that it is not tortiously interfering with Defendants' business expectancies or relationships.

-1-

2.     Barney was a Member and Managing Director of OT, and as such, was intimately involved in the development and marketing of OT's services and was given access to detailed knowledge of OT's confidential information relating to financial data, business plans, business methods and practices, and client identity, needs, and preferences.  Additionally, Barney was provided access to sensitive and confidential information about OT's financial and client data related to OT's clients (including historical and realized revenues, and profit margins), strategic plans, business development efforts, proprietary products and valuation methods, and client requirements.

3.     Barney created PR, a company that owns and develops proprietary objective computer generated metrics for determining the quality and relevance of issued United States patents.  Barney is the Chief Executive Officer and the majority owner of PR.

4.     Because he was provided access to OT's confidential information and client relationships and as a condition of his employment, Barney executed an employment agreement (the "Employment Agreement") that prohibited him from using or disclosing OT's confidential information for his own benefit or the benefit of anyone other than OT.

5.     During the course of his employment with OT, Barney was provided with a laptop for business use (the "Laptop").  The Laptop contained OT's confidential information relating to financial data, business plans, business methods and practices, and client identity, needs, and preferences.  Further, Barney executed a Computer Asset Policy Agreement (the "CAP Agreement") during his employment with OT that prohibited him from modifying, altering, or upgrading any hardware or software provided to him by OT.

6.     Barney resigned from OT on or about February 14, 2011.  At that time, he did not return the Laptop to OT.  Despite multiple demands by OT for the return of the Laptop, Barney

-2-

refused to turn over the Laptop until on or about June 14, 2011. Upon receiving the Laptop from Barney, OT hired a forensic expert, who analyzed the Laptop and determined that the hard drive on the Laptop had been intentionally overwritten or wiped, which permanently deleted and destroyed all of OT's confidential and proprietary information on the Laptop.

7.    In addition to completely wiping the hard drive of the Laptop, Barney, upon information and belief, made a copy of the Laptop's hard drive before erasing it. This copy has not been provided to OT. Upon information and belief, Barney continues to access and use data on the copied hard drive, including OT's confidential business and financial information.

8.    Further, starting at least as early as in approximately February 2012, Barney and PR began contacting, and continues to contact, NTT Data, a potential customer and business partner of OT, in order to divert NTT Data's business away from OT and to PR. Barney and PR have attempted to solicit business from NTT Data despite knowing that OT has a valid business expectancy in its relationship with NTT Data.

9.    OT seeks preliminary and permanent injunctive relief to restrain and enjoin Barney's continued breaches of the Employment Agreement, which have and continue to cause irreparable injury to OT, including injunctive relief enjoining Barney from (i) using or disclosing OT's confidential information for his own benefit or the benefit of anyone other than OT and (ii) tortiously interfering with OT's business expectancies and relationships. OT further seeks an order compelling Barney to return all OT trade secrets, confidential information, and all other proprietary information and property belonging to OT, including without limitation, the copy of the Laptop hard drive believed to be in Barney's possession.

10.    In addition to injunctive relief, OT has incurred damages from Barney's ongoing misconduct and seeks compensatory damages, punitive and exemplary damages, and such other

-3-

relief as the Court deems just and proper.  OT is further seeking a declaratory judgment that it is not tortiously interfering with Defendants' business expectancies or relationships.

## PARTIES

11.     OT is an Illinois limited liability company with its principal place of business in Chicago, Illinois.  OT, the leading Intellectual Capital Merchant Banc firm, provides, among other things, financial products and services related to expert testimony, valuation, investments, risk management, and transactions throughout the United States and overseas.  Most of OT's high-level executives are located in the Chicago, Illinois area.  OT's corporate activities and critical decision-making take place at the corporate headquarters located in Chicago, Illinois.

12.     Barney is an individual who, upon information and belief, resides at 312 Signal Road, Newport Beach, California 92663.  Barney was a Managing Director at OT and was the head of OT's PatentRatings® ("OTPR") group at the time of his resignation on or about February 14, 2011.  Barney was and currently is one of only three equity owners of OT.  Barney is currently the Chief Executive Officer and majority owner of PR.

