IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| OCEAN TOMO, LLC,<br><br>      Plaintiff-Counter Defendant,<br><br>v.<br><br>JONATHAN BARNEY and<br>PATENTRATINGS, LLC,<br><br>      Defendant-Counter Plaintiffs. | No. 12 C 8450<br><br>JURY DEMANDED<br><br>Hon. Joan B. Gottschall |

## OCEAN TOMO, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO COMPEL ARBITRATION

As and for its Memorandum of Law in support of its Motion to Dismiss, or in the Alternative, Motion to Compel Arbitration, Plaintiff/Counter-Defendant Ocean Tomo, LLC ("OT") states as follows:

**I.    INTRODUCTION**

The Counterclaims filed by Defendants/Counter-Plaintiffs Jonathan Barney ("Barney") and PatentRatings, LLC ("PR") (collectively, "Defendants') allege six causes of action against OT: Breach of Contract (Count I); Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II); Fraud (Count III); Breach of Contract (Count IV); Tortious Interference with Prospective Economic Advantage (Count V); and Violation of the Computer Fraud and Abuse Act (the "CFAA"), 18 U.S.C. § 1030 (Count VI).[1] (Counterclaims ("Countercl.") ¶¶ 45–88.)

---

[1] Barney asserts Counts I and II against OT whereas PR asserts Counts IV and VI against OT. Defendants jointly assert Counts III and V against OT.

Counts I, II, III, and VI of Defendants' Counterclaims are legally deficient and must be dismissed for at least the following reasons:

- Count I asserts claims for breach of the Ocean Tomo, LLC Operating Agreement, but the Operating Agreement requires that Barney arbitrate any claims arising out of or related to the Operating Agreement.[2]

- Count II attempts to assert a claim for breach of the implied duty of good faith and fair dealing, but Illinois does not recognize such an independent cause of action. Additionally, the bases for Count II are identical to Count I but are merely couched as breaches of the implied covenant of good faith and fair dealing rather than breaches of the Operating Agreement. However characterized, claims arising out of or relating the Operating Agreement must follow the prescribed dispute resolution procedures in the Operating Agreement, including arbitration.

- Count III, which asserts claims for alleged fraudulent representations made in 2004, is barred by the applicable five-year statute of limitations.

- Count VI, pursued under the CFAA, fails because PR fails to allege damage or loss as required by the CFAA.

## II. BACKGROUND AND COMPLAINT ALLEGATIONS[3]

### A. The Parties' Relationship

In 2000, Barney formed PR, which allegedly uses the PatentRatings system, a patent data, rating, and analysis system that uses algorithms to assess the quality and relative value of patents and patent portfolios. (*Id*. ¶¶ 6–7.) In 2004, PR and OT entered into negotiations for OT to license PatentRatings and ultimately entered into a License Agreement dated as of September 1, 2004 whereby, among other things, PR licensed to OT the right to use PatentRatings. (*Id*.¶ 9) At or around the same time that OT and PR entered into the License Agreement, OT and Barney entered into the Equity Exchange Agreement dated as of December 31, 2004, whereby OT acquired 25% of the equity in PR from Barney, and Barney acquired equity in OT. (*Id*.) As a

---

[2] In the alternative, if this Court does not dismiss Counts I and II of Defendants' Counterclaims, OT respectfully requests that this Court grant its Motion to Compel Arbitration on Counts I and II and stay the litigation as to Counts I and II pending arbitration of those particular claims.

[3] For the purpose of this Motion to Dismiss, or in the alternative, Motion to Compel Arbitration, OT will only address those facts, as alleged in Defendants' Counterclaim, that are relevant to Counts I, II, III, and VI.

-2-

member of OT, Barney was party to an operating agreement, the current version of which is the Second Amended and Restated Operating Agreement of Ocean Tomo, LLC dated as of January 1, 2008 (the "Operating Agreement"). (*Id*. ¶ 11.) Barney also had an Employment Agreement with OT. (*Id*. ¶ 61). Barney was employed by OT until February 2011, at which time he resigned from his employment. (*Id*. ¶ 25.)

B.     **The Bases of PR and Barney's Claims**

In Count I of Defendants' Counterclaims, Barney has asserted a breach of contract claim stemming from his Operating Agreement with OT. (*Id*. ¶¶ 45–54.) In particular, Barney alleges that OT breached its obligations under the Operating Agreement in the following ways: (i) by failing to allocate proceeds from the sale one of its businesses among the members of the OT in accordance with their percentage interests and instead; (ii) by deciding that Barney was no longer entitled to receive dividend allocations attributable to in his ownership interest in OT due to his breach of Section 13.17 of the Operating Agreement; (iii) by engaging in other misallocations of profits and losses; and (iv) by refusing to provide Barney with access to OT's books and records. (*Id*. ¶¶ 20, 47–52.)

