**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OCEAN TOMO, LLC, | ) | |
|     Plaintiff, | ) | Case No. 12 C 8450 |
| | ) | |
|     v. | ) | Judge Joan B. Gottschall |
| | ) | |
| JONATHAN BARNEY and | ) | |
| PATENTRATINGS, INC., | ) | |
|     Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Jonathan Barney is the inventor of the PatentRatings system, which uses algorithms to assess the quality and relative value of patents and patent portfolios. Barney formed PatentRatings, LLC, to bring the PatentRatings system to the marketplace. Ocean Tomo hired Barney and negotiated a licensing agreement with him so it could use the PatentRatings system. After the parties' relationship deteriorated, Ocean Tomo sued Barney, alleging that he breached his employment agreement with Ocean Tomo, violated the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. § 1065/1, *et seq.*, and the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and is liable for conversion under state law.

In response, Barney and PatentRatings, LLC, filed six counterclaims. Ocean Tomo's motion to compel arbitration or, alternatively, to dismiss certain counterclaims is before the court. Specifically, Ocean Tomo seeks to compel arbitration as to Counts I (breach of contract) and II (breach of the implied duty of good faith and fair dealing) of the counterclaims and stay the remaining counterclaims pending completion of arbitration. Alternatively, Ocean Tomo seeks to dismiss Counts II, III (fraud), and VI (CFAA) of the counterclaims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion to compel arbitration is denied but the motion to dismiss is granted.

## I. BACKGROUND[1]

### A. The License and Equity Exchange Agreements

In 2000, Barney formed PatentRatings, LLC. In 2004, Ocean Tomo negotiated a licensing agreement with Barney so it could use the PatentRatings system. Barney and Ocean Tomo ultimately signed a license agreement dated September 1, 2004, and an equity exchange agreement dated December 31 2004. Under the these agreements, Ocean Tomo acquired 25% of the equity in PatentRatings, LLC, and Barney acquired equity in Ocean Tomo.

Barney contends that to induce him to sign the two agreements, Ocean Tomo promised him, among other things, that: (a) he would have employment as a high-level executive at Ocean Tomo; (b) he would receive additional earned equity in Ocean Tomo; and (c) there were no outstanding contracts or promises relating to the issuance, sale, or transfer of any equity securities of Ocean Tomo. Barney also alleges that Ocean Tomo told him there were no contracts covering the issuance, sale, or transfer of equity securities of Ocean Tomo.

### B. Ocean Tomo's Operating Agreement

As a member of Ocean Tomo, Barney was a party to the company's operating agreement. Ocean Tomo, Barney, and five other individuals are signatories to the operating agreement, which includes provisions about, among other things, the allocation of profit and loss among

---

[1] The facts are drawn from the amended complaint and counterclaim, as well as documents attached to or referenced by the complaint and counterclaim. *See Citadel Group Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012) (court may consider documents referenced in a complaint); *EBI Holdings, Inc. v. Butler*, No. 07 C 3259, 2009 WL 400640, at *2 (C.D. Ill. Feb. 17, 2009) (court may consider documents referenced in a counterclaim). They are accepted as true for the purposes of the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Ocean Tomo's members, the issuance of additional equity units to members, and the rights of members to access Ocean Tomo's books and records.

Section 13.16 of the Operating Agreement is entitled "Resolution and Arbitration of Disputes" and provides that:

> The following procedures shall be used in the resolution of disputes:
>
> (a)  Dispute.  In the event of any dispute or disagreement between any of the holders of the Units affecting their respective rights in the Company or pursuant to this Agreement, the disputing parties shall set forth their respective positions and disagreements in writing, formally, and give them, together with written notice of the same (a "Dispute Notice"), to the Board of Managers, to the effect that such dispute exists.  The Board of Managers will then make a good faith effort to resolve the dispute or disagreement. If the dispute is not resolved at the expiration of thirty (30) days from the time the Board of Managers receives such notices and statements thereof, the entire matter shall then be submitted to arbitration as set forth in subsection (b) below.
>
> (b)  Arbitration. If the dispute or disagreement between any of the holders of Units has not been resolved in accordance with the provisions of subsection (a) of this Section 13.16, then any such controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration to be held in Chicago, Illinois, in accordance with the rules of the American Arbitration Association then in effect before a single neutral.  Any decision rendered herein shall be final and binding on each and all of the holders of the Units and judgment may be entered thereon in the appropriate state or federal court.  The arbitrator shall be bound to strict interpretation and observation of the terms of this Agreement.  The successful party to any arbitration shall be awarded all costs and attorneys' fees attributable to the arbitration and the controversy to which it relates.

