## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| OCEAN TOMO, LLC, | ) | |
| | ) | |
| Plaintiff-Counterdefendant, | ) | |
| | ) | |
| vs. | ) | No. 12 C 8450 |
| | ) | |
| JONATHAN BARNEY and | ) | Hon. Joan B. Gottschall |
| PATENTRATINGS, LLC, | ) | |
| | ) | |
| Defendants-Counterplaintiffs. | ) | |

### JONATHAN BARNEY'S AND PATENTRATINGS, LLC'S
### RESPONSE TO OCEAN TOMO, LLC'S MOTION TO DISMISS

This Court should deny Ocean Tomo's motion to dismiss Counts I, III, IV, and V of Mr.

Barney's and PatentRatings' counterclaims. Contrary to what Ocean Tomo argues, both the

counterclaims at issue and the federal claims over which this Court has original jurisdiction

derive from a common nucleus of operative fact. All of those claims, therefore, form part of the

same case or controversy, and this Court has supplemental federal jurisdiction over Counts I, III,

IV, and V of the counterclaims.

There is no dispute that this Court has federal subject matter jurisdiction over

PatentRatings' and Ocean Tomo's respective claims under the Computer Fraud and Abuse Act,

18 U.S.C. § 1030 (the "CFAA"), or over Ocean Tomo's state law claims against Mr. Barney and

PatentRatings. Ocean Tomo, however, argues that this Court cannot exercise supplemental

jurisdiction over Mr. Barney's and PatentRatings' state law claims because, according to Ocean

Tomo, those claims do not share a common nucleus of operative fact with PatentRatings' CFAA

claim or with Ocean Tomo's CFAA claim.

As demonstrated below, Ocean Tomo's argument fails, for several reasons. Among other

things, Mr. Barney's and PatentRatings' pleading demonstrates that all of their claims against

Ocean Tomo – including both the CFAA claim and the state law claims that Ocean Tomo seeks to dismiss – share a common nucleus of operative fact: Ocean Tomo's long-running scheme to steal from Mr. Barney and PatentRatings the patented PatentRatings technology, proprietary data, software, trade secrets, algorithms, and other valuable intellectual property (collectively, the "PatentRatings System"), and the closely-related wrongful acts of Ocean Tomo taken in furtherance of that scheme.

Moreover, notwithstanding Ocean Tomo's attempts to characterize PatentRatings' CFAA claim as strictly limited in time and proof, the truth is that, in order to decide that CFAA claim, the jury will be required to consider evidence relating to Ocean Tomo's scheme and wrongful acts, as detailed in the counterclaims, to determine, among other things, whether Ocean Tomo's accessing of the PatentRatings servers in Irvine, California was "unauthorized" or undertaken "with intent to defraud."

Because Counts I, III, IV, and V of the counterclaims form part of the same case or controversy as PatentRatings' and Ocean Tomo's CFAA claims, Ocean Tomo's motion to dismiss for lack of jurisdiction is without merit, and should be denied.

## BACKGROUND

Mr. Barney's and PatentRatings' claims against Ocean Tomo all arise from and relate to Ocean Tomo's scheme and campaign to steal the PatentRatings System from Mr. Barney and PatentRatings. (*See* Counterclaims of Jonathan Barney and PatentRatings (filed on October 16, 2013) ("Ctrcl.") ¶¶ 1-88.)

**The PatentRatings System**

Mr. Barney is an accomplished engineer, inventor, entrepreneur, and patent lawyer. (Ctrcl. ¶ 6.) One of Mr. Barney's inventions is the PatentRatings System, which is among the most advanced statistical patent data, rating, and analysis systems in the world. (*Id.*) The statistical rating algorithm underlying the PatentRatings System has been awarded multiple patents by the United States Patent and Trademark Office and is used by, among others, major global corporations to assess the quality and relative value of their patent portfolios (and the portfolios of competitors and potential acquisition targets), relevant patents and technologies, competition, and relevant trends. (*Id.*)

