IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

OCEAN TOMO, LLC,

          Plaintiff-Counter Defendant,

v.

JONATHAN BARNEY and
PATENTRATINGS, LLC,

          Defendants-Counter Plaintiffs.

No. 12 C 8450

JURY TRIAL DEMANDED

Hon. Joan B. Gottschall

## OCEAN TOMO, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTS I, III, IV AND V

### A.    Defendants' Allegations of a Long Running Scheme are Irrelevant to Their CFAA Claim

Defendants'[1] Response to OT's Motion to Dismiss is premised principally on one argument: that Defendants' state law claims share a common nucleus of operative facts with their CFAA claim because they "arise from and relate to [OT's] scheme to steal the PatentRatings System from [Defendants], and the various actions that [OT] has taken to advance that scheme." [Docket No. 67 p. 8.] *see also* (*Id*. p. 10) (arguing that OT's argument is "refuted … by what [Defendants] have pled"); (*Id*. p. 11) (contending that determining whether OT's "access of protected computers was 'authorized,' or undertaken with 'intent to defraud' will depend upon, among other things, the *purpose* of that access.").

As an initial matter, Defendants have not alleged a claim pursuant to the "intent to defraud" prong of the CFAA. One of the three variants of a claim under the CFAA includes

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in OT's Memorandum in Support of its Motion to Dismiss Counts I, III, IV and V, Docket No. 63.

"intent to defraud" as an element.  *See* 18 U.S.C. § 1030(a)(4).  Defendants have not alleged a claim pursuant to Section 1030(a)(4) of the CFAA.  [Docket No. 59 ¶¶ 85–88.]  Rather, Defendants have alleged that OT obtained information and caused damage pursuant to Sections 1030(a)(2)(C) and 1030(a)(5)(C).  [Docket No. 59 ¶ 86.]  As such, any "intent to defraud" on OT's part is not at issue in this case, and there is no additional justification for looking beyond the narrow focus of the CFAA.

In any event, Defendants' argument has no merit, because any alleged broad "scheme" to steal the PatentRatings System is irrelevant to the CFAA claim, however pled.  The CFAA has a narrow focus:  whether there is any actual damage or impairment to a computer protected thereunder.  This is reflected in the CFAA's definition of "damage" as "any impairment to the integrity or availability of data, a program, a system, or information."  18 U.S.C. § 1030(e)(8).[2]

Courts within the Seventh Circuit have made it clear that the CFAA only encompasses conduct which has some sort of measurable effect on the protected device, namely "the destruction, corruption, or deletion of electronic files, the physical destruction of a hard drive, or any diminution in the completeness or usability of the data on a computer system."  *Navistar, Inc. v. New Baltimore Garage, Inc.*, No. 11-cv-6269, 2012 WL 4338816, at *7 (N.D. Ill. Sept. 20, 2012) (citations and quotations omitted).  Significantly, neither what a defendant does with the information removed from the protected device, nor the motives for doing so, factor into what constitutes "damage" under the CFAA.  For example, merely copying electronic information is not enough to satisfy the CFAA's damage requirement, regardless of how the

---

[2] A plaintiff can also recover for "loss" suffered under the CFAA.  It appears, however, that Defendants have only alleged "damage" under the statute.  [Docket No. 59 ¶¶ 85–88.]  Regardless, "loss" recognized by the CFAA is also narrowly limited "to the victims' costs in responding to, assessing, and repairing damage, plus consequential damages from related service interruptions."  *E.R. James Real Estate Services, LLC v. Spinell*, No. 11 C 4476, 2011 WL 5078873, at *2 (N.D. Ill. Oct. 26, 2011).

information is misused subsequently. *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*, 616 F.Supp.2d 805, 810 (N.D. Ill. Mar. 19, 2009) ("copying electronic files from a computer database—even when the ex-employee e-mails those files to a competitor—is not enough to satisfy the damage requirement of the CFAA").

