IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

OCEAN TOMO, LLC,

              Plaintiff-Counter Defendant,

v.

JONATHAN BARNEY and
PATENTRATINGS, LLC,

              Defendant-Counter Plaintiffs.

No. 12 C 8450

Judge:  Joan B. Gottschall
Magistrate:  Judge Mary M. Rowland

## OCEAN TOMO, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANTS-COUNTER PLAINTIFFS' SECOND AMENDED COUNTERCLAIMS

Plaintiff-Counter Defendant, Ocean Tomo, LLC ("OT"), by its attorneys, Vedder Price P.C., and for its Answer and Affirmative Defenses to Defendants-Counter Plaintiffs Jonathan Barney ("Barney") and PatentRatings, LLC's ("PR"; collectively with Barney, "Defendants") Second Amended Counterclaims (the "Counterclaims"), hereby states as follows:

### ANSWER

### NATURE OF THE ACTION

### ALLEGATION NO. 1:

This action arises from Ocean Tomo's malicious, underhanded campaign to wrongfully oppress and freeze out one of its minority owners, Jonathan Barney to cheat Mr. Barney out of the substantial benefits that Ocean Tomo promised to Mr. Barney in 2004 when Ocean Tomo induced him to exchange an ownership interest in his company, PatentRatings, LLC, for a minority ownership interest in Ocean Tomo; and to attempt to destroy Mr. Barney and PatentRatings financially so that Ocean Tomo could steal the very valuable PatentRatings system and the underlying patents, data, algorithms, and other valuable intellectual property owned by PatentRatings.  Mr. Barney and PatentRatings bring the claims described below to recover the significant damages they have suffered because of Ocean Tomo's breaches of contract, tortious interference with prospective economic advantage, and violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA"), to recover punitive damages to punish Ocean Tomo for its willful and malicious conduct, and to compel Ocean Tomo to provide access to the books and records of the company.

**ANSWER:**

OT admits that in this action Defendants purport to allege the claims described in Paragraph 1. OT denies that these claims have merit, that Defendants are entitled to any relief, and denies the remaining allegations of Paragraph No. 1.

## PARTIES

**ALLEGATION NO. 2:**

Counterplaintiff Jonathan Barney ("Mr. Barney") lives in Newport Beach, California. He is a member of Ocean Tomo, owning a minority interest in the company. On information and belief, Mr. Barney currently owns 136.9 units in Ocean Tomo, which represents 8.12% of the outstanding units issued by Ocean Tomo. Mr. Barney also owns 23.1 units purportedly forfeited by Mr. Barney when Ocean Tomo wrongfully forced him to resign, which represents an additional 1.37% of the outstanding units in the company.

**ANSWER:**

OT is without knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of Paragraph No. 2, and therefore denies the same. OT admits the allegations of the second and third sentences of Paragraph No. 2. OT denies the allegations of the fourth sentence of Paragraph No. 2.

**ALLEGATION NO. 3:**

Counterplaintiff PatentRatings, LLC ("PatentRatings") is a California limited liability company, with its principal place of business in Irvine, California.

**ANSWER:**

OT admits the allegations of Paragraph No. 3.

**ALLEGATION NO. 4:**

Counterdefendant Ocean Tomo, LLC ("Ocean Tomo") is an Illinois limited liability company, with its principal place of business in Chicago, Illinois. Ocean Tomo also is a member of PatentRatings, and currently owns 25% of the outstanding units in PatentRatings.

**ANSWER:**

OT admits the allegations of Paragraph No. 4.

## JURISDICTION

### ALLEGATION NO. 5:

This Court has jurisdiction over these amended counterclaims under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

### ANSWER:

OT denies the allegations of Paragraph No. 5.

## ALLEGATIONS COMMON TO ALL COUNTS

### Mr. Barney Invents the PatentRatings System, and Forms PatentRatings, LLC

### ALLEGATION NO. 6:

Mr. Barney is an accomplished engineer, inventor, entrepreneur, and patent lawyer. One of Mr. Barney's inventions is the PatentRatings system, which is among the most advanced statistical patent data, rating, and analysis systems in the world. The statistical rating algorithm underlying the PatentRatings system has been awarded multiple patents by the United States Patent and Trademark Office and is used by, among others, major global corporations to assess the quality and relative value of their patent portfolios (and the portfolios of competitors and potential acquisition targets), relevant patents and technologies, competition, and relevant trends.

### ANSWER:

OT admits that Barney is an inventor and patent lawyer, but is without information regarding remaining allegations of first sentence of Paragraph No. 6 and, therefore, denies those allegations. OT denies that the statistical rating algorithm underlying the PatentRatings system has been awarded multiple patents by the United States Patent and Trademarks Office, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the second sentence of Paragraph No. 6, and therefore, denies those allegations.

### ALLEGATION NO. 7:

In 2000, Mr. Barney formed a company, PatentRatings, LLC, to implement the PatentRatings system, and bring it to the marketplace. Mr. Barney invested enormous amounts of his time, energy, skill, and creativity – and significant amounts of his own funds – in PatentRatings, LLC.

**ANSWER:**

OT admits, upon information and belief, that, in approximately 2000, Barney founded PR. OT lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph No. 7 and, therefore, denies those allegations.

**Mr. Barney Agrees To Sell Ocean Tomo An Interest In PatentRatings, LLC in Exchange For A Minority Interest in Ocean Tomo**

**ALLEGATION NO. 8:**

Word of Mr. Barney's innovative PatentRatings system quickly spread in the industry. A number of people and entities who were interested in the system reached out to Mr. Barney. One of them was Ocean Tomo, LLC, a Chicago-based firm.

**ANSWER:**

OT admits that it is a Chicago based firm and that it was interested in the PatentRatings system. OT lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph No. 8 and, therefore, denies those allegations.

**ALLEGATION NO. 9:**

Ocean Tomo wanted to be able to take advantage of the PatentRatings system for the benefit of Ocean Tomo, and claimed that, in exchange, it was willing to provide Mr. Barney with a number of significant benefits, including the right to share in Ocean Tomo's profits (and losses). Mr. Barney and Ocean Tomo ultimately negotiated a transaction that involved a December 31, 2004 license agreement (as amended, the "License Agreement"), a September 1, 2004 equity exchange agreement (the "Equity Exchange Agreement"), and an Employment Agreement dated January 1, 2005. Under the Equity Exchange Agreement, Ocean Tomo acquired 25% of the equity in PatentRatings from Mr. Barney, and Mr. Barney acquired 100 units (representing approximately 6.8% of the then-outstanding equity in Ocean Tomo) from Ocean Tomo. PatentRatings and Ocean Tomo later entered into a Supplemental License Agreement dated May 18, 2006 (the "Supplemental License Agreement").

