**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| OCEAN TOMO, LLC, | ) | |
| | ) | |
|     Plaintiff-Counterdefendant, | ) | |
| | ) | |
| vs. | ) | No. 12 C 8450 |
| | ) | |
| JONATHAN BARNEY and | ) | Hon. Joan B. Gottschall |
| PATENTRATINGS, LLC, | ) | |
| | ) | |
|     Defendants-Counterplaintiffs. | ) | |

## AMENDED COUNTERCLAIM OF
## JONATHAN BARNEY AND PATENTRATINGS, LLC

Jonathan Barney ("Mr. Barney") and PatentRatings, LLC ("PatentRatings"), for their Amended Counterclaim against Ocean Tomo, LLC ("Ocean Tomo"), allege as follows:

## NATURE OF THE ACTION

1.    This amended counterclaim arises from Ocean Tomo's malicious, underhanded campaign to wrongfully oppress and freeze out one of its minority owners, Jonathan Barney; to cheat Mr. Barney out of the substantial benefits that Ocean Tomo promised to Mr. Barney in 2004 when Ocean Tomo induced him to exchange an ownership interest in his company, PatentRatings, LLC, for a minority ownership interest in Ocean Tomo; and to attempt to steal, though a variety of means, the very valuable PatentRatings System and the underlying patents, data, algorithms, and other valuable intellectual property owned by PatentRatings. Mr. Barney and PatentRatings bring this counterclaim to recover the significant damages they have suffered because of Ocean Tomo's fraud, breaches of contract, tortious interference with prospective economic advantage, and violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA"), to recover punitive damages to punish Ocean Tomo for its willful and malicious conduct, and to compel Ocean Tomo to provide access to the books and records of the company.

## PARTIES

2.      Counterplaintiff Jonathan Barney ("Mr. Barney") lives in Newport Beach, California.  He is a member of Ocean Tomo, owning a minority interest in the company.  On information and belief, Mr. Barney currently owns 136.9 units in Ocean Tomo, which represents 8.12% of the outstanding units issued by Ocean Tomo.  Mr. Barney also owns 23.1 units purportedly forfeited by Mr. Barney when Ocean Tomo wrongfully forced him to resign, which represents an additional 1.37% of the outstanding units in the company.

3.      Counterplaintiff PatentRatings, LLC ("PatentRatings") is a California limited liability company, with its principal place of business in Irvine, California.

4.      Counterdefendant Ocean Tomo, LLC ("Ocean Tomo") is an Illinois limited liability company, with its principal place of business in Chicago, Illinois.  Ocean Tomo is a member of PatentRatings, and currently owns 25% of the outstanding units in PatentRatings.

## JURISDICTION

5.      This Court has jurisdiction over this amended counterclaim under 28 U.S.C. §1331 and 28 U.S.C. §1367.

## ALLEGATIONS COMMON TO ALL COUNTS

### Mr. Barney Invents The PatentRatings System, And Forms PatentRatings, LLC

6.      Mr. Barney is an accomplished engineer, inventor, entrepreneur, and patent lawyer.  One of Mr. Barney's inventions is the PatentRatings® patent analysis system (the "PatentRatings System"), which is among the most advanced statistical patent data, rating, and analysis systems in the world.  The statistical rating algorithm underlying the PatentRatings System has been awarded multiple patents by the United States Patent and Trademark Office and is used by, among others, major global corporations to assess the quality and relative value of

their patent portfolios (and the portfolios of competitors and potential acquisition targets), relevant patents and technologies, competition, and relevant trends.

7. In 2000, Mr. Barney formed a company, PatentRatings, LLC, to implement the PatentRatings System, and bring it to the marketplace. Mr. Barney invested enormous amounts of his time, energy, skill, and creativity ─ and significant amounts of his own funds ─ in PatentRatings, LLC.

**Mr. Barney Agrees To Sell Ocean Tomo An Interest In
PatentRatings, LLC In Exchange For A Minority Interest In Ocean Tomo**

8. Word of Mr. Barney's innovative PatentRatings System quickly spread in the industry. A number of people and entities who were interested in the system reached out to Mr. Barney. One of them was Ocean Tomo, LLC, a Chicago-based firm.

9. Ocean Tomo wanted to be able to take advantage of the PatentRatings System for the benefit of Ocean Tomo, and claimed that, in exchange, it was willing to provide Mr. Barney with a number of significant benefits, including the right to share in Ocean Tomo's profits (and losses), and the right to receive a portion of the revenues generated by Ocean Tomo using the PatentRatings System. Mr. Barney and Ocean Tomo ultimately negotiated a transaction that involved a September 1, 2004 license agreement (as amended by an amendment dated May 2, 2005, the "License Agreement"; a copy of the License Agreement is attached as Exhibit 1), a December 31, 2004 equity exchange agreement (the "Equity Exchange Agreement"; a copy of the Equity Exchange Agreement is attached as Exhibit 2), a December 31, 2004 letter agreement (the "Letter Agreement"; a copy of the Letter Agreement is attached as Exhibit 3), and an employment agreement dated January 1, 2005 (as amended by an amendment dated July 28, 2008, the "Employment Agreement"; a copy of the Employment Agreement is attached as Exhibit 4). All of these agreements were entered into by and between the same parties, were

executed at the same time, and were each a necessary condition and required part of the overall transaction contemplated by the parties. The License Agreement granted Ocean Tomo a royalty-free license to use the PatentRatings System for its own internal use in exchange for a promise to pay PatentRatings 100% of any revenues collected by Ocean Tomo from the sale of PatentRatings products and services to its clients. In the Letter Agreement, the parties agreed that "[PatentRatings] products will not be utilized by [Ocean Tomo's] expert services practice." Under the Equity Exchange Agreement, Ocean Tomo acquired 25% of the equity in PatentRatings from Mr. Barney, and Mr. Barney acquired 100 units (representing approximately 6.8% of the then-outstanding equity in Ocean Tomo) from Ocean Tomo. PatentRatings and Ocean Tomo later entered into a Supplemental License Agreement dated May 18, 2006 (the "Supplemental License Agreement"; a copy of the Supplemental License Agreement is attached as Exhibit 5).

10.     In order to induce Mr. Barney to enter into the License Agreement and the Equity Exchange Agreement, Ocean Tomo promised Mr. Barney, among other things, that: (a) Mr. Barney would have employment as a high-level executive at Ocean Tomo; (b) Mr. Barney would receive additional earned equity in Ocean Tomo; and (c) there were no outstanding contracts or promises relating to the issuance, sale, or transfer of any equity securities of Ocean Tomo, which was important to Mr. Barney, because any existing, undisclosed agreements to give Ocean Tomo shares to anyone else would dilute the value of the Ocean Tomo shares Mr. Barney was to receive.

