# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| OCEAN TOMO, LLC, | ) | |
| Plaintiff, | ) | Case No. 12 C 8450 |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| JONATHAN BARNEY and | ) | |
| PATENTRATINGS, INC., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Jonathan Barney created the PatentRatings system, which uses algorithms to assess the quality and value of issued patents, and formed PatentRatings, LLC, to bring his system to the marketplace. Ocean Tomo hired Barney and the parties entered into a complex business arrangement, which included a licensing agreement about the PatentRatings system that was amended several times. After the parties' relationship deteriorated, Ocean Tomo sued Barney, alleging that Barney's misuse of a laptop computer violated the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Ocean Tomo also raised numerous state law claims against Barney and PatentRatings. In response, Barney and PatentRatings filed counterclaims, including claims for breach of the licensing agreement (Counterclaim Count III) and fraud based on the alleged lack of consideration supporting the licensing agreement, as well as a related promissory note and security agreement (Counterclaim Count VI).

Ocean Tomo's answer to the counterclaims included affirmative defenses (Nos. two and three) asserting that the defendants' patents are invalid and that the defendants misused their patents. Ocean Tomo's motion for partial summary judgment is based on this theory as Ocean Tomo seeks a finding that the patents at issue in this case are invalid pursuant to 25 U.S.C. § 101 because they do not claim patentable subject matter. It then argues that a finding of invalidity

means that the licensing agreement is unenforceable so it is entitled to summary judgment as its second and third affirmative defenses.[1]  In response, the defendants raise a host of procedural challenges to Ocean Tomo's request for a finding of invalidity and, in the alternative, contend that the patents are valid.  For the following reasons, Ocean Tomo's partial motion for summary judgment is denied.

## I. BACKGROUND[2]

### A. The Patents

The patents that set the chain of events at issue in this case into action analyze, rate, and value patents.  There are eight patents:  U.S. Patent Nos. 6,556,992 (the "'992 Patent"), 7,962,511 (the "'511 Patent"), 7,716,226 (the "'226 Patent"), 8,504,560 (the "'560 Patent"), 7,949,581 (the "'581 Patent"), 7,657,476 (the "'476 Patent"), 8,131,701 (the "'701 Patent") and 8,818,996 (the "'996 Patent").  The parties agree that the patents use bibliometric and statistical

---

[1]  The court appreciates Ocean Tomo's helpful supplemental memorandum clarifying the relief sought in its motion for summary judgment that Ocean Tomo filed at the defendants' request.  (Dkt. 109.)

[2]  The summary judgment record was rendered unnecessarily complex by Ocean Tomo's failure to cite to evidence in support of its denial of most of the defendants' additional facts. (Dkt. 128.)  Bald denials are insufficient to create a disputed issue of fact.  *See* Loc. R. 56.1(a) (facts in the opposing party's statement of facts will be deemed admitted unless the moving party provides "specific references to the affidavits, parts of the record, and other supporting materials relied upon" that support the movant's denial); *see also Roberts v. Advocate Health Care*, No. 14 C 442, 2015 WL 4719897, at *1 (N.D. Ill. Aug. 7, 2015).  In turn, Barney/PatentRating's memorandum includes copious citations to Barney's declaration.  The court cannot readily match the cited portions of the declaration to the corresponding paragraphs in the Rule 56.1 submissions, making it challenging to determine if Ocean Tomo disputes the assertions in Barney's declaration.  Despite these problems, the essential facts necessary to understand the legal issues presented by Ocean Tomo's motion for summary judgment are straightforward and undisputed.

principles, including different types of regression models, to measure the relationship between various data points.[3]

## B.    The Parties' Agreements

Defendant Jonathan Barney formed defendant PatentRatings to bring his patents, which together comprise the PatentRatings system, to the marketplace.  After discussions with James Malackowski (Ocean Tomo's founder, Chairman, and CEO), Barney and PatentRatings entered into multiple agreements with Ocean Tomo, including a September 1, 2004 license agreement that was amended three times (as amended, the "License Agreement").[4]

The License Agreement defined "licensed rights" as "collectively, the PatentRatings Patents and Licensed Copyrights, and Licensed Marks."  (Dkt. 83-1 at ¶ 1.5.)  It includes a so-called "no challenge" clause that provides that "LICENSEE [Ocean Tomo] . . . further agrees not to challenge . . . the validity or enforceability of the Licensed Rights in any court or other tribunal anywhere in the world."  (License Agreement, Dkt. 116-6, at § 5.1.)  The License Agreement also contains a survival clause that states, in pertinent part, that:

> The following provisions will survive any termination of this Agreement, along with all definitions:  Section 3.1(b), 4.5, 5.1, 7.1, and 7.3 (for a period of three

---

[3]  Bibliometrics is "[t]he branch of library science concerned with the application of mathematical and statistical analysis to bibliography; the statistical analysis of books, articles, or other publications."  OXFORD ENGLISH DICTIONARY, http://www.oed.com (June 2015). Regression "describes how one variable depends on another."  David Freedman, Robert Pisani & Roger Purves, STATISTICS at 158 (4th ed. 2007).  "A regression model attempts to combine the values of certain variables (the independent variables) to get expected values for another variable (the dependent variable)."  David H. Kaye & David A. Freedman, Reference Guide on Statistics, in REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 268 (Federal Judicial Center, 3d ed. 2011).

[4]  Copies of the License Agreement and the December 31, 2004, May 2, 2005, and July 19, 2007 amendments to that agreement are attached to Ocean Tomo's amended complaint. (Dkt. 83 at ¶ 27, Dkt. 83-1, 83-2, 83-3, and 83-4.)

years . . . The termination of this Agreement for any reason whatsoever will be without prejudice to any right or obligation of any party hereto in respect of this Agreement that has arisen prior to such termination.

(*Id*. at § 10.4.)

