# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| OCEAN TOMO, LLC,  <br><br>    Plaintiff,  <br><br>v.  <br><br>JONATHAN BARNEY and PATENTRATINGS, LLC,  <br><br>    Defendants. | No. 12 C 8450  <br><br>Hon. Thomas M. Durkin  <br><br>Hon. Mary M. Rowland  <br><br>*Document electronically filed* |

**PLAINTIFF AND COUNTER-DEFENDANT OCEAN TOMO, LLC'S MEMORANDUM IN SUPPORT OF ITS RENEWED MOTION TO COMPEL INSPECTION OF ELECTRONIC MEDIA AND PRODUCTION OF REDACTED METADATA**

A core issue in this case is the extent to which Defendant Jonathan Barney has misused Plaintiff Ocean Tomo, LLC's ("Ocean Tomo's") confidential information. This issue underlies not only affirmative claims lodged by Ocean Tomo, but provides a defense to claims lodged by Mr. Barney. For example, Ocean Tomo alleges that Mr. Barney has violated the Computer Fraud and Abuse Act in his handling of the Ocean Tomo laptop computer and Ocean Tomo defends against Mr. Barney's claims under the Ocean Tomo Operating Agreement on the grounds that Mr. Barney has violated that agreement through his misuse of Ocean Tomo confidences. The key evidence as to whether and to what extent Mr. Barney misused Ocean Tomo confidential information resides on computers, USB devices, and cloud storage accounts in Mr. Barney's possession that unquestionably contain Ocean Tomo confidential information and trade secrets.

Accordingly, Ocean Tomo brings this renewed motion to compel forensic inspection of all devices in Defendants' possession or control containing Ocean Tomo's confidential documents. The prior forensic analysis conducted pursuant to this Court's March 2016 Order confirmed that Defendant Jonathan Barney has copied Ocean Tomo confidential documents to devices and websites not previously disclosed in discovery and not belonging to Defendants' counsel. To discover everywhere Ocean Tomo's confidential information was disseminated starting from Mr. Barney's laptop, Ocean Tomo requires further forensic analysis on the devices to which Ocean Tomo's confidential information was copied. The right to seek further examination is recognized and preserved by paragraph 6 of the March 2016 Order.

Ocean Tomo also moves to compel production of metadata showing the dates and times at which each Ocean Tomo confidential document was accessed or copied from Mr. Barney's laptop. The March 2016 Order explicitly did not rule on the merits of Defendants' assertion that data revealed by the forensic analysis would be privileged, but allowed Defendants to assert privilege

1

by redacting data and providing a redaction log. Defendants have improperly asserted that metadata showing the date of each access of an Ocean Tomo confidential document—which Mr. Barney did not have a right to possess in the first place—is protected by work product privilege if Mr. Barney accessed the document for a purpose related to this litigation. But the work product privilege protects documents prepared in anticipation of litigation and mental impressions; it does not protect the facts as to when Mr. Barney accessed each Ocean Tomo confidential document, especially given that the identity of the accessed documents themselves has already been disclosed. Date of access is of critical importance in showing improper usage because the date of access will allow Ocean Tomo to tie the access to other acts taken by Mr. Barney. Hence, even if the work product privilege extended to this access date information, it still would not apply because the requested metadata goes to a key issue in this case: when and for what purpose did Mr. Barney access Ocean Tomo confidential information?

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Many of Ocean Tomo's claims in this lawsuit, including claims for trade secret misappropriation, breach of employee confidentiality and computer use agreements, breach of fiduciary duty, and violations of the Computer Fraud and Abuse Act ("CFAA"), relate to Defendant Barney's copying, retention, and improper use of electronic Ocean Tomo confidential documents from an Ocean Tomo laptop he used while employed by Ocean Tomo. The contents of any electronic device to which Mr. Barney copied Ocean Tomo confidential documents, along with information about how and when those devices were used, are the key evidence as to the validity of Ocean Tomo's claims.

