**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OCEAN TOMO, LLC, | ) | |
| | ) | |
| Plaintiff-Counterdefendant, | ) | |
| | ) | |
| vs. | ) | No. 12 C 8450 |
| | ) | |
| JONATHAN BARNEY and | ) | Hon. Thomas M. Durkin |
| PATENTRATINGS, LLC, | ) | |
| | ) | Hon. Mary M. Rowland |
| Defendants-Counterplaintiffs. | ) | |

**JONATHAN BARNEY'S AND PATENTRATINGS, LLC'S
MEMORANDUM IN OPPOSITION TO OCEAN TOMO, LLC'S
RENEWED MOTION TO COMPEL INSPECTION OF ELECTRONIC
MEDIA AND PRODUCTION OF REDACTED METADATA**

Ocean Tomo, LLC's Renewed Motion to Compel Inspection of Electronic Media and Production of Redacted Metadata (the "Motion") (Dkt. No. 194) is without merit, and should be denied in its entirety, for several reasons.

*First*, as Jonathan Barney and PatentRatings, LLC describe below, they long ago provided all of the discovery that this Court ordered in its March 7, 2016 Order Granting in Part and Denying in Part Plaintiff-Counter-Defendant Ocean Tomo, LLC's Motion to Compel (Dkt. No. 163) (the "Order"). Ocean Tomo's Motion is a thinly-disguised attempt to belatedly re-litigate the additional discovery that Ocean Tomo sought, and the Court denied in the Order.

*Second*, contrary to what Ocean Tomo argues, the forensic examination conducted pursuant to the Order has not revealed anything that supports the additional discovery that Ocean Tomo seeks for the second time. Among other things, despite having a full opportunity to analyze the extensive electronic information produced pursuant to the Order (including complete forensic imaging, inspection and analysis of three different laptops owned by Mr. Barney), Ocean Tomo's

forensic analyst, Deloitte Financial Advisory Services LLP ("Deloitte"), *was unable to identify a single instance in which Ocean Tomo Information (as defined in the Order) was downloaded to other devices or web based sites, e-mailed, or otherwise disclosed to any person or entity other than Ocean Tomo, Mr. Barney, PatentRatings, or their respective counsel*.[1] Instead, Ocean Tomo's Motion rests solely upon Deloitte's unsupported assertion that the various USB storage devices and/or online storage sites that are the subject of the Motion *could* have "provide[d] the opportunity to access or copy (Ocean Tomo Information)." (Dkt. No. 195, Ex. 1, at 3, ¶¶ 2, 6.) Such loose speculation is not a valid basis for discovery, particularly where, as here, even following extensive forensic examination under the Order, Ocean Tomo cannot point to *any* evidence supporting its allegations that Mr. Barney disclosed Ocean Tomo Information to third parties, or used such information to compete with Ocean Tomo.

*Third*, contrary to Ocean Tomo's glib assurances that the discovery it seeks would impose no burden on Mr. Barney or PatentRatings, in fact, the additional discovery sought in the Motion would require Mr. Barney and PatentRatings to go through an extremely costly and time-consuming process of segregating privileged and work-product information, *and* Mr. Barney's and PatentRatings' confidential information having nothing to do with Ocean Tomo, from the electronic information to be provided to Ocean Tomo. Such segregation is necessary, both because of the nature of the information involved, and because Ocean Tomo and its forensic analyst already have demonstrated that they cannot trusted to comply with the provisions of the Order that are intended to safeguard Mr. Barney's and PatentRatings' confidential information.

