UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **OCEAN TOMO, LLC,**<br><br>   Plaintiff-Counter Defendant,<br><br>   v.<br><br>**JONATHAN BARNEY and PATENTRATINGS, LLC,**<br><br>   Defendants-Counter Plaintiffs. | No. 12 C 8450<br><br>Magistrate Judge Mary M. Rowland |

## ORDER

On Plaintiff and Counter-Defendant Ocean Tomo, LLC's Renewed Motion to Compel Inspection of Electronic Media and Production of Redacted Metadata [193] the Court rules as follows:

## STATEMENT

On February 11, 2016, Ocean Tomo filed a motion to compel inspection of electronic media. (Dkt. 156). Ocean Tomo asserted that the inspection was necessary to determine whether Barney shared Ocean Tomo confidential information with any third parties. (Dkt. 157 at 1). After hearing argument, the motion was granted in part and denied in part, and the Court directed the parties to submit a proposed order based on the discussions held on the record. (Dkt. 159).

On March 7, 2016, the Court entered the parties' agreed order. (Dkt. 163). The agreed order, along with the attached Computer Forensic Analysis Protocol (*id.*, Ex. A), permitted the parties' forensic experts to inspect Barney's three laptops "to determine whether Ocean Tomo confidential information had been downloaded, emailed, or otherwise copied to any person or entity other than the parties and their counsel."[1] (Dkt. 194 at 3; *see* Dkt. 163 at ¶ 2). Specifically, Deloitte Financial Advisory Services LLP, Ocean Tomo's expert, was directed to determine "any instances" where Ocean Tomo confidential information had been (i) accessed by Barney for any reason not protected by attorney-client privilege or the work product doctrine or (ii) downloaded or otherwise accessed for the purpose of disclosing to unauthorized third parties. (Dkt. 163, Ex. A at ¶¶ 1(a), 1(b), 3(c)). The agreed order also granted Ocean Tomo the opportunity to move for further discovery based on the results of the inspections and analyses performed pursuant to the order. (Dkt. 163 at ¶ 6).

---

[1] The Court split the burden of the forensic analysis, so that Ocean Tomo's forensic expert was permitted to inspect one laptop, while Barney's analyst was required to inspect the two other laptops and provide its analysis to Ocean Tomo's expert. (Dkt. 163 at ¶¶ 1, 3).

After thoroughly inspecting one laptop and reviewing Forensic Trace Evidence Reports on the other two laptops provided by DTI Global, Barney's expert, Deloitte created a summary report. (Dkt. 199, Ex. 1 (Deloitte Report)). It is significant to this Court that Deloitte's analysis did not detect any evidence that Barney shared Ocean Tomo confidential information with third parties. That was the point of the initial inspection.

Deloitte's analysis did determine that several USB drives had been connected to the three laptops and that the laptops had accessed cloud-based internet storage websites. (Deloitte Report 3–5). Not surprisingly, Deloitte concluded that Ocean Tomo data *may* have been copied and the USB storage devices and the online storage sites *could* have provided the opportunity to access or copy Ocean Tomo confidential information. (*Id.* 3).

Despite the fact that Deloitte did not identify *any* instance in which Ocean Tomo confidential information was disclosed to an unauthorized third party, on January 13, 2017, Ocean Tomo renewed its motion to compel inspection of electronic media. (Dkt. 193). Ocean Tomo requests that the Court (i) compel Barney to produce all USB drives for Deloitte's analysis, (ii) produce full activity logs for Barney's online storage websites, and (iii) remove all redactions of the Deloitte Report based on assertion of work product protection. (Dkt. 194 at 15). After careful consideration, the motion is denied.

**A. USB Devices**

Ocean Tomo contends that it should be able to examine all USB drives that have been connected to the laptops because some of them were not previously disclosed by Barney. (Dkt. 194 at 4, 6–12). Had the expert analysis of the laptops indicated that Barney shared Ocean Tomo confidential information with third parties, the Court would be willing to allow further discovery along this line. However, having failed to find the smoking gun, Ocean Tomo is now requesting further forensic testing based on Barney's failure to disclose all of the USB drives that accessed the laptops. That argument is not persuasive because in response to Ocean Tomo discovery requests, Barney previously disclosed *all* four USB drives that contain *any* Ocean Tomo files or information. (Dkt. 157, Ex. R). Now it is true that there are four other USB drives that were accessed by the laptops, but those were never identified by Barney because they do not contain Ocean Tomo documents and so they were never the subject of an interrogatory. Barney explains that two of these USB drives "contain only confidential information protected from disclosure by the attorney-client privilege or the work-product doctrine." (Dkt. 195, Ex. 8 at 3). The third "contains only personal and confidential information belonging to Mr. Barney and his family, including family photographs, family home videos, and musical recordings." (Dkt. 200 at 9). In correspondence between the parties, Barney explained that he was not able to locate or identify the fourth USB drive and requested Ocean Tomo to "provide any further identification information [it] may have that could help [Barney] locate or identify this device." (Dkt. 195, Ex. 8 at 3).

