**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| OCEAN TOMO, LLC, | |
| Plaintiff, | No. 12-cv-08450 |
| v. | Hon. Thomas M. Durkin |
| JONATHAN BARNEY and PATENTRATINGS, LLC, | Hon. Mary M. Rowland |
| Defendants. | ***Document electronically filed*** |

**PLAINTIFF AND COUNTER-DEFENDANT OCEAN TOMO, LLC'S
MEMORANDUM IN SUPPORT OF ITS MOTION
TO AMEND THE COMPLAINT TO CONFORM TO EVIDENCE**

# Table of Contents

Introduction ................................................................................................................ 1

Statement of Facts and Procedural History ............................................................... 2

    I.     The current procedural posture of the case ................................................... 2

    II.    Ocean Tomo's proposed amendments to the Complaint ............................... 2

Argument .................................................................................................................. 3

    I.     Leave to amend should be granted freely absent prejudice to Defendants. ................... 3

    II.    Each of the additional factual allegations or legal theories in Ocean Tomo's amended complaint was thoroughly addressed in discovery and at trial ....................................... 5

          A.    Defendants were aware of Ocean Tomo's claim that Barney breached his fiduciary duties during his employment with Ocean Tomo, and took discovery and presented evidence on that issue ................................................................................................ 5

          B.    Barney's own admissions at trial and documents support Ocean Tomo's theory that he breached the noncompete provision of his Employment Agreement .................. 9

          C.    Ocean Tomo's evidence regarding the CdC deal and its planned global patent ratings system was available in discovery, explicitly discussed by Ocean Tomo's damages expert, and Defendants introduced testimony addressing it at trial. ........ 11

Conclusion ............................................................................................................... 14

# Table of Authorities

**Cases**

*Cruz v. Coach Stores, Inc.*,
  202 F.3d 560 (2d Cir. 2000)...................................................................................4

*Disch v. Rasmussen (In re Rasmussen)*,
  No. 03-cv-153; 2003 U.S. Dist. LEXIS 21932 (W.D. Wis. Aug. 4, 2003) ................................4

*Disch v. Rasmussen*,
  417 F.3d 769 (7th Cir. 2005) ...............................................................................4

*Duckworth v. Franzen*,
  780 F.2d 645 (7th Cir. 1985) ...............................................................................4

*Maruska v. Maruska*,
  155 F.2d 302 (7th Cir. 1946) ...............................................................................4

*Nielson v. Armstrong Rubber Co.*,
  570 F.2d 272 (8th Cir. 1978) ....................................................................8, 13, 14

*Slavitt v. Kauhi*,
  384 F.2d 530 (9th Cir. 1967) ..............................................................................10

**Rules**

Fed. R. Civ. P. 15(b)(1)....................................................................................1, 4

Fed. R. Civ. P. 15(b)(2)....................................................................................1, 4

## Introduction

During the fifteen days of trial testimony held between June 26, 2017, and July 28, 2017,

both parties presented evidence on the following factual issues:

- Whether Barney, as a member and employee of Ocean Tomo, misrepresented the functionality and scalability of the PatentRatings system to his benefit and Ocean Tomo's detriment.

- Whether Barney, as a member and employee of Ocean Tomo, disobeyed instructions from Ocean Tomo to work on generating sales for Ocean Tomo and instead, on Ocean Tomo's time, worked on developing software improvements that would accrue under the parties' license agreement to Patent Ratings.

- Whether Barney, during a one year period after the termination of his employment with Ocean Tomo, competed with Ocean Tomo by negotiating to develop a ratings system with Japanese company NTT and a French company, CdC.

- Whether Barney tortiously interfered with Ocean Tomo's planned business deal with CdC in essentially the same way that he interfered with Ocean Tomo's planned business deal with NTT.

- Whether Barney's actions prevented Ocean Tomo from realizing its overarching goal in developing a global patent ratings system providing a first mover advantage and synergistically greater value than the sum of individual United States, European, and Japanese patent ratings systems.

Defendants objected to evidence regarding these issues before trial in a motion *in limine*, but

could not identify any actual prejudice then, and have now disproven actual prejudice by fully

presenting their own evidence on each issue. They were actually tried, and so to avoid any

question regarding the inclusion of these issues in this case, Ocean Tomo now moves under Fed.