13.     PR is a California limited liability company, with its principal place of business in Irvine, California, that owns and develops proprietary objective computer generated metrics for determining the quality and relevance of issued United States patents.

## JURISDICTION AND VENUE

14.     Jurisdiction is proper in this Court pursuant to Section 2-209(a) of the Illinois Code of Civil Procedure (735 ILCS 5/1-101 *et seq.*) because the causes of action arise from, among other things, Defendants' transaction of business in Illinois and the making and performance of contracts substantially connected to Illinois.  Moreover, Barney contractually submitted to jurisdiction in this Court.

-4-

15.     Venue is proper in this Court under Section 2-101 because a substantial part of the events giving rise to the causes of action occurred in Cook County, Illinois. Barney also agreed to exclusive venue in this Court in his Employment Agreement. Specifically, Barney agreed as follows:

> Each of the parties hereto . . . consents to any and all disputes regarding this Agreement to be heard by a court of competent jurisdiction in Cook County, Illinois and agrees to waive any argument regarding the choice of such forum.

## GENERAL ALLEGATIONS

### OT's Business

16.     OT, the Intellectual Capital Merchant Banc firm, provides, among other things, expert testimony, investment advice, risk management, transaction assistance, and valuation services related to intellectual property assets.

17.     One of OT's business units is OTPR, which is responsible for the marketing and sale of Ocean Tomo PatentRatings® products and services based upon the data provided under agreement with PR. PR has exclusively licensed to OT and has contracted to supply OT with data and tools based upon PR's computer generated metrics for determining the quality and relevance of issued United States patents. Barney owns a controlling interest in PR, and OT owns a minority interest of 25% in PR.

18.     Due · to its vast research and development initiatives, and cultivation of long-standing business relationships, OT has developed certain trade secrets and confidential information pertaining to its business, including, but not limited to: valuation report templates, research tools, financial information, collections, revenues, profit margins, business plans, business development efforts, proprietary products, client requirements, business plans and strategies, pricing, fees, profitability factors, marketing materials, training materials, marketing

-5-

strategies, personnel information, including personnel lists, resumes, salary information, organizational structure and performance evaluations. These trade secrets and confidential information provide a substantial economic and competitive advantage to OT and, if known to a competitor, would negatively impact OT in the marketplace.

### OT's Hiring of Barney and His Access to Confidential Information

19.     Barney is an attorney and inventor of intellectual property and data used for the evaluation and analysis of United States patents. Barney created PR. When Barney wholly owned PR, PR and OT entered into a written licensing transaction on December 31, 2004, pursuant to which PR provided OT with rights under patents, data and other intellectual property. Also, at that time, Barney became an equity owner of OT. Barney currently remains one of three such equity owners of OT.

20.     In connection with the December 31, 2004 licensing transaction, OT hired Barney to act as Managing Director for the OTPR business unit effective as of January 2005.

21.     As Managing Director for OTPR, Barney was responsible for managing and overseeing the marketing and sale of Ocean Tomo PatentRatings® products and services, including IPQ® patent quality scores and patent relevance scores. As of the time of his resignation, Barney's annual salary was $210,000, and he also received profit sharing payments.

22.     In his position with OT, and subject to strict confidentiality obligations, Barney was provided access to OT's confidential information. Barney was provided access to nearly all of OT's business information, including information about OT's overall financial performance; the performance of each of OT's practice areas; collections and revenue; business plans; opportunities for business development and growth; and other sensitive and confidential information belonging to OT.

23.     As part of his employment with OT, Barney was provided with the Laptop. The Laptop contained OT's confidential information, trade secrets, and other proprietary information relating to OT's financial data, business plans, business methods and practices, and client identity, needs, and preferences. Furthermore, the Laptop also contained OT's high-level confidential business information, which included information and data regarding overall financial performance; the performance of each of OT's practice areas; collections and revenue; business plans; opportunities for business development and growth; and other sensitive and confidential OT information.