Just like Count I, Count II of Defendants' Counterclaims is premised on the Operating Agreement. Barney alleges that OT, based on the implied covenant of good faith and fair dealing, was required to perform the Operating Agreement fairly and in good faith. (*Id*. ¶ 56.) OT allegedly breached this implied covenant of good faith and fair dealing by: (i) improperly treating the proceeds from the business sale as "Net Profits from Operations" under the Operating Agreement so that those proceeds would not have to be allocated in accordance with members' ownership interests; (ii) deciding that Barney was no longer entitled to receive dividend allocations attributable to in his ownership interest in OT due to his breach of Section 13.17 of the Operating Agreement; and (iii) refusing Barney's requests for access to OT's books

and records. (*Id*. ¶¶ 20–21, 57–59.) Barney also alleges that OT breached the implied covenant of good faith and fair dealing relating to his Employment Agreement with OT by creating intolerable working conditions and conflicts of interest. (*Id*. ¶ 61.)

Defendants assert a claim for fraud in Count III based on alleged misrepresentations made by OT in 2004 in order to induce Defendants to enter into the License Agreement and the Equity Exchange Agreement. (*Id*. ¶ 64.) These alleged misrepresentations included the following promises: (i) that Barney would be employed as a senior executive at OT and enjoy the salary and benefits commensurate with such a position; (ii) that Barney would receive additional equity units in OT over time; and (iii) that there were no contracts relating to the issuance, sale, or transfer of equity securities at OT. (*Id*.)

Finally, in Count VI, PR alleges that OT violated the CFAA in September 2012 by accessing PR's computer servers, copying Confidential Information and data contained on those servers, and transferring PR's Confidential Information and data to OT's own servers for its use and benefit. (*Id*. ¶¶ 85–86.) As will be explained below, Counts I, II, III, and VI should be dismissed.

## III.   LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint. FED. R. CIV. P. 12(b)(6). Courts "are not bound to accept as true legal conclusions couched as factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Indeed, a plaintiff's obligation to provide the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Allegations "must be sufficient to raise the possibility of relief above the 'speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). Only a complaint

"that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1949–50. Furthermore, dismissal based on statute of limitations grounds is appropriate under Rule 12(b)(6) where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008).

## IV. ARGUMENT

### A. Count I Should Be Dismissed Because Barney Is Required to Arbitrate His Breach of Contract Claim According to the Operating Agreement

Although Barney filed Count I with this Court, he expressly agreed to arbitrate any controversy or claim arising out of or relating to the Operating Agreement. Here, Barney, as a member of OT, was a party to the Operating Agreement. (Countercl.¶¶ 11, 46.) A true and correct copy of the Operating Agreement is attached hereto as **Exhibit A**.[4] Because the Operating Agreement is enforceable, Barney's claims fall within the scope of the Operating Agreement, and the Federal Arbitration Act's ("FAA") broad policy favors arbitration of claims, this Court should dismiss Count I or stay proceedings pending completing of arbitration on this count.

Per the FAA, "private agreements to arbitrate are enforced according to their terms." *Mecherle v. TruGreen, Inc.*, No. 12 C 1617, 2012 WL 4097221, at *3 (N.D. Ill. Sept. 14, 2012) (internal citation omitted). The FAA specifically provides: "A written provision in any . . .

---

[4] This Court can consider the Operating Agreement because the document is referred to in Defendants' Counterclaims and is central to Barney's allegations in Counts I and II. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Additionally, a court may consider exhibits regarding the arbitration agreement in question when a party has moved to compel arbitration. *Corrigan v. Domestic Linen Supply Co., Inc.*, No. 12 C 0575, 2012 WL 2977262, at *1 (N.D. Ill. July 20, 2012). Copies of all electronically published and unpublished cases are attached in alphabetical order as **Exhibit B**.

contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "declare[s] a national policy favoring arbitration." *Price v. NCR Corp.*, No. 12 C 3413, 2012 WL 6103205, at *2 (N.D. Ill. Dec. 10, 2012) (quoting *Nitro-Lift Techs., LLC v. Howard*, No. 11-1377, 568 U.S. ___, 133 S. Ct. 500, 2012 WL 5895686, at *2 (Nov. 26, 2012)). If a contract contains an arbitration clause, "a strong presumption in favor of arbitration exists and courts have no choice but to order arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id*. (internal citations omitted). Under the FAA, a court can compel arbitration when there is: (i) a written agreement to arbitrate; (ii) a dispute within the scope of the arbitration agreement; and (iii) a refusal to comply with the arbitration agreement. *Id*. at *3. Here, all three conditions are met.