Operating Agreement § 13.16 (Dkt. 16-1 at PageID#270).

**C.    Barney's Relationship with Ocean Tomo**

After Barney began to work at Ocean Tomo, he quickly soured on the company as he discovered that "the environment at Ocean Tomo was rife with conflict, back-biting, and shady

business and accounting practices." Countercl. ¶ 17 (Dkt. 12). According to Barney, Ocean Tomo attempted to freeze him out, deprive him of the benefits he had been promised, and destroy him and PatentRatings financially so Ocean Tomo could appropriate the PatentRatings system and the associated intellectual property. Barney alleges that by February of 2011, the working environment at Ocean Tomo was so intolerable that he had no choice but to resign. He also alleges that Ocean Tomo used his resignation as an excuse to redeem a portion of his equity units without paying consideration and to reduce his share of profits and equity based on groundless claims of misconduct.

After Barney left Ocean Tomo in February of 2011, he discovered that its representations in 2004 about the lack of any contracts relating to the issuance, sale, or transfer of equity securities of Ocean Tomo were false, as Ocean Tomo had secretly agreed to transfer a group of its equity units to a former employee, Mike Lasinski. Barney also contends that Ocean Tomo wrongfully disclosed PatentRatings' confidential information to third-party software developers so they could reverse engineer the PatentRatings system and develop knock-off products based on PatentRatings' intellectual property. In addition, Barney asserts that Ocean Tomo wrongfully accessed PatentRatings' computer servers in Irvine, California, copied confidential data on the servers, and transferred that data to its own servers so it could attempt to reverse-engineer PatentRatings' product.

**D.    NTT Data**

Barney and PatentRatings expected to sign an agreement with NTT Data, a Japanese company that had expressed interest in licensing the PatentRatings system so NTT Data could develop a ratings system for Japanese patents. According to Barney, in July of 2012, Ocean

Tomo falsely represented to NTT Data that the prospective agreement contemplated by NTT Data, Barney, and PatentRatings would violate the license agreement and a 2006 supplemental license agreement between Ocean Tomo and PatentRatings. Barney claims that after Ocean Tomo threatened to sue NTT Data if it entered into a licensing agreement with PatentRatings, NTT Data decided to abandon the proposed deal.

**E.     The Counterclaims**

Barney and PatentRatings assert six counterclaims against Ocean Tomo: (1) breach of contract (Counts I and IV, against Ocean Tomo by Barney and PatentRatings, respectively); (2) breach of the implied covenant of good faith and fair dealing (Count II); (3) fraud (Count III); and (4) tortious interference with prospective economic advantage (Count V). In addition, PatentRatings alleges that Ocean Tomo violated the CFAA, 18 U.S.C. § 1030, (Count VI).

In brief, Count I asserts that Ocean Tomo breached the operating agreement by misallocating profits and losses and refusing to allow Barney to review Ocean Tomo's books and records. Count II alleges that Ocean Tomo breached the implied covenant of good faith and fair dealing in the operating agreement based on its misallocation of profits, its decision to withhold allocations based on an erroneous finding that Barney breached the operating agreement, its refusal to allow Barney to review Ocean Tomo's books and records, and its creation of intolerable working conditions.