In 2000, Mr. Barney formed a company, PatentRatings, LLC, to implement the PatentRatings System, and bring it to the marketplace. (Ctrcl. ¶ 7.) Mr. Barney invested enormous amounts of his time, energy, skill, and creativity – and significant amounts of his own funds – in PatentRatings, LLC. (*Id.*)

Word of Mr. Barney's innovative PatentRatings System quickly spread in the industry. (Ctrcl. ¶ 8.) A number of people and entities who were interested in the system reached out to Mr. Barney; one of them was Ocean Tomo. (*Id.*)

**Ocean Tomo Launches Its Scheme To Steal The PatentRatings System**

Ocean Tomo wanted to be able to take advantage of the PatentRatings System for the benefit of Ocean Tomo. (Ctrcl. ¶ 9.) Ocean Tomo, however, had no interest in fairly compensating Mr. Barney or PatentRatings for the PatentRatings System, or otherwise dealing fairly and forthrightly with Mr. Barney and PatentRatings. (Ctrcl. ¶ 19.) Instead, Ocean Tomo embarked upon a campaign to steal the PatentRatings System from Mr. Barney and PatentRatings. (*Id.*) In furtherance of that scheme, Ocean Tomo represented to and promised

3

Mr. Barney and PatentRatings that, in exchange for providing Ocean Tomo with certain license rights relating to the PatentRatings System, Ocean Tomo would provide PatentRatings and Mr. Barney with a number of significant benefits, including bringing Mr. Barney on as high-level executive employee, member and equity owner of Ocean Tomo, with the right to share in Ocean Tomo's profits. (Ctrcl. ¶ 9.)

Moreover, after inducing Mr. Barney and PatentRatings to enter into various agreements, and to provide Ocean Tomo with, among other things, access to the PatentRatings System that it coveted, Ocean Tomo took a series of related, wrongful actions that were designed to force Mr. Barney out of Ocean Tomo, to deprive Mr. Barney and PatentRatings of the benefits they had been promised, and to attempt to injure (and, if possible, destroy) Mr. Barney and PatentRatings financially – all with the goal of stealing the PatentRatings System, and the significant economic benefits associated with that technology, for the sole benefit of Ocean Tomo. (*See* Ctrcl. ¶¶ 1, 19-52.) Among other things:

- Ocean Tomo misallocated the proceeds of the ICAP and IPXI transactions, in order to deprive Mr. Barney of significant amounts of Ocean Tomo profits which Mr. Barney had been promised, and in order to deprive Mr. Barney of resources with which to defend against Ocean Tomo's depredations. (Ctrcl. ¶¶ 55-57.)

- Ocean Tomo purported to decide, based upon allegations that Ocean Tomo knew were false,[1] that, as a result of Mr. Barney's alleged noncompliance with the Operating Agreement, Mr. Barney would no longer be entitled to receive dividends associated with Mr. Barney's ownership in Ocean Tomo, an action also designed to harm Mr. Barney's ability to defend against Ocean Tomo's attempts to steal the PatentRatings System. (Ctrcl. ¶¶ 58-59.)

- As part of its scheme, Ocean Tomo concealed from Mr. Barney for many years the fact that certain representations that Ocean Tomo made in 2004 to induce Mr. Barney to enter into the parties' agreements were false. (Ctrcl. ¶¶ 65-66.)

---

[1] Those false allegations include the same alleged conduct relating to the Ocean Tomo laptop computer that underlies Ocean Tomo's CFAA claim, and allegations relating to NTT Data that share the same factual nucleus as Mr. Barney's and PatentRatings' tortious interference counterclaim against Ocean Tomo (Count V).

- As part of its scheme to destroy Mr. Barney and PatentRatings financially, Ocean Tomo intentionally and maliciously interfered with Mr. Barney's and PatentRatings' business expectancy with respect to NTT Data. (Ctrcl. ¶¶ 81-83.)