Courts within the Seventh Circuit have consistently rejected attempts to expand the CFAA to cover trade secret misappropriation. *U.S. Gypsum Co. v. LaFarge North America, Inc.*, 670 F.Supp.2d 737, 744 (N.D. 2009) (noting that allegation that data had been disclosed "improperly" "does not constitute damage under the CFAA" and that "the CFAA is not intended to expansively apply to all cases where a trade secret has been misappropriated by use of a computer"); *Motorola, Inc. v. Lemko Corp.*, 609 F.Supp.2d 760, 769 (N.D. Ill. 2009) ("The only harm [plaintiff] has alleged is the disclosure to a competitor of its trade secrets and other confidential information. The CFAA's definition of damage does not cover such harm"). In sum, "economic costs unrelated to the actual computer system are not covered." *E.R. James Real Estate Services, LLC v. Spinell*, No. 11 C 4476, 2011 WL 5078873, at *2 (N.D. Ill. Oct. 26, 2011); *see also Metabyte, Inc. v. Nvidia Corp.*, No. 12-0044 SC, 2013 WL 1729808, at *4 (N.D. Cal. Apr. 22, 2013) (noting that allegations of misappropriation of trade secrets, copyright infringement or breach of contract with respect to information removed from protected device were irrelevant to CFAA claim, as "[t]he CFAA's scope is narrow, and the Court is not inclined or permitted to expand it").

Indeed, two courts have declined to exercise supplemental jurisdiction over state law claims based on an asserted relationship with a CFAA claim citing the narrow scope of the CFAA. In *Dedalus*, the plaintiff argued that supplemental jurisdiction existed over its six state law claims for breach of fiduciary duty, replevin, unjust enrichment, diversion of corporate

opportunity, conversion and breach of fiduciary duty as a result of the presence of a claim under the CFAA. *The Dedalus Foundation v. Banach*, No. 09 Civ. 2842, 2009 WL 3398595, at *1 (S.D.N.Y. Oct. 16, 2009). While the court acknowledged that "[b]oth the state law claims and the CFAA claim arise out of [defendant's] employment and activities" while employed by the plaintiff, the court declined to exercise supplemental jurisdiction over the state law claims "because they substantially predominate over the CFAA claim." *Id* at *5. The Court focused on the narrow and limited focus of the CFAA claim versus the broader state law claims:

> The CFAA claim will likely involve limited discovery and analysis of the narrow legal issue of whether [plaintiff] accessed a protected computer without authorization and caused damage to the hard drives. In contrast, [plaintiff's] six state law claims revolve around allegations that [defendant] breached her fiduciary duties and misappropriated…artwork. These allegations focus on a much longer time span than the CFAA claim and are likely to involve extensive discovery. The state law claims will also require legal analysis distinct from the CFAA claim. These state law claims are at the heart of this case and substantially predominate over the CFAA claim.

*Id*. Similarly, in *Zurich* the plaintiff argued that supplemental jurisdiction existed over five state law claims for trade secret misappropriation, breach of contract, breach of fiduciary duty, conversion, and tortious interference based upon their factual relationship to a CFAA claim. *Zurich American Ins. Co. v. Bowman*, No. 2:10-cv-00988, 2010 WL 5239239, at *1–2 (D. Nev. Dec. 16, 2010). The Court disagreed, focusing on the fact that the subsequent use of information removed from a protected device under the CFAA is irrelevant to that claim:

> To begin, the state law claims greatly outnumber the federal claim—five to one. More importantly, however, the CFAA claim is not the real body of [plaintiff's] case. Although the alleged unauthorized access of information on [plaintiff's] computers is a component of [plaintiff's] injuries, it is not the core component of those injuries. Rather, it was Defendants subsequent use of that information in allegedly soliciting and appropriating [plaintiff's] business that caused [plaintiff] significant harm. Thus, if [plaintiff] prevails on all of its claims the bulk of the damages will

-4-

> serve to redress its state-related injuries. Furthermore, the thrust of [plaintiff's] energies in this action will be directed toward proving the elements of the state law claims—not simply because there are five state law claims and one federal claim, but because the state law claims are more important to [plaintiff's] interests in this litigation, i.e., preventing and remedying the harm to their business prospects.