**ANSWER:**

OT admits that Barney received certain benefits as a result of the License Agreement, Equity Exchange Agreement, Employment Agreement, and Supplemental License Agreement. OT admits the allegations of the second sentence of Paragraph No. 9, except denies that the

Equity Exchange Agreement is dated as of September 1, 2004. OT admits that, under the Equity Exchange Agreement, OT acquired equity in PR and Mr. Barney acquired equity in OT, but OT denies that the third sentence of Paragraph No. 9 contains a full and accurate description of the parties' respective rights and obligations with respect to those issues. OT admits the allegations of the fourth sentence of Paragraph No. 9. OT denies the remaining allegations of Paragraph No. 9.

Answering further, OT states that the License Agreement, the Equity Exchange Agreement, the Employment Agreement and the Supplemental License Agreement are the best evidence of their contents and denies any allegations inconsistent therewith.

## ALLEGATION NO. 10:

In order to induce Mr. Barney into entering into the License Agreement and the Equity Exchange Agreement, Ocean Tomo promised Mr. Barney, among other things, that: (a) Mr. Barney would have employment as a high-level executive at Ocean Tomo; (b) Mr. Barney would receive additional earned equity in Ocean Tomo; and (c) there were no outstanding contracts or promises relating to the issuance, sale or transfer of any equity securities of Ocean Tomo, which was important to Mr. Barney, because any existing, undisclosed agreements to give Ocean Tomo shares to anyone else would dilute the value of the Ocean Tomo shares Mr. Barney was to receive.

### ANSWER:

OT admits that the Equity Exchange Agreement and the License Agreement collectively contain provisions addressing Mr. Barney's employment with OT, Mr. Barney's compensation, and OT's obligations with respect to the issuance, sale or transfer of equity in OT, but OT denies that Paragraph No. 10 contains a full and accurate description of the parties' respective rights and obligations with respect to those issues, and further states that those agreements are the best evidence of their contents.

### The Operating Agreement

**ALLEGATION NO. 11:**

As a member of Ocean Tomo, Mr. Barney was a party to the operating agreement for the company, which was amended from time to time.  On information and belief, the current version of the operating agreement is the Second Amended and Restated Operating Agreement of Ocean Tomo, LLC dated as of January 1, 2008 (the "Operating Agreement").

**ANSWER:**

OT admits the allegations of Paragraph No. 11.

**ALLEGATION NO. 12:**

The Operating Agreement included provisions relating to, among other things, the allocations of profits and losses among the members of Ocean Tomo, the issuance of additional equity units to members, and the rights of members to have access to the books and records of Ocean Tomo.

**ANSWER:**

OT admits the allegations of Paragraph No. 12.

**ALLEGATION NO. 13:**

With respect to the allocation of profits and losses among the members, the Operating Agreement provides that, subject to certain adjustments:    (a) 75% of "Net Profits from Operations" shall be allocated among the members as determined by the Board of Managers, and the remaining 25% of "Net Profits from Operations" shall be allocated among the members in accordance with their respective percentage interests; and (b) "Net Profits (Other than Net Profits from Operations)" shall be allocated among the members in accordance with their respective percentage interests.  These provisions meant that the Board of Managers purportedly had the ability to exercise discretion with respect to the allocation of 75% of the net profits from operations, but had no such purported discretion with respect to net profits other than net profits from operations.

**ANSWER:**

With respect to the first sentence of Paragraph No. 13, OT admits that the Operating

Agreement addresses the allocation of profits and losses among OT's members, but denies that

the first sentence of Paragraph No. 13 contains a full and accurate description of the parties'

respective rights and obligations with respect to that issue, and further states that the Operating

Agreement is the best evidence of its contents. OT denies the allegations in the second sentence of Paragraph No. 13.

## ALLEGATION NO. 14:

As Ocean Tomo had promised Mr. Barney in 2004 when he agreed to exchange equity in PatentRatings, LLC for a minority interest in Ocean Tomo, the Operating Agreement also provided, in Section 10.06, that each member while employed by Ocean Tomo (including Mr. Barney) would receive an additional 10 equity units each year.

### ANSWER:

OT admits that Section 10.06 of the Operating Agreement contemplates that members employed by OT could receive additional equity in OT, but denies that Paragraph No. 14 contains a full and accurate description of the parties' respective rights and obligations with respect to that issue, and further states that the Operating Agreement is the best evidence of its contents. OT denies the remaining allegations of Paragraph No. 14.

## ALLEGATION NO. 15:

With respect to members' right to have access to the books and records of Ocean Tomo, Section 6.04 of the Operating Agreement provides: "The Board of Managers shall maintain and preserve, during the term of the Company, the accounts, books and relevant Company documents described in Section 9.09. Each Member shall have the right, at a time during ordinary business hours, as reasonably determined by the Board of Managers, to inspect and copy, at the requesting Member's expense, the books and records of the Company described in Section 9.09 hereof, and such other documents which the Board of Managers, in its discretion, deems appropriate." Section 9.09, in turn, states that, "At the expense of the Company, the Board of Managers shall maintain records and accounts of the operations and expenditures of the Company," and then identifies the minimum records that the Company shall keep at its principal place of business.

### ANSWER:

OT admits that the Operating Agreement contains the quoted provisions, but denies that Paragraph No. 15 contains a full and accurate description of the parties' respective rights and obligations with respect to that issue, and further states that the Operating Agreement is the best evidence of its contents.

**ALLEGATION NO. 16:**

The books and records of Ocean Tomo that are referenced in Section 9.09 of the Operating Agreement include, but are not limited to, detailed monthly and quarterly financial reporting packages, and "equity bonus tracker" reports.

**ANSWER:**

OT denies the allegations of Paragraph 16.

**After Ocean Tomo Obtains Access to and Leverage Over PatentRatings, PatentRatings and Mr. Barney Learn That It Has No Interest In Complying With Its Promises**

**ALLEGATION NO. 17:**

After entering into the transactions with Ocean Tomo in 2004, and after Mr. Barney became a senior executive of the company, PatentRatings and Mr. Barney soon learned what others before (and after) them also discovered – the environment at Ocean Tomo was rife with conflict, back-biting, and shady business and accounting practices.

**ANSWER:**

OT denies the allegations of Paragraph No. 17.