**The Operating Agreement**

11.     As a member of Ocean Tomo, Mr. Barney is a party to the operating agreement for the company, which has been amended from time to time. On information and belief, the current version of the operating agreement is the Second Amended and Restated Operating

Agreement of Ocean Tomo, LLC dated as of January 1, 2008 (the "Operating Agreement"; a copy of the Operating Agreement is attached as Exhibit 6).

12.     The Operating Agreement includes provisions relating to, among other things, the allocations of profits and losses among the members of Ocean Tomo, the issuance of additional equity units to members, and the rights of members to have access to the books and records of Ocean Tomo.

13.     With respect to the allocation of profits and losses among the members, the Operating Agreement provides that, subject to certain adjustments: (a) 75% of "Net Profits from Operations" shall be allocated among the members as determined by the Board of Managers, and the remaining 25% of "Net Profits from Operations" shall be allocated among the members in accordance with their respective percentage interests; and (b) "Net Profits (Other than Net Profits from Operations)" shall be allocated among the members in accordance with their respective percentage interests.  These provisions meant that the Board of Managers purportedly had the ability to exercise discretion with respect to the allocation of 75% of the net profits from operations, but had no such purported discretion with respect to net profits other than net profits from operations.

14.     As Ocean Tomo had promised Mr. Barney in 2004 when he agreed to exchange equity in PatentRatings, LLC for a minority interest in Ocean Tomo, the Operating Agreement also provides, in Section 10.06, that each member while employed by Ocean Tomo (including Mr. Barney) would receive an additional 10 equity units each year.

15.     With respect to the Ocean Tomo members' rights to have access to the books and records of Ocean Tomo, Section 6.04 of the Operating Agreement provides: "The Board of Managers shall maintain and preserve, during the term of the Company, the accounts, books and

relevant Company documents described in Section 9.09. Each Member shall have the right, at a time during ordinary business hours, as reasonably determined by the Board of Managers, to inspect and copy, at the requesting Member's expense, the books and records of the Company described in Section 9.09 hereof, and such other documents which the Board of Managers, in its discretion, deems appropriate." Section 9.09, in turn, states that, "At the expense of the Company, the Board of Managers shall maintain records and accounts of the operations and expenditures of the Company," and then identifies the minimum records that the Company shall keep at its principal place of business.

16.     The books and records of Ocean Tomo that are referenced in Section 9.09 of the Operating Agreement include, but are not limited to, detailed monthly and quarterly financial reporting packages, and "equity bonus tracker" reports.

**After Ocean Tomo Obtains Access To And Leverage Over PatentRatings, PatentRatings And Mr. Barney Learn That It Has No Interest In Complying With Its Promises**

17.     After entering into the transactions with Ocean Tomo in 2004, and after Mr. Barney became a senior executive of the company, PatentRatings and Mr. Barney soon learned what others before (and after) them also discovered ─ the environment at Ocean Tomo was rife with conflict, back-biting, and shady business and accounting practices.

18.     Even in the face of such a profoundly negative environment, however, PatentRatings and Mr. Barney did their best to try to make the partnership with Ocean Tomo a success. In good faith, PatentRatings consented to Ocean Tomo hiring away its founder and sole employee, Mr. Barney, and provided Ocean Tomo with its full support and assistance in further developing and exploiting the PatentRatings System for the mutual benefit of Ocean Tomo and PatentRatings. In good faith, Mr. Barney consistently devoted his time, talent, energy, and creativity to Ocean Tomo. Mr. Barney also provided, at Ocean Tomo's specific request, detailed

Confidential Information (as defined in the License Agreement) sufficient to enable Ocean Tomo to operate, maintain, and improve the PatentRatings System on its own in the event that Mr. Barney was no longer able to do so (such as in the event of his death or incapacity).

19.      However, once Ocean Tomo received what it wanted from PatentRatings and Mr. Barney, Ocean Tomo repaid their hard work, dedication, and good faith by embarking on a campaign to force Mr. Barney to resign from Ocean Tomo, to freeze Mr. Barney out of Ocean Tomo management, and to deprive Mr. Barney and PatentRatings of the significant other benefits they had been promised and were entitled to receive. Ocean Tomo has further attempted to destroy or incapacitate Mr. Barney and PatentRatings financially by, among other things, defaulting on its contractual obligations, impairing Mr. Barney's and PatentRatings' ability to earn income from other sources, and bringing multiple baseless litigation claims against Mr. Barney and PatentRatings — all with the intent and purpose of pummeling Mr. Barney and PatentRatings financially while Ocean Tomo steals the very valuable PatentRatings System and the underlying patents, data, algorithms, and other valuable intellectual property owned by PatentRatings, and wrongfully profits from all of Mr. Barney's years of hard work, investment, and sacrifice.

**Ocean Tomo Uses "Creative" Accounting**
**To Avoid Its Obligation To Share *Pro Rata* With Mr. Barney**
**Profits Relating To The ICAP And IPXI Transactions**

20.      For example, in 2009, Ocean Tomo completed the sale of one of its businesses, the Ocean Tomo Transactions business, to ICAP. The profits from that sale, which totaled approximately $10 million, constituted net profits other than "Net Profits From Operations," and therefore were required to be distributed among the members of Ocean Tomo *pro rata* in accordance with their ownership interests.

21.     Remarkably, however, Ocean Tomo apparently treated the profits from the ICAP sale as "Net Profits From Operations," in order to attempt to justify Ocean Tomo's failure to allocate those profits *pro rata* in accordance with the members' ownership interests, as the Operating Agreement required.

22.     By doing so, Ocean Tomo not only violated accounting principles (and common sense), but also representations that were made to Mr. Barney by James Malackowski, the President of Ocean Tomo, before and after the ICAP transaction closed, regarding the allocation of the profits from that transaction.

23.     On information and belief, Ocean Tomo appears to have engaged in similar chicanery with respect to the proceeds resulting from the sale of shares of its Intellectual Property Exchange International, Inc. and/or IPXI Holdings, LLC businesses (individually or collectively, "IPXI") to new investors.

**Ocean Tomo Forces Mr. Barney To Resign To Freeze Him Out**
**And To Deny Him The Salary, Benefits, and Equity Interests He Was Promised**

24.     Ultimately, Ocean Tomo created intolerable working conditions and severe conflicts of interests with the goal of forcing Mr. Barney to resign his employment from Ocean Tomo ─ which resignation Ocean Tomo intended to use as an excuse for depriving Mr. Barney of the significant benefits that Mr. Barney had been promised and was entitled to receive.