Besides the License Agreement, as amended, the parties entered into a December 31, 2004 equity exchange agreement (the "Equity Exchange Agreement"), a December 31, 2004 letter agreement (the "Letter Agreement"), and an employment agreement dated January 1, 2005 (as amended by an amendment dated July 28, 2008, the "Employment Agreement"). In the Letter Agreement, the parties agreed to amend § 10.1 of the License Agreement "to provide that the term of the [License] Agreement shall be the longer of: a) perpetual; or [b]) the longest term permitted by law." (Letter Agreement, Dkt. 83-3.) Following these transactions, Ocean Tomo acquired 25% of the equity in PatentRatings, Barney acquired equity in Ocean Tomo, Ocean Tomo obtained a limited exclusive license to use the PatentRatings system pursuant to a revenue-sharing agreement, and Barney became an employee of Ocean Tomo.

Subsequently, the parties entered into a Management Services Agreement dated May 31, 2005 (the "MSA"). The MSA authorized Ocean Tomo to provide managerial services and make loans to PatentRatings. Ocean Tomo and PatentRatings also entered into a "Consent to Joint Representation" under which they jointly prosecuted the '476, '226, '581, and '511 patents before the United States Patent and Trademark Office. Ocean Tomo's in-house counsel attended and participated in interviews with the patent examiner about the '226 and '511 patents.

In 2007, the parties' relationship deteriorated based on numerous disagreements. Barney asserts that he was "highly dissatisfied with the state of affairs between [Ocean Tomo] and [PatentRatings]." (Defs.' Am. Resp., Dkt. 139, at 8.) According to Barney, he had no

day-to-day control over PatentRatings and Ocean Tomo was forcing PatentRatings to incur

significant financial obligations "with no apparent accountability, all to feed [Ocean Tomo's]

appetite for more data and bigger and faster delivery platforms." (Barney Decl., Dkt. 116-1, at ¶

35.) Barney and Malackowski "ultimately reached a compromise, under which [Ocean Tomo]

agreed to terminate and nullify the MSA and to take over all further operating expenses of

building, operating and maintaining the [PatentRatings system] software and related databases."

(*Id*. at ¶ 36.) In exchange, PatentRatings agreed to execute a $1.5 million promissory note, grant

Ocean Tomo a security interest in all of its patents and other assets, and reduce its share of

revenues related to the PatentRatings system from 100% to 25% (or 13.25% in certain cases).

(*Id*.) As Barney put it, "[t]hat compromise was embodied in a July 19, 2007 Amendment to the

License Agreement." (*Id*.)

Or, as Ocean Tomo describes the chain of events leading up to the execution of the July

19, 2007 amendment to the License Agreement:

> In or around the first half of 2007, [Ocean Tomo] and [PatentRatings] engaged in
> discussions regarding revision of their relationship. As part of those discussions,
> [PatentRatings] disputed the amounts advanced by [Ocean Tomo] as a loan under
> the Management Services Agreement. In settlement of that dispute and other
> issues, on July 19, 2007, the parties entered into the July 19, 2007 Amendment
> (Ex. D) pursuant to which the amount of the disputed loan was set at $1,500,000,
> the Management Services Agreement was terminated and the revenue share
> payable by [Ocean Tomo] to [PatentRatings] was altered.

(Sec. Am. Compl., Dkt. 83, ¶ 35.)

Turning to the July 19, 2007 amendment to the License Agreement, in that document, the

parties reaffirmed that they "desire[d] to continue performing uninterrupted under the terms of

the [License Agreement]; provided, however, that certain terms and conditions of the [License

Agreement] are modified [according to] this Agreement." (July 19, 2007 Amendment, Dkt. 83-

4.)  The July 19, 2007 Amendment further provides that it was based on consideration and that

the parties "intend[ed] to be legally bound" by the July 19, 2007 Amendment.  (*Id.*)  The July 19,

2007 amendment makes multiple changes to the License Agreement but does not alter §§ 5.1

(the no-challenge clause) or 10.4 (the survival clause) of the License Agreement.  The July 19,

2007 Amendment also memorialized the agreement of PatentRatings and Ocean Tomo to

terminate the MSA.  In addition, as reflected in the July 19, 2007 Amendment, PatentRatings

agreed to execute a promissory note, granted a security interest to Ocean Tomo, and changed its

revenue arrangements with Ocean Tomo.

## C.    Litigation Between the Parties

The changes in 2007 did not cure the rift between the parties.  Hostilities – including a

series of additional disagreements about financial matters – resumed and in 2011, Ocean Tomo

commenced arbitration proceedings against PatentRatings.  The parties both point to aspects of

the arbitrator's ruling that they contend vindicates their positions.  Ultimately, Barney resigned

from Ocean Tomo.

Barney contends that Ocean Tomo wronged him and PatentRatings in numerous ways,

while Ocean Tomo alleges that Barney engaged in extensive wrongful activities in violation of

federal and state law.  Ocean Tomo filed suit in the Circuit Court of Cook County and Barney

removed the action to this court.  Barney and PatentRatings filed counterclaims and all of the

parties have raised numerous affirmative defenses.          Two counterclaims filed by Barney

and PatentRatings are relevant to Ocean Tomo's motion for summary judgment as to validity.

First, in Count III of the defendants' counterclaims, PatentRatings asserts that Ocean Tomo

breached the License Agreement.  Second, in Count VI of the defendants' counterclaims,

PatentRatings asserts that Ocean Tomo made fraudulent misrepresentations when the parties signed various agreements. According to PatentRatings, these alleged misrepresentations mean that various documents signed by the parties, including the License Agreement, lacked consideration so it was entitled to rescind the agreements.