In July 2015, Defendants' counsel sent a letter admitting that Mr. Barney retained a back-up copy of approximately 69,960 files removed from the laptop issued to him by Ocean Tomo, and that approximately 1,411 of the removed files related to Ocean Tomo and may contain Ocean

2

Tomo confidential information. Dkt. #157, Ex. E at 2. That collection of documents has been referred to as the "Original Archive Folder," and there is no dispute that it is in Mr. Barney's possession. *Id.*

In September 2015, after discussion between the parties, Defendants' counsel offered to produce a redacted copy of the Original Archive Folder, which would be referred to as the "Redacted Archive Folder," containing all documents from the Original Archive Folder except for allegedly privileged documents and documents allegedly irrelevant to Ocean Tomo and the present dispute. Dkt. #157, Ex. L at 3. The Redacted Archive Folder, then, indisputably contains Ocean Tomo information. Without waiving its right to seek further relief, Ocean Tomo agreed to proceed with a limited forensic inspection of this Redacted Archive Folder. Dkt. #157, Ex. O at 2.

In early 2016, Ocean Tomo moved to compel Defendants to produce the devices to which Mr. Barney had copied data from the Laptop for forensic inspection. (Dkt. #157). Defendants' counsel had previously represented that the only devices containing information derived from the Laptop were three ThinkPad laptops (referred to as the "T410 Laptop" and the "X1C Laptops"), 4 USB drives containing mirror images or archives, and an automated cloud backup provided by Carbonite Cloud Service. (Dkt. #157, Ex. R). The Court granted Ocean Tomo's motion in part, requiring or permitting[1] the parties' forensic analysts to inspect the laptops to determine whether Ocean Tomo confidential information had been downloaded, emailed, or otherwise copied to any person or entity other than the parties and their counsel. (Dkt. #163 at ¶ 2).

The results of the forensic analysis, the short summary of which is provided as Exhibit 1 to the Declaration of Brian J. Beck in support of this motion ("Beck Decl."), showed that

---

[1] The Court split the burden of the forensic analysis, so that Ocean Tomo's forensic analyst was permitted to inspect one laptop, while Defendants' forensic analyst was required to inspect the other laptops and provide its analysis to Ocean Tomo. Dkt. #163 at ¶¶ 1, 3.

3

Defendants have not accurately represented Mr. Barney's use and storage of Ocean Tomo Information from the Laptop:

- Four USB drives with different serial numbers than those identified previously by Defendants' counsel had been connected to the T410 Laptop from April-June 2015. Beck Decl., Ex. 1 at 3.

- The T410 Laptop had been used to access text files on at least one of those previously unmentioned USB drives with file names indicating that data copying tools may have been used. *Id.*

- The T410 laptop had been used to transfer files containing Ocean Tomo Information from folders with path names indicating that they contained Ocean Tomo Information to DropBox and Box, two common Internet services that can be used to easily share files with anyone with Internet access. *Id.*

- Five USB drives with different serial numbers than those previously identified by Defendants' counsel had been connected to the X1C Laptops in 2015 and 2016, two of which had also been connected to the T410 Laptop. *Id.* at 4.[2]

- In addition to the Carbonite Cloud Service listed in Defendants' January 2016 letter, the forensic analysis showed that all three Laptops were connected to and accessed common Internet data sharing services DropBox and Box, including a folder named "\Dropbox\Ocean Tomo Docs." *Id.* at 3-4.

The summary report went on to explain that further forensic analysis of the USB storage devices would be necessary to determine whether Ocean Tomo files were copied to the USB storage devices (*Id.* at 3-4) and to determine what files were uploaded to Dropbox and Box (*Id.* at 3).

Defendants also redacted spreadsheets providing raw data from Deloitte's report extensively, and produced a redaction log with 4,664 separate items along with the redacted

---

[2] A subsequent letter from Defendants' counsel on January 9, 2017, stated that the USB devices listed in the Deloitte report overlapped somewhat with the devices disclosed in Defendants' January 2016 letter, but still identified three additional USB devices existed that had not previously been disclosed, asserting that two of those devices, though owned by Mr. Barney, contained only privileged material, and one of those devices contained no Ocean Tomo Information. Beck Decl., Ex. 8 at 2-3. In any case, there are unquestionably USB devices that were connected to Mr. Barney's computers that had not been previously disclosed.