The additional devices and online storage accounts Ocean Tomo seeks to inspect contain a massive amount (over 3.8 TB) of data, comprising more than 2.2 million individual files stored in

---

[1] Deloitte Analysis Summary Report dated May 24, 2016 (the "Report"). (Dkt. No. 195, Ex. 1.)

more than 105,000 folders. The vast majority of these files have absolutely nothing to do with Ocean Tomo or this action. Many of these files contain personal and confidential communications and information that are protected by the attorney-client privilege and/or the work product doctrine. Extracting, reviewing, redacting, and logging each of these items of information from multiple USB devices and online storage accounts would impose a significant burden on Mr. Barney and PatentRatings that is not proportional to the needs of this case—particularly given that Ocean Tomo has not identified a single instance of actual misappropriation of Ocean Tomo Information or any actual damages suffered by Ocean Tomo resulting from any such alleged misappropriation.[2]

*Fourth*, Ocean Tomo argues that Defendants have improperly asserted protection under the work product doctrine with respect to certain "metadata showing the date of each access of an Ocean Tomo confidential document…" Alternatively, Ocean Tomo argues that "substantial need" trumps the work-product doctrine because the "[d]ate of access is of critical importance in showing improper usage because the date of access will allow Ocean Tomo to tie the access to other acts taken by Mr. Barney." These arguments are demonstrably wrong. Indeed, the redaction log itself (Dkt. No. 195, Ex. 2) (the "Redaction Log") reveals the "Date Accessed" for each logged document, as required by the Order.[3] Thus, Ocean Tomo already has—and has had in its possession

---

[2] Mr. Barney and PatentRatings object to Ocean Tomo's "offer" to "make available a collection of highly proprietary documents discovered in the Redacted Archive Folder in camera at the hearing." For the past three years, Ocean Tomo *has refused to identify such documents* to Mr. Barney and PatentRatings, despite multiple interrogatory requests seeking such information. This Court should not condone Ocean Tomo's clumsy attempt at some kind of ambush.

[3] Paragraph 3(d) of the Order provides that "[i]f any metadata reflects only that Mr. Barney accessed a document comprising Ocean Tomo Information, and where Mr. Barney seeks to assert the attorney-client and/or work product privileges over such metadata, counsel for Mr. Barney need only provide a log showing any and all dates on which such access took place, the number of documents accessed (without having to identify which specific documents were accessed), the

for at least the past 7 months—the "critical" information it claims is now necessary "to tie the access to other acts taken by Mr. Barney."

For these reasons, and the other reasons set forth below, this Court should deny the Motion in its entirety.

## BACKGROUND

This case is one component of a protracted legal battle between Ocean Tomo, Mr. Barney, and PatentRatings. Mr. Barney is the founder and majority-owner of PatentRatings. Mr. Barney is also a member and minority owner of Ocean Tomo, and Ocean Tomo is also a member and minority owner of PatentRatings.

PatentRatings developed and owns proprietary software, trade secrets, patents and other valuable intellectual property (the "Intellectual Property") that PatentRatings licensed to Ocean Tomo in exchange for a share of certain revenues. Ocean Tomo successfully commercialized the Intellectual Property and since 2007 has paid more than $2.5 million in licensing fees to PatentRatings. After several years, however, Ocean Tomo decided that it did not like certain aspects of the agreements it had made, and attempted to force PatentRatings into a less-favorable license with reduced revenue-sharing obligations. When PatentRatings refused, Ocean Tomo launched a campaign of vexatious litigation, which was designed to "persuade" PatentRatings and Mr. Barney to agree to Ocean Tomo's demands to revise the parties' deal.

Since 2011, Ocean Tomo has commenced six separate litigation actions against PatentRatings and Mr. Barney in Illinois, California and in the U.S. Patent & Trademark Office ("USPTO"). Mr. Barney and PatentRatings have defeated two of these lawsuits, while the other

---

number of instances of such access on any applicable dates, and a description of the basis for the assertion of the privilege."

lawsuits (including this action) are pending. Ocean Tomo has yet to prevail on a single claim. Ocean Tomo's Motion is just the latest facet of its campaign.

## I. The OT Laptop

One of Ocean Tomo's contentions in the current litigation—and its purported basis for depriving Mr. Barney of millions of dollars in unpaid dividends—is that Mr. Barney supposedly "wiped" a laptop (a Lenovo T400, Serial No. R8-0068D) provided to him by Ocean Tomo (the "Laptop"). Ocean Tomo also contends that Mr. Barney "misused" certain confidential information and trade secrets allegedly contained on that Laptop. Mr. Barney denies these allegations. Despite repeated requests from Mr. Barney and PatentRatings, Ocean Tomo has not identified a single instance in which Mr. Barney has allegedly "misused" any Ocean Tomo information. Ocean Tomo also has not identified any actual damages suffered by Ocean Tomo resulting from any such alleged misuse.