The Court is also puzzled by Ocean Tomo's argument that forensic analysis of the USB storage devices is "necessary to determine whether Ocean Tomo files were

copied to the USB storage devices." (Dkt. 194 at 4). But the purpose of the forensic tests was to determine whether Ocean Tomo confidential information had been shared with *third parties*. (Dkt. 163 at ¶ 2). Indeed, during the February 2016 hearing, Ocean Tomo emphasized that "evidence of access or sharing with third parties is absolutely what we're most interested in." (Feb. 18, 2016 Hr'g Tr. at 38); (*see id.* at 14) (Ocean Tomo reiterating that it is interested in what Barney "has done with the documents since his resignation in February 2011.").

The Court is not persuaded that the cost of further analysis is necessary. However, Barney is given ten days from the date of this order to produce to Ocean Tomo an affidavit that describes the following information for each and every USB device identified in the Deloitte Report: the names of every person who has been given access to the specific USB device, or any information contained therein, and the person's relationship to Barney (i.e., financial advisor, business associate, family member, etc.).

### B. Online Storage

Barney previously disclosed that Ocean Tomo confidential information had been included in an automated, online backup using only the Carbonite Cloud Service. (Dkt. 157, Ex. R). But the Deloitte Report found that Ocean Tomo information was also downloaded or copied to the Box.com and Dropbox.com websites. (Deloitte Report at 3–4). Barney acknowledges that these two additional online backup sites were used for storing Ocean Tomo information, but contends that they were used only for litigation document production and that no one other than Barney and his attorneys have accessed the information. (Dkt. 200 at 8). To provide further assurances that the Ocean Tomo confidential information was not disseminated to unauthorized third parties, Barney agreed "to authorize Box and Dropbox to provide . . . Deloitte with information identifying all individuals who accessed Mr. Barney's accounts." (Dkt. 195, Ex. 8 at 1). Barney is ordered to provide this authorization within ten days of the date of this Order.

### C. Metadata Redactions

Finally, Ocean Tomo contends that Barney should withdraw his redactions of metadata showing the dates of access and copying of Ocean Tomo confidential information. (Dkt. 194 at 12–15). Ocean Tomo argues that the date a file was accessed is not entitled to work-product protection. (*Id.* at 13). In response, Barney merely asserts that he "has a right to privacy and right not to be compelled to disclose information and communications protected by the attorney-client privilege and/or the work product doctrine." (Dkt. 200 at 17).

The parties have not explicitly addressed whether *metadata* is protected by either the attorney-client privilege or the work-product doctrine, and the courts are divided on the issue. *See, e.g., Hall v. Flannery*, No. 13 CV 914, 2015 WL 2008345, at *4 (S.D. Ill. May 1, 2015) (finding that metadata is not covered by the work product doctrine); *Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 653 (D. Kan. 2005) (acknowledging that *some* metadata *may* be protected by the attorney-client privilege or work-product doctrine).

The parties have, however, agreed that Barney could withhold metadata that identified which specific document was accessed as long as Barney identified the date that a particular Ocean Tomo document was accessed:

> If any metadata reflects only that Mr. Barney accessed a document comprising Ocean Tomo Information, and where Mr. Barney seeks to assert the attorney-client and/or work product privileges over such metadata, counsel for Mr. Barney need only provide a log showing any and all dates on which such access took place, the number of documents accessed (without having to identify which specific documents were accessed), the number of instances of such access on any applicable dates, and a description of the basis for the assertion of the privilege.

(Dkt. 163, Ex. A at ¶ 3(d)). The Redaction Log (Dkt. 195, Ex. 2) properly reveals the "Date Accessed" for each set of logged documents, as provided by the agreed order.

It is well-settled that the "work-product privilege may be overcome only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Hobley v. Burge*, 433 F.3d 946, 949–50 (7th Cir. 2006). Consistent with this case law, the parties' agreed order is also "without prejudice to Ocean Tomo's ability to seek further discovery regarding documents in Defendants' possession over which Ocean Tomo [*sic*] asserts the attorney-client and/or work product privileges." (Dkt. 163 at ¶ 7).

Ocean Tomo has failed to demonstrate a "substantial need" for the metadata or establish an "undue hardship" if the metadata is not produced. It asserts that it needs access to the metadata to develop circumstantial evidence of misappropriation by Barney. (Dkt. 194 at 14). It relies on a speculative hypothetical: "If, for example, the metadata shows that Mr. Barney accessed Ocean Tomo confidential information shortly before doing business for which that confidential information would be relevant, that sort of circumstantial evidence would strongly support Ocean Tomo's claims." (*Id.*). But Ocean Tomo fails to identify any particular conduct by Barney that it is attempting to corroborate (e.g., a business arrangement where misappropriation could have occurred). Ocean Tomo's request to remove all redactions of the Deloitte Report based on assertion of work product protection is denied.

Dated: February 16, 2017

*/s/ Mary M. Rowland*