R. Civ. P. 15(b)(1) and/or Fed. R. Civ. P. 15(b)(2) to amend its complaint to conform to evidence

over Defendants' objection.

1

## Statement of Facts and Procedural History

## I.     The current procedural posture of the case

This case is in the middle of a paused bench trial. Trial began on June 26, 2017, and after fifteen total days of testimony, paused on July 28, 2017.[1] The trial is currently scheduled to resume on April 23, 2018.[2] During the first fifteen days of trial, Ocean Tomo and Defendants completed their cases-in-chief. When trial resumes, Ocean Tomo anticipates completing the testimony of its rebuttal damages expert Joanne Johnson, and the parties have indicated that they each intend to call one more rebuttal witness and then provide closing argument.

Because the parties and the Court now have time to address the issue of detailed factual bases for Ocean Tomo's claims raised by the parties and tried by the Court that were not explicitly pled previously, Ocean Tomo has brought this motion to allow the Court to resolve the issue before trial resumes.

## II.     Ocean Tomo's proposed amendments to the Complaint

In the Proposed Fourth Amended Complaint submitted as an Appendix to this motion[3], Ocean Tomo seeks to add the following additional factual allegations to its complaint through this motion:

- Barney breached his fiduciary duties to Ocean Tomo and his employment agreement before his employment was terminated in February 2011 based on his misuse of Ocean Tomo resources for the benefit of PatentRatings and misrepresentations regarding the capabilities of the PatentRatings system.[4]

---

[1] Dkt. Nos. 315, 332
[2] Dkt. No. 353.
[3] The Proposed Fourth Amended Complaint is attached as Appendix A to this motion; a redline showing the changes from the Third Amended Complaint to the Fourth is attached as Appendix B to this motion.
[4] Proposed Fourth Amended Complaint (Appendix A) at ¶¶ 6-9, 26, 42-43, 51-52, 57-58, 127, 151, 164.

- Barney breached the noncompete provision of his Employment Agreement through negotiating with NTT to develop a Japanese patent rating system before February 25, 2012.[5]

- Ocean Tomo entrusted Barney with an opportunity to develop a European patent ratings system as an Ocean Tomo employee around 2009 in connection with a memorandum of understanding between Ocean Tomo and a French company, Caisse des Depots ("CdC"). Near the closing of that deal, Barney refused to support that transaction, placing interests above Ocean Tomo's.[6]

- The parties intended to combine the United States patent ratings system with planned European and Japanese patent ratings system to create a global patent ratings system.[7]

Other proposed amendments seek to add factual detail to allegations already set forth in the complaint, such as the facts regarding Ocean Tomo's memorandum of understanding with the Japanese company NTT.[8]

Each of these issues was the subject of pretrial discovery, and both parties exhaustively presented evidence at trial on each of these issues, as explained in the argument below. Nevertheless, Defendants maintain their objection to the inclusion of these issues in the case, and did not consent to Ocean Tomo's amendment when the parties met and conferred on this issue in November 2017.[9]

## Argument

## I.   Leave to amend should be granted freely absent prejudice to Defendants.

The Federal Rules of Civil Procedure require the court to freely grant Ocean Tomo's motion to amend the complaint to conform to evidence unless Defendants can show prejudice:

---

[5] *Id.* at ¶ 152.
[6] *Id.* at ¶¶ 13-14.
[7] *Id.* at ¶¶ 2, 127.
[8] *Id.* at ¶¶ 15-16 (concerning the NTT transaction); 37, 40-41, 60 (concerning the terms of the parties' agreements); 64 (concerning the timing of Barney's resignation).
[9] Declaration of Brian J. Beck in Support of Plaintiff and Counter-Defendant Ocean Tomo, LLC's Motion to Amend the Complaint to Conform to Evidence ("Beck Decl.") at ¶¶ 6-8.