### OT's Agreements with Barney

24.     Because OT was providing Barney with access to OT's confidential information and client relationships, OT required Barney, as a condition of employment, to execute and agree to the Employment Agreement. Barney signed the Employment Agreement on or about January 1, 2005. (A copy of that agreement is attached hereto as Exhibit A.)

25.     In the Employment Agreement, Barney agreed that, as part of his employment, he would be exposed to OT's confidential information and that he would maintain the confidentiality of that information, would not use such information for his own benefit, directly or indirectly, and would not disclose that information. Specifically, Barney agreed as follows:

> Section 5.2.     Confidential     Information.     The     Executive understands and acknowledges that during his employment with the Company he will be exposed to Confidential Information that is proprietary and that rightfully belongs to the Company.  The Executive agrees that he will not use or cause to be used for his own benefit, directly or indirectly, or disclose any of such Confidential Information at any time, either during or after his employment with the Company, whether or not such Confidential Information is developed by the Executive ... The Executive shall take all commercially reasonable steps to safeguard Confidential Information that is within his possession or control and to protect such information against disclosure, misuse, loss or theft ... The term "Confidential Information" means any information not

-7-

generally available to the public that was obtained from the Company, or any of its Affiliates or that was learned as a result of the performance of any services by the Executive to or on behalf of the Company, and which fails within the following general categories: (a) information concerning trade secrets of the Company or any of its Affiliates; (b) information concerning existing or contemplated products, services, technology, designs, processes, research or product developments of the Company or any of its Affiliates; (c) information concerning business plans, sales or marketing methods, methods of doing business, customer lists, customer usages and or requirements, or supplier information of the Company or any of its Affiliates; (d) information concerning the identity needs, purchase and payment patterns of, and credit terms, pricing of special relations with, the customers of the Company or any of its Affiliates; (e) information concerning the identity, net prices and credit terms of, and special relations with, the suppliers of the Company or any of its Affiliates; or (f) any other confidential information which the Company or any of its Affiliates may reasonably have the right to protect by patent, copyright or by keeping it secret and confidential.

26. OT and Barney later negotiated an Amendment to the Employment Agreement (the "Amendment"), which revised Section 6.9 of the Employment Agreement but made no changes to Section 5.2. Barney executed the Amendment on or about July 28, 2008. (A copy of the Amendment is attached hereto as Exhibit B).

27. Barney is also party to the CAP Agreement, which he executed on or about April 27, 2007, wherein he agreed that "[n]o alterations, upgrades, or modifications should be made to hardware and software purchased by the organization and provided to the employee." (A copy of the CAP Agreement is attached hereto as Exhibit C). Barney further agreed that OT retained ownership of all hardware and software provided to him.

### OT's Additional Measures to Maintain the Confidentiality of Its Information

28. In order to maintain the confidentiality of its information, OT, as a matter of practice and policy, requires employees to execute agreements containing confidentiality provisions the same or nearly identical to the one in Barney's Employment Agreement.

-8-

29.     In addition, OT restricts access to its confidential information to certain key individuals and only on a need-to-know basis. For example, OT's financial information and strategic business plans are only distributed to OT's Managing Directors. Customer-related confidential information is only provided to employees who work with that particular customer.

**Barney's Departure from OT and Destruction of the Laptop's Hard Drive**

30.     On or about February 14, 2011, Barney resigned from OT as a Managing Director.

31.     Notwithstanding the fact that OT owned the Laptop, Barney did not return the Laptop to OT at the time of his resignation.

32.     On multiple occasions, OT demanded that Barney return the Laptop. Barney refused to comply with any of these requests.

33.     On or about June 14, 2011, approximately four months after he resigned from OT, Barney finally returned the Laptop to OT.