Barney does not challenge the existence or validity of the Operating Agreement. He admits he is a party to the Operating Agreement and that the Second Amended Operating Agreement is the operative agreement. (Countercl. ¶ 11.) Moreover, he is pursuing a breach of contract claim based on the Operating Agreement in Count I. (*Id*. ¶¶ 45–54.) Thus, there is no dispute that the parties willingly entered into the Operating Agreement, which contains dispute and arbitration provisions. Section 13.16(a) of the Operating Agreement contains the dispute provision and clearly provides as follows:

> <u>Dispute</u>. In the event of any dispute or disagreement between any of the holders of the Units affecting their respective rights in the Company or pursuant to this Agreement, the disputing parties shall set forth their respective positions and disagreements in writing, formally, and give them, together with written notice of the same (a "<u>Dispute Notice</u>"), to the Board of Managers, to the effect that such dispute exists. The Board of Managers will then make a good faith effort to

>resolve the dispute or disagreement. If the dispute is not resolved at the expiration of thirty (30) days from the time the Board of Managers receives such notices and statements thereof, the entire matter shall then be submitted to arbitration as set forth in subsection (b) below.

**Exhibit A**, § 13.16(a), p. 45.

>Section 13.16(b) next sets forth specific arbitration procedures as follows:

>Arbitration. If the dispute or disagreement between any of the holders of Units has not been resolved in accordance with the provisions of subsection (a) of this Section 13.16, then any such controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration to be held in Chicago, Illinois, in accordance with the rules of the American Arbitration Association then in effect before a single neutral. Any decision rendered herein shall be final and binding on each and all of the holders of Units and judgment may be entered thereon in the appropriate state or federal court. The arbitrator shall be bound to strict interpretation and observation of the terms of this Agreement. The successful party to any arbitration shall be awarded all costs and attorneys' fees attributable to the arbitration and the controversy to which it relates.

*Id.*, § 13.16(b), p. 45.

The dispute and arbitration provisions in the Operating Agreement are clear, legible, and are equally binding on OT and its members. There is no dispute that Barney agreed to these dispute resolution procedures by signing the Operating Agreement. (*Id.*, Signature Page.)

Barney's claim in Count I is clearly subject to the dispute and arbitration provisions contained in the Operating Agreement. (Countercl. ¶¶ 45–54.) Indeed, Barney alleges that OT breached certain provisions of the Operating Agreement by failing to allocate net profits, determining that Barney was no longer eligible to receive dividend allocations, engaging in misallocation of profits and losses, and refusing to provide Barney with access to OT's books and records. (*Id.* ¶¶ 47–52.) All of these purported breaches constitute controversies or claims arising out of or relating to the Operating Agreement as set forth in Section 13.16(b), and as such, they are required to be arbitrated. To the extent that there is any doubt regarding the scope of the dispute and arbitration provisions contained in the Operating Agreement—which there is

not—the FAA establishes that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Price*, 2012 WL 6103205, at * 3.

Because (i) there is a valid written agreement to arbitrate, (ii) the disputes alleged in Count I fall within the scope of Section 13.16 of the Operating Agreement, and (iii) Barney refused to comply with Section 13.16 of the Operating Agreement, this Court is empowered to compel arbitration. Accordingly, this Court should dismiss Count I and compel Barney to comply with the dispute resolution provisions of the Operating Agreement, including the requirement that Barney arbitrate the claims alleged in Count I.[5]

> **B.  Count II Should Be Dismissed Because A Breach of the Implied Covenant of Good Faith and Fair Dealing Is Not An Independent, Separate Cause of Action**

Although all Illinois contracts possess an implied covenant of good faith and fair dealing, this "obligation does not provide a person with a separate, independent cause of action." *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 793 (N.D. Ill. 2010). The implied covenant of good faith and fair dealing only acts as a contract interpretation aid; it is not a source of contractual duties and does not impose additional obligations on a party beyond the terms of the contract. *Id.* (quoting *Zeidler v. A&W Rest., Inc.*, 301 F.3d 572, 575 (7th Cir. 2002)).[6] As a result, courts routinely dismiss causes of action for breach of the duty of good faith and fair dealing when they are not alleged as or within a breach of contract claim. *Id.* (collecting cases) (internal citations omitted). Here, in Count II, Barney has attempted to allege an independent claim for breach of the implied covenant of good faith and fair dealing. (Countercl. ¶¶ 55–62.) The basis of this claim, however, is identical to the allegations in Count I concerning the Operating Agreement. (*See id.* ¶¶ 45–50.) Indeed, Counts I and II are based on the same alleged

---

[5] Notably, Barney has not complied with any portion of the dispute resolution provisions because he has failed to submit a Dispute Notice to the Board of Mangers in accordance with Section 13.16(a).