Count III is premised on Ocean Tomo's alleged false statements in 2004 to induce Barney and PatentRatings to enter into the license and equity exchange agreements. Specifically, Barney contends that Ocean Tomo misrepresented that he would be employed as a senior executive at Ocean Tomo, receive additional equity units in Ocean Tomo over time; and

that there were no existing contracts relating to the issuance, sale, or transfer of equity securities at Ocean Tomo. Finally, in Count VI, PatentRatings alleges that in September 2012, Ocean Tomo violated the CFAA by accessing PatentRating's servers, copying confidential data on the servers, and transferring that information to Ocean Tomo's servers.

## II. STANDARD OF REVIEW

Motions to dismiss a counterclaim are evaluated using the familiar standard used for motions to dismiss a complaint. *See McLaughlin v. Chi. Transit Auth.*, 243 F. Supp. 2d 778, 779 (N.D. Ill. 2003). Under this standard, the court takes all facts alleged in the complaint as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). A motion to dismiss should be granted if the plaintiff fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. ANALYSIS

Ocean Tomo seeks to compel arbitration as to Counts I and II of the counterclaim and stay consideration of the remaining counterclaims until after arbitration has been completed. Alternatively, it moves to dismiss Counts II, III, and VI of the counterclaims. For the following reasons, the court declines to compel arbitration based on the present record but agrees with Ocean Tomo that Counts II, III, and VI of the counterclaims are deficient.

A.   **Ocean Tomo's Motion to Compel Arbitration**

In its motion to compel arbitration or, alternatively, to dismiss, Ocean Tomo argued that under the operating agreement, Counts I and II are subject to arbitration. In its reply in support

of its motion, Ocean Tomo added that the arbitrator – not this court – must decide whether Counts I and II are arbitrable. "[A]rguments raised for the first time in a reply brief are waived." *Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010). Nevertheless, in an exercise of the court's discretion and in the interests of justice, the court directed the parties to file supplemental memoranda addressing whether this court or an arbitrator must decide if Counts I and II are arbitrable.

Ocean Tomo asserts that when there is an agreement to arbitrate and that agreement calls for the application of the rules of the American Arbitration Association, the issue of arbitrability must be decided by the arbitrator, not a court. This position is supported by numerous cases. For example, in *Corrigan v. Domestic Linen Supply Co.*, No. 12 C 0575, 2012 WL 2977262 (N.D. Ill. July 20, 2012) (Gettleman, J.), the court held:

> [W]hen parties agree in a valid arbitration agreement that the AAA's rules apply, an arbitrator should decide the scope of arbitrability. *Bayer CropScience, Inc. v. Limagrain Genetics Corp., Inc.*, 2004 WL 2931284, *4 (N.D. Ill. 2004) ("The inclusion of the phrase 'the arbitration shall be conducted . . . in accordance with the prevailing commercial arbitration rules of the American Arbitration Association' in the arbitration provision of the Agreement is clear and unmistakable evidence that the issue of arbitrability is to be submitted to the arbitrator."); *see also Yellow Cab Affiliation, Inc. v. N.H. Ins. Co.*, 2011 WL 307617, *4 (N.D. Ill. 2011) (affirming that when parties mention the commercial rules of the AAA, arbitrability is a decision for the arbitrator). This is consistent with Rule 7 of the Commercial Rules of the AAA, which in pertinent part states: "R–7: The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." American Arbitration Association, Inc., Commercial Arbitration Rules and Meditation Proceedings: Including Procedures for Large, Complex Commercial Disputes, 2010.
>
> In the instant case, the arbitration provisions each specifically provide that the disputes "shall be settled by arbitration in accordance with the commercial [rules] of the American Arbitration Association." Therefore, whether plaintiff's claims fall within the scope of the arbitration provisions is to be decided by an arbitrator.

*Id*. at *2-3.

As noted above, the arbitration clause in the parties' contract in this case provides that "[i]f the dispute or disagreement between any of the holders of Units has not been resolved in accordance with the provisions of subsection (a) of this Section 13.16, then any such controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration to be held in Chicago, Illinois, in accordance with the rules of the American Arbitration Association then in effect before a single neutral." Operating Agreement § 13.16. Barney and PatentRatings focus on the words "the dispute or disagreement between any of the holders of Units" and assert that the arbitration clause does not cover their dispute with Ocean Tomo since Ocean Tomo is not a "holder of units." Based on this reading of the arbitration clause, they conclude that because they did not agree to arbitrate disputes with Ocean Tomo, they necessarily did not agree that an arbitrator would decide if disputes arising under the Operating Agreement were arbitrable.