- Ocean Tomo secretly and wrongfully disclosed and used PatentRatings' Confidential Information (as defined in the parties' License Agreement) for the benefit of Ocean Tomo, for the purposes of, among other things, reverse-engineering the PatentRatings algorithms and developing a competing statistical patent scoring system (which Ocean Tomo calls the "Ocean Tomo Rating System"). (Ctrcl. ¶¶ 71-74.)

- Ocean Tomo wrongfully accessed PatentRatings' computer servers located in Irvine, California, wrongfully copied Confidential Information and data contained on those servers, and transferred the Confidential Information and data to its own servers for purposes of using or reverse-engineering PatentRatings' algorithms and related software for Ocean Tomo's benefit. (Ctrcl. ¶ 75.)

- After copying and otherwise misappropriating the Confidential Information and data from the PatentRatings servers, Ocean Tomo again intentionally, wrongfully, and fraudulently accessed the Irvine servers, and dismantled and removed those servers, with the intent – and the effect – of destroying and/or significantly impairing PatentRatings' ability to access and use the Confidential Information and data contained on those servers. (Ctrcl. ¶ 86.)

Mr. Barney and PatentRatings currently are alleging five claims that arise from Ocean Tomo's scheme to steal the PatentRatings System from Mr. Barney and PatentRatings, including through the specific acts and events described above that are part of the scheme. Mr. Barney and PatentRatings are alleging claims for breach of several contracts between the parties (Counts I, III, and VI), for tortious interference with prospective economic advantage (Count V), and for violation of the CFAA (Count VI).

Ocean Tomo previously moved to compel arbitration of certain of Mr. Barney's and PatentRatings' claims, but this Court denied that motion. The parties all have served written discovery, and responses to that written discovery. In addition, during the past year, the parties engaged in a series of settlement conferences and related communications with Magistrate Judge Rowland regarding all of their respective claims in this action.

**ARGUMENT**

This Court should deny Ocean Tomo's motion to dismiss Counts I, III, IV, and V of Mr. Barney's and PatentRatings' counterclaims. All of those claims rest upon the same nucleus of operative fact as PatentRatings' and Ocean Tomo's respective CFAA claims – including Ocean Tomo's scheme and campaign to steal the PatentRatings System, and the specific acts and events that have made up that scheme. Those claims all form part of the same case or controversy, and this Court has supplemental jurisdiction over those claims.

## I.      Legal Standards

Where, as here, a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) contends that the complaint's allegations are facially insufficient to show jurisdiction, the applicable standard mirrors that apply under Rule 12(b)(6). *E.g., Royal Towing, Inc. v. City of Harvey*, 350 F. Supp. 2d 750, 752 (N.D. Ill. 2004). Therefore, the Court should accept all well-pleaded allegations in the counterclaims as true, and draw all reasonable inferences in favor of Mr. Barney and PatentRatings. *E.g.*, *Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001).

28 U.S.C. §1367(a) provides that, "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." State and federal claims are part of the same "case or controversy" if they "derive from a common nucleus of operative fact." *Kuhl v. Guitar Center Stores, Inc.*, No. 07 C 214, 2008 WL 656049, at *4 (N.D. Ill. March 5, 2008) (quoting *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir. 1999)).

As the Supreme Court has noted, "if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." *United Mine Workers v. Gibbs*, 83 U.S. 715, 725 (1966). "'Operative fact,' as the term itself demonstrates, is a proof-oriented concept. It rests on notions of interrelated claims that should ordinarily be tried in a single lawsuit for sound jurisprudential reasons." *Prudential-Bache Sec., Inc. v. Lisle Axis Associates*, 657 F. Supp. 190, 194 (N.D. Ill. 1987). The "state claims need not arise out of identical facts as the federal claims – there must only be a 'common nucleus of operative fact' linking the claims." *Banks v. Chicago Board of Education*, 895 F. Supp. 206, 208 (N.D. Ill 1995) (citing *Gibbs*, 383 U.S. at 725)).