*Id.*[3]

The crux of Defendants' argument is that their state law claims and the CFAA claims "share a common nucleus of operative fact:  [OT's] long-running scheme to steal from [Defendants] the patented PatentRatings technology, proprietary data, software, trade secrets, algorithms, and other valuable intellectual property…, and the closely-related wrongful acts of [OT] taken in furtherance of that scheme."  [Docket No. 67 p. 2.]  As the above case law makes clear, however, any alleged long-running scheme is not relevant to the CFAA claims, which are narrowly focused on any damage and impairment to the devices at issue, and do not cover any subsequent use of information removed from those devices or any prior alleged misdeeds as part of some broader plot.  Even if Defendants' alleged "fraudulent scheme" were true, the allegations of OT's alleged misuse of the confidential information is simply irrelevant to the pled CFAA claims.

Similarly, as in *Zurich* and *Dedalus*, Defendants' state law claims far outnumber their CFAA claim.  Additionally, the CFAA is not central to Defendants' claims.  Only one of the more than one hundred fifty (150) discovery requests propounded by Defendants arguably even

---

[3] Both the *Dedalus* and *Zurich* courts determined that supplemental jurisdiction could be exercised, but declined to do so pursuant to 28 U.S.C. § 1367(c)(2), under which a district court may "decline to exercise supplemental jurisdiction over a claim" if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction."  28 U.S.C. § 1367(c)(2).  While OT maintains that the CFAA claims in this case are not part of the same case or controversy as would be necessary for the exercise of supplemental jurisdiction, in the event this Court determines that supplemental jurisdiction could be exercised, it should decline to exercise jurisdiction because Defendants' state law claims predominate.

relate to Defendants' CFAA claim.  Simply put, Defendants have attempted to bootstrap wide-ranging state law claims onto their narrow CFAA claim.  The inquiry under the CFAA claim, however, is extraordinarily limited and the alleged "scheme" identified by Defendants is irrelevant to this inquiry.

### B.     Defendants Fail to Refute OT's Demonstration that the Facts Underlying Their CFAA Claim are Remote in Time From Their State Law Claims

As detailed in OT's Motion, Defendants' state law claims arise out of disputes regarding the inception of the parties' business relationship in 2004 and various alleged breaches between 2004 and 2012, whereas Defendants' CFAA claim pertains to OT's allegedly wrongful access of computer servers in or about May of 2013.  [Docket No. 63 p. 1–2.]  In their Response, Defendants claim that OT's argument that its state law claims are "remote in time" from the CFAA claims and therefore cannot derive from the same nucleus of operative facts "rests on a mischaracterization of [Defendants'] state law claims, and in particular, simply ignores [Defendants'] allegations that [OT] has engaged and continues to engage in a long-running scheme to steal the PatentRatings System."  [Docket No. 67 p. 9.]  As set forth above, Defendants' allegations of a long-running scheme are not relevant to the CFAA claims.  Even assuming, *arguendo*, that these allegations overlapped with the CFAA claims, however, Defendants' cases purportedly countering OT's "remoteness in time" argument are not on point.

For example, *Royal Towing* involved only two counts, both of which were premised on allegations that the defendant city retaliated against the plaintiff police officer as a result of his support of a losing mayoral candidate.  *Royal Towing, Inc. v. City of Harvey*, 350 F.Supp.2d 750, 754 (N.D. Ill. 2004)  The two counts concerned two forms of alleged retaliation, but had a common factual denominator in that they were allegedly in response to a single aggravating factor, the plaintiff's support of a losing candidate.  *Id*.  Moreover, the timeframes in *Royal*

*Towing* were hardly remote, as all of the events underlying the claims occurred within a three and a half year period, as opposed to the nine year spread at issue in this case. *Id.*