**ALLEGATION NO. 18:**

Even in the face of such a profoundly negative environment, however, PatentRatings and Mr. Barney did their best to try to make the partnership with Ocean Tomo a success. In good faith, PatentRatings consented to Ocean Tomo hiring away its founder and sole employee, Mr. Barney, and provided Ocean Tomo with its full support and assistance in further developing and exploiting the PatentRatings system for the mutual benefit of Ocean Tomo and PatentRatings. In good faith, Mr. Barney consistently devoted his time, talent, energy, and creativity to Ocean Tomo. Mr. Barney also provided, at Ocean Tomo's specific request, detailed Confidential Information sufficient to enable Ocean Tomo to operate, maintain, and improve the PatentRatings system on its own in the event that Mr. Barney was no longer able to do so (such as in the event of his death or incapacity).

**ANSWER:**

OT denies the allegations of Paragraph No. 18.

**ALLEGATION NO. 19:**

However, once Ocean Tomo received what it wanted from PatentRatings and Mr. Barney, Ocean Tomo repaid their hard work, dedication, and good faith by embarking on a campaign to force Mr. Barney to resign from Ocean Tomo, to freeze Mr. Barney out of Ocean Tomo management, and to deprive Mr. Barney of the significant other benefits he had been

promised and was entitled to receive. Ocean Tomo has further attempted to destroy or incapacitate Mr. Barney and PatentRatings financially by, among other things, defaulting on its contractual obligations, impairing Mr. Barney's and PatentRatings' ability to earn income from other sources, and bringing multiple baseless litigation claims against Mr. Barney and PatentRatings – all with the intent and purpose of pummeling Mr. Barney and PatentRatings financially while Ocean Tomo steals the very valuable PatentRatings system and the underlying patents, data, algorithms, and other valuable intellectual property owned by PatentRatings, and wrongfully profits from all of Mr. Barney's years of hard work, investment, and sacrifice.

   **ANSWER:**

   OT denies the allegations of Paragraph No. 19.

### Ocean Tomo Uses "Creative" Accounting To Avoid Its Obligation to Share *Pro Rata* With Mr. Barney Profits Relating To The ICAP and IPXI Transactions

### ALLEGATION NO. 20:

   For example, in 2009, Ocean Tomo completed the sale of one of its businesses, the Ocean Tomo Transactions business, to ICAP. The profits from that sale, which totaled approximately $10 million, constituted net profits other than "Net Profits From Operations," and therefore were required to be distributed among the members of Ocean Tomo *pro rata* in accordance with their ownership interests.

   **ANSWER:**

   OT admits that it completed the sale of one of its business in approximately 2009. OT

denies the remaining allegations of Paragraph No. 20.

### ALLEGATION NO. 21:

   Remarkably, however, Ocean Tomo apparently treated the profits from the ICAP sale as "Net Profits From Operations," in order to attempt to justify Ocean Tomo's failure to allocate those profits *pro rata* in accordance with the members' ownership interests, as the Operating Agreement required.

   **ANSWER:**

   OT admits that it treated the profits from its 2009 sale of its business as "Net Profits from

Operations" in accordance with and as defined by Section 1.01 of the Operating Agreement. OT

denies the remaining allegations of Paragraph No. 21.

**ALLEGATION NO. 22:**

By doing so, Ocean Tomo not only violated accounting principles (and common sense), but also representations that were made to Mr. Barney by James Malackowski, the President of Ocean Tomo, before and after the ICAP transaction closed, regarding the allocation of the profits from that transaction.

**ANSWER:**

OT denies the allegations of Paragraph No. 22.

**ALLEGATION NO. 23:**

On information and belief, Ocean Tomo appears to have engaged in similar chicanery with respect to the proceeds resulting from the sale of shares of its Intellectual Property Exchange International, Inc. and/or IPXI Holdings, LLC businesses (individually or collectively, "IPXI") to new investors.

**ANSWER:**

OT denies the allegations of Paragraph No. 23.

**Ocean Tomo Forces Mr. Barney To Resign To Freeze Him Out And
To Deny Him The Salary, Benefits, and Equity Interests He Was Promised**

**ALLEGATION NO. 24:**

Ultimately, Ocean Tomo created intolerable working conditions and severe conflicts of interests with the goal of forcing Mr. Barney to resign his employment from Ocean Tomo – which resignation Ocean Tomo intended to use as an excuse for depriving Mr. Barney of the significant benefits that Mr. Barney had been promised and was entitled to receive.

**ANSWER:**

OT denies the allegations of Paragraph No. 24.

**ALLEGATION NO. 25:**

By forcing Mr. Barney to resign in February 2011, Ocean Tomo intended to avoid paying Mr. Barney his salary and benefits as a senior executive at Ocean Tomo. The position as a senior executive, and the salary and benefits package associated with it, was one of the significant benefits that Mr. Barney was promised in 2004 when he agreed to exchange equity in PatentRatings for a minority interest in Ocean Tomo.

**ANSWER:**

OT denies the allegations of Paragraph No. 25.

-10-

**ALLEGATION NO. 26:**

Moreover, after forcing Mr. Barney to resign, Ocean Tomo also purported to exercise purported rights to redeem – without paying any consideration whatsoever – a substantial portion of the additional equity units that Mr. Barney had received. On information and belief, Ocean Tomo's desire to deprive Mr. Barney of those equity units was one of the motivating factors that led it to force Mr. Barney to resign.

**ANSWER:**

OT admits that it rightfully redeemed Redeemable Units belonging to Barney in accordance with Section 10.07 of the Operating Agreement. OT lacks knowledge or information sufficient to form a belief as to the truth of what motivated Barney to resign from OT, and therefore, denies those allegations. OT denies the remaining allegations of Paragraph No. 26.

**In An Effort To Conceal Its Wrongdoing, Ocean Tomo Refuses To Allow
Mr. Barney Reasonable Access To The Books and Records Of Ocean Tomo**

**ALLEGATION NO. 27:**

As described above, Ocean Tomo forced Mr. Barney to resign his employment from Ocean Tomo in February 2011.

**ANSWER:**

OT denies the allegations of Paragraph No. 27.

**ALLEGATION NO. 28:**

Following his resignation, Mr. Barney made repeated requests for access to the books and records of Ocean Tomo.

**ANSWER:**

OT admits that Mr. Barney has made requests for access to OT's books and records. Answering further, OT provided Mr. Barney with such access.

**ALLEGATION NO. 29:**

Ocean Tomo has denied those requests without any legitimate justification.

**ANSWER:**

OT denies the allegations of Paragraph No. 29.

**ALLEGATION NO. 30:**

On information and belief, Ocean Tomo has denied Mr. Barney access to the books and records of the company in an effort to impair Mr. Barney's ability to understand the value of his equity interest in Ocean Tomo and the amount of dividends and other distributions owed, and to frustrate his efforts to discover further information about Ocean Tomo's wrongdoing. Mr. Barney anticipates that discovery in this action will reveal significant accounting discrepancies and other wrongdoing by Ocean Tomo (and possibly others) in addition to what is alleged here, and reserves his rights to amend his pleading to assert claims arising from all such wrongdoing.