25.     By forcing Mr. Barney to resign in February 2011, Ocean Tomo intended to avoid paying Mr. Barney his salary and benefits as a senior executive at Ocean Tomo. The position as a senior executive, and the salary and benefits package associated with it, was one of the significant benefits that Mr. Barney was promised in 2004 when he agreed to exchange equity in PatentRatings for a minority interest in Ocean Tomo.

26. Moreover, after forcing Mr. Barney to resign, Ocean Tomo also purported to exercise purported rights to redeem ─ without paying any consideration whatsoever ─ a substantial portion of the additional equity units that Mr. Barney had received. On information and belief, Ocean Tomo's desire to deprive Mr. Barney of those equity units was one of the motivating factors that led it to force Mr. Barney to resign.

**In An Effort To Conceal Its Wrongdoing, Ocean Tomo Refuses To Allow**
**Mr. Barney Reasonable Access To The Books And Records Of Ocean Tomo**

27. As described above, Ocean Tomo forced Mr. Barney to resign his employment from Ocean Tomo in February 2011.

28. Following his resignation, Mr. Barney made repeated requests for access to the books and records of Ocean Tomo.

29. Ocean Tomo has denied those requests without any legitimate justification.

30. On information and belief, Ocean Tomo has denied Mr. Barney access to the books and records of the company in an effort to impair Mr. Barney's ability to understand the value of his equity interest in Ocean Tomo and the amount of dividends and other distributions owed, and to frustrate his efforts to discover further information about Ocean Tomo's wrongdoing. Mr. Barney anticipates that discovery in this action will reveal significant accounting discrepancies and other wrongdoing by Ocean Tomo (and possibly others) in addition to what is alleged here, and reserves his rights to amend his pleading to assert claims arising from all such wrongdoing.

**Mr. Barney And PatentRatings Discover That Ocean Tomo Had Breached**
**Its Representations And Warranties In The Equity Exchange Agreement**

31. After being forced out of Ocean Tomo ─ and deprived of any meaningful access to the books and records of the company ─ Mr. Barney and PatentRatings discovered that Ocean

Tomo had breached the representations and warranties that it made in the Equity Exchange Agreement.

32.     In the Equity Exchange Agreement, Ocean Tomo represented and warranted, among other things, that:

> a.   "There are no Contracts relating to the issuance, sale, or transfer of any equity securities or other securities of [Ocean Tomo]" (Ex. 2 § 4.3);
>
> b.   "Schedule 4.12(a) contains a complete and accurate list, and [Ocean Tomo] has delivered to [PatentRatings] and Barney true and complete copies of. . . (i) each Applicable Contract that was not entered into in the Ordinary Course of Business and that involves expenditures or receipts of [Ocean Tomo] in excess of $1,000" . . . and (iii) each joint venture, partnership, and other applicable Contract (however named) involving a sharing of profits, losses, costs, or liabilities by [Ocean Tomo] with any other Person" (Ex. 2 §§ 4.12(a)(i) & 4.12(a)(iii).)

33.     Mr. Barney discovered in or about December 2011 that, at the time Ocean Tomo made those representations and warranties to Mr. Barney, there was in fact an existing secret agreement between Ocean Tomo and Michael Lasinski under which Ocean Tomo had promised to transfer at a later date a significant number of equity units in Ocean Tomo to Mr. Lasinski. (Ocean Tomo and Mr. Lasinski entered into that agreement because Mr. Lasinski was bound by a covenant not to compete with his former employer, and therefore could not "publicly" become a member of Ocean Tomo.)

34.     Ocean Tomo's agreement with Mr. Lasinski constitutes a material breach of Ocean Tomo's representations and warranties in the Equity Exchange Agreement.

**PatentRatings Discovers That Ocean Tomo Had Fraudulently Induced
PatentRatings To Enter Into Further Agreements In 2007,
And Fraudulently Concealed Revenues Owed By Ocean Tomo**

35.     After entering into the License Agreement, Ocean Tomo began to use the PatentRatings System ever more increasingly in its existing business.  Further, Ocean Tomo began to envision novel applications and new business ventures that it could engage in using the PatentRatings System.  These expanded and novel uses required an expansion or upgrade of the existing PatentRatings System.  PatentRatings did not have the capital for this expansion.  Ocean Tomo did, so Ocean Tomo agreed to provide the capital by way of loans to PatentRatings.

36.     On or about around May 31, 2005, PatentRatings and Ocean Tomo entered into a Management Services Agreement ("MSA") by which (among other things) Ocean Tomo assumed managerial control of PatentRatings, including without limitation authority to loan money to PatentRatings.  Under the MSA, Ocean Tomo was still entitled to royalty-free use of the PatentRatings System for its internal purposes and PatentRatings was still entitled to receive 100% of the revenues Ocean Tomo collected from the sale of PatentRatings products and services to its clients, but PatentRatings was obligated to pay Ocean Tomo a management fee of 86.75% of its net revenues.  Under the MSA, Ocean Tomo hired and managed all of the personnel and contractors engaged to build Ocean Tomo's desired improvements to the PatentRatings System, which improvements would become the property of PatentRatings under the parties' agreements.  Ocean Tomo claimed the amounts expended for this purpose were a loan to PatentRatings.

37.     By mid-2007, Ocean Tomo asserted that the amount loaned to PatentRatings under the MSA was well in excess of $1.5 million.  PatentRatings disputed the amount and requested an accounting of the loans, but received nothing.  PatentRatings also observed that the work being directed by Ocean Tomo under the MSA did not create the potential of greater

revenue to PatentRatings in the future but rather was in the nature of improving Ocean Tomo's day-to-day business. Thus, PatentRatings believed it was footing the bill for Ocean Tomo's costs of doing business. PatentRatings desired to regain control of its fiscal affairs and demanded that Ocean Tomo pay for all further development of the PatentRatings System. PatentRatings also stated to Ocean Tomo that it intended to exercise its right to terminate the MSA and that it would no longer agree to pay for the costs Ocean Tomo incurred and was continuing to incur in connection with its further use and development of the PatentRatings System.