Two of Ocean Tomo's affirmative defenses are directed at Counts III and VI of the defendants' counterclaims. In its second affirmative defense, Ocean Tomo alleges that PatentRatings cannot collect any royalties based on a purported breach of the License Agreement because the patents are invalid. (Dkt. 89 at 40.) In its third affirmative defense, Ocean Tomo makes the same argument based on its contention that the License Agreement is unenforceable "due to [PatentRatings'] misuse of the patents and copyrights licensed in the License Agreement." (*Id*. at 40-41.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (quotation omitted). "Where the party moving for summary judgment bears the burden of persuasion at trial, . . . such as a defendant asserting an affirmative defense, the moving party

must establish all the essential elements of that defense with credible evidence that would entitle it to a directed verdict if not controverted at trial." *Lauterbach v. Illinois State Police*, No. 12-CV-03228, 2015 WL 4555548, at *3 (C.D. Ill. July 28, 2015) (citing *Celotex Corp.*, 477 U.S. at 331); *see also Perez v. Panther City Hauling, Inc.*, No. 13-CV-0337-MJR-DGW, 2014 WL 2882919, at *3 (S.D. Ill. June 25, 2014).

## III. DISCUSSION

Ocean Tomo's summary judgment motion is based on its contention that "a finding of invalidity as to the patents-in-suit would merit summary judgment on its Second and Third Affirmative Defenses to the extent [PatentRatings'] claims are premised on any breaches of the License Agreement." (Dkt. 109 at 2.) In support, Ocean Tomo asserts that "agreements requiring licensees to pay royalties to patent licensors after the patent has been declared invalid are illegal per se, and licensees do not need to continue to pay royalties under license agreements when the subject patents are held to be invalid." (*Id.*)

In response, the defendants argue that, for numerous reasons, Ocean Tomo is not entitled to summary judgment as to invalidity. Specifically, they challenge Ocean Tomo's position about the effect of a finding of invalidity, contending that such a finding (which they dispute) would not "absolve[] a party [Ocean Tomo] of all liability for breaches of contract and fraud." (Defs.' Am. Resp., Dkt. 139 at 12.) The defendants also present a series of interrelated fall-back arguments based on alleged disputes of material fact regarding: (1) the merits of Ocean Tomo's second and third affirmative defenses; (2) the applicability of the doctrine of equitable estoppel (based on proceedings before the United States Patent and Trademark Office); (3) the applicability of the doctrine of assignor estoppel (based on Ocean Tomo's alleged privity with

Barney, who assigned the patents and thus cannot challenge their validity); and (4) the applicability of the doctrine of judicial estoppel (also based on proceedings before the United States Patent and Trademark Office). Finally, the defendants argue that Ocean Tomo has failed to establish that the patents are invalid as a matter of law.

Upon consideration of the summary judgment record, the court ordered the parties to file supplemental briefs addressing §§ 5.1 and 10.4 of the License Agreement. Specifically, the court questioned whether given § 5.1, Ocean Tomo could argue that the License Agreement remained in force yet challenge the validity of the patents that are within the ambit of the License Agreement. The court also stated that if it accepted (without deciding) that the License Agreement was terminated in 2012 for the purposes of the motion for summary judgment, it appeared that the parties' agreement that Ocean Tomo would not challenge the patents' validity would survive any termination and asked, in this circumstance, if Ocean Tomo could raise an invalidity challenge.

To streamline future proceedings, the court begins by considering the effect of any finding of invalidity on Ocean Tomo's second and third affirmative defenses (invalidity and patent misuse, respectively). It then considers the defendants' challenges to Ocean Tomo's second and third affirmative defenses. Its consideration of the plethora of reasons why the defendants contend the court cannot reach the merits of Ocean Tomo's arguments about invalidity begins and ends with whether the no-challenge clause is enforceable.

## A. The Impact of a Finding of Invalidity if Ocean Tomo Prevails

In its supplemental memorandum supporting its motion for summary judgment, Ocean Tomo argues that a finding that the patents are invalid means that the License Agreement, as

amended, is per se illegal. According to Ocean Tomo, a finding of invalidity means that

PatentRatings cannot pursue any claims based on the License Agreement so Counts III and VI of

the defendants' counterclaims fail as a matter of law.

In support, Ocean Tomo directs the court's attention to *Brulotte v. Thys Co.*, 379 U.S. 29

(1964). In that case, the defendant argued that the plaintiff was improperly attempting to collect

royalty payments "accruing both before and after the expiration of the patents." *Id*. at 31. The

Supreme Court held that "a patentee's use of a royalty agreement that projects beyond the

expiration date of the patent is unlawful per se" because "[t]he exaction of royalties for use of a

machine after the patent has expired is an assertion of monopoly power in the post-expiration

period when . . . the patent has entered the public domain." *Id*. at 32-33; *see also Kimble v.*

*Marvel, Entm't, LLC*, 135 S. Ct. 2401-04 (2015) (reaffirming the ongoing validity of *Brulotte*

and applying it to a patent licensing agreement that required the licensee to pay royalties after

the patent's expiration); *SmithKline Beecham Corp. v. Pentech Pharm., Inc.*, 261 F. Supp. 2d

1002, 1005 (N.D. Ill. 2003) (describing *Brulotte* as "a much-criticized decision that remains,

however, the law") (Posner, J., sitting by designation).

The rule in *Brulotte* applies when a licensor seeks royalties after a finding of invalidity.

*Nordion Int'l, Inc. v. Medi-Physics, Inc.*, No. 95 C 1323, 1995 WL 519798, at *4 (N.D. Ill. Aug.