4

spreadsheets on June 1, 2016. Beck Decl., Ex. 2. The vast majority of these redactions were listed as "Atty work product relating to Ocean Tomo litigation" with no further description. *Id.*

After receiving the report, Ocean Tomo's counsel wrote to Defendants' counsel to formally "request that Mr. Barney provide to Deloitte the 5 USB storage devices (as referenced in the Report) and access to Mr. Barney's Dropbox and Box accounts for forensic analysis to be reviewed under the same Protocol as before." Beck Decl., Ex. 3 at 2. Ocean Tomo also requested that Defendants clarify the basis for their assertion of work product privilege, as the redacted information was factual rather than attorney opinion and necessary to determine whether Mr. Barney improperly accessed and used Ocean Tomo confidential information. *Id.* at 2-3.

Defendants refused to produce the USB devices or to withdraw their redaction of metadata showing the dates of access of each file. Defendants' counsel primarily argued that the Deloitte report "did not identify a single instance in which Ocean Tomo Information was downloaded to other devices or web based sites, e-mailed, or otherwise disclosed to any person or entity other than Ocean Tomo, Mr. Barney, PatentRatings, or their respective counsel," and so any further analysis would be speculative and impose a disproportional burden. Beck Decl., Ex. 4 at 1-2. Regarding the metadata, Defendants argued that whether Mr. Barney accessed documents at the direction of counsel or for his own purposes related to litigation, all such accesses were protected by work product privilege. *Id.* at 4-5.

After substantial correspondence, Ocean Tomo reiterated its requests in a January 5, 2017 letter, noting additionally that Defendants' redactions were improper because Mr. Barney had no right to access Ocean Tomo confidential information in the first place and could not assert privilege to shield improper use of that confidential information. Beck Decl., Ex. 7 at 2. Defendants responded on January 9, 2017, arguing once again that (1) the Deloitte report only stated that it

5

was possible that Ocean Tomo information had been copied to the USB devices, Dropbox, or Box; (2) Defendants already informed Ocean Tomo that all Ocean Tomo information had been sequestered and used only in litigation, and the USB drives contained only privileged material and no Ocean Tomo information; and (3) Defendants would not withdraw any further metadata redactions. Beck Decl., Ex. 8.

Ocean Tomo raised these issues at a scheduled status hearing on January 10, 2017, and the Court entered a briefing schedule under which Ocean Tomo would file this motion to compel by January 13, 2017. Dkt. #191.

## ARGUMENT

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The burden rests upon the objecting party—here, Defendants—to show why a particular discovery request is improper. *Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 612 (N.D. Ill. 2001).

**I.   Defendants should be required to produce the outstanding USB drives and cloud service activity logs for forensic analysis**

The discovery Ocean Tomo requests in this motion goes to the heart of both Ocean Tomo's claims against Mr. Barney and Ocean Tomo's defense to a high-stakes breach of contract claim by Mr. Barney. Ocean Tomo, in this litigation, is asserting claims for breach of Mr. Barney's employment agreement, breach of Mr. Barney's computer asset policy agreement, breach of fiduciary duty, misappropriation of trade secrets under the Illinois Trade Secrets Act, violation of

6

the Computer Fraud and Abuse Act, and conversion—all arising out of Mr. Barney's improper retention and apparent misuse of electronic documents containing Ocean Tomo confidential information. Dkt. #176 at ¶¶ 133-169. Mr. Barney is in turn asserting a claim for breach of Ocean Tomo's operating agreement based on Ocean Tomo's nonpayment of dividend allocations to Mr. Barney; Ocean Tomo's refusal to pay is based on the same misappropriation of Ocean Tomo confidential information. *See* Dkt. #175 at ¶¶ 66-67; Beck Decl., Ex. 9. Ocean Tomo cannot determine the extent of its damages without this discovery, which is critical to its defense of a claim for which Mr. Barney demands over $8 million in damages. Ocean Tomo is therefore entitled to inspect each of Mr. Barney's devices to determine how much damage his actions have caused.