## II. The Original Archive Folder

As Mr. Barney explained to Ocean Tomo long ago, copies of the documents that were on the Laptop were preserved by Mr. Barney and are contained in a single archive folder (the "Original Archive Folder"). Mr. Barney already has produced to Ocean Tomo all of the documents that are contained in the Original Archive Folder. There are no Ocean Tomo documents in Mr. Barney's possession that have not been produced to Ocean Tomo in this litigation.

## III. Storage Devices

Prior to the entry of the Order, Mr. Barney also identified all storage devices in his possession that contained any files or information that had been contained on the Laptop. For example, Mr. Barney identified three different laptops that he used in the years following his

5

departure from Ocean Tomo and he described the Ocean Tomo information stored on those laptops:

> The first three devices (Serial Nos. R9-0H088V, R9-WOE5C, and R8-2XKH4) are personal laptop computers which contain at least some electronic documents and emails from the Laptop. The Ocean Tomo emails start in 2005 and are stored in multiple Outlook (".pst" or ".ost") folders, which contain copies of substantially all emails (including non-Ocean Tomo emails) archived by Mr. Barney since 2001. All other Ocean Tomo related electronic documents are segregated and stored in a separate subfolder named "!OCEAN TOMO!". Virtually all of the retained Ocean Tomo emails and electronic documents relate to: (i) various agreements between or among Ocean Tomo, PatentRatings, and Mr. Barney; (ii) Mr. Barney's ownership interest in Ocean Tomo; (iii) Ocean Tomo's ownership interest in PatentRatings, or (iv) various litigation matters between or among Ocean Tomo, PatentRatings, and Mr. Barney. (Dkt. No. 157, Ex. R, at 1-2 (footnote omitted).)

Mr. Barney also identified four USB devices and an on-line storage account (Carbonite) that contained files and/or information derived from the Laptop:

> The fourth-listed device (Serial No. 15503790406295) is a mini USB storage device that contains: (i) an archive copy of the "!OCEAN TOMO!" subfolder contained on Mr. Barney's personal laptop computer Ser. No. R9-WOE5C as of June 22, 2015; and (ii) a duplicate backup copy of the email archive folders previously contained on the Laptop.

> The fifth-listed device (Ser. No. WCC4E2JYHDXL) is a bulk storage device containing the following archive folders:

> [detailed list omitted].

> The first three folders (JAB_Thinkpad (2008-09-04), JAB_Thinkpad (2010-03-05), and JAB_Thinkpad (2010-09-19)) are periodic archival copies of all user-created electronic files and documents contained on the Laptop. The remaining eleven folders are periodic archival copies of all user-created electronic files and documents contained on other laptop devices (Ser. Nos. R9-0H088V, R9-WOE5C, R8-2XKH4) owned or used by Mr. Barney. In each case, all Ocean Tomo-related electronic documents are contained in a separate subfolder named "!OCEAN TOMO!".

> The two Passport USB Drives (Serial Nos. WXG1A3504D1R and WXE1E15017SE) are static and continuously updated mirror-image backups of Mr. Barney's laptops, Serial Nos. R9-WOE5C and R9-0H088V, respectively. The final-listed device is a Carbonite Cloud Service, which provides continuous cloud

6

backup of all user-created electronic files and documents contained on Mr. Barney's current laptop, Serial No. R9-0H088V. (Dkt. No. 157, Ex. R, at 2-3.)

In accordance with the Order, Mr. Barney produced to Deloitte a complete forensic image of his T410 laptop (Serial No. R8-2XKH4) and Forensic Trace Evidence Reports containing metadata information forensically extracted from his two other laptops (Serial Nos. R9-WOE5C and R9-0H088V).