> If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits.[10]

Rule 15(b)(2) requires that "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.[11] The Seventh Circuit has explained that the Federal Rules of Civil Procedure, including Rule 15(b), create a system "in which the complaint does not fix the plaintiff's rights but may be amended at any time to conform to the evidence."[12] The Federal Rules grant the right to amend pleadings to conform to proof to ensure that "the pleadings are brought in line with the actual issues upon which the case was tried."[13]

To show prejudice, Defendants must show more than a change in a legal theory; they must show that they would have produced material and noncumulative evidence on the added issues had they known of the amendment sooner. In *Disch v. Rasmussen*, the Seventh Circuit affirmed a district court's grant of a motion to amend to conform to evidence under Rule 15(b), explaining that the trial court found that the non-movant had failed to show she was prejudiced by the added issues.[14] The district court explained that the non-movant cannot show prejudice simply because of a change in its opponent's legal theory; it must point to actual disadvantage suffered as a result.[15] Because the non-movant could not point to additional evidence it could have produced on the

---

[10] Fed. R. Civ. P. 15(b)(1).

[11] Fed. R. Civ. P. 15(b)(2).

[12] *Duckworth v. Franzen*, 780 F.2d 645, 649 (7th Cir. 1985).

[13] *Maruska v. Maruska*, 155 F.2d 302, 303 (7th Cir. 1946).

[14] 417 F.3d 769, 776 (7th Cir. 2005).

[15] *Disch v. Rasmussen (In re Rasmussen)*, No. 03-cv-153; 2003 U.S. Dist. LEXIS 21932, *25 (W.D. Wis. Aug. 4, 2003) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569 (2d Cir. 2000)), *aff'd* 417 F.3d 769 (7th Cir. 2005).

added issues had it known sooner, the non-movant did not show prejudice, and the district court affirmed the bankruptcy court's Rule 15(b) amendment.[16]

## II.     Each of the additional factual allegations or legal theories in Ocean Tomo's amended complaint was thoroughly addressed in discovery and at trial.

Defendants cannot show prejudice from Ocean Tomo's amendment because they were aware of Ocean Tomo's factual allegations and legal theories, took discovery on them, and presented evidence at trial regarding them. Indeed, when Defendants first sought to exclude the factual allegations Ocean Tomo now seeks to amend the Complaint to clarify, Defendants could not identify specific prejudice beyond a general statement about discovery they might have taken.[17] Now, with trial nearly over, it is clear that Defendants have had ample opportunity to take discovery and present evidence relating to the factual allegations in Ocean Tomo's proposed amended complaint, and would not be prejudiced by the amendment.

### A.     Defendants were aware of Ocean Tomo's claim that Barney breached his fiduciary duties during his employment with Ocean Tomo, and took discovery and presented evidence on that issue.

Defendants recognized that Ocean Tomo's Complaint included factual allegations regarding Barney's misrepresentations about the PatentRatings system's functionality from the outset of this case and took discovery accordingly. In the state court case that ultimately merged with this case, Defendants requested as early as November 2013 that Ocean Tomo produce "[a]ll documents relating to Ocean Tomo's allegation in Paragraph 24 of the Complaint that '[t]hroughout the course of OT's relationship with PR, OT has infused substantial time and capital

---

[16] *Id.*
[17] Dkt. No. 278 at 8.

into the upgrade and maintenance of the PatentRatings Tools. Without OT's commitment to the PatentRatings Tools, they would not be functional today.'"[18] The parties later agreed that all discovery in the state court case would become part of the discovery in this case, and could be used here.

If PatentRatings' request for documents in 2013 were not enough, PatentRatings was certainly on notice that Ocean Tomo intended to inquire into Barney's actions from 2004 to 2011 when Ocean Tomo served its Rule 30(b)(6) deposition notice on PatentRatings in February 2017. That deposition notice requested extensive information about Barney's and PatentRatings' maintenance and development of the PatentRatings system from 2004 to 2011, such as:

- "PatentRatings' contributions to the maintenance and development of the Patent Ratings System from the time between the execution of the 2007 License Agreement Amendment until the termination of Mr. Barney's employment with Ocean Tomo." (Topic No. 25);

- "The operation and functionality of the software developed by PatentRatings to generate ratings for patents." (Topic No. 34);

- "All work performed by PatentRatings or on behalf of PatentRatings related to improvements made to a patent ratings system between the signing of the 2007 License Agreement Amendment and the termination of Mr. Barney's employment with Ocean Tomo." (Topic No. 44);

- "All complaints by customers regarding PatentRatings' software or services of which PatentRatings is aware." (Topic No. 55);

- "All errors or mistakes in any patent ratings or data generated by patent ratings software that PatentRatings developed in whole or in part." (Topic No. 56);

- "Any and all manual intervention required to operate or update the patent ratings software developed in whole or in part by PatentRatings." (Topic No. 57); and

- "Any limitations of which PatentRatings is aware on the expansion, automation, or scalability of the patent ratings software developed in whole or in part by PatentRatings." (Topic No. 58).[19]

---

[18] Beck Decl., Ex. 1 at 11.
[19] Beck Decl., Ex. 2.