34.     Upon receiving the Laptop from Barney, OT hired a forensic expert, who analyzed the Laptop and determined that the hard drive on the Laptop had been intentionally overwritten or wiped with hexadecimal "00" values. By overwriting or wiping the hard drive's data storage area on the Laptop, Barney rendered the data on the entire hard drive unrecoverable, which thereby destroyed all the data on the hard drive. As such, Barney permanently destroyed and rendered inaccessible all OT information on the Laptop's hard drive, including, without limitation, OT's confidential information regarding OT's strategic plans, financial performance, and customers.

35.     In addition to completely wiping the hard drive of the Laptop, Barney, upon information and belief, made a copy of the Laptop's hard drive before erasing it. That copy has

-9-

not been provided to OT. Upon information and belief, Barney continues to access and use data on the copied hard drive, including OT's confidential financial and business information.

### Barney Refuses OT's Request for Compliance with the Employment Agreement and the CAP Agreement

36.    Upon receiving the Laptop back from Barney and learning from its hired forensic expert that the hard drive on the Laptop had been wiped clean, OT sent a letter to Barney on July 6, 2011 reminding him of his contractual obligations in the Employment Agreement and in the CAP Agreement. (A copy of the July 6, 2011 correspondence is attached hereto as Exhibit D.)

37.    In the July 6, 2011 letter, OT requested that Barney explain the circumstances surrounding the destruction of data on the Laptop; identify and return all OT files, data, and information remaining in his possession (whether originals or copies); and disclose the means by which Barney had access to OT's files, data, and information since his resignation from OT.

38.    To date, Barney has not responded to OT's July 6, 2011 letter, nor has he complied with any of the requests made by OT in that letter.

### Barney and PR's Solicitation of OT's Potential Customer

39.    Starting at least as early as in approximately February 2012, Barney and PR began directly soliciting the business of NTT Data, a potential customer and business partner of OT with whom OT expected to conduct business.

40.    Further, Barney and PR directly solicited the business of NTT Data in contravention of a license agreement entered into between OT and PR (the "License Agreement," which provided OT, *inter alia*, with a limited exclusive, royalty-free, worldwide license to distribute, sell, license, or display PatentRatings analysis to third parties for a fee. (Copies of the September 1, 2004 License Agreement, the December 31, 2004 amendment to the License Agreement, the May 2, 2005 amendment to the License Agreement, and the July 19,

-10-

2007 amendment to the License Agreement are attached hereto as Exhibit E, Exhibit F, Exhibit G, and Exhibit H, respectively.)

41.     Since at least February 2012, Barney and PR have engaged in licensing and other discussions with NTT Data to develop and market patent analysis tools, algorithms, software and data for Japanese patents.  In addition, Barney and PR have offered to indemnify NTT Data against any claims asserted by OT for damage arising from Barney and PR's attempt to divert business away from OT and to PR.

42.     Despite being informed of OT's business expectancy in its relationship with NTT Data, along with the limited exclusive, royalty-free, worldwide license given to OT under the License Agreement, Barney and PR have persisted in soliciting the business of NTT Data.

### Injunctive Relief Is Required

43.     Injunctive relief is necessary to prevent the further loss of OT's valuable confidential information.  OT has sustained and will continue to sustain irreparable and unfair competitive injury resulting from Barney's ongoing breaches of his contractual and fiduciary obligations.

44.     In Section 5.4 of the Employment Agreement with OT, Barney agreed that OT will be irreparably harmed and that OT will not have an adequate remedy at law if he violated the non-disclosure obligation contained in the agreement.

45.     Barney has already showed his willingness to disregard his contractual and fiduciary obligations to OT by destroying all of OT's confidential and proprietary information contained on the Laptop's hard drive and by soliciting OT's potential customer and business partner.  Moreover, upon information and belief, Barney has shown a complete disregard for his fiduciary, contractual, and statutory obligations by making a copy of the Laptop's hard drive and

-11-

using the confidential information (which had been acquired during his employment relationship with OT) contained thereon.