[6] The Operating Agreement has an Illinois choice of law provision. (**Exhibit A**, § 13.03, p. 43.)

wrongful conduct in breach of the Operating Agreement: (i) improperly treating the proceeds from the business sale as "Net Profits from Operations" under the Operating Agreement so that those proceeds would not have to be allocated in accordance with members' ownership interests; (ii) deciding that Barney was no longer entitled to receive dividend allocations attributable to in his ownership interest in OT due to his breach of Section 13.17 of the Operating Agreement; and (iii) refusing Barney's requests for access to OT's books and records. (*Id.* ¶¶ 20–21, 57–59.) Consequently, Count II is superfluous and should be dismissed. *Hickman*, 683 F. Supp. 2d at 793 (dismissing independent claim for breach of duty of good faith and fair dealing with prejudice); *Guarantee Trust Life Ins. v. Insurers Admin. Corp.*, No. 09 C 5129, 2010 U.S. Dist. LEXIS 101088, at *8 (N.D. Ill. Sept. 24, 2010) (same).[7]

Barney also bases a portion of Count II on his Employment Agreement. Specifically, Barney alleges that OT breached the implied covenant of good faith and fair dealing relating to his Employment Agreement by creating intolerable working conditions and conflicts of interest. (Countercl. ¶ 61.) But this conduct is either a breach of contract, or it is not.[8] Barney cannot create additional rights by reliance on the implied duty of good faith and fair dealing. If the alleged conduct constitutes a breach of contract, Barney must allege it as such. Illinois law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing, and as such, Count II should be dismissed with prejudice. *Hickman*, 683 F. Supp. 2d at 793.

---

[7] In addition, for the reasons set forth above in Section IV(A), the Court should dismiss or stay Count II as it relates to the Operating Agreement because Barney agreed to arbitrate these claims. The arbitration clause expressly applies to all claims "arising out of or relating to this Agreement." **Exhibit A**, §13.16(b), p. 45.

[8] Notably, Barney has not attached the Employment Agreement to Defendants' Counterclaims.

### C. Count III Should Be Dismissed Because Defendants' Fraud Claim Is Barred By the Governing Statute of Limitations

Defendants' fraud claim is subject to a five-year period of limitations. *See* 735 ILCS 5/13-205.[9] Pursuant to the discovery rule, Defendants had five years from the date they knew or reasonably should have known that OT had perpetrated a fraud upon them in which to file a lawsuit. *See Horbach v. Kaczmarek*, 288 F.3d 969, 977 (7th Cir. 2002) (citing Illinois law). Dismissal is appropriate pursuant to Rule 12(b)(6) where a plaintiff's allegations establish that the defendant is entitled to a statue of limitations defense. *See Andonissamy*, 547 F.3d at 847; *DeBartolo v. United Healthcare Servs., Inc.*, No. 10 C 1696, 2010 WL 3420316, at *2 (N.D. Ill. Aug. 27, 2010). When a "complaint appears on its face to be susceptible to a statue of limitations defense and if a defendant raises the defense on a motion to dismiss, the plaintiff must plead facts sufficient to invoke the discovery rule to avoid dismissal." *Morton Int'l, Inc. v. Sequa Corp.*, No. 01 C 3402, 2001 WL 897562, at *3 (N.D. Ill. Aug. 8, 2001) (citing *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill.2d 72, 84–85 (1995)).

The untimeliness of Defendants' claim for fraud is apparent from the face of their pleading. In Count III, Defendants merely allege that OT made a number of misrepresentations to Barney in 2004 in order to induce Defendants to enter into the License Agreement and the Equity Exchange Agreement. (Countercl. ¶ 64.) Thus, Count III plainly establishes that the facts triggering Defendants' claim for fraud occurred in 2004. As Defendants did not file suit until November 16, 2012, their claim for fraud is well beyond the applicable five-year statute of limitations. Defendants also fail to allege facts to implicate the discovery rule. Defendants do not allege the date on which they discovered the alleged fraud, nor do they allege facts that they conducted a reasonable investigation of the facts giving rise to their fraud claim. Because

---

[9] Illinois "considers statutes of limitations to be procedural questions governed by the law of the forum." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 707 (7th Cir. 2004).