The court thus must determine if the parties' agreement to arbitrate "any dispute or disagreement between any of the holders of the Units affecting their respective rights in the Company or pursuant to this Agreement" covers the dispute that is the subject of Counts I and II of the counterclaims. *See* Operating Agreement at § 13.16(a). The parties interpret the language differently. Ocean Tomo suggests that the clause applies to <u>any dispute or disagreement</u> that is either (1) between any of the holders of the Units affecting their respective rights in the Company or (2) pursuant to this Agreement. Barney suggests that it applies to any dispute or disagreement <u>between any of the holders of the Units</u> (1) affecting their respective rights in the

Company or (2) pursuant to this Agreement. It then notes (and Ocean Tomo does not challenge) that Ocean Tomo is not a holder of units.

In Illinois, a contract is ambiguous if its language "is reasonably and fairly susceptible to more than one meaning." *CSX Transp., Inc. v. Total Grain Mktg., LLC*, No. 11-CV-171-WDS, 2013 WL 1337284, at *7 (S.D. Ill. Mar. 29, 2013) (quoting *Lenzi v. Morkin*, 116 Ill. App. 3d 1014, 1015-16 (Ill. App. Ct. 1983)). Both sides' readings of the Operating Agreement are equally plausible. Thus, the court cannot definitively find that the parties agreed to arbitrate the dispute that is the subject of Counts I and II of the counterclaims. *See Corrigan*, 2012 WL 2977262 at *2-3.

Ocean Tomo's fallback position is that if the court finds that the language is ambiguous, it should resolve any uncertainty in favor of arbitration. It is true that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). The scope of arbitrable issues, however, is not the same as whether an issue is arbitrable in the first place. Thus, the Supreme Court teaches that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). This rule is based on the principle that "a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *Id*.

Here, the cases cited by Ocean Tomo stand for the narrow proposition that after a court determines that the parties agreed to arbitrate a dispute, it must resolve any doubts about the

scope of arbitrable issues in favor of arbitration. This is not the question before the court, which must determine if the parties agreed to arbitrate their dispute at all. As discussed above, the parties' conflicting readings of the Operating Agreement's language are equally reasonable. Thus, based on the current record, the court cannot find that the parties agreed to arbitrate their dispute. This means that the presumption in favor of arbitration is inapplicable. *See Hartford Fire Ins. Co. v. Henry Bros. Const. Mgmt. Servs., LLC*, No. 10 C 4746, 2011 WL 3563138, at *7 (N.D. Ill. Aug. 10, 2011) (distinguishing between questions about arbitrability and the scope of arbitration, and noting that the defendant "cites no cases establishing that doubts regarding whether the parties have agreed to arbitrate in the first place should be resolved in favor of arbitration.").

This brings the court to Ocean Tomo's second fallback argument: even if Barney's reading of the Operating Agreement is correct and the phrase "between any of the holders of the Units" modifies the phrases "affecting their respective rights in the Company" and "pursuant to this Agreement," his claims are still subject to arbitration as they are "nominally alleged" against Ocean Tomo but are "at their core, disputes or disagreements between Unit holders regarding the allocation of [Ocean Tomo's] profits." Sur-Response at 5 (Dkt. 50). The court disagrees. Barney's counterclaims against Ocean Tomo are based on the fact that it was a signatory to the Operating Agreement and allegedly violated that agreement. The fact that at least part of Barney's claims against Ocean Tomo turn on whether Ocean Tomo's members received profits belonging to Barney does not transform Barney's claims against Ocean Tomo into claims against Ocean Tomo's members.

Ocean Tomo's motion to compel arbitration is therefore denied. The court will revisit this issue, as necessary, based on a more fully developed record. *See Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 379-80 (7th Cir. 2009) (if a "contract's language is susceptible to more than one interpretation," the court "look[]s to extrinsic evidence to determine the parties' intent") (internal quotations omitted).