The Seventh Circuit has recognized that the "common-nucleus" test is not to be too rigidly applied and that no more than a "loose factual connection" between the state and federal claims generally is sufficient to satisfy the requirements of 28 U.S.C. § 1367(a). *See, e.g.*, *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995); *accord Doe v. Bobbitt*, 682 F. Supp. 388, 389-90 (N.D. Ill. 1988) ("All this test requires is a loose factual connection between the claims ... such that a plaintiff ordinarily would be expected to try them all in one judicial proceeding.") (internal quotation and citation omitted). This standard is recognized and regularly applied in this district. *See, e.g.*, *Rao v. Abbott Laboratories*, No. 12 C 8014, 2013 WL 1768697, at *8 (N.D. Ill. April 24, 2013) (finding that a "loose factual connection" between the federal and state claims was sufficient for supplemental jurisdiction); *Adams Street Joint Venture v. Harte*, 231 F. Supp. 2d 759, 762 (N.D. Ill. 2002); *Royal Towing,* 350 F. Supp. 2d at 753.

**II.     This Court Has Supplemental Jurisdiction Over The Claims At Issue.**

Ocean Tomo's motion to dismiss should be denied because, under these governing standards, this Court has supplemental jurisdiction over Counts I, III, IV, and V of Mr. Barney's and PatentRatings' counterclaims.

Mr. Barney's and PatentRatings' counterclaims share a common nucleus of operative fact with PatentRatings' and Ocean Tomo's respective CFAA claims.[2]   As Mr. Barney's and PatentRatings' pleading makes clear, and as they summarize above, both Mr. Barney's and PatentRatings' state law counterclaims and PatentRatings' CFAA counterclaim arise from and relate to Ocean Tomo's scheme to steal the PatentRatings System from Mr. Barney and PatentRatings, and the various actions that Ocean Tomo has taken to advance that scheme. Moreover, the specific acts that are referenced in and that underlie Mr. Barney's and PatentRatings' state law counterclaims – and the evidence that Mr. Barney and PatentRatings will present to support those claims – also will play a part in proving PatentRatings' CFAA claim, including that Ocean Tomo's actions with respect to the Irvine servers were unauthorized, wrongful, and fraudulent.  These are the very kind of claims that one ordinarily would expect to try in one judicial proceeding, and therefore this Court has supplemental jurisdiction over Counts I, III, IV, and V of Mr. Barney's and PatentRatings' counterclaims.  *Gibbs*, 83 U.S. at 725; *Ammerman*, 54 F.3d at 424; *Adams Street,* 231 F. Supp. 2d at 762.

---

[2] Ocean Tomo incorrectly suggests that only PatentRatings' CFAA claim can provide the necessary basis to support supplemental jurisdiction over Mr. Barney's and PatentRatings' state law claims. (OT Mem. at 8.)  In fact, 28 U.S.C. § 1367(a) provides that any "claims in the action within such original jurisdiction" can provide the basis for exercising supplemental jurisdiction.  Thus, for supplemental jurisdiction to exist, this Court need only find a "common nucleus of operative fact" linking Mr. Barney's and PatentRatings' state law claims to *either* PatentRatings' CFAA claim or to Ocean Tomo's CFAA claim.

Ocean Tomo makes several arguments in an effort to show that Mr. Barney's and PatentRatings' state law claims and the CFAA claims do not derive from a common nucleus of operative fact. None of those arguments have merit.

*First*, Ocean Tomo argues that the claims at issue are "remote in time," and therefore cannot derive from the same nucleus of operative fact. (OT Mem. at 8-11.) This argument, however, rests upon a mischaracterization of Mr. Barney's and PatentRatings' state law claims, and in particular, simply ignores Mr. Barney's and PatentRatings' allegations that Ocean Tomo has engaged and continues to engage in a long-running scheme to steal the PatentRatings System. The pleading itself reveals that Mr. Barney's and PatentRatings' state law claims do not arise from separate, disconnected, and unrelated acts and events, but rather from a series of connected and closely-related actions taken by Ocean Tomo in furtherance of its campaign to steal the PatentRatings System.