Defendants also cite *Adams Street* for the proposition that "even where claims arise at different times, courts nevertheless exercise supplemental jurisdiction where the claims all relate to the relationship between the parties." [Docket No. 67 p. 9.] This case too is distinguishable. First, whatever relationship the parties might have had is not relevant to the narrowly focused CFAA claims, as set forth above. Second, in *Adams Street*, the plaintiff brought claims against a former employee for, *inter alia*, civil RICO, fraud, breach of fiduciary duty, and the defendant counterclaimed for breach of contract seeking amounts allegedly due for work performed prior to resignation as well as breach of a severance package arranged upon his resignation. *Adams Street Joint Venture v. Harte*, 231 F.Supp.2d 759, 763 (N.D. Ill. 2002). The time periods between the claims, however, were not at all remote. For all but one claim, "both sides' allegations rest on [the defendant's] conduct as an employee during the few years leading up to his September 2001 resignation," and the remaining claim alleged breach of a severance package arranged in "September 2001 and allegedly breached in November 2001." *Id.*

Defendants also cite *Rothman* and *Rodriguez* for the same proposition, but those cases contain no analysis whatsoever on state and federal claims being remote in time from one another. *Rothman v. Emory University*, 123 F.3d 446, 454–55 (7th Cir. 1997); *Rodriguez v. Ford Motor Credit Co.*, No. 01 C 8526, 2002 WL 655679, at *6 (N.D. Ill. Apr. 19, 2002).

Defendants' four state law claims contain alleged wrongdoing dating from 2004 and continuing until 2013. The discovery, and eventual trial evidence, relating to these claims is broad and far-reaching. The overlap with the CFAA claim is limited. Any trial of this matter will predominantly involve matters far removed from and irrelevant to Defendants' CFAA claim.

As such this Court should decline to exercise supplemental jurisdiction over Defendants' state law claims.[4]

### C. Defendants Overstate the "Authorization" Inquiry Under the CFAA

Defendants' argument that determining whether or not OT's alleged access was authorized will require a broad factual inquiry overlapping with Defendants' state claims also has no merit. [*See* Docket No. 67 p. 11.] Whether or not OT's alleged access was authorized will depend on a straightforward analysis of certain agreements between the parties and documents related to the ownership of the servers at issue. While Defendants argue that restrictions on the disclosure of information set forth in the License Agreement need to be analyzed to determine whether OT's alleged conduct was authorized, [*See* Docket No. 67 p. 11, n.3,] Defendants conflate wrongful access prohibited by the CFAA with the disclosure and/or misuse of information in violation of the parties' contractual arrangements, which are two separate issues. *See, e.g., Zurich American Ins.*, 2010 WL 5239239, at *1–2. Put another way, if OT allegedly disclosed confidential information in violation of the License Agreement, such conduct is not determinative of whether OT was authorized to access the information in the first instance.

Moreover, as detailed above, the CFAA does not protect misuse or unauthorized access to *information*; it prohibits unauthorized access to *computers*. What OT may or may not have done with information obtained from the servers is of no consequence. For example, if this Court determines that OT's access of the servers was authorized, or that OT merely copied information without damaging or impairing the servers in any way, that would have absolutely no bearing on whether OT violated its contractual obligations regarding the use of such

---

[4] Should the Court dismiss Defendants' state law claims, Defendants have a ready forum to reassert them. There is already an action pending between the parties in the Circuit Court of Cook County, captioned <u>Ocean Tomo, LLC v. PatentRatings, LLC</u>, No. 12 CH 07704.

information. *Del Monte Fresh Produce*, 616 F.Supp.2d at 810; *U.S. Gypsum Co.*, 670 F.Supp.2d at 744.

### D. Defendants' State Law Claims are Similarly Unrelated to OT's CFAA Claim

Defendants also contend that Defendants state law claims share a common nucleus of operative fact with OT's CFAA claim for two reasons: 1) one of the grounds for OT's termination of Mr. Barney's right to receive further dividends under the Operating Agreement (which forms the subject of Count I of Defendants Counterclaims) was Mr. Barney's conduct with respect to the Laptop, [Docket No. 67 p. 13]; and 2) determining whether or not Mr. Barney's access of the Laptop was "authorized" will require an examination of Mr. Barney's role within OT. [Docket No. 67 p. 14]

First, this argument fails for the same reason as Defendants' arguments with respect to their own CFAA claim: adjudication of OT's CFAA claim will have a narrow focus limited to determining the extent to which the Laptop was actually damaged and/or impaired, rather than extraneous factual circumstances. *See Navistar, Inc.*, 2012 WL 4338816, at *7; *Del Monte Fresh Produce*, 616 F.Supp.2d at 810; *U.S. Gypsum Co.*, 670 F.Supp.2d at 744; *Motorola, Inc.*, 609 F.Supp.2d at 769; *E.R. James Real Estate Services*, 2011 WL 5078873, at *2; *Dedalus*, 2009 WL 3398595, at *1; *Zurich*, 2010 WL 5239239, at *1–2.