**ANSWER:**

OT denies the allegations of Paragraph No. 30.

## Mr. Barney and PatentRatings Discover That Ocean Tomo Had Breached Its Representations And Warranties In The Equity Exchange Agreement

**ALLEGATION NO. 31:**

After being forced out of Ocean Tomo – and deprived of any meaningful access to the books and records of the company – Mr. Barney and PatentRatings discovered that Ocean Tomo had breached the representations and warranties that it made in the Equity Exchange Agreement.

**ANSWER:**

OT denies the allegations of Paragraph No. 31.

**ALLEGATION NO. 32:**

In the Equity Exchange Agreement, Ocean Tomo represented and warranted, among other things, that:

a.   "There are no Contracts relating to the issuance, sale, or transfer of any equity securities or other securities of [Ocean Tomo]" (Ex. 1 § 4.3);

b.   "Schedule 4.12(a) contains a complete and accurate list, and [Ocean Tomo] has delivered to [PatentRatings] and Barney true and complete copies of . . . (i) each Applicable Contract that was not entered into in the Ordinary Course of Business and that involves expenditures or receipts of [Ocean Tomo] in excess of $1,000". . . and (iii) each joint venture, partnership, and other applicable Contract (however with any other Person" (Ex. 1 §§ 4.12(a)(i) & 4.12(a)(iii).)

**ANSWER:**

OT admits that the Equity Exchange Agreement contains the quoted provisions, but denies that Paragraph 32 contains a full and accurate description of the parties' respective rights and obligations with respect to that issue, and further states that the Equity Exchange Agreement is the best evidence of its contents.

**ALLEGATION NO. 33:**

Mr. Barney discovered in or about December 2011 that, at the time Ocean Tomo made those representations and warranties to Mr. Barney, there was in fact an existing secret agreement between Ocean Tomo and Michael Lasinski under which Ocean Tomo had promised to transfer at a later date a significant number of equity units in Ocean Tomo to Mr. Lasinski. (Ocean Tomo and Mr. Lasinski entered into that agreement because Mr. Lasinski was bound by a covenant not to compete with his former employer, and therefore could not "publicly" become a member of Ocean Tomo.)

**ANSWER:**

OT denies the allegations of Paragraph No. 33.

**ALLEGATION NO. 34:**

Ocean Tomo's agreement with Mr. Lasinski constitutes a material breach of Ocean Tomo's representations and warranties in the Equity Exchange Agreement.

**ANSWER:**

OT denies the allegations of Paragraph No. 34.

**Ocean Tomo Wrongfully Discloses and
Misappropriates PatentRatings' Confidential Information**

**ALLEGATION NO. 35:**

Ocean Tomo's wrongful actions have not been limited to depriving Mr. Barney and PatentRatings of the benefits they bargained for when they entered into the transactions with Ocean Tomo in 2004. Ocean Tomo also has wrongfully disclosed and misappropriated PatentRatings' confidential information, in violation of the License Agreement, the Supplemental License Agreement, and the law.

**ANSWER:**

OT denies the allegations of Paragraph No. 35.

**ALLEGATION NO. 36:**

In Paragraph 7.1 of the License Agreement, Ocean Tomo agreed that the "Licensed Technology contains certain confidential information, trade secrets, and know-how related to statistical patent analysis, mapping and valuation ("Confidential Information") that is proprietary to [PatentRatings].  [Ocean Tomo] agrees to hold such Confidential Information in strict confidence, not to use it commercially for its own benefit or the benefit of anyone else, and not to use the Confidential Information for the purpose of developing or improving a product or method except [PatentRatings], except as authorized herein."

   **ANSWER:**

OT denies that Paragraph 7.1 of the License Agreement is correctly quoted.  Answering further, OT states that the License Agreement is the best evidence of its contents and denies any allegations of Paragraph No. 36 that are contrary thereto.

**ALLEGATION NO. 37:**

In or about September 2012, Ocean Tomo, however, wrongfully accessed PatentRatings' computer servers located in Irvine, California and wrongfully copied Confidential Information and data contained on those servers and transferred the Confidential Information and data to its own servers for purposes of reverse engineering PatentRatings' algorithms and related software and to create its own competing patent rating system for Ocean Tomo's own benefit, all in violation of the License Agreement, the Supplemental License Agreement, and applicable law.

   **ANSWER:**

OT denies the allegations of Paragraph No. 37.

**ALLEGATION NO. 38:**

Moreover, in violation of the License Agreement and Illinois law, Ocean Tomo has disclosed PatentRatings' Confidential Information (as defined in the License Agreement) to third parties.  For example, on information and belief, Ocean Tomo has disclosed PatentRatings' Confidential Information to AnswerMine and other third-party software developers for the purpose of reverse engineering the PatentRatings algorithms and developing similar algorithms and products based thereon for the benefit of Ocean Tomo, its affiliates, partners and customers.

   **ANSWER:**

OT denies the allegations of Paragraph No. 38.

**ALLEGATION NO. 39:**

In addition, in or about August 2012, Ocean Tomo entered into a joint technology transfer service agreement with the Shenzhen United Property and Share Rights Exchange (UPEX) in China. On information and belief, Ocean Tomo used or provided PatentRatings' Confidential Information to UPEX and thereby assisted UPEX to develop a rating system for Chinese patents and the creation of the US China IP 200™ Index based thereon.

 **ANSWER:**

OT denies the allegations of Paragraph No. 39.

**ALLEGATION NO. 40:**

To make matters worse, Ocean Tomo has breached the License Agreement and violated the law by using PatentRatings' Confidential Information (as defined in the License Agreement) to develop Ocean Tomo's own patent ratings system (the "Ocean Tomo Ratings™ system").

 **ANSWER:**

OT denies the allegations of Paragraph No. 40.

**ALLEGATION NO. 41:**

Article 7.1 of the License Agreement provides, among other things, that Ocean Tomo shall not "use [PatentRatings'] Confidential Information for the purpose of developing or improving a product or method for anyone except [PatentRatings]." Section 8.3 of the Supplemental License Agreement similarly requires that "Ocean Tomo shall use [PatentRatings'] Confidential Information solely in connection with performance under this Agreement and for no other purpose."

 **ANSWER:**

OT denies that Paragraph 7.1 of the License Agreement or Paragraph 8.3 of the

Supplemental License Agreement are correctly quoted. Answering further, OT states that the

License Agreement and the Supplemental License Agreement are the best evidence of their

contents and denies any allegations of Paragraph No. 41 that are contrary thereto.