38.     The dispute came to a head in July 2007 when Mr. Barney and James Malackowski (chief executive officer of Ocean Tomo) engaged in a heated negotiation about the parties' relationship. Mr. Barney, unhappy that Ocean Tomo had purported to loan PatentRatings in excess of $1.5 million but had failed to either provide PatentRatings with any actual capital or account for the sums allegedly "owed," explained that PatentRatings intended to terminate the MSA and that Mr. Barney intended to terminate his employment with Ocean Tomo. Eventually, a compromise was reached whereby Ocean Tomo agreed to assume the obligation for all further expenses associated with Ocean Tomo's use and further development of the PatentRatings System and PatentRatings agreed to enter into a $1.5 million note and accept a reduced share of revenues from Ocean Tomo's sale of PatentRatings products and services to its clients.

39.     On or about July 19, 2007, Ocean Tomo and PatentRatings entered into a written amendment of the License Agreement (the "Amendment"; a copy of the Amendment is attached as Exhibit 7). The Amendment provides, among other things, "OT will no longer increase the Principal due under the Note (nor accrue any interest thereon) for further investments made by

OT for any Improvements."  At paragraph H, the Amendment provides that the MSA is terminated and declared null and void.  The Amendment also provides that Ocean Tomo would pay PatentRatings either a 13.25% or 25% share (depending on the category of product or service delivered) of any revenues it generated using the PatentRatings System.  In connection with the Amendment, Ocean Tomo and PatentRatings entered into a Secured Promissory Note (the "Note"), by which PatentRatings promised to pay to Ocean Tomo the principal sum of $1.5 million, and an Intellectual Property Security Agreement (the "Security Agreement"), by which PatentRatings granted to Ocean Tomo a security interest in all of its patents, trademarks, and other assets as security for its obligation under the Note (a copy of the Note and the Security Agreement are attached as Exhibits 8 and 9, respectively).  By executing the Amendment, the Note and the Security Agreement, PatentRatings attempted to resolve the disputed position by Ocean Tomo that Ocean Tomo had extended in excess of $1.5 million in "loans" to PatentRatings and any future obligations to pay, reimburse, or be indebted for any further expenses incurred by Ocean Tomo for its use of, and improvements to, the PatentRatings System.

40.     Prior to and at the time Mr. Barney executed the Amendment, the Note and the Security Agreement on behalf of PatentRatings, Mr. Malackowski repeatedly assured Mr. Barney that Ocean Tomo would assume the obligation for all further expenses associated with Ocean Tomo's use and continued development of the PatentRatings System, and that PatentRatings would have no further obligation for such expenses.  These statements were reiterated by Ray Millien, Ocean Tomo's in-house counsel who drafted the agreement documents.  Mr. Malackowski also assured Mr. Barney that: (i) Ocean Tomo had not used and was not using the PatentRatings Analysis (as defined in the License Agreement) to provide

information or reports to any external clients of Ocean Tomo as part of any products or services provided by its business units known as Expert Services, Appraisals, Valuations, Investments, Risk Management, and Corporate Finance, (ii) Ocean Tomo had only used and was only using the PatentRatings Analysis to provide information or reports to external clients of Ocean Tomo as part of the products or services provided by its business units known as Analytics and Ocean Tomo PatentRatings ("OTPR"), (iii) all revenues invoiced or collected by Ocean Tomo in connection with the sale of any products or services that used or incorporated any PatentRatings Analysis had been reported to PatentRatings in accordance with the terms of the License Agreement, and (iv) there were no other revenues invoiced or collected by Ocean Tomo prior to July 19, 2007 in connection with the sale of any products or services that used or incorporated any PatentRatings Analysis. PatentRatings reasonably relied on these assurances when it entered into the Amendment, the Note, and the Security Agreement.

41. After July 19, 2007, Ocean Tomo paid all the expenses associated with Ocean Tomo's use and further development of the PatentRatings System. PatentRatings did not pay and was not asked to pay for any such expenses.

42. Between July 19, 2007 and the end of 2010, Ocean Tomo never asserted that it was paying expenses that PatentRatings should have been paying, or words to that effect. Between July 19, 2007 and the end of 2010, Ocean Tomo never asserted that PatentRatings was in breach of its obligations under any of the agreements to pay certain expenses. Between July 19, 2007 and the end of 2010, Ocean Tomo never demanded that PatentRatings pay any costs associated with Ocean Tomo's use of the PatentRatings System.

43. In early 2011, Ocean Tomo for the first time asserted that PatentRatings was liable for approximately $5,000,000 in costs incurred by Ocean Tomo in connection with its use

of the PatentRatings System and that it was in breach of its obligations under the License Agreement as amended by the Amendment (the "Amended License Agreement") and the Supplemental License Agreement. Ocean Tomo demanded that PatentRatings compensate Ocean Tomo for all such costs incurred from after July 19, 2007 and assume full responsibility for all further costs going forward. When PatentRatings refused, Ocean Tomo commenced arbitration on February 17, 2011.

44.     During arbitration hearings held in March 2012, Mr. Malackowski testified that Ocean Tomo never at any time intended to relieve PatentRatings of the costs associated with Ocean Tomo's use and further development of the PatentRatings System. Mr. Malackowski denied that he ever made such representations to PatentRatings at or before the date that the parties entered into the Amendment, the Note, and the Security Agreement. Mr. Malackowski further testified that Ocean Tomo knew in or shortly after July 2007 that Ocean Tomo was incurring costs with the express intent of eventually charging them back to PatentRatings. Thus, PatentRatings learned in March 2012 that the representations by Ocean Tomo upon which PatentRatings had relied in entering into the Amendment, the Note, and the Security Agreement were false when made.

45.     In November and December 2011, during discovery in the arbitration proceedings, Ocean Tomo produced documents in response to demands by PatentRatings. In reviewing these documents, PatentRatings for the first time learned that for years Ocean Tomo routinely and systematically sold products and reports to its clients using PatentRatings Analysis for which Ocean Tomo had never reported or paid revenues to PatentRatings, in spite of a contractual obligation to do so. Specifically, PatentRatings learned that Ocean Tomo, in violation of the Letter Agreement, was using the PatentRatings Analysis in connection with the

division of Ocean Tomo's business known as expert services. At the time PatentRatings entered into the Amendment, Mr. Malackowski and others at Ocean Tomo had represented to PatentRatings that the expert services division did not utilize the PatentRatings Analysis such that no revenues were due to PatentRatings as a result of its activities. In December 2011, PatentRatings for the first time learned that these representations were false, that the expert services division routinely used PatentRatings Analysis in preparing and delivering work product to Ocean Tomo's clients, that PatentRatings was owed substantial revenues as a result of these activities, and that Ocean Tomo had fraudulently concealed these facts from PatentRatings for years.