30, 1995) ("as the Supreme Court made clear in *Brulotte*, federal patent policy mandates the

conclusion that a patent holder may not exact royalty payments after a patent is declared

invalid"). That rule – that a licensee does not owe royalties accruing after a patent is declared

invalid – applies to pure licensing agreements, *Brulotte*, 379 U.S. 32-33, as well as so-called

"hybrid" agreements that "contain[] a provision for a single royalty payment for use of both a

patent and other non-patent assets, such as trade secrets," *Nordion*, 1995 WL 519798, at *3 (collecting cases). In the case of such a hybrid arrangement, even if an agreement to pay royalties after a patent expires or is declared invalid is unenforceable pursuant to *Brulotte* and its progeny, a "licensor may be entitled to recover reasonable compensation for the use of non-patent assets granted under the licensing agreement." *Id*.; *see also Scheiber v. Dolby Labs., Inc.*, 293 F.3d 1014, 1022-23 (7th Cir. 2002).

The License Agreement defines "licensed rights" as "collectively, the PatentRatings Patents and Licensed Copyrights, and Licensed Marks." (Dkt. 83-1 at ¶ 1.5.) Thus, Ocean Tomo's argument that a finding of invalidity means that PatentRatings cannot pursue *any* claims based on the License Agreement is overbroad. In reply, Ocean Tomo sensibly adds a temporal restriction to its invalidity argument by stating that "a holding of invalidity is a complete defense to contract-based claims arising after December 21, 2012 [when Ocean Tomo claims that it first raised invalidity as an affirmative defense] and will materially streamline this case." (Dkt. 127 at 13.) This is better but still overbroad as even if Ocean Tomo is correct (an issue which the court need not reach at this time), a finding of invalidity does not act as a "complete defense to [all] contract-based claims arising after December 21, 2012." (Dkt. 127 at 13.) Instead, a finding of invalidity would doom post-December 21, 2012 claims for royalties associated with any invalidated patents without affecting other types of damages sought for this time period. *See Nordion*, 1995 WL 519798, at *3.

This is true despite Ocean Tomo's claim that "[PatentRating's] patented technology is the foundation of the parties' business relationship." (Dkt. 95 at 2.) This is a distinction without a difference because as detailed by the defendants (Defs.' Am. Resp., Dkt. 139 at 15), the License

Agreement, on its face, is not limited to a license for the PatentRatings patents. Accordingly, Ocean Tomo's contention that a finding of invalidity entitles it to summary judgment as to all of Barney/PatentRating's claims that are based on the License Agreement is unavailing.

**B.     The Merits of Ocean Tomo's Second Affirmative Defense**

In its second affirmative defense, Ocean Tomo states:

> Counts III and VI of [PatentRatings'] Counterclaims fail because [PatentRatings] is not entitled to collect royalties allegedly due under, or relief for any alleged breach of, the License Agreement because the patents that are part of the PatentRatings Tools (as that term is defined in [Ocean Tomo's] Complaint) are invalid for failure to comply with the requirements for patentability under the patent laws, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

(Dkt. 89 at 40.) Ocean Tomo contends that the License Agreement is still in effect but nevertheless challenges the validity of the patents. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-32 (2007) (licensee was not required to terminate or breach a license agreement before seeking a declaratory judgment of patent invalidity).

The defendants challenge this affirmative defense, arguing that before the court can consider Ocean Tomo's claim of invalidity, Ocean Tomo must first establish that the patents' validity was material to the License Agreement. *See* Defs.' Am. Resp., Dkt. 139 at 13 ("In order to assert patent invalidity as a defense to a breach of contract action, the breaching party must establish that the validity of the challenged patent was so material and important to the parties' agreement that its invalidity (if proven) excuses the breaches of the agreement"). As discussed above, *Brulotte* and its progeny stand for the proposition that a portion of an agreement requiring a licensee to pay patent royalties to a patent licensor after a patent has been declared invalid is unenforceable. *Nordion*, 1995 WL 519798, at *3. The court turns to whether the authority cited by the defendants creates a materiality exception to this rule.

First, the defendants cite to *Baladevon, Inc. v. Abbott Labs., Inc.*, for the proposition that a patent invalidity defense can fail when the "issuance of the patents was not a significant factor in the agreement."  871 F. Supp. 89, 96 (D. Mass. 1994).  The *Baladevon* court made this statement in the context of deciding if assignee estoppel applied to a hybrid agreement covering patent and trademark rights that allocated payments between patent and non-patent rights and then assigned all of those rights to the plaintiff.[5]  *Id.* at 95.  "Assignee estoppel is an equitable doctrine which, under appropriate circumstances, bars the assignee of a patent from contesting the validity of the assigned patent."  *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 113 F. App'x 930, 933 (Fed. Cir. 2004); *see also Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224 (Fed. Cir. 1988).

Here, however, the License Agreement is just that: a license and not an assignment.  The Supreme Court has abrogated the doctrine of licensee/licensor estoppel.  *Lear, Inc. v. Adkins*, 395 U.S. 653, 670-71 (1969).  Thus, a licensee who recognizes the validity of a patent by securing a license may nevertheless challenge that patent's validity.  *Id.*  *Baladevon*'s holding about assignee estoppel is, therefore, inapplicable to this case involving a licensing agreement.

*Baladevon* does not help the defendants for a second reason:  the assignment agreement at issue in that case "provided a mechanism for reducing the royalties . . . should the patent not issue or prove invalid."  *Baladevon*, 871 F. Supp. at 94, 96-97.  Thus, it was "not a classic hybrid

---

[5] Assignment estoppel includes assignee and assignor estoppel.  *See* 1-1, Harold Einhorn and Eric E. Bensen, Patent Licensing Transactions § 1.01[1] (Matthew Bender, Rev. Ed.).  They are two sides of the same coin.  *See* Black's Law Dictionary 667 (10th ed. 2014) ("assignee estoppel" is "[t]he equitable doctrine that bars the assignee of a patent from contesting the patent's validity under some circumstances, as when the assignee seeks to avoid royalty payments . . . . " while "assignor estoppel" is "[e]stoppel barring someone who has assigned the rights to a patent from later attacking the patent's invalidity").

agreement – it is not an agreement wherein patent and non-patent consideration are hopelessly entangled." *Id.* at 97. In contrast, the License Agreement between the parties to this case is a classic hybrid agreement because the patent and non-patent rights are grouped together.