### A. The requested forensic analysis is relevant, proportional to the needs of the case, and not unduly burdensome given the amount at stake

First, there can be no question that the requested discovery is relevant. Defendants have admitted that Mr. Barney's computers and devices contain documents from the Redacted Archive Folder. By the terms Defendants provided for how they assembled the Redacted Archive Folder, the documents contained therein include Ocean Tomo confidential information, because Defendants created the Redacted Archive Folder by removing the documents from the Original Archive Folder that did not belong to Ocean Tomo. *See* Dkt. #157, Ex. L at 3.[3]

Ocean Tomo needs to discover not only that Mr. Barney possessed Ocean Tomo's confidential information, but also what he did with that confidential information. Where lawsuits focus on the question of what, if anything, a former employee did with improperly retained confidential information, courts routinely require forensic examination of computers and

---

[3] Defendants' preparation of the Redacted Archive Folder inherently admits that the Redacted Archive Folder contains Ocean Tomo Information. However, if the Court is concerned that the Redacted Archive Folder does not contain sufficiently sensitive Ocean Tomo information, Ocean Tomo will make available a collection of highly proprietary documents discovered in the Redacted Archive Folder *in camera* at the hearing on this motion.

electronic storage devices in trade secret cases to determine whether, when, and how the defendant accessed, copied, or used confidential information in his or her possession. *See, e.g., Lifetouch Nat'l Sch. Studios, Inc. v. Moss-Williams*, No. C10-05297, 2013 U.S. Dist. LEXIS 148360, at *4-*6 (N.D. Cal. Oct. 15, 2013) (ordering production of entire USB thumb drive in trade secret lawsuit against former employee where plaintiff showed that it was at least plausible that some information on the thumb drive was proprietary); *Toyota Indus. Equip. Mfg. v. Land*, No. 1:14-cv-1049, 2014 U.S. Dist. LEXIS 99070, at ¶¶ 64-68 (S.D. Ind. July 21, 2014).

Ocean Tomo cited *Network Cargo Sys. U.S.A. v. Pappas*, No. 13 C 9171, 2014 U.S. Dist. LEXIS 66392 (N.D. Ill. May 7, 2014) in support of its original motion to compel; it is even more on point now that Deloitte's analysis has shown that the additional USB devices and cloud storage accounts were connected to Mr. Barney's laptop. As in this case, the court in *Network Cargo* ordered an initial forensic inspection of an employee's personal computers to search for evidence of trade secret misappropriation. *Id.* at *3. The forensic analysis determined, as Deloitte's analysis has here, that three previously undisclosed flash drives had been connected to the employee's computers, and the employer plaintiff moved to compel production of the flash drives to discover whether there had been additional copying of the employer's confidential information. *Id.* The court ordered the defendant to produce the flash drives for forensic analysis, determining that merely providing the drives to a forensic consultant would not be overly burdensome to the defendant and may provide relevant information. *Id.* at *4.

The amount in controversy, the parties' resources, and whether the expense of discovery outweighs its likely benefit—other factors to be considered under Rule 26—all support Ocean Tomo's need to analyze Mr. Barney's USB devices and cloud storage accounts. Ocean Tomo will pay for the additional forensic analysis, imposing no burden on Defendants; they do not need to

do any more than produce the devices. And whatever burden Ocean Tomo's requested discovery might place on Defendants is proportional to the case in light of Defendants' own multi-million dollar damages request. In August 2016, Defendants served a supplemental Rule 26(a)(1)(E) disclosure alleging that Mr. Barney has suffered approximately $8.6 million in damages for breach of the Operating Agreement. Beck Decl., Ex. 10 at 5-6. Mr. Barney cannot simultaneously demand $8.6 million in damages while withholding the critical evidence for Ocean Tomo's defense on the grounds that it is too burdensome to produce. *See, e.g., Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, 97 C 5696, 1999 U.S. Dist. LEXIS 6897, at *6-*7 (N.D. Ill. Apr. 29, 1999).

Finally, the parties' relative access to relevant information supports Ocean Tomo's need for additional discovery. Simply put, the only way Ocean Tomo can determine what Mr. Barney did with the Ocean Tomo confidential information in his possession is to perform this forensic analysis. Ocean Tomo's forensic analyst explained that it cannot determine what files, if any, were copied to the USB devices or cloud storage accounts without analyzing the USB devices and cloud storage accounts themselves. Beck Decl., Ex. 1.