### IV. Deloitte's Analysis and Report

Contrary to Ocean Tomo's assertions, after analyzing all the forensic evidence made available to Deloitte under the Order, Deloitte did not identify a single instance in which Ocean Tomo Information[4] was downloaded to other devices or web based sites, e-mailed, or otherwise disclosed to any person or entity other than Ocean Tomo, Mr. Barney, PatentRatings, or their respective counsel. Instead, Deloitte merely speculated that various USB storage devices and/or online storage sites *could* have "provide[d] the opportunity to access or copy [Ocean Tomo Information]." (Dkt. No. 195, Ex. 1, at 3, ¶¶ 2, 6.)

In support of its speculation and suggestions for additional forensic analysis, Deloitte made a number of "observations." As Mr. Barney and PatentRatings explain below, none of these "observations" support Ocean Tomo's Motion:

---

[4] Ocean Tomo Information was specifically defined in the Order as "the electronic files and folders comprising the Redacted Archive Folder [containing approximately 9,670 files] that was produced by Mr. Barney to Ocean Tomo on or about December 3, 2015, as well as any derivatives of such information," without attributing ownership of such information to either party. In addition, the parties also agreed to include 25 files identified by Ocean Tomo that were contained in the Original Archive Folder produced (on an attorneys-eyes-only basis) by Mr. Barney to Ocean Tomo on or about January 28, 2016.

7

| Deloitte's "Observations" | Defendants' Response |
|---|---|
| 2 files named "!Command Line Tools!.txt" and "directory.txt" were opened on June 24, 2015 from the Samsung UFD USB Device, and 1 file named "robolog.txt" was opened on June 24, 2015 from the WD My Book device and subsequently opened on June 25, 2015. | None of these files embody or contain any Ocean Tomo Information.[5] |
| The correlation of the USB storage device connection activity and the LNK file activity suggest files were accessed or copied from the USB device and the accessing of these specific files suggest data copying using scripts or other tools such as "robocopy" may have occurred. | No file embodying or containing Ocean Tomo Information is identified as having been copied to or from any USB device. |
| The Internet History Report shows the Dropbox account was being used and files were being accessed including file names containing the terms "Patent Ratings" and "Notice Shareholder Meeting," which are similar to file names found within the archived sets of data previously provided. | The only "similarly-named" files identified in the Report are: 1) Notice of Shareholder Meeting.... pdf, and 2) PATENT RATINGS... QBX. Neither of these files embodies or contains any Ocean Tomo Information. |
| The network activity from the internet history of the X1C Laptops indicates a folder was accessed from the F:\ drive on November 3, 2015 named "F:/JAB_Thinkpad (2010-03-05)/ containing folder names similar to the archived sets including "!Ocean Tomo!, "!BACKUP DATA!", and "!SOFTWARE!". | Mr. Barney has already disclosed that this bulk storage device (Ser. No. WCC4E2JYHDXL) contains periodic archival copies of all user-created electronic files and documents that were contained on the Laptop. The Report reveals no new information about this device or the contents thereof. |
| This activity includes references to a folder named \Dropbox\Ocean Tomo Docs\. | This folder contains only litigation document production. The Report does not indicate that any individual(s) other than Mr. Barney and his attorneys accessed this folder. |
| The Shellbag report from the 006 X1C Laptop indicates the \Dropbox\Ocean Tomo Docs\ and \Dropbox\PR BATES DOCS\ folders were accessed in September of 2015 which is consistent with the connection of USB devices on the 006 X1C Laptop. | These folders contain only litigation document production. The Report does not indicate that any individual(s) other than Mr. Barney and his attorneys accessed these folders. |

---

[5] Ocean Tomo and Deloitte already have access to all of the information needed to confirm the accuracy of each of these responses.