The parties subsequently met and conferred regarding their 30(b)(6) deposition notices, and Defendants did not object to any of the above topics—in particular, Defendants did not object that the above topics were irrelevant.[20]

Defendants also took discovery regarding Barney's misrepresentations to Ocean Tomo regarding the system's functionality as part of their discovery into the circumstances surrounding the 2007 amendment to the parties' license agreement. During Defendants' deposition of Ocean Tomo CEO James Malackowski, Defendants' counsel asked about the expenses Ocean Tomo paid for development of the PatentRatings system from 2007 to 2010. Malackowski explained that the expenses were necessary because Barney "was supposed to, from the beginning, have hired a COO who was going to maintain the commercial system so that he could be doing sales."[21] He also explained that Ocean Tomo had an "ongoing weekly thing" of asking Jonathan to stop working on PatentRatings software so he could sell the system for Ocean Tomo.[22] These were not isolated answers; about six pages of Malackowski's deposition concerned Barney's misrepresentations about the PatentRatings software and diversion of Ocean Tomo resources to developing PatentRatings software.[23]

The parties then addressed Barney's misrepresentations of PatentRatings functionality and misuse of Ocean Tomo resources in extensive detail at trial. One of Ocean Tomo's witnesses, Ed Buchanan, devoted his entire testimony to Barney's misrepresentations about the scalability of the

---

[20] Beck Decl., Ex. 3 at 2 ("Regarding the topics in Ocean Tomo's notice of deposition to PatentRatings, you had no objection to Topics 2-3, 5-16, 18-21, 23-42, 44-49, and 51-62, and stated that Patent Ratings would produce a witness to testify regarding these topics.").
[21] Beck Decl., Ex. 5 at 227:18-228:11.
[22] *Id.* at 226:13-227:16.
[23] *Id.* at 212:17-218:5; 288:2-290:2.

PatentRatings software.[24] Malackowski testified in detail regarding Barney's misrepresentations and actions, explaining *inter alia* that Barney insisted that the system was web-automated and "ready for prime time."[25] Defendants in turn provided testimony from Barney attempting to refute Ocean Tomo's allegations.[26] Both parties supported their testimony with documents produced in discovery related to Barney's breaches of fiduciary duty between 2004 and 2011, further undermining any attempt by Defendants to claim prejudice.[27]

Because Defendants were on notice that Ocean Tomo intended to present evidence that Barney breached his fiduciary duties and employment agreement from 2004 to 2011, and in fact presented evidence to defend against that theory, Defendants were not prejudiced and the Court should permit the amendment. Though Defendants will no doubt argue that they were unaware of Ocean Tomo's theory until shortly before trial, the Eighth Circuit affirmed amendment to conform to pleadings in *Nielson v. Armstrong Rubber Co.* where the theory was not disclosed until the day of trial.[28] In that case, the plaintiff provided actual notice of a new strict products liability theory in its pretrial memorandum submitted on the first day of trial, and the district court treated the

---

[24] Trial Tr. of Jun. 28, 2017 at 423-505 (all Trial Transcript excerpts cited in this brief have been assembled and attached collectively as Exhibit 11 to the Beck Decl.). At the arbitration between the parties, Mr. Buchanan provided testimony on these same matters and PatentRatings extensively cross-examined him. Beck Decl., Ex. 10 at 91:20-101:23. There was no surprise or prejudice to PatentRatings in admitting Mr. Buchanan's testimony at trial.
[25] Trial Tr. of Jul. 5, 2017 at 735:20-736:13; 779:10-780:5; 784:9-785:12; 787:17-794:9; 824:19-825:19. Trial Tr. of Jul. 6, 2017 at 906:12-908:4; 917:11-21.
[26] Trial Tr. of Jul. 12, 2017 at 1863:14-1867:11; 1886:6-1887:10.
[27] *See, e.g.,* Trial Tr. of Jul. 5, 2017 at 846:4- 847:16 (discussing PX548, attached as Ex. 21 to Beck Decl.); Trial Tr. of Jul. 10, 2017 at 1272:19-1275:15 (discussing PX17, attached as Ex. 12 to Beck Decl.)); 1275:19-1276:20 (discussing PX38, attached as Ex. 13 to Beck Decl.); 1276:21-1277:17 (discussing PX316, attached as Ex. 17 to Beck Decl.); 1277:18-1279:12 (comparing PX38 and PX316); Trial Tr. of Jul. 25, 2017 at 2573:11-2575:23 (discussing PX939, attached as Ex. 24 to Beck Decl.); 2575:24-2578:19 (discussing PX401, attached as Ex. 18 to Beck Decl.); 2578:20-2579:11 (discussing PX255, attached as Ex. 14 to Beck Decl.).
[28] 570 F.2d 272, 275 (8th Cir. 1978).