46.     Further injunctive relief is necessary to prevent further damage to OT.

## COUNT I
## BREACH OF CONTRACT—EMPLOYMENT AGREEMENT
## (BARNEY)

47.     OT restates and realleges Paragraph Nos. 1 through 46 as and for this Paragraph No. 47 of Count I.

48.     The Employment Agreement attached as Exhibit A is a valid and enforceable contract.

49.     In exchange for the contractual obligations set forth in the Employment Agreement, Barney received adequate and sufficient consideration, including, without limitation, employment, compensation, and bonus eligibility.

50.     OT has at all times performed and fulfilled its obligations under the Employment Agreement.

51.     Barney has breached Section 5.2 of the Employment Agreement by destroying and failing to safeguard OT's confidential information in his possession, refusing to return OT's confidential information in his possession, custody, or control to OT, and using and disclosing OT's confidential information for his benefit and PR's benefit.

52.     The foregoing breaches and continuing breaches of Barney's Employment Agreement with OT have proximately caused and, unless restrained and enjoined, will continue to cause OT severe, immediate and irreparable harm, damage and injury.

**WHEREFORE**, OT respectfully requests the Court to enter judgment in its favor on Count I and award the following relief:

(a)     Permanent injunction to enjoin Barney from using or disclosing OT's confidential information and trade secrets;

(b)     Mandatory injunction to compel Barney to return all OT trade secrets, confidential information, and all other proprietary information and property belonging to OT, including without limitation, any copy of the Laptop's hard drive;

(c)     Compensatory damages in an amount to be determined at trial;

(d)     Reasonable attorneys' fees and costs; and

(e)     Such other relief as the Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT--COMPUTER ASSET POLICY AGREEMENT
## (BARNEY)

53.     OT restates and realleges Paragraph Nos. 1 through 46 as and for this Paragraph No. 53 of Count II.

54.     The CAP Agreement attached as Exhibit C is a valid and enforceable contract.

55.     In exchange for the contractual obligations set forth in the CAP Agreement, Barney received adequate and sufficient consideration, including, without limitation, access to and use of software and hardware belonging to OT, including the Laptop.

56.     OT has at all times performed and fulfilled its obligations under the CAP Agreement.

57.     Barney has breached the CAP Agreement by overwriting and permanently destroying all data on the hard drive of the Laptop.

58.     As a direct and proximate result of Barney's breach of the CAP Agreement, OT has expended resources in excess of $5,000 to investigate the foregoing misconduct and to

-13-

conduct a forensic examination of the Laptop used by Barney to ascertain the scope of his misconduct, and to perform certain remedial measures to the Laptop due to the misconduct.

**WHEREFORE**, OT respectfully requests the Court to enter judgment in its favor on Count II and award the following relief:

(a)     Compensatory damages in an amount to be determined at trial;

(b)     Reasonable attorneys' fees and costs; and

(c)     Such other relief as the Court deems just and proper.

### COUNT III
### BREACH OF FIDUCIARY DUTY
### (BARNEY)

59.     OT restates and realleges Paragraph Nos. 1 through 46 as and for this Paragraph No. 59 of Count III.

60.     As a Managing Director at OT, Barney owed OT fiduciary duties, including, but not limited to, a duty to act at all times with the utmost good faith, loyalty, honesty and fair dealing towards OT, to avoid self-dealing, conflicts of interest and acting for his own personal benefit to the exclusion of OT's interest, and to act in the best interest of OT in all matters relating to its business. Barney also owes heightened fiduciary duties to OT as an equity owner and Member of OT.

61.     OT reposed trust and confidence in Barney that he would abide by his fiduciary duties.

62.     Barney has breached his fiduciary obligations to OT by, among other things, (i) destroying OT's confidential information on the Laptop's hard drive, (ii) making a copy of the Laptop's hard drive—which contained confidential information acquired during the course of Barney's employment with OT and prior to his resignation from OT—before erasing it, and (iii) disclosing and using OT's confidential information—which had been acquired during the course

-14-

of his employment with OT and prior to his resignation from OT—from the copied hard drive for his own benefit and PR's benefit.

63. These breaches of fiduciary duty have proximately caused and, unless restrained and enjoined, will continue to cause OT severe, immediate and irreparable harm, damage and injury for which OT has no adequate remedy at law.