-10-

CHICAGO/#2396494.5

Defendants have failed to allege facts to trigger the application of the discovery rule, the facts as alleged by Defendants establish that their claim for fraud is barred by the statute of limitations, and as such, Count III should be dismissed. *See, e.g., Morton*, 2001 WL 897562, at *4.

      **D.**      **Count VI Should Be Dismissed Because PR Fails to Allege Damage or Loss Under the CFAA**

To state a civil claim for a violation of the CFAA, a plaintiff must allege: (i) damage or loss; (ii) caused by; (iii) a violation of one of the substantive provisions set forth in § 1030(a); and (iv) conduct involving one of the factors in § 1030(c)(4)(A)(i)(I)-(V). *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 997-98 (N.D. Ill. 2011). Count VI should be dismissed because PR has failed to allege the first element of a violation of the CFAA: damage or loss.

The CFAA defines "damage" as "impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Courts interpreting the definition of "damage" have determined that it refers to the "destruction, corruption, or deletion of electronic files, the physical destruction of a hard drive, or any 'diminution in the completeness or usability of the data on a computer system.'" *Farmers Ins. Exchange v. Auto Club Group*, 823 F. Supp. 2d 847, 853 (N.D. Ill. 2011). In contrast, the copying of electronic information from a computer system is not enough to satisfy the CFAA's damage requirement "because the CFAA only recognizes damage to a computer system when the violation caused a diminution in the completeness or usability of the data on a computer system." *Cassetica Software, Inc. v. Computer Scis. Corp.*, No. 09 C 0003, 2009 U.S. Dist. LEXIS 51589, at *9-10 (N.D. Ill. June 18, 2009). Moreover, courts have held that the "disclosure of trade secrets misappropriated through unauthorized computer access does not quality as damage" under the CFAA. *Farmers Ins.*, 823 F. Supp. 2d at 852.

Here, PR has merely alleged that it "suffered damages in excess of $5,000." (Countercl. ¶ 88.) This conclusory statement does not allege any diminution in the completeness or usability of data on a computer system as required by the CFAA. While PR attempts to allege that OT copied and transferred PR's trade secrets and confidential information (Countercl. ¶ 87), it is well-established that obtaining or transmitting alleged trade secrets or confidential information does not constitute "damage" under the CFAA. *Triteq Lock & Security, LLC v. Innovative Secured Solutions, LLC*, No. 10 CV 1304, 2012 U.S. Dist. LEXIS 14147, at *16 (N.D. Ill. Feb. 1, 2012). Absent some allegation of physical damage to a computer system or PR's inability to access the information allegedly copied, PR has failed to allege "damage" under the CFAA in Count VI.

PR likewise fails to allege "loss" under the CFAA. Under the CFAA, "loss" means "any reasonable cost to any victim, including the cost of responding to any offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). Costs unrelated to computer impairment or computer damages are not compensable as losses under the CFAA. *Triteq Lock*, 2012 U.S. Dist. LEXIS at *17. In Count VI, PR has made no attempt to even allege "loss" under the CFAA. Because PR has failed to either "damage" or "loss" under the CFAA, it is unable to state a claim for violation of the CFAA, and accordingly, Count VI should be dismissed. *Id*. at *20.

## V. CONCLUSION

For all the foregoing reasons, OT respectfully requests that this Court grant its Motion to Dismiss Counts I, II, III, and VI of Defendants' Counterclaims and dismiss those Counts with prejudice. In the alternative, in the event that this Court does not dismiss Counts I and II of

Defendants' Counterclaims, OT respectfully requests that this Court grant its Motion to Compel Arbitration on Counts I and II and stay the litigation only as to those specific counts pending arbitration.

Dated: December 17, 2012

Respectfully submitted,

OCEAN TOMO, LLC

By: /s/ Rachel T. Copenhaver
     One of Its Attorneys

M. Derek Zolner
Rachel T. Copenhaver
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, IL 60601-1003
T: (312) 609-7500
F: (312) 609-5005
dzolner@vedderprice.com
rcopenhaver@vedderprice.com

## CERTIFICATE OF SERVICE

I, Rachel T. Copenhaver, an attorney, hereby certify that on December 17, 2012, I caused to be electronically filed the foregoing OCEAN TOMO, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO COMPEL ARBITRATION with the Clerk of the Court using the Court's Case Management/Electronic Case Files (CM/ECF) system, which will send notifications of such filing to the following counsel of record:

David C. Layden                DLayden@jenner.com


/s/ Rachel T. Copenhaver