**B.      Ocean Tomo's Motion to Dismiss Counts II, III, and VI of the Counterclaims**

      **1.      Count II (Implied Covenant of Good Faith and Fair Dealing)**

In Count II of the counterclaims, Barney alleges that Ocean Tomo breached the implied covenant of good faith and fair dealing in the operating agreement. In response, Ocean Tomo argues that Barney cannot bring a standalone claim based on the alleged breach of the implied covenant of good faith and fair dealing and must, instead, allege this as part of a breach of contract claim. Barney concedes that Ocean Tomo is correct and asks the court to construe Counts I (breach of contract) and II (breach of the implied covenant of good faith and fair dealing) as a single count or allow him to amend. To promote clarity, Barney may amend Counts I and II of his counterclaims by combining the counts within fourteen days of this order.

      **2.      Count III (Fraud)**

Count III is premised on Ocean Tomo's alleged false statements in 2004 to induce Barney and PatentRatings to enter into the license and equity exchange agreements. As noted above, according to Barney and PatentRatings, to induce them to enter into the License Agreement and Equity Exchange Agreement, Ocean Tomo made a number of false representations to Barney in 2004, including: (1) promising him he would be employed as a senior executive at Ocean Tomo and would enjoy the salary and benefits commensurate with that

-11-

position; (2) promising him that over time, he would receive additional equity units in Ocean Tomo; and (3) representing that there were no outstanding contracts relating to the issuance, sale, or transfer of any equity securities of Ocean Tomo. Barney and PatentRatings allege that Ocean Tomo never intended to keep its promises about Barney's employment as a senior executive and his receipt of additional equity units in Ocean Tomo. They also allege that at the time Ocean Tomo represented that there were no contracts relating to the issuance, sale, or transfer of any equity securities, it knew the representation was false.

Ocean Tomo argues that Count III should be dismissed because it is barred by the statute of limitations.[2] The parties agree that Illinois' five-year statute of limitations for fraud claims applies. *See* 735 Ill. Comp. Stat. § 5/13-205. Ocean Tomo contends that the fraud claims are time-barred as they are based on events occurring more than five years prior to the filing of the counterclaims. Barney and PatentRatings, on the other hand, assert that the discovery rule saves their fraud claim.

Under the discovery rule, the statute of limitations begins to run "when the plaintiff knew or reasonably should have known of the injury and that it was wrongfully caused." *Lerman v. Turner*, No. 10 C 2169, 2013 WL 4495245, at *20 (N.D. Ill. Aug. 21, 2013) (quoting *Fuller Family Holdings, LLC v. N. Trust Co.*, 371 Ill. App. 3d 605, 618 (Ill. App. Ct. 2007)). Application of the rule does not turn on when the plaintiff actually discovered his injury. *See id*. Instead, the statute of limitations period begins "'when the injury could have been discovered

---

[2] Dismissal on this basis is appropriate at this stage of the proceedings if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

through the exercise of appropriate diligence,' *i.e.*, when the injured party has enough information to put it on inquiry notice to investigate further." *Id*. (quoting *McWane, Inc. v. Crow Chicago Indus., Inc.*, 224 F.3d 582, 585 (7th Cir. 2000)).

The court begins by considering Ocean Tomo's alleged 2004 representations to Barney that he would be employed as a senior executive at Ocean Tomo and would enjoy the salary and benefits commensurate with that position. Barney asserts that he discovered that Ocean Tomo had defrauded him after it created intolerable working conditions to force him to resign in February of 2011 to avoid paying him benefits as promised. The allegation that Ocean Tomo forced Barney out in 2011 does not create a plausible inference that Ocean Tomo made knowingly false statements in 2004. It also fails to explain why Ocean Tomo's actions in 2011 were the first time that Barney — who alleged that he discovered that "the environment at Ocean Tomo was rife with conflict, back-biting, and shady business and accounting practices" shortly after he began to work for Ocean Tomo around the time of the alleged misrepresentations in 2004, Countercl. ¶ 17 — had enough information to put him on notice that further investigation was warranted. Thus, based on the allegations in the current iteration of Count III, the claims based on the 2004 statements are time-barred.