Indeed, courts have rejected arguments, like Ocean Tomo's here, that alleged separation in time between claims is a valid basis to deny supplemental jurisdiction. In *Royal Towing*, the defendant seeking dismissal of the state law claim argued that the temporal relationship between the federal claim and the state claim was too remote. 350 F. Supp. 2d at 754. The Court rejected that argument and denied the motion to dismiss, noting that, "[w]hen there are allegation of an ongoing pattern of hostilities that occurs over a period of time, an extended temporal relationship is to be expected." *Id.*

Similarly, even where claims arise at different times, courts nevertheless exercise supplemental jurisdiction where the claims all relate to the relationship between the parties. *See, e.g., Adams Street*, 231 F. Supp. 2d at 763 (holding that plaintiffs' claims to recover wrongfully diverted funds were sufficiently related to defendant's counterclaims for contract payments and

bonuses because they require the court "to examine the nature of the relationship between [defendant] and his employers"); *see also Rothman v. Emory Univ.*, 123 F.3d 446, 454 (7th Cir. 1997) (claim of failure to repay student loans sufficiently connected to student's ADA claim against school); *Royal Towing*, 350 F. Supp. 2d at 755; *Rodriguez v. Ford Motor Credit Co.*, No. 01 C 8526, 2002 WL 655679, at *6 (N.D. Ill. April 19, 2002) (federal claim of violation of Equal Credit Opportunity Act sufficiently connected to counterclaim for breach of underlying finance contracts at issue).

*Second*, Ocean Tomo argues that this Court cannot exercise supplemental jurisdiction because, according to Ocean Tomo, PatentRatings' CFAA claim has a "narrow" factual scope that is wholly distinct from the factual scope of Mr. Barney's and PatentRatings' counterclaims. That argument, however, is refuted both by the elements of a claim under the CFAA, and by what Mr. Barney and PatentRatings have pled.

In order to establish its CFAA claim, PatentRatings can prove that Ocean Tomo: (i) "intentionally accesse[d] a computer," (ii) "without authorization or exceed[ing] authorized access," and (iii) "thereby obtain[ed]… information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). Or, PatentRatings can prove that Ocean Tomo: (i) "knowingly and with intent to defraud," (ii) "accesse[d] a protected computer," (iii) "without authorization, or exceed[ing] authorized access," and (iv) "by means of such conduct further[ed] the intended fraud and obtains anything of value…." 18 U.S.C. § 1030(a)(4). Or, PatentRatings can prove that Ocean Tomo: (i) "intentionally accesse[d] a protected computer," (ii) "without authorization," and (iii) "as a result of such conduct, cause[d] damage and loss." 18 U.S.C. § 1030(a)(5)(C). The CFAA also allow a plaintiff to assert a claim for conspiracy to violate the statute. 18 U.S.C. § 1030(b).

10

Contrary to what Ocean Tomo suggests (*see* OT Mem. at 12), the trial on PatentRatings'

and Ocean Tomo's CFAA claims will not be "limited and focused." Instead, in deciding those

claims, the jury will hear the same evidence that relates to Mr. Barney's and PatentRatings' state

law claims. For example, whether Ocean Tomo's access of protected computers was

"authorized," or undertaken with "intent to defraud" will depend upon, among other things, the

*purpose* of that access. If (as Mr. Barney and PatentRatings contend) Ocean Tomo accessed the

Irvine servers in furtherance of its scheme to steal the PatentRatings System, that access was

unauthorized under the terms of the parties' agreements,[3] and was undertaken with intent to

defraud. Thus, it will be necessary for a jury to decide whether the alleged Ocean Tomo scheme

existed, which will require the jury to consider, among other things, the acts and events that have

made up that scheme.