Furthermore, the decision to refuse profit distributions is but one part of Mr. Barney's claim for breach of the Operating Agreement. While Mr. Barney raises OT's determination that Mr. Barney was no longer entitled to dividends as a result of his breach of Section 13.17 of the Operating Agreement, Mr. Barney's conduct with respect to the Laptop was merely one of many of OT's grounds for doing so. This hardly constitutes the factual overlap necessary for the assertion of supplemental jurisdiction over, not only Mr. Barney's Count for breach of the

Operating Agreement, but Defendants' three other state law claims as well. As such, the overlap between Barney's breach of contract claim and OT's CFAA claim is minimal.

Moreover, Mr. Barney's allegation that he was wrongfully determined to be in breach of the Operating Agreement comprises only a portion of his breach of contract claim. The primary bases of this claim is that OT failed to allocate profits to Mr. Barney from two corporate transactions and that OT engaged in accounting chicanery to deny Mr. Barney his fair share of the profits from these transactions. [Docket No. 59 ¶ 57.]

Because the state law claims predominate over OT's CFAA claim, this Court should decline to exercise supplemental jurisdiction. *Dedalus*, 2009 WL 3398595, at *1; *Zurich*, 2010 WL 5239239, at *1–2.

Finally, Defendants' argument that determining whether or not Mr. Barney's access of the Laptop was "authorized" will require a broader examination of Mr. Barney's role within OT once again overstates the breadth of the authorization inquiry. [Docket No. 67 p. 14] As with Defendants' CFAA claim, whether or not Mr. Barney's conduct with respect to the Laptop was authorized will depend on a straightforward analysis of certain agreements between OT and Mr. Barney related to his use of the Laptop, namely, the Employment Agreement and the Computer Asset Policy Agreement, as set forth in OT's Complaint. [*See* Docket No. 1-3 ¶¶ 47–58.] Defendants contend that this inquiry will also involve analysis of the Operating Agreement, the License Agreement, and the Equity Exchange Agreement. [Docket No. 67 p. 14.] Tellingly, Defendants do not cite the provisions of those agreements which would be relevant to this inquiry, or otherwise explain this theory. (*Id.*) This failure is fatal given Defendants' burden of proving federal jurisdiction. *Thomas v. Spencer W. Schwartz & Assocs., P.C.*, No. 94 C 5114,

1996 WL 277616, at *2 (N.D. Ill. May 21, 1996) *citing Purdue Research Found*., 338 F.3d 773, 782 (7th Cir. 2003).

II.      <u>**CONCLUSION**</u>

 For all the foregoing reasons, OT respectfully requests that this Court grant its Motion to Dismiss Counts I, III, IV and V of Defendants' Counterclaims with prejudice.

Dated: December 20, 2013        Respectfully submitted,

               OCEAN TOMO, LLC

               By:  s/Jeremy R. Heuer
                 One of Its Attorneys

M. Derek Zolner
Jeremy R. Heuer
Rachel T. Copenhaver
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, IL 60601-1003
T: (312) 609-7500
F: (312) 609-5005
dzolner@vedderprice.com
jheuer@vedderprice.com
rcopenhaver@vedderprice.com

## CERTIFICATE OF SERVICE

I, Jeremy R. Heuer, an attorney, hereby certify that on December 20, 2013, I caused to be electronically filed the foregoing OCEAN TOMO, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTS I, III, IV AND V with the Clerk of the Court using the Court's Case Management/Electronic Case Files (CM/ECF) system, which will send notifications of such filing to the following counsel of record:

David C. Layden          DLayden@jenner.com


                                   /s/ Jeremy R. Heuer