**ALLEGATION NO. 42:**

In addition, Article 6.1 of the License Agreement provides, among other things, that, during the term of the agreement and for three (3) years thereafter, Ocean Tomo is prohibited from "mak[ing] any statistical patent analytics tools, patent ratings or associated products that are derivative of, or substantially similar to the PatentRatings Tools or the PatentRatings Analysis."

CHICAGO/#2591305.3

**ANSWER:**

OT admits that the License Agreement contains the quoted provision. Answering further, OT states that the License Agreement is the best evidence of its contents and denies any allegations of Paragraph No. 42 that are contrary thereto.

**ALLEGATION NO. 43:**

In direct violation of Articles 7.1 and 6.1 of the License Agreement and Section 8.3 of the Supplemental License Agreement, Ocean Tomo used PatentRatings' Confidential Information to develop a statistical patent scoring system (which Ocean Tomo calls the "Ocean Tomo Ratings" system and "OTR" scores), which it currently promotes, advertises, and markets under its own *Ocean Tomo* brand without the consent or authorization of PatentRatings.

**ANSWER:**

OT denies the allegations of Paragraph No. 43.

**ALLEGATION NO. 44:**

In Section 2.4(b) of the Supplemental License Agreement, Ocean Tomo agreed that it would not "remove any title or any trademark, copyright or patent notices . . . that appear on or in the Licensed Technology and Licensed Data." "Licensed Technology" is defined to include PatentRatings' proprietary PatentRatings™ software platform. Moreover, Article 5.2 of the License Agreement requires Ocean Tomo to "mark all PatentRatings Analysis and all advertisement and promotional materials, and any reports or other products using PatentRatings Analysis with appropriate patent, copyright, and trademark notices as otherwise reasonably directed by " PatentRatings. Article 5.4 of the License Agreement further provides that Ocean Tomo shall "use the [PatentRatings] Marks, or cause the [PatentRatings] Marks to be used, strictly in compliance with all applicable legal requirements as reasonably directed by [PatentRatings]." The "PatentRatings Marks" are defined to include the "PATENTRATINGS" and "IPQ" trademarks, which Ocean Tomo has removed and replaced with its own trademarks.

**ANSWER:**

OT denies the allegations of Paragraph No. 44 which purport to characterize the terms of the License Agreement and the Supplemental License Agreement as incomplete and/or inaccurate characterizations and quotations of those agreements. OT denies the remaining allegations of Paragraph No. 44.

-16-

Answering further, OT states that the License Agreement and the Supplemental License Agreement are the best evidence of their contents and denies any allegations inconsistent therewith.

**ALLEGATION NO. 45:**

In violation of Section 2.4(b) of the Supplemental License Agreement and Articles 5.2 and 5.4 of the License Agreement, Ocean Tomo has modified PatentRatings' proprietary PatentRatings$^{TM}$ software platform by removing some or all of PatentRatings' branding and trademarks (*e.g.*, "PatentRatings" and "IPQ"), and replacing them with Ocean Tomo-exclusive branding (*e.g.*, "Ocean Tomo Ratings" and "OTR"), thereby threatening to irreparably harm the value of PatentRatings' branding and trademarks and to destroy all of the associated good will that PatentRatings has built up over the course of more than a decade.

    **ANSWER:**

OT denies the allegations of Paragraph No. 45.

**ALLEGATION NO. 46:**

On July 16, 2013, PatentRatings transmitted a letter to Ocean Tomo advising Ocean Tomo that it was in material breach of Articles 7.1, 6.1, 5.2, and 5.4 of the License Agreement, and Section 2.4(b) of the Supplemental License Agreement, and demanding that Ocean Tomo immediately cure those breaches.

    **ANSWER:**

OT admits receiving PR's letter dated on or about July 16, 2013 but denies that OT is or was in breach of the License Agreement and/or the Supplemental License Agreement.

**ALLEGATION NO. 47:**

As of the filing of these second amended counterclaims, Ocean Tomo has failed to cure the breaches identified in PatentRatings' July 16, 2013 letter.

    **ANSWER:**

OT denies the allegations of Paragraph No. 47.

CHICAGO/#2591305.3

## Ocean Tomo Wrongfully Interferes With
## PatentRatings' Business Opportunity With NTT Data

**ALLEGATION NO. 48:**

Mr. Barney and PatentRatings had an expectation of entering into a license agreement with NTT Data, a Japanese company that had expressed interest in obtaining a license from PatentRatings to allow NTT Data to develop a PatentRatings system for Japanese patents.

**ANSWER:**

OT lacks knowledge or information sufficient to form a belief as to the truth of Barney and PR's expectations or what NTT Data purportedly expressed to Barney and PR, and therefore, denies those allegations.

**ALLEGATION NO. 49:**

In or about July 2012, Ocean Tomo interfered with Mr. Barney's and PatentRatings' business expectancy with respect to NTT Data by, among other things, falsely representing to NTT Data that the prospective agreement contemplated by NTT Data, Mr. Barney, and PatentRatings would violate the License Agreement and the Supplemental License Agreement, and, on information and belief, threatening to bring litigation against NTT Data if it concluded a license agreement with Patent Ratings. Ocean Tomo further intentionally and wrongfully induced NTT Data to violate and materially breach a Mutual Non-Disclosure Agreement dated as of June 12, 2012 by and between NTT Data and PatentRatings (the "NDA"), by providing Ocean Tomo with confidential written communications between NTT Data and PatentRatings.

**ANSWER:**

OT denies the allegations of Paragraph No. 49.

**ALLEGATION NO. 50:**

The truth, as Ocean Tomo was well aware, is that the prospective business venture contemplated by NTT Data, Mr. Barney, and PatentRatings would not have violated the License Agreement, the Supplemental License Agreement, or any other agreement between Mr. Barney, PatentRatings, and Ocean Tomo. Ocean Tomo nevertheless knowingly made its false representations to NTT Data, with the goal of either holding the deal hostage until Mr. Barney and PatentRatings acceded to Ocean Tomo's unreasonable economic demands, or interfering with Mr. Barney's and PatentRatings' business opportunities in order to further Ocean Tomo's scheme to destroy Mr. Barney and PatentRatings financially to that Ocean Tomo could steal the PatentRatings system and the underlying patents, data, algorithms, and other valuable intellectual property.

**ANSWER:**

OT denies the allegations of Paragraph No. 50.