**Ocean Tomo Continues To Deprive PatentRatings Of**
**Substantial Revenues Owed Under the License Agreement**

46. Even after PatentRatings notified Ocean Tomo of the discovered systematic underreporting of revenues under the License Agreement, Ocean Tomo refused to investigate or correct its reporting processes or make any reasonable attempt to identify all such instances of underreporting. Instead, Ocean Tomo continued to conceal the previously underreported revenues and continued to cheat PatentRatings by concocting yet additional schemes and devices designed to conceal and/or underreport revenues owed to PatentRatings.

47. On October 19, 2012, PatentRatings transmitted to Ocean Tomo a letter which described in more detail Ocean Tomo's systematic underreporting of revenues under the License Agreement and other related breaches. In the letter, PatentRatings requested that Ocean Tomo cure all of the breaches described in the letter within thirty (30) days. As of the filing of this counterclaim, Ocean Tomo has failed to cure the breaches identified in PatentRatings' October 19, 2012 letter.

48.     In furtherance of its scheme to conceal and underreport revenues owed to PatentRatings, Ocean Tomo has unreasonably obstructed and frustrated PatentRatings' ability to exercise its audit rights under Section 4.5 of the License Agreement. Among other things, Ocean Tomo has refused to produce or provide access to specific documents requested by PatentRatings' outside auditors which the auditors determined are necessary to identify and quantify the amount of unreported and/or underreported revenues owed to PatentRatings.

49.     On February 21, 2014, PatentRatings transmitted to Ocean Tomo a letter which described in more detail these further breaches of the License Agreement. In the letter, PatentRatings requested that Ocean Tomo immediately cure all of the breaches described in the letter. As of the filing of this counterclaim, Ocean Tomo has failed to cure the breaches identified in PatentRatings' February 21, 2014 letter. As a result, PatentRatings' auditors have been unable to complete their audit.

**Ocean Tomo Wrongfully Discloses And**
**Misappropriates PatentRatings' Confidential Information**

50.     Ocean Tomo's wrongful actions have not been limited to depriving Mr. Barney and PatentRatings of the benefits they bargained for when they entered into the transactions with Ocean Tomo in 2004. Ocean Tomo also has wrongfully disclosed and misappropriated PatentRatings' confidential information, in violation of the License Agreement, the Supplemental License Agreement, and the law.

51.     In Paragraph 7.1 of the License Agreement, Ocean Tomo agreed that the "Licensed Technology contains certain confidential information, trade secrets, and know-how related to statistical patent analysis, mapping and valuation ("Confidential Information") that is proprietary to [PatentRatings]. [Ocean Tomo] agrees to hold such Confidential Information in strict confidence, not to use it commercially for its own benefit or the benefit of anyone else, and

not to use the Confidential Information for the purpose of developing or improving a product or method for anyone except [PatentRatings], except as authorized herein."

52.     In or about September 2012, Ocean Tomo, however, wrongfully accessed PatentRatings' computer servers located in Irvine, California and wrongfully copied Confidential Information and data contained on those servers and transferred the Confidential Information and data to its own servers for purposes of reverse engineering PatentRatings' algorithms and related software and to create its own competing patent rating system for Ocean Tomo's own benefit, all in violation of the License Agreement, the Supplemental License Agreement, and applicable law.

53.     Moreover, in violation of the License Agreement and Illinois law, Ocean Tomo has disclosed PatentRatings' Confidential Information (as defined in the License Agreement) to third parties.  For example, on information and belief, Ocean Tomo has disclosed PatentRatings' Confidential Information to AnswerMine and other third-party software developers for the purpose of reverse engineering the PatentRatings algorithms and developing similar algorithms and products based thereon for the benefit of Ocean Tomo, its affiliates, partners and customers.

54.     In addition, in or about August 2012, Ocean Tomo entered into a joint technology transfer service agreement with the Shenzhen United Property and Share Rights Exchange (UPEX) in China.  On information and belief, Ocean Tomo used or provided PatentRatings' Confidential Information to UPEX and thereby assisted UPEX to develop a rating system for Chinese patents and the creation of the US China IP 200™ Index based thereon.

55.     To make matters worse, Ocean Tomo has breached the License Agreement and violated the law by using PatentRatings' Confidential Information (as defined in the License Agreement) to develop Ocean Tomo's own patent ratings system (the "Ocean Tomo Ratings™ system").

56.     Article 7.1 of the License Agreement provides, among other things, that Ocean Tomo shall not "use [PatentRatings'] Confidential Information for the purpose of developing or improving a product or method for anyone except [PatentRatings]." Section 8.3 of the Supplemental License Agreement similarly requires that "Ocean Tomo shall use [PatentRatings'] Confidential Information solely in connection with performance under this Agreement and for no other purpose."

57.     In addition, Article 6.1 of the License Agreement provides, among other things, that, during the term of the agreement and for three (3) years thereafter, Ocean Tomo is prohibited from "mak[ing] any statistical patent analytics tools, patent ratings or associated products that are derivative of, or substantially similar to the PatentRatings Tools or the PatentRatings Analysis."

58.     In direct violation of Articles 7.1 and 6.1 of the License Agreement and Section 8.3 of the Supplemental License Agreement, Ocean Tomo used PatentRatings' Confidential Information to develop a statistical patent scoring system (which Ocean Tomo calls the "Ocean Tomo Ratings" system and "OTR" scores), which it currently promotes, advertises, and markets under its own *Ocean Tomo* brand without the consent or authorization of PatentRatings.

59.     In Section 2.4(b) of the Supplemental License Agreement, Ocean Tomo agreed that it would not "remove any title or any trademark, copyright or patent notices . . . that appear on or in the Licensed Technology and Licensed Data." "Licensed Technology" is defined to include the PatentRatings System.  Moreover, Article 5.2 of the License Agreement requires Ocean Tomo to "mark all PatentRatings Analysis and all advertisement and promotional materials, and any reports or other products using PatentRatings Analysis with appropriate patent, copyright, and trademark notices as otherwise reasonably directed by" PatentRatings.

19

Article 5.4 of the License Agreement further provides that Ocean Tomo shall "use the [PatentRatings] Marks, or cause the [PatentRatings] Marks to be used, strictly in compliance with all applicable legal requirements as reasonably directed by [PatentRatings]." The "PatentRatings Marks" are defined to include the "PATENTRATINGS" and "IPQ" trademarks, which Ocean Tomo has removed and replaced with its own trademarks.