The defendants' next case in support of their contention that Ocean Tomo must establish that the issuance of the patents was a material factor underlying the License Agreement is *Natural Alternatives, LLC v. JM Farms*, No. 5:12-CV-333-KKC, 2014 WL 6774497, at *2 n.1 (E.D. Ky. Dec. 2, 2014). In a footnote without supporting authority, the *Natural Alternatives* court stated that in the context of the defendant's argument that reexamination proceedings frustrated the purpose of a licensing agreement, the defendant had to establish that the "patents are so critical to the agreement that their invalidity excuses [the defendant's] further performance." *Id.*

The *Natural Alternatives* court issued a subsequent decision granting in part and denying in part a motion to reconsider. *Natural Alternatives, LLC v. JM Farms*, No. 5:12-CV-333-KKC, 2015 WL 1926376 (E.D. Ky. Apr. 28, 2015). In the order addressing the motion to reconsider, the court stated that the defendant previously "did not appear to assert patent invalidity as a defense but instead asserted that the purpose of the license agreement had been frustrated by the United States Patent and Trademark Office's reexamination of two of the patents governed by the license agreement" but it now understood that the defendant also intended to assert that the purpose of the license agreement was "frustrated because the two patents are invalid." *Id.* at *1. Thus, the *Natural Alternatives* court expressly recognized that its prior opinion – which contains the footnote that forms the basis of the defendants' argument here – addressed a defense of

-14-

frustration, not invalidity. The defendants do not provide a bridge between the two defenses that demonstrates that a comment about the defense of frustration applies to the defense of invalidity.

Finally, the defendants direct the court's attention to *Sybron Transition Corp. v. Nixon, Hargrave*, Devans & Doyle, 770 F. Supp. 803, 812-13 (W.D.N.Y. 1991). They characterize it as holding "that, where an 'agreement was supported by consideration other than the [challenged] patent . . . [.] the affirmative defenses of patent invalidity [are ineffective] because the invalidity of [the] patent, even if proven, would have made no legal difference.'" *Id.* *Sybron* is another assignee estoppel case and thus is inapposite. For all of these reasons, the court rejects the defendants' arguments about materiality in the context of Ocean Tomo's claim that a licensing agreement is unenforceable due to the invalidity of the underlying patents.

**C.     The Merits of Ocean Tomo's Third Affirmative Defense**

In its third affirmative defense, Ocean Tomo states:

> Counts III and VI of [PatentRatings'] Counterclaims fail because [PatentRatings] is not entitled to collect royalties allegedly due under, or relief for any alleged breach of, the License Agreement because the License Agreement is unenforceable due to [PatentRatings'] misuse of the patents and copyrights licensed in the License Agreement.

(*Id.* at 40-41.) This affirmative defense tracks Ocean Tomo's claim that it is entitled to summary judgment on all claims arising under the License Agreement because "charging royalties for invalid patents constitutes misuse" that, in turn, invalidates the entire License Agreement. (Pl.'s Reply, Dkt. 127, at 15.)

"Patent misuse is an equitable defense to a claim of patent infringement." *Trading Tech. Int'l, Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2008 WL 203385, at *1 (N.D. Ill. Jan. 18, 2008) (citing *U.S. Phillips Corp. v. Int'l Trade Comm'n.*, 424 F.3d 1179, 1184 (Fed. Cir. 2005)). It "occurs

when the scope of an otherwise valid patent monopoly extends beyond the prescribed boundaries of the patentee's control." *Syndicate Sales, Inc. v. Floral Innovations, Inc.*, No. 1:11-CV-00465-SEB-DK, 2012 WL 4477691, at *2 (S.D. Ind. Sept. 28, 2012) (citing *Zenith Radio Corp. v. Hazeltine Res., Inc.*, 395 U.S. 100, 136 (1969)). The defense applies when a preponderance of the evidence shows that "the patentee has impermissibly broadened the physical or temporal scope of the patent with anti-competitive effect." *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868 (Fed. Cir.1997); *see also Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1001-02 (Fed. Cir. 1986) (the affirmative defense of patent misuse applies when the record shows that "the overall effect of the license tends to restrain competition unlawfully in an appropriately defined relevant market.").

An attempt to "effectively extend[] the term of [a] patent by requiring post-expiration royalties" is one type of patent misuse. *Cnty. Materials Corp. v. Allan Block Corp.*, 502 F.3d 730, 734 (7th Cir. 2007) (citing *Brulotte*, 379 U.S. at 32). Ocean Tomo, however, contends that the defendants misused the patents at issue in this case by attempting to collect royalties under the License Agreement despite Ocean Tomo's claim of invalidity. The court discussed this claim above. Ocean Tomo has not alleged that the patents expired. Other than invalidity, Ocean Tomo has not developed other theories of patent misuse. Thus, it is not entitled to summary judgment based on its third affirmative defense.

D.     The No-Challenge Clause

The court next considers the no-challenge clause in the License Agreement ("LICENSEE [Ocean Tomo] . . . further agrees not to challenge . . . the validity or enforceability of the Licensed Rights in any court or other tribunal anywhere in the world," License Agreement, Dkt.

116-6, at § 5.1), which was reaffirmed by the July 19, 2007 amendment to the License

Agreement. As noted above, the Supreme Court has held that a licensee who recognizes the

validity of a patent by securing a license may nevertheless challenge that patent's validity. *Lear*,

395 U.S. 653, 670-71 (1969). The parties agree that as a general rule, under *Lear*, no-challenge

clauses in patent licensing agreements are unenforceable based on the "important public interest

in permitting full and free competition in the use of ideas which are in reality a part of the public

domain." *Id*. at 670.