**B. Defendants' reasons for withholding discovery cannot overcome Ocean Tomo's need for discovery**

Defendants have asserted two similar, equally unavailing bases for resisting forensic analysis of the computers and electronic storage devices. First, Defendants have argued that because Mr. Barney has used his computers for other purposes including communication with counsel, forensic analysis would reveal privileged attorney-client communications. Beck Decl., Ex. 11 at 19:6-24. Second, Defendants have argued that the metadata showing that Mr. Barney opened a document would be privileged as work product if it was done at direction of counsel because it would show Defendants' attorney's mental impression. *Id.* at 12:1-13:6. Neither argument provides a reason for withholding discovery because **Mr. Barney** was the person who

9

chose to commingle Ocean Tomo confidential information with his personal and privileged communications on multiple devices.

This case is similar to *Weatherford U.S., L.P. v. Chance Innis & Noble Casing, Inc.*, No. 4:09-cv-061, 2011 U.S. Dist. LEXIS 59036 (D.N.D. June 2, 2011), where the court ordered production of computers for forensic analysis after an initial analysis of an employee's thumb drive containing confidential information showed it had been connected to those computers. The employee in *Weatherford* acknowledged that he had downloaded trade secret information to a thumb drive, but claimed that he did not access or use the files afterward. *Id.* at *3. The plaintiff's forensic expert determined that contrary to defendants' assertions, files on the thumb drive had been accessed after the employee's termination and could have been subsequently copied to another computer. *Id.* at *3-*4. The plaintiff then requested all of the defendants' computers and portable storage devices for further forensic analysis. *Id.* at *4. The court granted the plaintiff's motion to compel, explaining that the plaintiff's showing that materials on the thumb drive had been accessed showed a need for the analysis. *Id.* at *12.

As in *Weatherford*, Deloitte's analysis here shows that Ocean Tomo information was copied to more devices than Defendants have claimed previously in this lawsuit. Defendants did not identify the DropBox and Box accounts in their January 2016 letter, but the subsequent forensic analysis showed that one of Mr. Barney's laptops accessed a folder named "\Dropbox\Ocean Tomo Docs." *Compare* Dkt. #157, Ex. R to Beck Decl., Ex. 1 at 4. Further, the Deloitte analysis showed that at least three additional USB devices not previously disclosed were connected to Mr. Barney's computers. Defendants now claim that two of these devices are USB thumb drives which (1) "are owned and maintained by Mr. Barney," and (2) "contain only confidential information protected from disclosure," but they presumably do contain Ocean Tomo Information. Defendants claim that

10

the third device contains no Ocean Tomo Information. Beck Decl., Ex. 8 at 3. Ocean Tomo is not required to take Defendants' word that these additional, previously undisclosed storage devices and cloud storage accounts are entirely innocent—that is what discovery is for.

Defendants' characterization of Mr. Barney's multitude of copies and repeated access of Ocean Tomo information as necessary for litigation is implausible, and any commingling of Ocean Tomo information with privileged communications is entirely Mr. Barney's fault. Any Ocean Tomo information Defendants' counsel needed to access should have been collected and stored to counsel's computers and subsequently accessed from there, not left on Mr. Barney's computer for his free use. Importantly, Defendants' counsel contends that **Mr. Barney**, not his counsel, accessed the Ocean Tomo files for litigation purposes. Beck Decl., Ex. 6 at 4. Even if Mr. Barney only accessed Ocean Tomo Information for use in this litigation, that still would have been a breach of his confidentiality agreement and a misuse of Ocean Tomo trade secrets; his attorneys' need to access documents at issue does not give Mr. Barney carte blanche to retain and use Ocean Tomo confidential information. And notably, by redacting all data accesses Mr. Barney made purportedly at his counsel's direction, Defendants implicitly admit that Mr. Barney accessed Ocean Tomo confidential information for non-litigation, and thus presumably improper, purposes.

Further, even access for litigation is not necessarily innocent. Mr. Barney cannot neatly separate his memory of Ocean Tomo's confidential information into supposedly permissible litigation purposes and plainly unlawful business purposes. Courts routinely enter protective orders limiting discovery access to confidential business information to outside counsel because even with a promise of confidentiality, large amounts of confidential documents are "beyond the capacity of anyone to retain in a consciously separate category." *See U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1467 (Fed. Cir. 1984). If Mr. Barney accessed a confidential Ocean Tomo

11

document "for litigation purposes" and then used that information to inform his business dealings a few days later, he would still have misappropriated Ocean Tomo's trade secrets.