8

## V. The Purportedly "Undisclosed" Devices

Ocean Tomo asserts that Deloitte's analysis "confirmed that Defendant Jonathan Barney has copied Ocean Tomo confidential documents to devices and websites not previously disclosed in discovery and not belonging to Defendants' counsel." (Mot. at 1.) That is simply not true. Deloitte identified three devices that were connected to one or more of Mr. Barney's laptops, but nothing in the Deloitte report supports Ocean Tomo's assertion that Deloitte found that Ocean Tomo Information was copied to those devices.[6] These devices are listed below along with a brief description of their contents:

| Device Name | Device ID | Contents |
|---|---|---|
| Memorex Mini USB | 07B41303EC8ED98B | 290 files stored in 33 folders (293 MB) |
| Samsung UFD USB | S0402010000000DO | 11 files stored in 4 folders (2.1 MB) |
| Toshiba External USB | 20131128017204F | 12,955 files stored in 90 folders (167 GB) |

Two of these devices contain attorney-client communications and attorney work-product relating to documents produced by Ocean Tomo in this litigation. The Toshiba External USB device contains only personal and confidential information belonging to Mr. Barney and his family, including family photographs, family home videos, and musical recordings.

Deloitte also speculated that Mr. Barney may have used the www.dropbox.com and/or www.box.com online storage websites to transfer Ocean Tomo confidential documents electronically. However, the Report does not indicate that any files embodying or containing Ocean Tomo Information were stored on these online storage accounts or that any individual(s),

---

[6] Ocean Tomo asserts there were seven USB devices "with different serial numbers than those identified previously by Defendants' counsel." (Dkt. No. 194 at 4, ¶¶ 1, 4.) As Mr. Barney's counsel advised Ocean Tomo's counsel several days *before* the filing of the Motion, Ocean Tomo is just wrong about this—because it misidentified device IDs as "serial numbers." (*See* Dkt. #195, Ex. 8 at 2-3.)

9

other than Mr. Barney, PatentRatings, Ocean Tomo or their respective attorneys, accessed any such files from these or any other online storage websites.[7]

### VI. Improper Disclosures of Work-Product

On at least two separate occasions of which Mr. Barney and PatentRatings are aware, Deloitte improperly disclosed to Ocean Tomo—in non-compliance with the Order—information designated by Mr. Barney and PatentRatings as confidential work-product. (*See* Dkt. #195, Ex. 6.)

On or about October 5, 2016 Ocean Tomo produced a certain "comparison report" that purported to identify "access or exfiltration of files containing Ocean Tomo Information …." Upon reviewing the report, Mr. Barney and PatentRatings discovered that specific records of information identified and relied upon by Ocean Tomo previously had been designated by Mr. Barney and PatentRatings, under the provisions of the Order, as protected information under the work-product doctrine. After repeated requests, Ocean Tomo grudgingly acknowledged that Deloitte had disclosed this information to Ocean Tomo even though it was prohibited from doing so under the Order.

Remarkably, even after Mr. Barney and PatentRatings specifically raised with Ocean Tomo the issue of such improper disclosures, Ocean Tomo provided Mr. Barney and PatentRatings with a revised comparison report on November 11, 2016 that identified and relied upon 2,526 records of confidential information that Mr. Barney and PatentRatings had previously identified as protected information under the work-product doctrine. This information was specifically identified in the Redaction Log (Dkt. No. 195, Ex. 2) and redacted from the electronic versions of the Deloitte Report provided to Ocean Tomo. Even worse, the revised "comparison report"

---

[7] In response to Ocean Tomo's requests, and before Ocean Tomo filed the Motion, Mr. Barney authorized www.dropbox.com and www.box.com to identify all individuals who may have had accessed documents stored on Mr. Barney's on-line storage accounts.

10

contained a copy of the very information that was redacted and identified in the Log as "attorney work product."

Ocean Tomo blithely dismisses these disclosures as "harmless" because, according to Ocean Tomo, "Defendants' redactions of metadata based on work product privilege are improper." (Dkt. No. 195 at 12, fn. 4.)