pleadings as amended to include it.[29] Though the defendant argued on appeal that it was prejudiced by the amendment, the appellate court rejected defendant's argument because the defendant presented evidence at trial of misuse of the product and that the product was not defective when it left defendant's plant, both specific defenses to a strict liability claim.[30] The same reasoning applies here, where Defendants had notice of Ocean Tomo's theory before the close of fact discovery and presented evidence attempting to show that Barney did not misrepresent the functionality of the PatentRatings system or misuse Ocean Tomo resources for PatentRatings' benefit. Because Defendants presented evidence in an attempt to disprove Ocean Tomo's allegations in the amended complaint, Defendants are not prejudiced by the amendment.

### B. Barney's own admissions at trial and documents support Ocean Tomo's theory that he breached the noncompete provision of his Employment Agreement.

When Ocean Tomo filed its Complaint, it knew that Barney interfered with the NTT deal at some time after his termination; the documents he produced and his admissions at trial showed that he began competing with Ocean Tomo mere months after his termination. At trial, Barney testified that he began speaking to NTT on behalf of PatentRatings in March 2011, just a month after he left Ocean Tomo.[31] He then explained how he continued to negotiate with NTT to Ocean Tomo's detriment throughout 2011, while the one-year noncompete provision of his employment agreement with Ocean Tomo still applied.[32] As part of Defendants' trial presentation, they offered

---

[29] *Id.*
[30] *Id.* at 276.
[31] Trial Tr. of Jul. 24, 2017 at 2243:9-2247:4.
[32] Trial Tr. of Jul. 25, 2017 at 2589:13-2591:19.

9

into evidence previously produced documents showing Barney's discussions with NTT before February 2012.[33]

None of this evidence came as a surprise to either party, because it concerns the same facts that both parties rely on regarding their competing tortious interference claims. Both Ocean Tomo and PatentRatings include in their complaints claims for tortious interference with the NTT deal, each alleging that the other tortiously interfered with its deal.[34] Both parties agree that the document offered into evidence as Exhibit PX38 (provided at Beck Decl., Ex. 13) is Barney's employment agreement with Ocean Tomo, and it plainly includes a one-year noncompete provision.[35] Ocean Tomo's amendment only adds the logical connection between the evidence Defendants presented and Barney's employment agreement—that by dealing with NTT on PatentRatings' behalf to Ocean Tomo's detriment before February 25, 2012, Barney not only tortious interfered with Ocean Tomo's business expectancy but breached his noncompete agreement in the process.

When a defendant admits at trial to facts that create liability not pleaded in the original complaint, it is an abuse of discretion to deny a motion to amend to conform to evidence. In *Slavitt v. Kauhi*, the plaintiff sought damages for injuries sustained falling down a flight of stairs outside a bar.[36] The plaintiff originally pleaded that his fall was caused by a manager of the bar intentionally attacking him; at trial, that manager testified that he did not attack the plaintiff, but

---

[33] Trial Tr. of Jul. 24, 2017 at 2236:24-2240:1 (discussing PX521A, attached as Ex. 20 to Beck Decl.); 2240:2-2242:2 (discussing DX137, attached as Ex. 25 to Beck Decl.); 2242:21- 2245:7, 2247:20-2253:5 (discussing DX149, attached as Ex. 26 to Beck Decl.); 2256:22-2259:2 (discussing DX164, attached as Ex. 27 to Beck Decl.).

[34] Dkt. No. 175 at 27-28; Dkt. No. 176 at 40-42.