64. These breaches of fiduciary duty were knowing, intentional, and reckless, and were of such an aggravated character as to warrant the imposition of punitive damages.

**WHEREFORE**, OT respectfully requests the Court to enter judgment in its favor on Count III and award the following relief:

    (a)    Permanent injunction to enjoin Barney from using or disclosing OT's confidential information and trade secrets;

    (b)    Mandatory injunction to compel Barney to return all OT trade secrets, confidential information, and all other proprietary information and property belonging to OT, including without limitation, any copy of the Laptop's hard drive;

    (c)    Compensatory damages in an amount to be determined at trial;

    (d)    Punitive damages in an amount to be determined at trial; and

    (e)    Such other relief as the Court deems just and proper.

### COUNT IV
### VIOLATION OF ILLINOIS TRADE SECRETS ACT, 765 ILCS 1065/1 *ET SEQ.*
### (BARNEY)

65. OT restates and realleges Paragraph Nos. 1 through 46 as and for this Paragraph No. 65 of Count IV.

66. Certain of OT's business practices and methods, and information relating to its products, clients, practice areas, suppliers, and contacts, including, without limitation, valuation

-15-

report templates, research tools, financial information, collections, revenues, profit margins, business plans, business development efforts, proprietary products, client requirements, business plans and strategies, pricing, fees, profitability factors, marketing materials, training materials, marketing strategies, personnel information, including personnel lists, resumes, salary information, organizational structure and performance evaluations are proprietary and confidential to OT and constitute protectible trade secrets under the ITSA, 765 ILCS 1065/1 *et seq.*

67.     OT has taken reasonable efforts to protect and maintain the secrecy and confidentiality of its trade secrets.

68.     OT's trade secrets are not generally known in the industry or to the general public, and their secrecy confers substantial economic advantage and benefit to OT.  Knowledge of this information would also confer a substantial economic benefit to OT's competitors.

69.     The circumstances of Barney's employment with OT gave rise to fiduciary duties and contractual obligations to maintain the secrecy of OT's trade secrets and confidential information and to strictly limit their use to OT business activities and for OT's exclusive benefit.

70.     Barney, through improper means and without authorization, either directly or indirectly, misappropriated, misused, and/or disclosed OT's trade secrets to and for his own benefit.  Upon information and belief, Barney has misappropriated and retains copies of OT's trade secrets.  Investigation into Barney's theft of OT's confidential information and trade secrets continues and may yet reveal additional information that Barney misappropriated.

71.     As a direct and proximate result of Barney's deliberate, willful, and malicious misappropriation of OT's trade secrets, OT has sustained and will continue to sustain severe,

immediate and irreparable harm, damage and injury to the value of its trade secrets and competitive advantage, which OT has expended significant time, effort and money to secure.

**WHEREFORE**, OT respectfully requests the Court to enter judgment in its favor on Count IV and award the following relief:

(a)  Permanent injunction to enjoin Barney from using or disclosing OT's confidential information and trade secrets;

(b)  Mandatory injunction to compel Barney to return all OT trade secrets, confidential information, and all other proprietary information and property belonging to OT, including without limitation, any copy of the Laptop's hard drive;

(c)  Compensatory damages in an amount to be determined at trial pursuant to 765 ILCS 1065/4(a);

(d)  Exemplary damages pursuant to 765 ILCS 1065/4(a) in an amount equaling twice the compensatory damages;

(e)  Reasonable attorney fees pursuant to 765 ILCS 1065/5; and

(f)  Such other relief as the Court deems just and proper.

### COUNT V.
### VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030
### (BARNEY)

72.  OT restates and realleges Paragraph Nos. 1 through 46 as and for this Paragraph No. 72 of Count V.

73.  The Laptop was used in interstate commerce and constitutes a "protected computer" under the CFAA, 18 U.S.C. § 1030(e)(2)(b).