The same reasoning applies to Barney and PatentRating's allegation that in 2004, Ocean Tomo falsely promised Barney that over time, he would receive additional equity units in Ocean Tomo. The counterclaim does not explain how Barney realized this representation was false within the five-year statute of limitations. Moreover, while the allegation that Barney would receive equity units "over time" is not precise, it appears that a reasonable person in Barney's position would have inquired about the missing equity units prior to 2011, when Barney (for an

unspecified reason) claims that he first realized that Ocean Tomo never intended to give him additional equity units. Thus, this portion of the fraud counterclaim is time-barred.

Finally, Barney and PatentRatings contend that Ocean Tomo's representations in 2004 that there were no outstanding contracts relating to the issuance, sale, or transfer of any equity securities of Ocean Tomo were fraudulent. Specifically, they assert that after Barney was forced out in 2011, he discovered these representations were false" as he "recently learned that, at the time [Ocean Tomo] made those representations . . . there was an existing secret agreement between Ocean Tomo and Mike Lasinski under which Ocean Tomo had promised to transfer at a later date a significant number of equity units in Ocean Tomo to [Lasinski]." Countercl. at ¶¶ 31-32.

The allegation that Barney "recently learned" that the representations were false is not enough to survive a motion to dismiss based on the discovery rule. Based on this allegation, the court (and Ocean Tomo) cannot ascertain when Barney was placed on notice, what caused him to learn that the representations were false, or why his "recent" conclusion that Ocean Tomo lied in 2004 was the first time he had enough information to put him on notice to investigate further. The final portion of the fraud counterclaim is, therefore, time-barred.

### 3. Count VI (CFAA)

Finally, in Count VI, PatentRatings alleges that in September 2012, Ocean Tomo violated the CFAA by accessing its servers, copying confidential data on the servers, and transferring that information to Ocean Tomo's servers. It then asserts that it suffered over $5,000 in damages. Ocean Tomo argues that this claim is deficient because PatentRatings has failed to allege damage or loss sufficiently.

Under the CFAA, an individual is liable if he: "(A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer; (B) intentionally accessed a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or (C) intentionally accessed a protected computer without authorization, and as a result of such conduct, causes damage and loss." 18 U.S.C. § 1030(a)(5)(B). In addition, the damage or loss must affect one or more persons during any one year period and, when aggregated, must exceed $5,000. 18 U.S.C. § 1030(c)(4)(A)(i). Under the CFAA, "damage" is "any impairment to the integrity or availability of data, a program, a system, or information," 18 U.S.C. § 1030(e)(8), and "loss" is "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

In its response to the motion to dismiss, PatentRatings asserts that the law about "loss" is unclear and states that it is "in the process of conducting a further evaluation of Ocean Tomo's wrongful acts with respect to PatentRatings' computer servers, and the extent of resulting damage and/or loss. As a result, PatentRatings respectfully suggests that, rather than brief Ocean Tomo's motion to dismiss Count VI in the context of the current pleading," the court should allow it to amend its CFAA claim within 30 days, "if [it] chooses to do so." Resp. at 14. Given PatentRating's tacit concession that its CFAA claim is deficient, that claim is dismissed.

### IV. CONCLUSION

For the above reasons, Ocean Tomo's motion to compel arbitration or, in the alternative, to dismiss [Dkt. 15] is granted in part and denied in part. Specifically, the motion to compel arbitration is denied and the motion to dismiss is granted. Barney may amend Counts I and II of his counterclaim by combining them into a single claim within thirty days after this order is entered on the docket. Count III of the counterclaim (fraud) and Count VI (CFAA) are dismissed without prejudice. The court will allow Barney and PatentRatings one chance to amend these counts so consistent with this order and counsels' Rule 11 obligations, they may amend within thirty days after this order is entered on the docket.

Date: September 9, 2013                              /s/
                                                    Joan B. Gottschall
                                                    United States District Judge

/cc