The acts and events relating to Ocean Tomo's scheme also give rise to the state law

claims at issue in Ocean Tomo's motion (*see* Ctrcl. ¶¶ 1-84), and are necessary to the

determination of those claims. For example, despite Ocean Tomo's efforts to downplay the

evidence relevant to Mr. Barney's and PatentRatings' state law claims (*see* OT Mem. at 8-9), the

evidence of Ocean Tomo's scheme to steal the PatentRatings System, and the acts taken in

furtherance of that scheme will bear directly on, among other things: (a) whether Ocean Tomo's

allegations that Mr. Barney violated the Operating Agreement are credible, well-founded, and

---

[3] For example, Article 2.1 of the License Agreement states that "[PatentRatings] will provide [Ocean Tomo] with access to the PatentRatings Tools for installation and use at the Licensed Site." That authorization, however, is expressly limited in accordance with the terms, conditions and restrictions of the License Agreement. For example, Article 7.1 of the License Agreement states that "Ocean Tomo acknowledges and agrees that the Licensed Technology [as defined in the License Agreement] contains certain confidential information, trade secrets, and know-how related to statistical patent analysis, mapping and valuation ("Confidential Information") that is proprietary to [PatentRatings]. [Ocean Tomo] agrees to hold such Confidential Information in strict confidence, not to use it commercially for its own benefit or the benefit of anyone else, and not to use the Confidential Information for the purpose of developing or improving a product or method for anyone except [PatentRatings], except as authorized herein." (Ctrcl. ¶ 71)

made in good faith; (b) whether Ocean Tomo used and disclosed confidential information regarding the PatentRatings System for improper purposes, thereby breaching the License Agreement and the Supplemental License Agreement; (c) whether Ocean Tomo's interference with Mr. Barney's and PatentRatings' business expectancy with NTT Data was "purposeful" and "intentional" (*see, e.g., Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 863 (1st Dist. 2008); and (d) the nature and extent of the damages available for Ocean Tomo's breaches of the parties' agreements, and whether those damages were reasonably foreseeable to Ocean Tomo. PatentRatings' CFAA claim and Mr. Barney's and PatentRatings' state law claims thus share a common nucleus of operative fact.

*Third*, Ocean Tomo's reliance on the *MaClean-Fogg* and *Thomas* decisions is misplaced. (*See* OT Mem. at 10-12 (citing *MaClean-Fogg Co. v. Edge Composites, L.L.C.*, No. 08 C 6367, 2009 WL 1010426 (N.D. Ill. April 14, 2009) and *Thomas v. Spencer W. Schwartz & Assocs.*, No. 94 C 5114, 1996 WL 277616 (N.D. Ill. May 21, 1996)). Ocean Tomo argues that *MaClean* is "instructive here" (OT Mem. at 11), but ignores that the Court's decision in *MaClean* turned upon the fact that the plaintiff had failed to provide any basis to support a conclusion that the alleged disclosure and misappropriation of trade secrets related to the alleged patent infringement, or that the two claims involved overlapping operative facts. 2009 WL 1010426, at *3. In contrast, in this case, Mr. Barney and PatentRatings have alleged the relationship between the CFAA claims and the state law claims, and that those claims involve overlapping operative facts.

In *Thomas*, the plaintiff alleged a federal claim for overtime pay, and state law claims for retaliatory discharge arising out of a workers' compensation claim. 1996 WL 277616, at *1. The Court found that those claims involved two "separate time frames" and "two dissimilar facts

12

and injuries," and held that it did not have supplemental jurisdiction. *Id.* at \*2. In this case, however, Mr. Barney and PatentRatings allege a long-running and continuing scheme by Ocean Tomo to steal the PatentRatings System, in furtherance of which Ocean Tomo had committed a series of specific, related wrongful acts.