**Ocean Tomo Diverts Profits Owed to Mr. Barney,
Based On False Accusations of Wrongdoing by Mr. Barney**

**ALLEGATION NO. 51:**

In or about August 2012, Ocean Tomo purported to decide that, as a result of Mr. Barney's alleged noncompliance with Section 13.17 of the Operating Agreement, Mr. Barney would no longer be entitled to receive "all or any portion of the Dividend Allocation" attributable to Mr. Barney's ownership interest in Ocean Tomo.

**ANSWER:**

OT admits that Mr. Barney violated Section 13.17 of the Operating Agreement and that

he is no longer entitled to receive Dividend Allocations. As a result, OT denies any inconsistent

allegations of Paragraph No. 51, and to the extent that Paragraph No. 51 implies that OT first

made a decision regarding Barney's violation in or about August 2012, OT denies the same.

**ALLEGATION NO. 52:**

There is no factual basis for Ocean Tomo's purported findings that Mr. Barney breached Section 13.17 of the Operating Agreement. Instead, that finding is founded upon false allegations, which Ocean Tomo knows are false, but nevertheless has made to further its goals of cheating Mr. Barney out of the benefits that he bargained for in 2004, and trying to destroy Mr. Barney and PatentRatings financially so that Ocean Tomo can steal the PatentRatings system and associated intellectual property.

**ANSWER:**

OT denies the allegations of Paragraph No. 52.

**COUNT I – BREACH OF CONTRACT
(BY MR. BARNEY AGAINST OCEAN TOMO)**

**ALLEGATION NO. 53:**

Mr. Barney incorporates by reference the allegations in Paragraphs 1 through 52.

**ANSWER:**

OT incorporates by reference its Answers to the allegations in Paragraphs 1 through 52.

**ALLEGATION NO. 54:**

Mr. Barney and Ocean Tomo entered into the Operating Agreement.

**ANSWER:**

OT admits that Mr. Barney and OT are both parties to the Operating Agreement.

**ALLEGATION NO. 55:**

Under the terms of the Operating Agreement, Ocean Tomo was required to allocate net profits other than "Net Profits From Operations" among the members of Ocean Tomo *pro rata* in accordance with their percentage interests.

**ANSWER:**

OT admits that the Operating Agreement contains provisions regarding the allocation of net profits from operations, but denies that Paragraph No. 55 contains a full and accurate description of the parties' respective rights and obligations with respect to that issue, and further states that the Operating Agreement is the best evidence of its contents.

**ALLEGATION NO. 56:**

Under the implied covenant of good faith and fair dealing, Ocean Tomo was required to perform its obligations under the Operating Agreement fairly and in good faith, and to refrain from acting to deprive Mr. Barney of the benefits of the contract.

**ANSWER:**

Paragraph No. 56 consists of a legal conclusion to which no response is required. To the extent a response is required, OT denies the allegations of Paragraph No. 56.

**ALLEGATION NO. 57:**

Ocean Tomo breached its obligations under the Operating Agreement, and breached the implied covenant of good faith and fair dealing, by, among other things, treating the proceeds of the ICAP and IPXI transactions as "Net Profits From Operations," and not allocating those proceeds among the members of Ocean Tomo *pro rata* in accordance with their percentage interests.

-20-

**ANSWER:**

OT denies the allegations of Paragraph No. 57.

**ALLEGATION NO. 58:**

In addition, in or about August 2012, Ocean Tomo breached the Operating Agreement, and the implied covenant of good faith and fair dealing, by purporting to decide that, as a result of Mr. Barney's alleged noncompliance with Section 13.17 of the Operating Agreement, Mr. Barney would no longer be entitled to receive "all or any portion of the Dividend Allocation" attributable to Mr. Barney's ownership interest in Ocean Tomo.

**ANSWER:**

OT denies the allegations of Paragraph No. 58.

**ALLEGATION NO. 59:**

There is no factual basis for Ocean Tomo's purported findings that Mr. Barney breached Section 13.17 of the Operating Agreement. Instead, those "findings" are founded upon false allegations, which Ocean Tomo knows are false.

**ANSWER:**

OT denies the allegations of Paragraph No. 59.

**ALLEGATION NO. 60:**

On information and belief, Ocean Tomo also has engaged in other misallocations of profits and losses that also violate the Operating Agreement and the implied covenant of good faith and fair dealing, and that also have caused Mr. Barney to suffer damages.

**ANSWER:**

OT denies the allegations of Paragraph No. 60.

**ALLEGATION NO. 61:**

Ocean Tomo also has breached its obligations under the Operating Agreement (and under the Illinois Limited Liability Company Act), and the implied covenant of good faith and fair dealing, by refusing to provide Mr. Barney with access to the books and records of Ocean Tomo.

**ANSWER:**

OT denies the allegations of Paragraph No. 61.

**ALLEGATION NO. 62:**

Mr. Barney performed, or was excused from performing, all of his obligations under the Operating Agreement.

**ANSWER:**

OT denies the allegations of Paragraph No. 62.

**ALLEGATION NO. 63:**

As a result of Ocean Tomo's breaches of the Operating Agreement and of the implied covenant of good faith and fair dealing, Mr. Barney has suffered damages in an amount to be proven at trial, and is entitled to other relief under Illinois law.

**ANSWER:**

OT denies the allegations of Paragraph No. 63.

## COUNT II – BREACH OF THE IMPLIED
## COVENANT OF GOOD FAITH AND FAIR DEALING
## (BY MR. BARNEY AGAINST OCEAN TOMO)

(Pursuant to the Court's September 9, 2013 Memorandum Opinion and Order, Mr. Barney has combined Count II with Count I.)

## COUNT III – BREACH OF CONTRACT
## (BY MR. BARNEY AGAINST OCEAN TOMO)

**ALLEGATION NO. 64:**

Mr. Barney incorporates by reference the allegations in Paragraphs 1 through 52.

**ANSWER:**

OT incorporates by reference its Answers to the allegations in Paragraphs 1 through 52.

**ALLEGATION NO. 65:**

In the Equity Exchange Agreement, Ocean Tomo represented and warranted, among other things, that:

a.    "There are no Contracts relating to the issuance, sale, or transfer of any equity securities or other securities of [Ocean Tomo]" (Ex. 1§ 4.3);

b.      "Schedule 4.12(a) contains a complete and accurate list, and [Ocean Tomo] has delivered to [PatentRatings] and Barney true and complete copies of . . . (i) each Applicable Contract that was not entered into in the Ordinary Course of Business and that involves expenditures or receipts of [Ocean Tomo] in excess of $1,000" . . . and (iii) each joint venture, partnership, and other applicable Contract (however named) involving a sharing of profits, losses, costs, or liabilities by [Ocean Tomo] with any other Person" (Ex. 1 §§ 4.12(a)(i) & 4.12(a)(iii).)