60.     In violation of Section 2.4(b) of the Supplemental License Agreement and Articles 5.2 and 5.4 of the License Agreement, Ocean Tomo has modified the PatentRatings System by removing some or all of PatentRatings' branding and trademarks (e.g., "PatentRatings" and "IPQ"), and replacing them with Ocean Tomo-exclusive branding (e.g., "Ocean Tomo Ratings" and "OTR"), thereby threatening to irreparably harm the value of PatentRatings' branding and trademarks and to destroy all of the associated good will that PatentRatings has built up over the course of more than a decade.

61.     On July 16, 2013, PatentRatings transmitted a letter to Ocean Tomo advising Ocean Tomo that it was in material breach of Articles 7.1, 6.1, 5.2, and 5.4 of the License Agreement, and Section 2.4(b) of the Supplemental License Agreement, and demanding that Ocean Tomo immediately cure those breaches.

62.     As of the filing of this counterclaim, Ocean Tomo has failed to cure the breaches identified in PatentRatings' July 16, 2013 letter.

**Ocean Tomo Wrongfully Interferes With PatentRatings'**
**Business Opportunity With NTT Data**

63.     Mr. Barney and PatentRatings had an expectation of entering into a license agreement with NTT Data, a Japanese company that had expressed interest in obtaining a license from PatentRatings to allow NTT Data to develop a patent ratings system for Japanese patents.

64.     In or about July 2012, Ocean Tomo interfered with Mr. Barney's and PatentRatings' business expectancy with respect to NTT Data by, among other things, falsely representing to NTT Data that the prospective agreement contemplated by NTT Data, Mr. Barney, and PatentRatings would violate the License Agreement and the Supplemental License Agreement, and, on information and belief, threatening to bring litigation against NTT Data if it concluded a license agreement with PatentRatings.   Ocean Tomo further intentionally and wrongfully induced NTT Data to violate and materially breach a Mutual Non-Disclosure Agreement dated as of June 12, 2012 by and between NTT Data and PatentRatings (the "NDA"), by providing Ocean Tomo with confidential written communications between NTT Data and PatentRatings.

65.     The truth, as Ocean Tomo was well aware, is that the prospective business venture contemplated by NTT Data, Mr. Barney, and PatentRatings would not have violated the License Agreement, the Supplemental License Agreement, or any other agreement between Mr. Barney, PatentRatings, and Ocean Tomo.   Ocean Tomo nevertheless knowingly made its false representations to NTT Data, with the goal of either holding the deal hostage until Mr. Barney and PatentRatings acceded to Ocean Tomo's unreasonable economic demands, or interfering with Mr. Barney's and PatentRatings' business opportunities in order to further Ocean Tomo's scheme to destroy Mr. Barney and PatentRatings financially to that Ocean Tomo could steal the PatentRatings System and the underlying patents, data, algorithms, and other valuable intellectual property.

**Ocean Tomo Diverts Profits Owed To Mr. Barney, Based
On False Accusations Of Wrongdoing By Mr. Barney**

66.     In or about August 2012, Ocean Tomo purported to decide that, as a result of Mr. Barney's alleged noncompliance with Section 13.17 of the Operating Agreement, Mr. Barney

would no longer be entitled to receive "all or any portion of the Dividend Allocation" attributable to Mr. Barney's ownership interest in Ocean Tomo.

67.     There is no factual basis for Ocean Tomo's purported findings that Mr. Barney breached Section 13.17 of the Operating Agreement.  Instead, that finding is founded upon false allegations, which Ocean Tomo knows are false, but nevertheless has made to further its goals of cheating Mr. Barney out of the benefits that he bargained for in 2004, and trying to destroy Mr. Barney and PatentRatings financially so that Ocean Tomo can steal the PatentRatings System and associated intellectual property.

## COUNT I — BREACH OF CONTRACT
## (BY MR. BARNEY AGAINST OCEAN TOMO)

68.     Mr. Barney incorporates by reference the allegations in Paragraphs 1 through 67.

69.     Mr. Barney and Ocean Tomo entered into the Operating Agreement.

70.     Under the terms of the Operating Agreement, Ocean Tomo was required to allocate net profits other than "Net Profits From Operations" among the members of Ocean Tomo *pro rata* in accordance with their percentage interests.

71.     Under the implied covenant of good faith and fair dealing, Ocean Tomo was required to perform its obligations under the Operating Agreement fairly and in good faith, and to refrain from acting to deprive Mr. Barney of the benefits of the contract.

72.     Ocean Tomo breached its obligations under the Operating Agreement, and breached the implied covenant of good faith and fair dealing, by, among other things, treating the proceeds of the ICAP and IPXI transactions as "Net Profits From Operations," and not allocating those proceeds among the members of Ocean Tomo *pro rata* in accordance with their percentage interests.

73. In addition, in or about August 2012, Ocean Tomo breached the Operating Agreement, and the implied covenant of good faith and fair dealing, by purporting to decide that, as a result of Mr. Barney's alleged noncompliance with Section 13.17 of the Operating Agreement, Mr. Barney would no longer be entitled to receive "all or any portion of the Dividend Allocation" attributable to Mr. Barney's ownership interest in Ocean Tomo.

74. There is no factual basis for Ocean Tomo's purported findings that Mr. Barney breached Section 13.17 of the Operating Agreement. Instead, those "findings" are founded upon false allegations, which Ocean Tomo knows are false.

75. On information and belief, Ocean Tomo also has engaged in other misallocations of profits and losses that also violate the Operating Agreement and the implied covenant of good faith and fair dealing, and that also have caused Mr. Barney to suffer damages.

76. Ocean Tomo also has breached its obligations under the Operating Agreement (and under the Illinois Limited Liability Company Act), and the implied covenant of good faith and fair dealing, by refusing to provide Mr. Barney with access to the books and records of Ocean Tomo.

77. Mr. Barney performed, or was excused from performing, all of his obligations under the Operating Agreement.

78. As a result of Ocean Tomo's breaches of the Operating Agreement and of the implied covenant of good faith and fair dealing, Mr. Barney has suffered damages in an amount to be proven at trial, and is entitled to other relief under Illinois law.

**COUNT II – BREACH OF CONTRACT**
**(BY MR. BARNEY AGAINST OCEAN TOMO)**

79. Mr. Barney incorporates by reference the allegations in Paragraphs 1 through 67.

80.     In the Equity Exchange Agreement, Ocean Tomo represented and warranted, among other things, that:

      a.  "There are no Contracts relating to the issuance, sale, or transfer of any equity securities or other securities of [Ocean Tomo]" (Ex. 1 § 4.3);

      b.  "Schedule 4.12(a) contains a complete and accurate list, and [Ocean Tomo] has delivered to [PatentRatings] and Barney true and complete copies of . . . (i) each Applicable Contract that was not entered into in the Ordinary Course of Business and that involves expenditures or receipts of [Ocean Tomo] in excess of $ 1,000" . . . and (iii) each joint venture, partnership, and other applicable Contract (however named) involving a sharing of profits, losses, costs, or liabilities by [Ocean Tomo] with any other Person" (Ex. 1 §§ 4.12(a)(i) & 4.12(a)(iii).)