> As the Supreme Court explained in *Lear*:
>
> Licensees may often be the only individuals with an economic incentive to
> challenge the patentability of an inventor's discovery. If they are muzzled, the
> public may continually be required to pay tribute to would-be monopolists
> without need or justification. We think it plain that the technical requirements of
> contract doctrine must give way before the demands of the public interest in the
> typical situation involving the negotiation of a license after a patent has issued.

*Id*.

This rule does not necessarily apply, however, to no-challenge clauses that are within the

scope of certain settlement agreements or consent judgments. *See* 6 MOY'S WALKER ON

PATENTS § 17:41 (4th ed.). These "arrangements call into play not only the more general

policies discussed in *Lear*, but also implicate the legal system's interests in preserving the

finality of dispute resolutions, and in allowing private parties to reach those resolutions without

formal adjudication." *Id*.

It is obvious that the consent decree exception is inapplicable. The court thus turns to (1)

whether Seventh Circuit or Federal Circuit law applies and (2) whether the settlement agreement

exception to *Lear* applies so the defendants can use the no-challenge clause as a defense to

Ocean Tomo' challenge to the patents' validity.

1.      **Choice of Law – The Settlement Exception to *Lear***

The parties champion the law of the Seventh Circuit (Ocean Tomo) and the Federal

Circuit (the defendants).  Ocean Tomo asserts that any appeal of this action will be to the

Seventh Circuit because this action does not arise under the federal patent laws.  The Federal

Circuit, however, has held that "the question of whether a settlement agreement bars a party from

challenging the validity of a patent in a subsequent action is intertwined with the substance of

enforcement of a patent right" is governed by its precedent.  *Baseload Energy, Inc. v. Roberts*,

619 F.3d 1357, 1361 (Fed. Cir. 2010); *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365 (Fed.

Cir. 2001) ("[W]hether public policy precluding patent license estoppel should extend to a

waiver of validity challenges in a settlement agreement[ ] is intimately related with the substance

of enforcement of a patent right.  Therefore, we will apply our law to these issues."); *see also*

*Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 475 (Fed. Cir. 1991) (Federal Circuit precedent

governs the enforceability of a no-challenge clause in a consent judgment).[6]  This court will,

therefore, apply Federal Circuit law to the no-challenge clause issue here.[7]

_____

[6] Multiple district courts have also elected to follow Federal Circuit law, as opposed to
regional circuit law, when considering the enforceability of a no-challenge clause in the context
of a settlement agreement.  *See Indus. Eng'g & Dev., Inc. v. Static Control Components, Inc.*, 45
F. Supp. 3d 1311, 1318 (M.D. Fla. 2014); *Serby v. First Alert, Inc.*, 934 F. Supp. 2d 506, 512
(E.D.N.Y. 2013); *Lotes Co. v. Hon Hai Precision Indus. Co.*, No. C 11- 01036 JSW, 2012 WL
2917450, at *2 (N.D. Cal. July 17, 2012); *Panduit Corp. v. HellermannTyton Corp.*, No. 03 C
8100, 2004 WL 1898954, at *2 (N.D. Ill. Aug. 11, 2004).

[7] This may be a distinction without a difference.  The Seventh Circuit cases cited by
Ocean Tomo do not address the settlement exception to the general rule that no-challenge
clauses are unenforceable.  *See Panther Pumps & Equip. Co., Inc. v. Hydrocraft, Inc.*, 468 F.2d
225, 231 (7th Cir. 1972) (no-challenge clauses are unenforceable under *Lear*); *Bendix Corp. v.
Balax, Inc.*, 471 F.2d 149, 157 (7th Cir. 1973) (same).  However, in a Seventh Circuit case
analyzing the settlement exception, the Seventh Circuit held that the federal patent policy
articulated in *Lear* "must occupy a subsidiary position to the fundamental policy favoring the

## 2.    Enforceability of the No-Challenge Clause

In *Flex-Foot*, the defendant had dismissed a prior lawsuit with prejudice based on a settlement agreement that contained a no-challenge clause.  238 F.3d at 1367-68.  The Federal Circuit considered whether this "contractually created estoppel" was unenforceable under *Lear*.  *Id*. at 1368.  It noted that "[t]he license agreement in *Lear* was not created as part of a litigation settlement" and *Lear* did not involve a no-contest clause.  *Id*.  Instead, *Lear* addressed whether a licensee of a patent can contest the patent's validity despite acknowledging the patent's validity by agreeing to pay royalties.  *Id*.  *Lear* answered this question in the affirmative due to the "important public interest in permitting full and free competition in the use of ideas."  *Lear*, 395 U.S. at 659-70.

The Federal Circuit held that in the context of a settlement, the *Lear* policy favoring competition about the use of ideas was not necessarily controlling, explaining that:

> while the federal patent laws favor full and free competition in the use of ideas in the public domain over the technical requirements of contract doctrine, settlement of litigation is more strongly favored by the law.  Clearly, the importance of res judicata and its hierarchical position in the realm of public policy was not a relevant consideration in *Lear* and therefore the Supreme Court never evaluated the importance of res judicata and whether it trumps the patent laws' prescription of full and free competition in the use of ideas that are in reality a part of the public domain.

*Id*. at 1369 (citing *Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir.1988)).  The *Flex-Foot*

---

expedient and orderly settlement of disputes and the fostering of judicial economy.  To allow a subversion of the deeply instilled policy of settlement of legitimate disputes by applying the federal patent policy as enunciated in *Lear* would effectively strip good faith settlements of any meaning . . . . We think the federal patent policy should not be carried so far."  *Ransburg Electro-Coating Corp. v. Spiller & Spiller, Inc.*, 489 F.2d 974, 978 (7th Cir. 1973); *see also Rothman v. Target Corp.*, No. CIV.A. 05-4829 MLC, 2014 WL 2436125, at *6 (D.N.J. May 30, 2014) (quoting *Ransburg*, 489 F.2d at 978).

court then concluded that "[o]nce an accused infringer has challenged patent validity, has had an opportunity to conduct discovery on validity issues, and has elected to voluntarily dismiss the litigation with prejudice under a settlement agreement containing a clear and unambiguous undertaking not to challenge validity and/or enforceability of the patent in suit, the accused infringer is contractually estopped from raising any such challenge in any subsequent proceeding." *Id.* at 1370.