Defendants' complaints of burden are similarly a result of Mr. Barney's choice to commingle Ocean Tomo confidential information with his personal and privileged communications, and are thus unavailing. It was Mr. Barney's decision to make multiple copies of Ocean Tomo's confidential information and to copy it to computers and devices containing his own personal information and potentially privileged attorney-client communications. Having hidden a needle in a haystack, Mr. Barney cannot now complain of the difficulty of searching the haystack.

In any case, any concerns Defendants have regarding privilege can be accommodated through an appropriate forensic analysis protocol. *See Weatherford*, 2011 U.S. Dist. LEXIS 59036 at *13. For example, the forensic analysis could be limited to access or exfiltration of documents matching the Redacted Archive Folder and of connections between the USB drives and other computers.[4]

## II. Defendants should be required to withdraw their redactions of metadata showing the dates of access and copying of Ocean Tomo confidential information

Defendants redacted thousands of entries in Deloitte's report on the basis of work product privilege and provided a log showing the dates of access and the number of documents accessed. Beck Decl., Ex. 5 at 2. Specifically, the 101-page redaction log contains 4,411 entries, most of which list only as a basis for redaction "Atty work product relating to Ocean Tomo litigation."

---

[4] Defendants have raised complaints about alleged disclosure of allegedly privileged metadata by Deloitte in connection with the initial forensic report. Ocean Tomo currently does not understand exactly what Deloitte is accused of. Ocean Tomo maintains that any such disclosure would have been harmless, as Defendants' redactions of metadata based on work product privilege are improper. *See infra* at 13-15. In any case, if Deloitte's alleged misconduct is a concern for the Court, Ocean Tomo can have the forensic analysis performed by another company.

Beck Decl., Ex. 2. Entries 2,531-4,385 each redact at least one entry on a spreadsheet, "Exhibit_C2_Hash_ComparisonReport," showing each access of a document from the Redacted Archive Folder by one of Mr. Barney's laptops. Beck Decl. at ¶ 4. The redactions blank out the full path of the document along with the dates the file was created, last accessed, last modified, and when the entry was modified. *Id.*

Defendants' blanket assertions of privilege cannot stand. First, the burden of showing that a particular document is privileged is on the party claiming the privilege, *i.e.*, Defendants. *Allendale Mut. Ins. Co. v. Bull Data Sys.*, 152 F.R.D. 132, 137 (N.D. Ill. 1993). Defendants have not articulated, and cannot articulate, any reason why the date a file was accessed by Mr. Barney would be entitled to work product protection. Courts have repeatedly held that the fact of an attorney's legal advice and the date on which it was given are not protected by attorney-client or work product privilege. *See, e.g., Condon v. Petacque*, 90 F.R.D. 53, 54 (N.D. Ill. 1981); *McCrink v. Peoples Benefit Life Ins. Co.*, No. 2:04-cv-01068, 2004 U.S. Dist. LEXIS 23990, at *16 (E.D. Pa. Nov. 29, 2004). Here, as the action sought was taken by **Mr. Barney** with no indication in the data as to whether it was done at the request of counsel, Defendants' assertion of privilege is even less tenable.

Mr. Barney and his counsel also had no right to use Ocean Tomo confidential information even for litigation purposes and cannot assert privilege to shield his unlawful actions. This Court has held that attorneys have an ethical obligation to return an opposing party's confidential documents received outside legitimate discovery procedures. *Chamberlain Group, Inc. v. Lear Corp.*, 270 F.R.D. 392, 398 (N.D. Ill. 2010). What's more, unethical conduct vitiates the work product protection, as the privilege exists to protect the integrity of the adversarial system; protecting unethical conduct from discovery would undermine rather than advance "the cause of

13

justice." *Anderson v. Hale*, 202 F.R.D. 548, 554 (N.D. Ill. 2001). Again, whatever legitimate reason Mr. Barney and his counsel might have had for accessing Ocean Tomo's confidential information should have involved only Defendants' counsel accessing documents duly produced in discovery in accordance with the protective order in this case. Mr. Barney's use of improper personal copies is not legitimate work product.