## ARGUMENT

### I. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) defines the scope of permissible discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Rule 26(b)(2)(C) permits the Court to impose reasonable limitations if a discovery request is cumulative, late, or out of proportion to the needs of the case:

> (C) *When Required*. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

### II. The Proposed Discovery Is Not Proportional to the Needs of this Case.

No new information has developed since this Court issued its March 7, 2016 Order. Deloitte conducted all the inspections and forensic analyses provided for in the Order, and did not

11

identify a single instance in which Ocean Tomo Information was downloaded to other devices or web based sites, e-mailed, or otherwise disclosed to any person or entity other than Ocean Tomo, Mr. Barney, PatentRatings, or their respective counsel. Deloitte merely speculated that various USB storage devices and/or online storage sites potentially could have "provide[d] the opportunity to access or copy [Ocean Tomo Information]." (Dkt. No. 195, Ex. 1 at 3, ¶¶ 2, 6.) Such speculation is not a valid basis for discovery—particularly the type of burdensome and intrusive forensic discovery that Ocean Tomo seeks.

The additional devices and online storage accounts Ocean Tomo seeks to inspect contain a massive amount (over 3.8 TB) of data, comprising more than 2.2 million individual files stored in more than 105,000 folders. Most of these files have absolutely nothing to do with Ocean Tomo or this action. Many of these files contain personal and confidential information and communications that are protected by the attorney-client privilege and/or the work-product doctrine. Extracting, reviewing, redacting, and logging each of these items of information from multiple USB devices and online storage accounts would impose a significant burden on Mr. Barney that is not proportional to the needs of this case. The proposed forensic inspections would also pose significant risks to Mr. Barney's privacy and confidentiality interests—particularly *given that Deloitte already improperly disclosed thousands of records of confidential information to Ocean Tomo that were designated as protected from disclosure under the work-product doctrine. See, e.g., Hespe v. City of Chicago*, No. 13-C-7998, 2016 WL 7240754, at *3 (N.D. Ill. Dec. 15, 2016) (noting that "inspection of plaintiff's electronic devices is not 'proportional to the needs of this case' because any benefit the inspection might provide is 'outweighed by plaintiff's privacy and confidentiality interests.'") (citation omitted).

Ocean Tomo cites a handful of cases in support of its renewed demand for additional forensic discovery. (*See, e.g.*, Mot. at 8-10.) Those cases are readily distinguishable, however, because in those cases, unlike here, there was at least some evidence supporting the allegations of disclosure or use of trade secrets and confidential information. Moreover, none of those cases involved the significant amounts of attorney-client communications and work-product, and other confidential information having nothing to do with Ocean Tomo, that is contained on the additional devices that Ocean Tomo seeks to forensically examine. *See, e.g., Weatherford U.S., L.P. v. Chance Innis and Noble Casing, Inc.*, No. 4:09-cv-061, 2011 U.S. Dist. LEXIS 59036, at \*1-2 (D.N.D. June 2, 2011) (compelling discovery where former employee had downloaded employer's files following his termination, lied in his deposition about doing so, and created a competing business) (cited in Mot. at 10-11); *Network Cargo Systems U.S.A., Inc. v. Pappas*, No. 13 C 9171, 2014 U.S. Dist. LEXIS 66392, at \*1-3 (N.D. Ill. May 7, 2014) (compelling discovery where former employee had become employed by competitor; no indication that the devices at issue contained any privileged or work-product information) (cited in Mot. at 8); *Lifetouch Nat'l School Studios, Inc. v. Moss-Williams*, No. C10-05297 RMW (HRL), 2013 U.S. Dist. LEXIS 148360, at \*2 (N.D. Cal. Oct. 15, 2013) (compelling discovery where former employee joined competitor, and used new employer's computers to repeatedly view thumb drive that contained former employer's documents and information) (cited in Mot. at 8); *Toyota Indus. Equip. Mfg., Inc. v. Land*, No. 1:14-cv-1049-JMS-TAB, 2014 U.S. Dist. LEXIS 99070, at \*6, 15 (S.D. Ind. July 21, 2014) (in order entering preliminary injunction, court notes that there had been a forensic examination of defendant's hard drive; defendant had joined one of plaintiff's direct competitors, and had testified that he had "copied electronic files that [he] should not have.").