[35] Trial Tr. of Jul. 25, 2017 at 2589:8-2591:14 (discussing PX38, attached as Ex. 13 to Beck Decl.

[36] 384 F.2d 530, 531 (9th Cir. 1967).

that he led the plaintiff to the top of the stairs knowing that the plaintiff was "highly intoxicated" and "unsteady on his feet."[37] The plaintiff then sought to amend the Complaint to allege negligence, and the district court denied the motion because it went "beyond the theory upon which [the] case was tried."[38] The Ninth Circuit reversed because the defendant's trial admissions formed the basis for the amendment: "For the court to say: No, you pleaded it that way the first time and although it is admitted by the defendant that the facts are otherwise, yet you will be held to your original allegation, seems to us to be wholly unwarranted and a ruling operating to avoid ascertaining the true facts in this case."[39]

Here, Barney's own admissions show that he breached his noncompete agreement by negotiating with NTT (and CdC) between February 25, 2011, and February 25, 2012. The Court should not allow Barney to escape liability for an admitted breach of contract because he did not admit it until trial.

### C.     Ocean Tomo's evidence regarding the CdC deal and its planned global patent ratings system was available in discovery, explicitly discussed by Ocean Tomo's damages expert, and Defendants introduced testimony addressing it at trial.

During discovery, Ocean Tomo discovered based in part on Barney's admissions that his dealings with the French company CdC followed the same pattern as his dealings with NTT. In his March 2017 deposition, Barney testified that he continued to work at developing a European patent ratings system with CDC after February 2011, i.e., during his employment noncompete period.[40] At his April 2017 deposition, Ocean Tomo's counsel asked Barney about the time he spent in Paris working for Ocean Tomo in 2009-2010, and he explained that Ocean Tomo paid

---

[37] *Id.*
[38] *Id.*
[39] *Id.* at 534.
[40] Beck Decl., Ex. 6 at 187:8-16.

11

him a substantial salary and benefits to travel to Paris to close the CdC deal.[41] Barney later volunteered, in answering questions about the relationship between Ocean Tomo and NTT, that the NTT deal was similar to the CdC deal.[42] Meanwhile, Defendants' counsel learned similar details from Malackowski's March 2017 deposition.[43]

Ocean Tomo accordingly included Barney's interference with the CdC deal, and its impact on Ocean Tomo's planned global patent rating system, in its damages expert report. As required by the parties' discovery schedule, Ocean Tomo served its expert Steven J. Sherman's report on May 1, 2017.[44] The report included 3 pages of detail explaining Ocean Tomo's theory for including losses from Barney's interference with the development of a European patent ratings system in its damages calculation, including Barney's interference with the CdC deal and Barney's pursuit of the CdC deal during his noncompete period.[45] Defendants' counsel subsequently questioned Sherman about the CdC deal at his deposition.[46] Though they had the opportunity, Defendants did not serve a rebuttal expert report to Sherman's report.

Similarly, Ocean Tomo raised its planned global patent ratings system in both fact and expert discovery. Malackowski testified at his March 2017 deposition that Ocean Tomo aimed to develop a global patent ratings system, and the US system was just part of the bigger strategy.[47] Sherman then estimated in his expert report the lost opportunity cost Ocean Tomo suffered from being unable to develop its global system.[48] Defendants' counsel questioned Sherman regarding

---

[41] Beck Decl., Ex. 7 at 260:5-267:5.
[42] *Id.* at 288:15-289:7.
[43] Beck Decl., Ex. 4 at 77:22-79:20; 102:13-103:11.
[44] Beck Decl., Ex. 8.
[45] *Id.* at 27-29.
[46] Beck Decl., Ex. 9 at 167:15-193:14; 197:19-196:11; 231:20-243:11.
[47] Beck Decl., Ex. 4 at 69:3-70:4; 77:22-79:20; 102:13-103:11.
[48] Beck Decl., Ex. 8 at 30-31; 42-44.

the "Lost Opportunity Costs of a Global Patent Ratings System" section of his report at his deposition.[49]