-17-

74.     Without authorization or by exceeding authorized access, Barney intentionally accessed the Laptop with the intent to defraud OT and violated Sections 1030(a)(2)(c), (a)(4), and (a)(5) of the CFAA by:

        (a)    Deleting electronic files from the Laptop;

        (b)    Destroying the hard drive on the Laptop; and

        (c)    Copying the Laptop's hard drive, which contained OT's trade secrets and confidential information for his benefit and PR's benefit.

75.     By engaging in the foregoing misconduct for the purpose of misappropriating OT's trade secrets and confidential information, Barney breached various contractual and fiduciary duties and obligations owed to OT. As the foregoing misconduct occurred after Barney resigned from OT, there is no employment or agency relationship or any other legal basis upon which Barney could claim authorization or authority for accessing and destroying files on the Laptop. Moreover, under no circumstances was Barney authorized to delete information from the Laptop's hard drive.

76.     Barney intentionally and recklessly caused damage and loss to OT in excess of $5,000 because his conduct impaired the integrity of OT's protected computer and required OT to expend resources in excess of $5,000 to investigate the foregoing misconduct, conduct forensic examination of the Laptop used by Barney to ascertain the scope of his misconduct, and perform certain remedial measures to OT's protected computer due to the misconduct.

77.     As a further direct and proximate cause of the foregoing misconduct, OT has been damaged and suffered loss in an amount in excess of $5,000 to the extent Barney accessed, deleted, destroyed, and copied electronic files containing OT's trade secrets and other

CHICAGO/#2284773.6

confidential and proprietary client and business information belonging to OT for his personal use and/or that of PR.

**WHEREFORE**, OT respectfully requests the Court to enter judgment in its favor on Count V and award the following relief:

(a) Permanent injunction to enjoin Barney from using or disclosing OT's confidential information and trade secrets;

(b) Mandatory injunction to compel Barney to return all OT trade secrets, confidential information, and all other proprietary information and property belonging to OT, including without limitation, any copy of the Laptop's hard drive;

(c) Compensatory damages in an amount to be determined at trial pursuant to 18 U.S.C. § 1030(g);

(d) Punitive damages in an amount to be determined at trial; and

(e) Such other relief as the Court deems just and proper.

## COUNT VI
## CONVERSION
## (BARNEY)

78. OT restates and realleges Paragraph Nos. 1 through 46 as and for this Paragraph No. 78 of Count VI.

79. OT has a right to immediate possession of any OT documents and materials in Barney's possession.

80. Barney has assumed control, dominion, and ownership over OT documents and materials to which OT has an absolute and unconditional right to immediate possession.



81. Barney has not returned or has destroyed the documents and materials that rightfully belong to OT.

82. Barney's conduct was and is deliberate, willful, and malicious.

83. The foregoing conduct has proximately caused and, unless restrained and enjoined, will continue to cause OT severe, immediate and irreparable harm, damage and injury.

**WHEREFORE**, OT respectfully requests the Court to enter judgment in its favor on Count VI and award the following relief:

(a) Permanent injunction to enjoin Barney from using or disclosing OT's confidential information and trade secrets;

(b) Mandatory injunction to compel Barney to return all OT trade secrets, confidential information, and all other proprietary information and property belonging to OT, including without limitation, any copy of the Laptop's hard drive;

(c) Compensatory damages in an amount to be determined at trial;

(d) Punitive damages; and

(e) Such other relief as the Court deems just and proper.

### COUNT VII
### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE
### (BARNEY & PR)

84. OT restates and realleges Paragraph Nos. 1 through 46 as and for this Paragraph No. 84 of Count VII.

85. OT has a valid business expectancy in relationships with its potential customers and business partners through the expenditure of substantial time, money, and effort. Further, OT has a valid business expectancy in such relationships with potential customers and business

-20-

partners due to the fact that OT was granted, *inter alia*, a limited exclusive, royalty-free, worldwide license to distribute, sell, license, or display PatentRatings analysis to third parties for a fee in the License Agreement.

86.     As a result of Barney's employment with OT and membership in OT, Barney has knowledge of OT's business expectancy in such relationships with potential customers and business partners, including NTT Data.