*Fourth*, Ocean Tomo argues that Mr. Barney's and PatentRatings' discovery requests somehow confirm that the CFAA claims arise from a different nucleus of operative fact than Counts I, III, IV, and V of the counterclaims. (OT Mem. at 13-15.) Ocean Tomo asserts that "it appears" that those discovery requests include "only a single request for the production of documents [that] was specifically geared toward proving Defendants' [sic] federal CFAA claim." (OT Mem. at 14.) Ocean Tomo's careful qualification of its argument through the use of "it appears" and "specifically" likely is no accident. Many of Mr. Barney's and PatentRatings' discovery requests bear directly on Ocean Tomo's scheme to steal the PatentRatings System, and the various actions that Ocean Tomo took in furtherance of that scheme. As the pleadings make clear, and Mr. Barney and PatentRatings explain above, that scheme relates closely to both PatentRatings' CFAA claim and to Mr. Barney's and PatentRatings' state law claims.

*Finally*, Mr. Barney's and PatentRatings' state law claims share a common nucleus of fact with Ocean Tomo's CFAA claim, and Ocean Tomo's denial of that common nucleus (see OT Mem. at 10 n.3) is unconvincing at best.

Ocean Tomo's termination of Mr. Barney's right to receive further dividends (Count I of the counterclaims) is inextricably intertwined with Ocean Tomo's CFAA claim, because Ocean Tomo purportedly based that termination on, among other things, the events relating to the laptop computer.[4]

---

[4] Mr. Barney and PatentRatings are not at this time attaching the Ocean Tomo documents that set forth the purported reasons for terminating Mr. Barney's right to receive dividend allocations, because Ocean Tomo

Moreover, to establish its CFAA claim, Ocean Tomo must demonstrate that Mr. Barney acted "without authorization" or "exceed[ed] authorized access" with respect to the laptop computer at issue. That is not a simple inquiry, because Mr. Barney was more than simply an employee of Ocean Tomo – he was (and is) an equity owner of Ocean Tomo, the inventor of the PatentRatings system, and the majority owner of PatentRatings, which indisputably owns the PatentRatings System and is the licensor to Ocean Tomo under the License Agreement. To prove or disprove the required element of "authorization" in this case the parties will need to present evidence establishing not only the scope of Mr. Barney's rights, duties, and obligations under the Employment Agreement, but also his rights, duties, and obligations as a Member of Ocean Tomo under the Operating Agreement, and his rights, duties, and obligations as an agent for PatentRatings under the License Agreement and the Equity Exchange Agreement. Ocean Tomo's CFAA claim thus shares a common nucleus of operative fact with Mr. Barney's and PatentRatings' state law claims.

For all of these reasons, Ocean Tomo's motion to dismiss should be denied in its entirety.[5]

---

apparently is contending that those documents constitute "Confidential Information" under the Operating Agreement. Mr. Barney and PatentRatings do not anticipate that Ocean Tomo will – or could, in good faith – dispute that both Ocean Tomo's CFAA claim and Mr. Barney's claim that Ocean Tomo breached the Operating Agreement by terminating Mr. Barney's dividend rights (Count I of the counterclaims) share the same nucleus of operative fact. In the event that Ocean Tomo *does* dispute that those claims arise from the same nucleus of operative fact, Mr. Barney and PatentRatings reserve their rights to submit the pertinent documents to the Court in an appropriate manner.

[5] Ocean Tomo has not argued that, if this Court were to find that supplemental jurisdiction exists, it should decline to exercise that jurisdiction. (*See* OT Mem. at 1-15.) In the event that Ocean Tomo were to attempt to make that argument for the first time in its reply brief, Mr. Barney and PatentRatings reserve their rights to seek leave to file a sur-reply.

## CONCLUSION

WHEREFORE, for all of the reasons set forth above, Jonathan Barney and PatentRatings, LLC respectfully request that this Court deny Ocean Tomo's motion to dismiss in its entirety, and grant such other and further relief as the Court deems just and equitable.


Dated:  December 11, 2013                    Respectfully submitted,

                                             JONATHAN BARNEY and
                                             PATENTRATINGS, LLC

                                             By: /s/ *David C. Layden*
                                                    One of their attorneys

                                             David C. Layden
                                             JENNER & BLOCK LLP
                                             353 North Clark Street
                                             Chicago, Illinois 60654
                                             (312) 222-9350
                                             (312) 840-7796 (fax)