**ANSWER:**

OT admits that the Equity Exchange Agreement contains the quoted provisions, but denies that Paragraph No. 65 contains a full and accurate description of the parties' respective rights and obligations with respect to that issue, and further states that the Equity Exchange Agreement is the best evidence of its contents.

**ALLEGATION NO. 66:**

Mr. Barney learned in or about December 2011 that, at the time Ocean Tomo made those representations and warranties to Mr. Barney, there was in fact an existing secret agreement between Ocean Tomo and Michael Lasinski under which Ocean Tomo had promised to transfer at a later date a significant number of equity units in Ocean Tomo to Mr. Lasinski. (Ocean Tomo and Mr. Lasinski entered into that agreement because Mr. Lasinski was bound by a covenant not to compete with his former employer, and therefore could not "publicly" become a member of Ocean Tomo.)

**ANSWER:**

OT denies the allegations of Paragraph No. 66.

**ALLEGATION NO. 67:**

Ocean Tomo's agreement with Mr. Lasinski constitutes a material breach of Ocean Tomo's representations and warranties in the Equity Exchange Agreement.

**ANSWER:**

OT denies the allegations of Paragraph No. 67.

**ALLEGATION NO. 68:**

Mr. Barney performed all of his obligations under the Equity Exchange Agreement.

**ANSWER:**

OT denies the allegations of Paragraph No. 68.

**ALLEGATION NO. 69:**

As a result of Ocean Tomo's breach of the Equity Exchange Agreement, Mr. Barney has suffered damages in an amount to be determined at trial.

**ANSWER:**

OT denies the allegations of Paragraph No. 69.

**COUNT IV – BREACH OF CONTRACT**
**(BY PATENTRATINGS AGAINST OCEAN TOMO)**

**ALLEGATION NO. 70:**

PatentRatings incorporates by reference the allegations in Paragraphs 1 through 52.

**ANSWER:**

OT incorporates by reference its Answers to the allegations in Paragraphs 1 through 52.

**ALLEGATION NO. 71:**

In Paragraph 7.1 of the License Agreement, Ocean Tomo agreed that the "Licensed Technology contains certain confidential information, trade secrets, and know-how related to statistical patent analysis, mapping and valuation ("Confidential Information") that is proprietary to [PatentRatings]. [Ocean Tomo] agrees to hold such Confidential Information in strict confidence, not to use it commercially for its own benefit or the benefit of anyone else, and not to use the Confidential Information for the purpose of developing or improving a product or method for anyone except [PatentRatings], except as authorized herein."

**ANSWER:**

OT admits that the License Agreement contains the quoted provisions, but denies that

Paragraph No. 71 contains a full and accurate description of the parties' respective rights and

obligations with respect to that issue, and further states that the License Agreement is the best

evidence of its contents.

**ALLEGATION NO. 72:**

In violation of the License Agreement, Ocean Tomo has disclosed PatentRatings' Confidential Information (as defined in the License Agreement) to third parties. For example, on information and belief, Ocean Tomo has disclosed PatentRatings' Confidential Information to AnswerMine and other third-party software developers for the purpose of reverse engineering the PatentRatings algorithms and developing similar algorithms and products based thereon for the benefit of Ocean Tomo, its affiliates, partners, and customers.

**ANSWER:**

OT denies the allegations of Paragraph No. 72.

**ALLEGATION NO. 73:**

In addition, Ocean Tomo has breached the License Agreement by using PatentRatings' Confidential Information (as defined in the License Agreement) to develop Ocean Tomo's own patent ratings system and related products for its own benefit and the benefit of its affiliates, partners and customers. In or about August 2012, Ocean Tomo entered into a joint technology transfer service agreement with the Shenzhen United Property and Share Rights Exchange (UPEX) in China. On information and belief, Ocean Tomo used or provided PatentRatings' Confidential Information to UPEX and thereby assisted UPEX to develop a rating system for Chinese patents and the creation of the US China IP 200™ Index based thereon.

**ANSWER:**

OT denies the allegations of Paragraph No. 73.

**ALLEGATION NO. 74:**

Ocean Tomo also breached the License Agreement and the Supplemental License Agreement by using PatentRatings' Confidential Information to develop a statistical patent scoring system (which Ocean Tomo calls the "Ocean Tomo Ratings" system and "OTR" scores), which it currently promotes, advertises, and markets under its own *Ocean Tomo* brand without the consent or authorization of PatentRatings, and by modifying PatentRatings' proprietary PatentRatings™ software platform by removing some or all of PatentRatings' branding and trademarks, and replacing them with Ocean Tomo-exclusive branding.

**ANSWER:**

OT denies the allegations of Paragraph No. 74.

**ALLEGATION NO. 75:**

Moreover, as part of its scheme to misappropriate Confidential Information of PatentRatings, in or about September 2012, Ocean Tomo wrongfully accessed PatentRatings' computer servers located in Irvine, California and wrongfully copied Confidential Information

and data contained on those servers and transferred the Confidential Information and data to its own servers for purposes of using or reverse-engineering PatentRatings' algorithms and related software for Ocean Tomo's benefit.

**ANSWER:**

OT denies the allegations of Paragraph No. 75.

**ALLEGATION NO. 76:**

PatentRatings has performed, or has been excused from performing, all of its obligations under the License Agreement and the Supplemental License Agreement.

**ANSWER:**

OT denies the allegations of Paragraph No. 76.

**ALLEGATION NO. 77:**

As a result of Ocean Tomo's breaches of the License Agreement and the Supplemental License Agreement, PatentRatings has suffered damages in an amount to be determined at trial.

**ANSWER:**

OT denies the allegations of Paragraph No. 77.

## COUNT V – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (BY MR. BARNEY AND PATENTRATINGS AGAINST OCEAN TOMO)

**ALLEGATION NO. 78:**

Mr. Barney and PatentRatings incorporate by reference the allegations in Paragraphs 1 through 52.

**ANSWER:**

OT incorporates by reference its Answers to the allegations in Paragraphs 1 through 52.

**ALLEGATION NO. 79:**

Mr. Barney and PatentRatings had a reasonable expectation of entering into a license agreement with NTT Data, a Japanese company that had expressed interest in obtaining a license from PatentRatings to develop a patent ratings system for Japanese patents.

**ANSWER:**

OT denies the allegations of Paragraph No. 79.

**ALLEGATION NO. 80:**

Ocean Tomo was aware of Mr. Barney's and PatentRatings' expectation of a license agreement with NTT Data.

**ANSWER:**

OT denies the allegations of Paragraph No. 80.