81.     Mr. Barney learned in or about December 2011 that, at the time Ocean Tomo made those representations and warranties to Mr. Barney, there was in fact an existing secret agreement between Ocean Tomo and Michael Lasinski under which Ocean Tomo had promised to transfer at a later date a significant number of equity units in Ocean Tomo to Mr. Lasinski. (Ocean Tomo and Mr. Lasinski entered into that agreement because Mr. Lasinski was bound by a covenant not to compete with his former employer, and therefore could not "publicly" become a member of Ocean Tomo.)

82.     Ocean Tomo's agreement with Mr. Lasinski constitutes a material breach of Ocean Tomo's representations and warranties in the Equity Exchange Agreement.

83.     Mr. Barney performed all of his obligations under the Equity Exchange Agreement.

84.     As a result of Ocean Tomo's breach of the Equity Exchange Agreement, Mr. Barney has suffered damages in an amount to be determined at trial.

## COUNT III – BREACH OF CONTRACT
## (BY PATENTRATINGS AGAINST OCEAN TOMO)

85.     PatentRatings incorporates by reference the allegations in Paragraphs 1 through 67.

86.     In Paragraph 7.1 of the License Agreement, Ocean Tomo agreed that the "Licensed Technology contains certain confidential information, trade secrets, and know-how related to statistical patent analysis, mapping and valuation ("Confidential Information") that is proprietary to [PatentRatings].  [Ocean Tomo] agrees to hold such Confidential Information in strict confidence, not to use it commercially for its own benefit or the benefit of anyone else, and not to use the Confidential Information for the purpose of developing or improving a product or method for anyone except [PatentRatings], except as authorized herein."

87.     In violation of the License Agreement, Ocean Tomo has disclosed PatentRatings' Confidential Information (as defined in the License Agreement) to third parties.  For example, on information and belief, Ocean Tomo has disclosed PatentRatings' Confidential Information to AnswerMine and other third-party software developers for the purpose of reverse engineering the PatentRatings algorithms and developing similar algorithms and products based thereon for the benefit of Ocean Tomo, its affiliates, partners, and customers.

88.     In addition, Ocean Tomo has breached the License Agreement by using PatentRatings' Confidential Information (as defined in the License Agreement) to develop Ocean Tomo's own patent ratings system and related products for its own benefit and the benefit of its affiliates, partners and customers.  In or about August 2012, Ocean Tomo entered into a joint technology transfer service agreement with the Shenzhen United Property and Share Rights

Exchange (UPEX) in China. On information and belief, Ocean Tomo used or provided PatentRatings' Confidential Information to UPEX and thereby assisted UPEX to develop a rating system for Chinese patents and the creation of the US China IP 200™ Index based thereon.

89.     Ocean Tomo also breached the License Agreement and the Supplemental License Agreement by using PatentRatings' Confidential Information to develop a statistical patent scoring system (which Ocean Tomo calls the "Ocean Tomo Ratings" system and "OTR" scores), which it currently promotes, advertises, and markets under its own *Ocean Tomo* brand without the consent or authorization of PatentRatings, and by modifying the PatentRatings System by removing some or all of PatentRatings' branding and trademarks, and replacing them with Ocean Tomo-exclusive branding.

90.     Moreover, as part of its scheme to misappropriate Confidential Information of PatentRatings, in or about September 2012, Ocean Tomo wrongfully accessed PatentRatings' computer servers located in Irvine, California and wrongfully copied Confidential Information and data contained on those servers and transferred the Confidential Information and data to its own servers for purposes of using or reverse-engineering PatentRatings' algorithms and related software for Ocean Tomo's benefit.

91.     Ocean Tomo also has breached the License Agreement by failing to timely account for and pay all revenues owed by Ocean Tomo and by frustrating PatentRatings' exercise of its audit rights under Section 4.5 of the License Agreement.

92.     PatentRatings has performed, or has been excused from performing, all of its obligations under the License Agreement and the Supplemental License Agreement.

93. As a result of Ocean Tomo's breaches of the License Agreement and the Supplemental License Agreement, PatentRatings has suffered damages in an amount to be determined at trial.

## COUNT IV — TORTIOUS INTERFERENCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE
## (BY MR. BARNEY AND PATENTRATINGS AGAINST OCEAN TOMO)

94. Mr. Barney and PatentRatings incorporate by reference the allegations in Paragraphs 1 through 67.

95. Mr. Barney and PatentRatings had a reasonable expectation of entering into a license agreement with NTT Data, a Japanese company that had expressed interest in obtaining a license from PatentRatings to develop a patent ratings system for Japanese patents.

96. Ocean Tomo was aware of Mr. Barney's and PatentRatings' expectation of a license agreement with NTT Data.

97. In or about July 2012, Ocean Tomo intentionally and maliciously interfered with Mr. Barney's and PatentRatings' business expectancy with respect to NTT Data by, among other things, falsely representing to NTT Data that the prospective license agreement contemplated by NTT Data, Mr. Barney, and PatentRatings would violate the License Agreement and a Supplemental License Agreement between Ocean Tomo and PatentRatings dated May 18, 2006 (the "Supplemental License Agreement") and threatening to bring legal action against NTT Data. Ocean Tomo further intentionally and wrongfully induced NTT Data to violate and materially breach the NDA between NTT Data and PatentRatings by providing to Ocean Tomo copies of confidential written communications between NTT Data and PatentRatings.

98. The truth, as Ocean Tomo was well aware, is that the prospective business venture contemplated by NTT Data, Mr. Barney, and PatentRatings would not have violated the License Agreement, the Supplemental License Agreement, or any other agreement between Mr.

Barney, PatentRatings, and Ocean Tomo. Ocean Tomo nevertheless knowingly made its false representations to NTT Data, with the goal of either holding the deal hostage until Mr. Barney and PatentRatings acceded to Ocean Tomo's unreasonable economic demands, or interfering with Mr. Barney's and PatentRatings' business opportunities to further Ocean Tomo's scheme to destroy Mr. Barney and PatentRatings to that Ocean Tomo could steal the PatentRatings System.