In *Baseload*, the Federal Circuit returned to whether a settlement "may at one and the same time provide for a patent license while barring challenges to patent invalidity and unenforceability." 619 F.3d at 1361. The Federal Circuit held that "*Lear* does not render such agreements unenforceable, because of the strong policy in favor of settlement of litigation." *Id.* at 1361 (collecting cases). Instead, to balance the policies espoused in *Lear* against the "interests of settlement," courts should uphold no-challenge provisions made as part of a settlement to encourage voluntary settlements but narrowly construe these provisions to support the public policy of favoring challenges to validity.[8] *Id.* at 1361-62; *see also Mayo Clinic Jacksonville v. Alzheimer's Inst. of Am., Inc.*, 683 F. Supp. 2d 1292, 1296 n.7 (M.D. Fla. 2009) (collecting cases

---

[8] As discussed in this opinion, the Federal and Seventh Circuits allow no-challenge clauses associated with certain settlements. The court notes that the Second and Ninth Circuits have applied their own local circuit law in breach of contract cases based on the alleged failure to comply with a no-challenge clause in a pre-suit settlement agreement. Those courts do not recognize the settlement exception to the general rule that a no-challenge clause is unenforceable as a matter of public policy. *See Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163 (2d Cir. 2012) (*Lear* bars no-challenge clauses in pre-litigation settlements); *Warner-Jenkinson Co. v. Allied Chem. Corp.*, 567 F.2d 184, 188 (2nd Cir. 1977) ("*Lear* established that removing restraints on commerce caused by improperly held patents should be considered more important than enforcing promises between contracting parties"); *Massillon-Cleveland-Akron Sign Co. v. Golden State Adver. Co.*, 444 F.2d 425 (9th Cir. 1971) (same); *see also* 6 MOY'S WALKER ON PATENTS § 17:41 (4th ed.) (discussing the "special issue arising under *Lear*" when "contractual arrangements . . . have been used to resolve a prior dispute").

holding that "[t]he law frequently permits an individual to waive either a constitutional or a statutory right notwithstanding the strong public interest in preserving the right").

Importantly, the Federal Circuit held that "the absence of a prior dispute and litigation as to invalidity is pertinent" but:

> [e]ach case must be examined on its own facts in light of the agreement between the parties. In the context of settlement agreements, as with consent decrees, clear and unambiguous language barring the right to challenge patent validity in future infringement actions is sufficient, even if invalidity claims had not been previously at issue and had not been actually litigated.

*Baseload*, 619 F.3d at 1363. The Federal Circuit nevertheless found that the parties' settlement agreement did not bar a subsequent challenge to the patents' validity because the agreement's language was not clear and unambiguous. *Id.* Accordingly, under *Baseload*, a no-challenge clause that is part of a pre-litigation settlement of a dispute can be enforceable if that clause clearly and unambiguously bars a licensee's ability to challenge a patent's validity.[9] *Id.*; *see also Depuy Orthopaedics, Inc. v. Orthopaedic Hosp.*, No. 3:12-CV-299-CAN, 2015 WL 668130, at *5 (N.D. Ind. Feb. 13, 2015) (noting that "[s]ince *Lear* in 1969, the Federal Circuit has balanced

---

[9] Some courts have held that a no-challenge clause does not bar a validity challenge if the party asserting invalidity raises this challenge via an affirmative defense of invalidity and a defensive counterclaim seeking a declaration of invalidity. *See, e.g., Mayo Clinic*, 683 F. Supp. 2d at 1298. For example, in *Mayo Clinic*, the court found that a no-challenge clause did not bar an invalidity challenge raised in an affirmative defense and counterclaim (as opposed to a complaint) because the language of that clause was narrowly drawn. *Id.* at 1298 (describing the no-challenge clause as "clumsily and ineffectively constructed"). Ocean Tomo, like the challenger in *Mayo Clinic*, raised its invalidity defense in an affirmative defense and counterclaim. However, as discussed in this opinion, the no-challenge clause at issue in this case is broadly worded and covers any attempt by Ocean Tomo to "challenge . . . the validity or enforceability of the Licensed Rights in any court or other tribunal anywhere in the world." (License Agreement, Dkt. 116-6, at § 5.1.) Thus, the fact that Ocean Tomo raised invalidity in an affirmative defense and counterclaim does not affect the analysis of the no-challenge clause at issue in this case.

federal patent policy with contract principles in determining the enforceability of particular no-challenge provisions" and holding that "[d]espite the abrogation of licensee estoppel in *Lear*," the Federal Circuit has enforced no-challenge clauses in connection with settlement agreements and consent decrees).

The parties disagree as to whether the July 19, 2007 amendment reaffirming the no-challenge clause qualifies for the settlement exception to *Lear*. Ocean Tomo asserts that "[i]n this case, there has been no settlement agreement." (Pl. Supp. Memo., Dkt. 144, at 4.) The defendants, in contrast, argue that the July 19, 2007 amendment to the License Agreement, among other things, reaffirmed the License Agreement and represented – in Ocean Tomo's words – the culmination of "discussions regarding revision of [the parties] relationship" and a "settlement of that dispute [a disagreement about monies advanced by Ocean Tomo pursuant to the Management Services Agreement] and other issues." Sec. Am. Compl., Dkt. 83, ¶ 35; *see also* Barney Decl., Dkt. 116-1, at ¶ 36 (asserting that Barney and Malackowski "ultimately reached a compromise, under which [Ocean Tomo] agreed to terminate and nullify the MSA and to take over all further operating expenses of building, operating and maintaining the [PatentRatings system] software and related databases").