Even if work product privilege could apply, it does not overcome Ocean Tomo's "substantial need for the materials to prepare its case." Fed. R. Civ. P. 26(b)(3)(A)(ii). It is difficult to discover direct evidence of trade secret misappropriation. *See, e.g., Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 490 (1974). Ocean Tomo thus needs access to the metadata to develop circumstantial evidence of misappropriation. If, for example, the metadata shows that Mr. Barney accessed Ocean Tomo confidential information shortly before doing business for which that confidential information would be relevant, that sort of circumstantial evidence would strongly support Ocean Tomo's claims. *See, e.g., Uniram Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 944 (N.D. Cal. 2007). There is, of course, no other way to get the evidence Ocean Tomo seeks, because the access data from Mr. Barney's computers is the only record that exists of when and how often Mr. Barney accessed specific documents.

The metadata Ocean Tomo seeks also does not reveal "mental impressions, conclusions, opinions, or legal theories" of Defendants' attorneys and so does not fall under the "opinion work product" exception to the "substantial need" exception. The metadata reveals nothing more than the file path of documents Mr. Barney accessed and the dates on which he accessed them. "Opinion work product protection is warranted only if the selection or request reflects the attorney's focus in a meaningful way." *F.T.C. v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 151 (D.C. Cir. 2015). In *Boehringer Ingelheim*, the District of Columbia Circuit reversed a district court's finding

that financial reports prepared by attorneys in anticipation litigation were opinion work product, explaining that the documents "contained only factual information requested or selected by counsel," and that counsel's requests for information "were often general and routine" and therefore did not reveal opinion. *Id.* at 152. The same rule applies here. The thousands of instances where Mr. Barney accessed Ocean Tomo confidential information show that the access was "general and routine," does not reflect Defendants' counsel's focus in any meaningful way, and could not show Defendants' counsel's mental impressions or legal theories.

Indeed, this scenario is analogous to the well-established rule that a party may ask a witness at deposition what the witness told to an attorney. *United States v. Int'l Bus. Machs. Corp.*, 79 F.R.D. 378, 380 (S.D.N.Y. 1978) (a deponent may be asked "to relate what he told opposing counsel at a previous interview."). Here, Ocean Tomo is merely seeking the date and time on which Mr. Barney accessed certain documents, regardless of whether his decision to access those documents was at the request of counsel. *A fortiori*, if the content of factual information Mr. Barney told his attorney would not be protected, the mere fact that he accessed a document cannot be protected as work product.

## **CONCLUSION**

For the foregoing reasons, Ocean Tomo requests that the Court grant its motion and compel Defendants to (1) produce for forensic inspection all USB devices Deloitte's analysis determined were connected to Mr. Barney's computers containing Ocean Tomo Information, (2) produce full activity logs of the filenames, dates of access, and individuals who accessed Mr. Barney's DropBox and Box accounts, and (3) remove all redactions of the Deloitte report based on Defendants' assertion of work product privilege.

Dated:  January 13, 2017              Respectfully submitted,

*/s/ William Cory Spence*
William Cory Spence (No. 6278496)
Brian J. Beck (No. 6310979)
Jacob Robert Graham (No. 6309125)
SpencePC
405 N. Wabash Ave., Suite P2E
Chicago, Illinois 60611
312-404-8882
William.Spence@spencepc.com
Brian.Beck@spencepc.com
Jacob.Graham@spencepc.com
*Counsel for Plaintiff and Counter-Defendant Ocean Tomo, LLC*

**CERTIFICATION PURSUANT TO LOCAL RULE 37.2**

On January 10, 2017, William Cory Spence (counsel for Plaintiff Ocean Tomo, LLC) and David C. Layden (counsel for Defendants) appeared before the Court at a status hearing. At the status hearing, the parties raised before the Court the issues that are the subject of this motion and were unable to reach an accord through no fault of counsel's. The Court subsequently set a briefing schedule for this motion, ordering Ocean Tomo to file this motion by January 13, 2017.

/s/ *William Cory Spence*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2017, a copy of the foregoing was served on counsel of record by electronic means pursuant to the court's Electronic Case Filing (ECF) system.

/s/ *William Cory Spence*