### III. The Proposed Discovery Is Unreasonably Cumulative and Duplicative.

Forensic discovery with respect to the previously-identified storage devices is unnecessary, and would be merely cumulative and duplicative of the discovery already obtained by Ocean Tomo in this action. Mr. Barney has already informed Ocean Tomo that the Original Archive Folder (which contains all "Ocean Tomo Information" identified in the Order) has been "securely archived on [these] storage devices which Mr. Barney retains in his possession." (Dkt. No.157, Ex. E, at 2, ¶ 3.) Mr. Barney has also identified and produced to Ocean Tomo all the electronic documents comprising the Original Archive Folder. There are no Ocean Tomo documents in Mr. Barney's possession that have not been produced to Ocean Tomo in this litigation. Any additional forensic discovery with respect to these previously-identified storage devices would do no more than confirm what Mr. Barney long ago disclosed and described to Ocean Tomo.

### IV. Ocean Tomo Had Ample Opportunity to Obtain the Information It Seeks

Ocean Tomo argues it "needs to discover not only that Mr. Barney possessed Ocean Tomo's confidential information, but also what he did with that confidential information." (Dkt. No. 194 at 7.) But anything Mr. Barney "did" would have been revealed by Deloitte's inspection and analysis of the forensic evidence gathered from Mr. Barney's three laptops. For example, Deloitte determined that "2 files named '!Command Line Tools!.txt' and 'directory.txt' were opened on June 24, 2015 from the Samsung UFD USB Device, and 1 file named 'robolog.txt' was opened on June 24, 2015 from the WD My Book device and subsequently opened on June 25, 2015." (Dkt. No. 195, Ex. 1 at 3, ¶ 3.) None of those files embodied or contained any Ocean Tomo Information. If, however, Mr. Barney had opened any files on the UFD USB Device or the WD My Book device that embodied or contained Ocean Tomo Information, Deloitte would have been able to identify those files—but it did not.

14

Similarly, Deloitte determined that Mr. Barney's "Dropbox account was being used and files were being accessed including file names containing the terms 'Patent Ratings' and 'Notice Shareholder Meeting.'" (Dkt. No. 195, Ex. 1 at 3, ¶ 7.) Again, none of the files identified embodied or contained any Ocean Tomo Information. If, however, Mr. Barney had used his DropBox account to access any files embodying or containing Ocean Tomo Information, Deloitte would have been able to identify those files—but it did not.

Ocean Tomo also asserts that Defendants improperly asserted protection under the work-product doctrine with respect to certain "metadata showing the date of each access of an Ocean Tomo confidential document…" (Dkt. No. 194, at 2.) Ocean Tomo argues that the "[d]ate of access is of critical importance in showing improper usage because the date of access will allow Ocean Tomo to tie the access to other acts taken by Mr. Barney." (*Id.*) But the Redaction Log itself (Dkt. No. 195, Ex. 2) reveals the "Date Accessed" for each logged document. Thus, Ocean Tomo already has—and has had in its possession for at least the past seven months—the "critical" information it claims is necessary "to tie the access to other acts taken by Mr. Barney." But, in all that time Ocean Tomo has not identified a single "act" allegedly taken by Mr. Barney with respect to any alleged Ocean Tomo confidential document.[8]

Ocean Tomo had ample opportunity to discover the information it seeks. Ocean Tomo's lack of diligence for seven months does not justify burdening Mr. Barney and PatentRatings with additional needless forensic examinations in the final weeks of fact discovery.

---

[8] Ocean Tomo also argues, without any support, that only Mr. Barney's and PatentRatings' counsel, and not Mr. Barney himself, supposedly had the right to access documents that had been produced in this litigation. (*See* Mot. at 11 & 14.) Among other things, Ocean Tomo's argument is squarely contradicted by the stipulated protective order in this case, which expressly provides that Mr. Barney shall have access to all documents produced in the case. (*See* Dkt. No. 152 ¶ 9(c).