At trial, both parties presented testimony and documentary evidence regarding the CdC deal and Ocean Tomo's global patent ratings system. Ocean Tomo presented testimony from Malackowski that Barney's interference caused the failure of the CdC deal and forced Ocean Tomo to abandon its global patent ratings system plans.[50] Sherman testified as to calculation of damages to Ocean Tomo caused by Barney's interference with the CdC deal and Ocean Tomo's inability to build a global patent ratings system.[51] And Defendants' counsel not only cross-examined Malackowski and Sherman on these issues,[52] but presented evidence on both issues through Barney's testimony.[53] As part of the parties' presentation of testimony on these issues, both parties offered into evidence numerous documents, all produced during fact discovery, regarding the CdC deal, Ocean Tomo's plans to develop a global patent ratings system, and Barney's interference with the former and knowledge of the latter.[54]

As with the fiduciary duty allegations in the proposed amended complaint, Defendants are not prejudiced by Ocean Tomo's amendment regarding the CdC deal and the planned global ratings system because Defendants were aware of the added matter in advance and offered specific evidence to attempt to challenge Ocean Tomo's allegations.[55] Defendants also had the opportunity

---

[49] Beck Decl., Ex. 9 at 299:18-302:3.
[50] *E.g.*, Trial Tr. of Jul. 6, 2017 at 963:14-20.
[51] *E.g.*, Trial Tr. of Jul. 11, 2017 at 1549:19-1551:21.
[52] *E.g.*, Trial Tr. of Jul. 7, 2017 at 1086:15-1093:25; Trial Tr. of Jul. 11, 2017 at 1656:24-1664:11.
[53] Trial Tr. of Jul. 24, 2017 at 2216:24-2223:4.
[54] *See, e.g.*, PX265 (Beck Decl., Ex. 15); PX292 (Beck Decl., Ex. 16); PX414 (Beck Decl., Ex. 19); PX761 (Beck Decl., Ex. 22); PX769 (Beck Decl., Ex. 23); DX505 (Beck Decl., Ex. 28); DX515 (Beck Decl., Ex. 29).
[55] *Nielson*, 570 F.2d at 276.

to seek further discovery on the CdC and global rating system issues but never sought to take it. For example, even after the close of fact discovery, Ocean Tomo successfully sought to take depositions regarding a theory that Barney presented on the eve of trial, that his laptop had been erased by Ocean Tomo contractor Erik Prima.[56] Defendants in contrast never served a rebuttal expert report in response to Sherman's expert report, nor did they seek any additional discovery or deposition regarding the CdC deal and global ratings system after receiving Sherman's report. Defendants' failure to seek additional discovery regarding the supposedly new matter after receiving Sherman's expert report further demonstrates that they are not prejudiced by the amendment.[57]

## Conclusion

The allegations in Ocean Tomo's proposed amended complaint were addressed by both parties at trial. Both parties produced documents in discovery regarding these allegations; both parties took deposition testimony regarding these allegations. And, if they felt the need, Defendants had the opportunity to submit a rebuttal expert report or to request additional deposition testimony in the nearly two months between the service of Sherman's damages expert report and the start of trial on June 26, 2017.

Because the allegations Ocean Tomo seeks to add to the complaint were actually tried, and Defendants had a full opportunity to take discovery and present evidence to challenge them, the Court should grant Ocean Tomo's motion to amend the complaint to conform to evidence.

---

[56] Beck Decl. at ¶¶ 2-5. Ocean Tomo requested to take a deposition of Defendants' witness Arturo Romero when he was disclosed as a trial witness immediately before the status hearing held on May 30, 2017, and subsequently took his deposition on June 12, 2017, two weeks before trial.

[57] *See Nielson*, 570 F.2d at 276 ("Moreover, the record does not reveal any effort by appellant to move for a continuance.").

14

Dated:  February 28, 2018                     Respectfully submitted,

                                      */s/ William Cory Spence*_____
                                      William Cory Spence (No. 6278496)
                                      Brian J. Beck (No. 6310979)
                                      Jacob Robert Graham (No. 6309125)
                                      SpencePC
                                      405 N. Wabash Ave., Suite P2E
                                      Chicago, Illinois 60611
                                      312-404-8882
                                      William.Spence@spencepc.com
                                      Brian.Beck@spencepc.com
                                      Jacob.Graham@spencepc.com
                                      *Counsel for Plaintiff and Counter-Defendant*
                                      *Ocean Tomo, LLC*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2018, a copy of the foregoing was served on counsel of record by electronic means pursuant to the court's Electronic Case Filing (ECF) system.

/s/ *William Cory Spence*