87.     Defendants also have knowledge of OT' business expectancy in such relationships with potential customers and business partners, including NTT Data, due to the fact Barney is the majority owner of PR and PR granted OT, *inter alia*, a limited exclusive, royalty-free, worldwide license under the License Agreement.

88.     Barney and PR have intentionally and unjustifiably interfered with OT's business expectancies by soliciting potential customers and attempting to divert customers from OT to PR.

89.     Specifically, and without limitation, Defendants' actions have interfered with OT's business expectancy with NTT Data in that OT has now been unable to obtain business from NTT Data as expected.

90.     Defendants' actions are not privileged because Defendants solicited the business of NTT Data in contravention of the License Agreement. Moreover, Defendants have used unfair means to interfere with OT's relationship with NTT Data, including the disparagement of OT's goods, services, and reputation.

91.     As a direct and proximate result of Defendants' actions, OT has sustained, and will continue to sustain, unless enjoined, severe and irreparable injury to its customer business expectancies and relationships.

-21-

92.    By reason of Defendants' deliberate, willful, and malicious conduct, OT is entitled to exemplary damages in such amount as the public good requires to punish Defendants and to deter them and others from the commission of like acts.

**WHEREFORE**, OT respectfully requests the Court to enter judgment in its favor on Count VII and award the following relief:

(a)    Preliminary injunction to enjoin Defendants from interfering with OT's business expectancies and relationships;

(b)    Permanent injunction to enjoin Defendants from interfering with OT's business expectancies and relationships;;

(c)    Compensatory damages in an amount to be determined at trial;

(d)    Punitive damages; and

(e)    Such other relief as the Court deems just and proper.

### COUNT VIII
### DECLARATORY JUDGMENT
### (BARNEY & PR)

93.    OT restates and realleges Paragraph Nos. 1 through 46 as and for this Paragraph No. 93 of Count VIII.

94.    Upon discovering that Barney and PR were soliciting the business of NTT Data in contravention of the License Agreement entered into between OT and PR, OT contacted NTT Data to determine the scope of Defendants' interference with OT's business expectancy in its relationship with NTT Data.

95.    A present and actionable controversy now exists between OT and Defendants concerning whether OT is tortiously interfering with Defendants' business expectancy with respect to NTT Data by virtue of OT's contact with NTT Data.

96. Specifically, OT contends that it is not tortiously interfering with Defendants' business expectancy with respect to NTT Data because the License Agreement provided OT, *inter alia*, with a limited exclusive, royalty-free, worldwide license to distribute, sell, license, or display PatentRatings analysis to third parties for a fee. (*See* Exhibit E.)

97. Defendants, on the other hand, contend that the License Agreement does not apply to the business contemplated by NTT Data and that, as a result, OT is tortiously interfering with Defendants' business expectancy in its relationship with NTT Data.

98. A declaration by this Court is necessary to resolve this impasse and to determine the respective rights of the parties under the License Agreement and whether OT is tortiously interfering with Defendants' business expectancy with respect to NTT Data.

**WHEREFORE**, OT respectfully requests that this Court enter a declaratory judgment in OT's favor on Count VIII declaring as follows:

 (a) That OT is not tortiously interfering with Defendants' business expectancy with respect to NTT Data on account of the limited exclusive, royalty-free, worldwide license provided to OT in the License Agreement; and

 (b) Such other relief as the Court deems just and proper.

DATED:

Respectfully submitted,

OCEAN TOMO, LLC

By:_____
One of Its Attorneys

M. Derek Zolner
Chad A. Schiefelbein
Rachel T. Copenhaver
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601-1003
(312) 609-7500
Firm I.D. No. 44284

CHICAGO/#2284773.6

## **VERIFICATION**

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, I, James Malackowski, Chairman and Chief Executive Officer for Ocean Tomo, LLC, certify that the statements set forth in this Verified Complaint for Injunctive Relief and Damages are true and correct, except as to matters therein stated to be on information and belief and as to such matters, I certify as aforesaid that I verily believe the same to be true.

_____