**ALLEGATION NO. 81:**

In or about July 2012, Ocean Tomo intentionally and maliciously interfered with Mr. Barney's and PatentRatings' business expectancy with respect to NTT Data by, among other things, falsely representing to NTT Data that the prospective license agreement contemplated by NTT Data, Mr. Barney, and PatentRatings would violate the License Agreement and a Supplemental License Agreement between Ocean Tomo and PatentRatings dated May 18, 2006 (the "Supplemental License Agreement") and threatening to bring legal action against NTT Data. Ocean Tomo further intentionally and wrongfully induced NTT Data to violate and materially breach the NDA between NTT Data and PatentRatings by providing to Ocean Tomo copies of confidential written communications between NTT Data and PatentRatings.

**ANSWER:**

OT denies the allegations of Paragraph No. 81.

**ALLEGATION NO. 82:**

The truth, as Ocean Tomo was well aware, is that the prospective business venture contemplated by NTT Data, Mr. Barney, and PatentRatings would not have violated the License Agreement, the Supplemental License Agreement, or any other agreement between Mr. Barney, PatentRatings, and Ocean Tomo. Ocean Tomo nevertheless knowingly made its false representations to NTT Data, and with the goal of either holding the deal hostage until Mr. Barney and PatentRatings acceded to Ocean Tomo's unreasonable economic demands, or interfering with Mr. Barney's and PatentRatings' business opportunities to further Ocean Tomo's scheme to destroy Mr. Barney and PatentRatings to that Ocean Tomo could steal the PatentRatings system.

**ANSWER:**

OT denies the allegations of Paragraph No. 82.

**ALLEGATION NO. 83:**

As a result of Ocean Tomo's intentional, malicious, and unjustified interference, Mr. Barney's and PatentRatings' expectancy of a license agreement with NTT Data was terminated.

**ANSWER:**

OT denies the allegations of Paragraph No. 83.

**ALLEGATION NO. 84:**

As a result of Ocean Tomo's tortious interference with their business expectancy, Mr. Barney and PatentRatings have suffered damages in an amount to be determined at trial.

**ANSWER:**

OT denies the allegations of Paragraph No. 84.

## COUNT VI – VIOLATION OF 18 U.S.C. § 1030
## (BY PATENTRATINGS AGAINST OCEAN TOMO)

**ALLEGATION NO. 85:**

PatentRatings incorporates by reference the allegations in Paragraphs 1 through 52.

**ANSWER:**

OT incorporates by reference its Answers to the allegations in Paragraphs 1 through 52.

**ALLEGATION NO. 86:**

As part of its wrongful campaign to destroy and financially incapacitate Mr. Barney and PatentRatings, and to steal the PatentRatings system, in or about May 2013, Ocean Tomo intentionally, and without authorization, accessed computer servers and related hardware (the "Servers") located in the Irvine, California data center that housed the PatentRatings system. Ocean Tomo dismantled and permanently removed those Servers without authorization, and over the strong objections of PatentRatings. These wrongful acts directly caused damage to PatentRatings by diminishing the completeness and usability of the data and software on those Servers and destroying and/or significantly impairing PatentRatings' ability to access and use the Servers and the data and software contained on those Servers. (Before dismantling the Servers and causing that damage, Ocean Tomo had wrongfully accessed those Servers, copied Confidential Information and data contained on the Servers, and transferred the Confidential Information and data to its own servers for purposes of using or reverse engineering PatentRatings' algorithms and related software for Ocean Tomo's own benefit.) As a result of Ocean Tomo's unauthorized access to, dismantling and removal of the Servers, PatentRatings

suffered losses and damages consisting of, among other things, permanent loss of access to valuable Confidential Information, data and software contained on the Servers, loss of ability to meet contractual obligations owed by PatentRatings to other licensees of PatentRatings, and lost profits directly attributable to the damage that Ocean Tomo caused to the Servers.

**ANSWER:**

OT denies the allegations of Paragraph No. 86.

**ALLEGATION NO. 87:**

The Servers were used in interstate commerce and constituted "protected computers" under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

**ANSWER:**

Paragraph No. 87 contains a legal conclusion to which no response is required. To the extent a response is required, OT denies the allegations of Paragraph No. 87.

**ALLEGATION NO. 88:**

As a result of Ocean Tomo's violations of the Computer Fraud and Abuse Act, PatentRatings suffered losses and damages in excess of $5,000.

**ANSWER:**

OT denies the allegations of Paragraph No. 88.

**AFFIRMATIVE DEFENSES**

**First Affirmative Defense**

PatentRatings is not entitled to collect damages due for any alleged breach of Article 6.1 of the License Agreement, which purports to prohibit OT from "mak[ing] any statistical patent analytics tools, patent ratings or associated products that are derivative of, or substantially similar to the PatentRatings Tools or the PatentRatings Analysis," because the License Agreement is unenforceable due to PatentRatings's misuse of the patents and copyrights licensed in the License Agreement.

### Second Affirmative Defense

PatentRatings is not entitled to collect damages due for any alleged breach of the License Agreement because the patents that are part of the PatentRatings Tools (as that term is defined in Ocean Tomo's Amended Complaint) are invalid for failure to comply with the requirements for patentability under the patent laws, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

### Third Affirmative Defense

PatentRatings's Second Amended Counterclaims are barred, in whole or in part, by the applicable statutes of limitations.

### Fourth Affirmative Defense

PatentRatings's Second Amended Counterclaims are barred, in whole or in part, by the doctrine of laches.

### Fifth Affirmative Defense

PatentRatings's Second Amended Counterclaims are barred, in whole or in part, by the doctrine of estoppel.

### Sixth Affirmative Defense

Counts I, III and IV of PatentRatings's Second Amended Counterclaims for Breach of the Operating Agreement, Equity Exchange Agreement, License Agreement and Supplemental

License Agreement fail as a result of Mr. Barney's and/or PatentRatings's prior breaches of those agreements, which breaches excused further performance by OT under the same.

Respectfully submitted,

OCEAN TOMO, LLC


By:  /s/ Jeremy R. Heuer

One of Its Attorneys


Derek Zolner
Jeremy R. Heuer
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, Illinois  60601-1003
T:  +1 (312) 609-7500

Dated:  June 26, 2014

**CERTIFICATE OF SERVICE**

I, Jeremy R. Heuer, an attorney, hereby certify that on June 26, 2014, I caused to be electronically filed the foregoing OCEAN TOMO, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS-COUNTER DEFENDANTS' SECOND AMENDED COUNTERCLAIMS with the Clerk of the Court using the Court's Case Management/Electronic Case Files (CM/ECF) system, which will send notifications of such filing to the following counsel of record:

David C. Layden                    DLayden@jenner.com


                                        /s/ Jeremy R. Heuer_____