99.     As a result of Ocean Tomo's intentional, malicious, and unjustified interference, Mr. Barney's and PatentRatings' expectancy of a license agreement with NTT Data was terminated.

100.    As a result of Ocean Tomo's tortious interference with their business expectancy, Mr. Barney and PatentRatings have suffered damages in an amount to be determined at trial.

### COUNT V — VIOLATION OF 18 U.S.C. § 1030
### (BY PATENTRATINGS AGAINST OCEAN TOMO)

101.    PatentRatings incorporates by reference the allegations in Paragraphs 1 through 67.

102.    As part of its wrongful campaign to destroy and financially incapacitate Mr. Barney and PatentRatings, and to steal the PatentRatings System, in or about May 2013, Ocean Tomo intentionally, and without authorization, accessed computer servers and related hardware (the "Servers") located in the Irvine, California data center that housed the PatentRatings System. Ocean Tomo dismantled and permanently removed those Servers without authorization, and over the strong objections of PatentRatings. These wrongful acts directly caused damage to PatentRatings by diminishing the completeness and usability of the data and software on those Servers and destroying and/or significantly impairing PatentRatings' ability to access and use the Servers and the data and software contained on those Servers. (Before dismantling the Servers and causing that damage, Ocean Tomo had wrongfully accessed those Servers, copied

Confidential Information and data contained on the Servers, and transferred the Confidential Information and data to its own servers for purposes of using or reverse engineering PatentRatings' algorithms and related software for Ocean Tomo's own benefit.) As a result of Ocean Tomo's unauthorized access to, dismantling and removal of the Servers, PatentRatings suffered losses and damages consisting of, among other things, permanent loss of access to valuable Confidential Information, data and software contained on the Servers, loss of ability to meet contractual obligations owed by PatentRatings to other licensees of PatentRatings, and lost profits directly attributable to the damage that Ocean Tomo caused to the Servers.

103. The Servers were used in interstate commerce and constituted "protected computers" under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

104. As a result of Ocean Tomo's violations of the Computer Fraud and Abuse Act, PatentRatings suffered losses and damages in excess of $5,000.

## COUNT VI ─ FRAUD
## (BY PATENTRATINGS AGAINST OCEAN TOMO)

105. PatentRatings incorporates by reference the allegations in Paragraphs 1 through 67.

106. Each of the representations and assurances made by Mr. Malackowski and others to Mr. Barney prior to and at the time Mr. Barney executed the Amendment, the Note, and the Security Agreement, as alleged above, were in fact false. The true facts apparently were that Ocean Tomo never at any time intended to relieve PatentRatings of the costs associated with Ocean Tomo's use and further development of the PatentRatings System and it never intended to report or pay to PatentRatings any portion of the revenues that Ocean Tomo's expert services division had generated and was continuing to generate using the PatentRatings Analysis.

107. At the time these representations and assurances were made on behalf of Ocean Tomo, at the time PatentRatings entered into the Amendment, the Note and the Security Agreement, and at the time PatentRatings rendered its performance under these agreements, PatentRatings did not know that the representations were false but believed them to be true and reasonably relied on them. Had PatentRatings known that the representations were not true, PatentRatings would not have entered into the Amendment, the Note and the Security Agreement and would not have rendered or accepted performance thereunder.

108. The consideration promised to PatentRatings by Ocean Tomo has failed in material respect due to Ocean Tomo's willful default in the reporting and payment of revenues owed to PatentRatings under the Amendment and its failure to abide by its promise in the Amendment to bear all costs associated with its use and further development of the PatentRatings System. As a result, there has been a material failure of the consideration promised to PatentRatings by Ocean Tomo.

109. PatentRatings has performed all the obligations required of it to be performed under the Amendment, the Note and the Security Agreement, as well as the other agreements entered into by PatentRatings and Ocean Tomo.

110. PatentRatings has suffered and will continue to suffer substantial harm and injury under the Amendment, the Note and the Security Agreement if they are not rescinded in that PatentRatings will be deprived of the benefit of its bargain in that, by way of example and without limitation, PatentRatings agreed to accept a substantially reduced revenue share in exchange for the promises made by Ocean Tomo.

111. On or about April 6, 2012, PatentRatings notified Ocean Tomo in writing that PatentRatings had rescinded the Amendment, the Note and the Security Agreement on the

grounds of fraudulent misrepresentation and material failure of consideration. Ocean Tomo refused and continues to refuse to restore to PatentRatings, in whole or in part, the consideration provided by PatentRatings or to recognize that the Amendment, the Note and the Security Agreement have been rescinded.

112.     As a result of Ocean Tomo's fraudulent misrepresentations and omissions, PatentRatings has incurred damages, including, without limitation, the making of payments under the Note, a reduction in the share of revenues received from Ocean Tomo's sale of PatentRatings products and services, and litigation expenses and attorneys' fees incurred in defense against Ocean Tomo's wrongfully asserted arbitration claims. The exact amount of these damages is presently unknown but will be proven at trial.

113.     In performing the acts herein alleged, Ocean Tomo maliciously and intentionally misrepresented to or concealed from PatentRatings material facts known to Ocean Tomo as alleged above, with the intention on the part of Ocean Tomo of depriving PatentRatings of its rights in the PatentRatings System and the revenues it was entitled to derive therefrom. Ocean Tomo further maliciously and intentionally filed and prosecuted the arbitration action with the intent and desire to bankrupt PatentRatings with litigation expenses, and thereby force PatentRatings to assign to Ocean Tomo all of its patents, trademarks, and other property under the Note and Security Agreement. As a result, PatentRatings is entitled to an award of punitive damages against Ocean Tomo.

## PRAYER FOR RELIEF

Jonathan Barney and PatentRatings respectfully request that this Court enter judgment in their favor and against Ocean Tomo, LLC with respect to all of Mr. Barney's and PatentRatings' claims, award damages to Mr. Barney and PatentRatings in an amount to be determined at trial, award punitive damages, award Mr. Barney and PatentRatings their attorneys' fees and

expenses, compel Ocean Tomo to provide Mr. Barney with immediate access to the books and records of Ocean Tomo, compel Ocean Tomo to either restore the Irvine data center or alternatively provide PatentRatings with server-level access to the underlying data, software and algorithms, and provide such other and further relief as is just and equitable.

Dated:  January 13, 2015                                  JONATHAN BARNEY and
                                                         PATENTRATINGS, LLC


                                                         By : */s/ David C. Layden*
                                                                  One of their attorneys

David C. Layden
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350
(312) 840-7796 (fax)