As noted above, the court must conduct a case-specific inquiry as the language in the parties' agreement and the surrounding circumstances dictate whether the resolution of a dispute is enough to make the settlement exception to *Lear* apply. *See Baseload*, 619 F.3d at 1363. In determining if an agreement rises to the level of a settlement for the purposes of *Lear*, "the absence of a prior dispute and litigation as to invalidity is pertinent." *Id*. However, the fact that an agreement is reached prior to the threat or initiation of litigation is not dispositive. *Id*.; *see*

*also Peparlet Co. v. Shepherd Specialty Papers, Inc.*, No. 3:12 CV 492, 2013 WL 2151634, at *2 (N.D. Ohio May 16, 2013) (citing *Baseload*, 619 F.3d at 1363) (the Federal Circuit "does not require that invalidity issues were actually litigated in the proceeding giving rise to the settlement agreement"); *Petter Investments, Inc. v. Hydro Eng'g, Inc.*, 828 F. Supp. 2d 924, 929 (W.D. Mich. 2011) (citing *Baseload*, 619 F.3d at 1363) (same).

Moreover, the settlement and consent decree exceptions to *Lear* represent post-*Lear* efforts to reconcile competing the policy considerations of encouraging challenges to patents and dispute resolution. *Flex-Foot*, 238 F.3d at 1369. Thus, "*Lear* stands for the proposition that the law will not infer from a license a bar to a licensee's challenging a patent." *Mayo Clinic*, 683 F. Supp. 2d at 1296. However, *Lear* "fails to discuss whether (or under what circumstances) informed persons, acting from positions of substantial parity and benefitting from the advice of counsel, may negotiate a contract that, consequent upon the exchange of a valuable consideration, knowingly, intelligently, explicitly, and voluntarily waives the right to challenge a patent's validity." *Id.*; *see also Flex-Foot*, 238 F.3d at 1369.

In this case, the wording of the no-challenge clause is clear, unambiguous, and sweeps broadly as "LICENSEE [Ocean Tomo] . . . agree[d] not to challenge . . . the validity or enforceability of the Licensed Rights in any court or other tribunal anywhere in the world." (License Agreement, Dkt. 116-6, at § 5.1.) The parties reaffirmed the no-challenge clause as part of negotiations that were memorialized in the July 19, 2007 amendment to the License Agreement. (July 19, 2007 Amendment, Dkt. 83-4.) The July 19, 2007 Amendment states that it was based on consideration and that the parties "intend[ed] to be legally bound." (*Id.*)

In addition, Ocean Tomo and PatentRatings, acting through Malackowski (Ocean Tomo's founder, Chairman, and CEO) and Barney (PatentRatings' owner), are sophisticated entities who entered into sophisticated multi-tiered arrangements with the assistance of counsel starting in 2004. The parties attempted to work out differences that had arisen via the July 19, 2007 amendment to the License Agreement. That amendment substantially changed the parties' relationship. It ended the MSA, required Ocean Tomo to pay for further operating expenses of building, operating and maintaining the PatentRatings system, software, and related databases, required PatentRatings agreed to execute a $1.5 million promissory note, gave Ocean Tomo a security interest in PatentRatings' patents and other assets, and altered the parties' revenue-sharing system.

Because Ocean Tomo presently denies that any sort of settlement occurred, it does not engage with the defendants' contention that the July 19, 2007 amendment to the License Agreement was a pre-suit settlement that reaffirmed certain portions of the License Agreement, including the no-challenge clause. But in the second amended complaint, Ocean Tomo itself describes the July 19, 2007 amendment to the License Agreement as the culmination of "discussions regarding revision of [the parties] relationship" and a "settlement of that dispute [a disagreement about monies advanced by Ocean Tomo pursuant to the Management Services Agreement] and other issues." (Sec. Am. Compl., Dkt. 83, ¶ 35.)[10]

---

[10] In general, "[a]llegations in a complaint are binding admissions." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013) (quoting *Jackson v. Marion Cnty.*, 66 F.3d 151, 153-54 (7th Cir. 1995). Ocean Tomo's description of the July 19, 2007 amendment as a "settlement" was not made in the context of the settlement exception to *Lear*. As such, it supports, but does not mandate, the conclusion that the amendment reaffirming the License Agreement takes this case outside the ambit of *Lear*.

The parties can develop the evidence relating to the July 19, 2007 amendment more fully at trial. *See Indus. Eng'g & Dev., Inc. v. Static Control Components, Inc.*, No. 8:12-CV-691-T-24-MAP, 2013 WL 247408, at *3 (M.D. Fla. Jan. 23, 2013). Nevertheless, at the summary judgment stage, the court must construe the record in the light most favorable to the defendants as they are opposing summary judgment. *See*, *e.g.*, *Anderson*, 477 U.S. at 255. For the reasons discussed above, the summary judgment record supports an inference that the July 19, 2007 amendment was a pre-suit settlement that reaffirmed certain portions of the License Agreement, including the no-contest clause in § 5.1. If the court reads the record in the light most favorable to Ocean Tomo, it is also possible that the amendment merely memorialized a set of business transactions that are no different than the parties' other pre-litigation dealings. But at this stage, the court must give the benefit of the doubt to the defendants.

Thus, for purposes of summary judgment, *Lear* does not bar the no-challenge clause at issue in this case. Accordingly, the court need not reach the remainder of the defendants' threshold arguments that purportedly bar Ocean Tomo's invalidity challenge or the merits of that challenge. Ocean Tomo's motion for partial summary judgment is denied.

## IV. CONCLUSION

For the above reasons, Ocean Tomo's motion for partial summary judgment [94] is denied.

Date:   September 24, 2015                    _____/s/_____
                                             Joan B. Gottschall
                                             United States District Judge