15

## V.     The Proposed Discovery Is Outside the Scope Permitted by Rule 26(b)(1).

Ocean Tomo argues it is "entitled to inspect each of Mr. Barney's devices to determine how much damage his actions have caused." (Dkt. No. 194, at 7, ¶ 1.) This argument is premised on the assumption that Mr. Barney improperly retained and "misused Ocean Tomo confidential information [that] resides on computers, USB devices, and cloud storage accounts in Mr. Barney's possession that unquestionably contain Ocean Tomo confidential information and trade secrets." (*Id*. at 1, ¶ 1.) According to Ocean Tomo, the mere connection of a storage device to any laptop owned by Mr. Barney entitles Ocean Tomo to forensically inspect and analyze the entire contents of that device and any other computer(s) or device(s) that may have been connected to that device at any point in time. Ocean Tomo also contends that Mr. Barney is not entitled to assert any privilege or privacy rights with respect to any information contained on such devices "because Mr. Barney was the person who chose to commingle Ocean Tomo confidential information with his personal and privileged communications on multiple devices." (*Id*. at 9-10.) Ocean Tomo is wrong on all counts.

Mr. Barney is not some rogue employee who absconded with company trade secrets[9] to join a competitor or start a competing business.[10] Mr. Barney was—and is—an equity owner and member of Ocean Tomo. As such, he is entitled to all the rights and benefits afforded to him as a member under Ocean Tomo's operating agreement (the "Operating Agreement"). (Dkt. No. 175,

---

[9] Ocean Tomo has refused to even identify any trade secrets that were allegedly misappropriated or misused by Mr. Barney, other than broad categories of general business information (*e.g.*, "business plans;" "customer lists;" "supplier lists;" "financial data;" and "legal strategies").

[10] Ocean Tomo cannot point to a single shred of evidence suggesting that Mr. Barney or PatentRatings competed with Ocean Tomo in any way whatsoever, or that they used any Ocean Tomo confidential information for any "unlawful business purposes," or that they "accessed Ocean Tomo confidential information shortly before doing business for which that confidential information would be relevant."

16

Ex. 6.) Section 13.17 of the Operating Agreement specifically provides that members of Ocean Tomo are entitled to retain any Confidential Information provided to them until "the termination of such Member's membership with the Company." (*Id.* at § 13.17.) Thus, Ocean Tomo is incorrect in its repeated assertions that "Mr. Barney did not have a right to possess [Ocean Tomo confidential information] in the first place." This is not a case of "a former employee [who is in possession of] improperly retained confidential information," as Ocean Tomo asserts. (Dkt. No. 194, at 7, ¶ 3.) Mr. Barney has a contractual right to retain all the information that was provided to him by Ocean Tomo until "the termination of [his] membership with the Company."

Mr. Barney also has a right to privacy and a right not to be compelled to disclose information and communications protected by the attorney-client privilege and/or the work-product doctrine. Whatever imagined nefarious activities Ocean Tomo ascribes to Mr. Barney, it has no legitimate basis to forensically inspect Mr. Barney's storage devices that do not contain information relevant to this case, or which contain information protected by the attorney-client privilege or work-product doctrine.[11] "Mere suspicion or speculation that an opposing party may be withholding discoverable information is insufficient to support an intrusive examination of the opposing party's electronic devices or information systems." *Hespe v. City of Chicago*, No. 13-C-7998, 2016 WL 7240754, at *4 (N.D. Ill. Dec. 15, 2016) (citation omitted).

---

[11] Ocean Tomo argues in passing that the discovery it seeks "is analogous to the well-established rule that a party may ask a witness at deposition what the witness told to an attorney." (Mot. at 15.) Ocean Tomo neglects to mention that, during the deposition of a witness taken the day before the Motion was filed, Ocean Tomo's counsel took the position that communications between Ocean Tomo's counsel and the witness were privileged.

17

## **CONCLUSION**

WHEREFORE, for all the reasons set forth above, Jonathan Barney and PatentRatings, LLC respectfully request that this Court deny Ocean Tomo's Motion in its entirety, and grant such other and further relief as the Court deems just and equitable.

Dated: January 25, 2017

Respectfully submitted,

JONATHAN BARNEY and
PATENTRATINGS, LLC

By: /s/ *David C. Layden*
      One of their attorneys

David C. Layden
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350