# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| OCEAN TOMO, LLC, ) | |
| ) | |
|     Plaintiff-Counterdefendant, ) | |
| ) | |
| vs. ) | No. 12 C 8450 |
| ) | |
| JONATHAN BARNEY and ) | Hon. Thomas M. Durkin |
| PATENTRATINGS, LLC, ) | |
| ) | |
|     Defendants-Counterplaintiffs. ) | |

**DEFENDANTS-COUNTERPLAINTIFFS' BRIEF IN SUPPORT OF ENTITLEMENT
TO ATTORNEYS' FEES AND REQUEST FOR CLARIFICATION OF
<u>THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>**

David C. Layden
Katharine R. Ciliberti
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350
dlayden@jenner.com
kciliberti@jenner.com

June 7, 2019

Pursuant to the Court's May 10, 2019 Order (R. 441), Defendants-Counterplaintiffs Jonathan Barney ("Barney") and PatentRatings, LLC ("PR") (collectively, "Defendants") respectfully submit this Brief in Support of Entitlement to Attorneys' Fees and Request For Clarification of the Court's Findings of Fact and Conclusions of Law. (R. 440.)[1]

## I. BARNEY IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES.

### A. Background.

Ocean Tomo, LLC ("OT") filed this lawsuit against Barney seeking to recover more than $48 million in alleged damages. (PX822 at 12; R. 343 at 1399:16–1400:21.) After a 21-day bench trial, the Court found for Barney on all claims asserted against him. (R. 440 at 40, 65.) Barney is now entitled to an award of fees and costs in accordance with the Operating Agreement.

### B. The Operating Agreement Provides for an Award of Fees and Costs.

The Operating Agreement (DX52) includes two indemnity provisions that unambiguously provide for post-judgment award of attorneys' fees and costs. Section 13.18(b) provides:

> The Company (i) shall indemnify an Indemnified Person who is Manager or Member . . . who was or is a party . . . to any . . . action or suit by or in the right of the Company to procure a judgment in its favor by reason of the fact that such Indemnified Person is or was a Manager, Member, officer, employee or agent of the Company . . . , against expenses (including attorney fees and costs) actually and reasonably incurred by the Indemnified Person in connection with the defense or settlement of the action or suit, if the Indemnified Person acted in good faith and in a manner the Indemnified Person reasonably believed to be in, or not opposed to, the best interests of the Company, provided that no indemnification shall be made in respect of any claim, issue or matter as to which the Indemnified Person shall have been adjudged to be liable for gross negligence or willful misconduct in the performance of the Indemnified Person's duty to the Company, unless, and only to the extent that, the court in which the action or suit was brought shall determine upon application that, despite the adjudication of liability, but in view of all the circumstances of the case, the Indemnified Person is fairly and reasonably entitled to indemnity for those expenses as the court shall deem proper. (DX52 §13.18(b).)

---

[1] At the hearing held on May 10, 2019, the Court granted the parties permission to seek clarification of the Court's April 12, 2019 Findings of Fact and Conclusions of Law (R. 440). (R. 442 at 10:8–12, 13:11–16.)

Section 13.18(c) provides:

> To the extent that an Indemnified Person has been successful, on the merits or otherwise, in the defense of any action, suit or proceeding referred to in paragraph (a) or (b) above, or in defense of any claim, issue or matter therein, the Indemnified Person shall be indemnified against expenses (including attorneys' fees and costs) actually and reasonably incurred by the Indemnified Person in connection therewith. (DX52 §13.18(c).)

Indemnification provisions such as these are designed to encourage individuals to serve a corporate entity. *See Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. 2005) ("[I]ndemnification encourages corporate service by capable individuals by protecting their personal financial resources from depletion by the expenses they incur during an investigation or litigation that results by reason of that service."); *see also Costantini v. Swiss Farm Stores Acquisition LLC*, C.A. No. 8613-VCG, 2013 WL 4758228, at *3 (Del. Ch. Sept. 5, 2013) ("[C]orporations and other entities often find broad advancement and indemnification clauses useful for enticing talented people to associate themselves with the entity, only to spurn them once the time for payment arrives.") *opinion withdrawn in part on reargument by* 2013 WL 6327510 (Del. Ch. Dec. 5, 2013).[2]

In *Wis. Real Estate Inv. Trust v. Weinstein*, 781 F.2d 589 (7th Cir.1986), the Seventh Circuit affirmed an award of $220,000 in attorneys' fees under a contractual indemnity provision similar to Section 13.18(b) of the Operating Agreement, even though the defendant-indemnitee there breached the underlying agreement and was held liable for $56,000 in damages. The Court explained:

> The function of a provision such as § 7.4(b) . . . is to reduce the threat of deterrence via the cost of litigation. The firm may want its managers to act without fear that the costs of the legal process will be the punishment for mistakes. Managers often commit a great deal of their time and their wealth to a single corporation. If anything goes wrong they may be ruined far more easily than the investors.

---

[2] Although *Homestore* and *Costantini* are not binding on this Court, their analyses of similar contractual indemnity provisions are helpful and instructive. *See Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 509 n. 29 (N.D.Ill. 1988) ("Illinois courts have often looked to Delaware law for guidance in deciding previously undecided corporate law issues.").

> Managers exposed to the high costs of litigation whenever they misconstrue legal documents are apt to be timid managers, and firms may elect — [plaintiff] did elect through § 7.4(b) — to reduce managers' exposure.

*Id.* at 598–99. In this case, the Court found Barney had ***not*** breached any of the agreements between the parties nor had he engaged in any of the wrongful conduct alleged by OT in its complaint. (R. 440 at 40, 65.) To the contrary, the Court found in Barney's favor on each of the claims brought by OT. (*Id.*) Accordingly, Barney is entitled to an award of fees and costs under Sections 13.18(b) and/or 13.18(c) of the Operating Agreement. (DX52 §§13.18(b), (c).)

**C.     Barney is Entitled to an Award of Fees and Costs under Section 13.18(c).**

    **1.     Barney is an "Indemnified Person" Under Section 13.18(a).**

Section 13.18(a) defines an Indemnified Person as including a "Member, Manager or other Person [who] is or was a manager, member, officer, employee or agent of the Company . . . ." (DX52 §13.18(a).) Barney meets this definition because he was an ***employee*** of OT and he was and currently is a ***member*** of OT. (R. 440 at 3, 65; R. 396 ¶18.) Thus, Barney qualifies as an Indemnified Person under Section 13.18(a).[3]

    **2.     Barney "was or is a party [to a] threatened, pending or completed action or suit by or in the right of the Company" as Required by Section 13.18(b).**

It is beyond dispute that Barney was and is a party to this lawsuit and that it was brought "by or in the right of the Company [OT]." (R. 396 ¶¶17–18.)

    **3.     By this Lawsuit, OT Sought "to procure a judgment in its favor by reason of the fact that [Barney] is or was a Manager, Member, officer, employee or agent of the Company" as Required by Section 13.18(b).**

At least some, if not all, of the claims OT brought against Barney in this case stemmed from allegations Barney breached a duty or obligation arising out of his membership in and/or

---

[3] Section 13.18(f) also states that "[t]he indemnification provided by this Section 13.18 . . . shall continue as to a Person who has ceased to be a director, officer, Member, Manager, employee or agent . . . ."

employment relationship with OT. For example, OT alleged: "Barney was a Member and Managing Director of OT" (R. 396 ¶6); "he was provided access to OT's confidential information and client relationships" (*Id.* ¶7); "Barney was provided with a laptop for business use" (*Id.* ¶9); "OT required Barney, as a condition of employment, to execute and agree to the Employment Agreement" (*Id.* ¶47); "Barney agreed . . . he would not compete with Ocean Tomo" (*Id.* ¶48); "Barney agreed . . . he would . . . not use [OT confidential] information for his own benefit" (*Id.* ¶49); and "he agreed that '[n]o alterations, upgrades, or modifications should be made to hardware and software purchased by the organization and provided to the employee.'" (*Id.* ¶51). OT "restate[d] and realleged[d]" each of these allegations in each of its claims against Barney. (*Id.* ¶¶136, 143, 149, 155, 162, 168, 174) (Counts II–VIII).

Other specific allegations included that Barney: breached the Employment Agreement (*Id.* ¶140) (Count II); breached the Computer Asset Policy Agreement (*Id.* ¶147) (Count III); breached fiduciary duties owed to OT (*Id.* ¶¶150, 152) (Count IV); misappropriated trade secrets in violation of fiduciary duties and contractual obligations (*Id.* ¶¶159–160) (Count V); accessed, deleted, copied and destroyed information in breach of fiduciary duties and contractual obligations (*Id.* ¶¶164–165) (Count VI); did not return documents previously provided to him (*Id.* ¶170) (Count VII); and used knowledge gained as an employee and member of OT to interfere with OT's business expectancy with NTT Data (*Id.* ¶¶176, 178) (Count VIII).

Because the claims against Barney alleged duties and obligations arising from his status as a member and/or employee of OT, they sought "to procure a judgment in [OT's] favor by reason of the fact that [Barney] is or was a Manager, Member, officer, employee or agent of the Company" as required by Section 13.18(b). *See, e.g., Homestore*, 888 A.2d at 214 ("[I]f there is a nexus or causal connection between any of the underlying proceedings . . . and one's official corporate

4

capacity, those proceedings are 'by reason of the fact' that one was a corporate officer, without regard to one's motivation for engaging in that conduct.").

### 4. Barney was "successful, on the merits or otherwise, in the defense of [the] action" as Required by Section 13.18(c).

Barney successfully defended against the claims OT brought against him "because the Court found in Barney's favor on those claims." (R. 440 at 80.)

Accordingly, Barney is entitled to an award of fees and costs under Section 13.18(c) of the Operating Agreement. *See Tsai v. Karlik*, No. 14 C 5709, 2016 WL 5373075, at *1, 3–9 (N.D. Ill. Sep. 26, 2016) (awarding attorneys' fees to the prevailing party under a subscription agreement with "a broad indemnification provision which also operated as a fee-shifting provision").

### D. Barney Is Entitled to an Award of Fees and Costs under Section 13.18(b).

Even if the Court were to find that Barney is not entitled to an award of attorneys' fees and costs under Section 13.18(c) of the Operating Agreement, he is entitled to be awarded fees and costs under Section 13.18(b) because he (i) "acted in good faith and in a manner [he] reasonably believed to be in, or not opposed to, the best interests of the Company" and (ii) has not "been adjudged to be liable for gross negligence or willful misconduct in the performance of [his] duty to the Company."

### 1. Barney "acted in good faith and in a manner [he] reasonably believed to be in, or not opposed to, the best interests of the Company."

OT alleged Barney had "a duty to act at all times with the utmost good faith . . . towards OT." (R. 396 ¶150.) OT further alleged Barney breached that duty in a variety of ways. (*Id.* ¶152.) The Court disagreed, finding in favor of Barney on each of OT's claims. With respect to Counts II–VII, the Court found:

> (1) Barney was not prohibited from copying the data on his laptop; (2) Barney was not prohibited from retaining the data after his resignation because he remained a member of Ocean Tomo; (3) the evidence is insufficient to find by a preponderance

5

> of the evidence that Barney used the information on the laptop to compete with Ocean Tomo; (4) the evidence is insufficient to find by a preponderance of the evidence that Barney wiped the laptop; and (5) even if Barney wiped the laptop, the evidence is insufficient to find by a preponderance of the evidence that Ocean Tomo suffered damages. (R. 440 at 65.)

With respect to Count VIII, the Court found:

> Barney had a contractual right under the license agreement to be involved in Ocean Tomo's relationship with NTT as it concerns PatentRatings. Barney's exercise of this right cannot be "interference." (*Id.* at 40.)

These facts, along with the underlying record, support a finding that Barney "acted in good faith and in a manner [he] reasonably believed to be in, or not opposed to, the best interests of the Company." For example, Barney credibly testified he never used any of the information on the laptop to compete in any way with OT and that he "absolutely, positively . . . unequivocally did not wipe that laptop." (R. 342 at 2124:24–2129:15; R. 342 at 2085:4–10.)

> **2.      Barney has not "been adjudged to be liable for gross negligence or willful misconduct in the performance of [his] duty to the Company."**

Barney has not "been adjudged to be liable for gross negligence or willful misconduct in the performance of [his] duty to the Company." To the contrary, the Court found Barney did not breach any duty allegedly owed to OT. (R. 440 at 40, 65.)

For at least these reasons, Barney is entitled to an award of fees and costs under Section 13.18(b) of the Operating Agreement.

**E.      Barney Did Not Waive His Right to Seek an Award of Fees and Costs.**

At the May 10, 2019 hearing, counsel for OT asserted Barney had waived his right to seek an award of attorneys' fees by failing to adequately plead it and/or by not bringing a separate damages claim. (R. 442 at 2:25–3:9.) OT is wrong for the reasons explained below.

1. **Barney Adequately Pled His Claim for an Award of Fees and Costs.**

From the very beginning and throughout this case in their pleadings and discovery disclosures, Defendants have notified OT that Barney was seeking an award of his "attorneys' fees and expenses" incurred in defending this action. (*See*, *e.g.*, R. 12 at 25, 43; R. 54 at 25, 43; R. 90 at 51; R. 175 at 33; R. 189 at 58; R. 397 at 60; PX883 ("Mr. Barney believes that his damages will include . . . attorneys' fees and costs . . . .").) This satisfies the notice pleading requirements under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a)(2); *see Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 908 (7th Cir. 2005) (Notice pleading under Rule 8(a)(2) does not require explanation of the legal theory underlying a claim). Moreover, OT cannot claim surprise or prejudice—the indemnity provisions are in the Operating Agreement, a document OT drafted and testified about at trial. (R. 336 at 743:12–744:11; R. 345 at 2540:24–2541:15; DX52 §13.15.) OT also had the opportunity to conduct discovery.[4]

2. **Post-Judgment Claims for Attorneys' Fees Are Not Required to be Pled as a Damages Claim in the Underlying Action in Which the Fees Are Incurred.**

Rule 54(d)(2)(A) says that "[a] claim for attorneys' fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." (Fed. R. Civ. P. 54.) In *Rissman v. Rissman*, 229 F.3d 586 (7th Cir. 2000), the Seventh Circuit addressed how that rule applies to post-judgment claims for attorneys' fees under a contractual fee-shifting provision. The trial court in *Rissman* declined to award fees because the prevailing defendant "fail[ed] to seek these fees by filing a counterclaim." The Seventh Circuit reversed, explaining:

---

[4] Even if Barney had not requested attorneys' fees, he still would be entitled to recover such relief, because "Rule 54(c) provides that the prevailing party receives the relief to which it is entitled, whether or not the pleadings have mentioned that relief." *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018).

7

> What Rule 54(d)(2)(A) requires is that a party seeking legal fees among the items of damages — for example, fees that were incurred by the plaintiff before the litigation begins, as often happens in insurance, defamation, and malicious prosecution cases — must raise its claim in time for submission to the trier of fact, which means before the trial rather than after. Fees for work done during the case should be sought after decision, when the prevailing party has been identified and it is possible to quantify the award. *Id.* at 588.

Because Barney was not required to file a counterclaim seeking recovery of attorneys' fees incurred in defense of this case, he did not waive his right to seek post-judgment recovery of those fees under the Operating Agreement. *See Eastern Trading Co. v. Refco, Inc.*, 229 F.3d 617, 626–27 (7th Cir. 2000) ("The refusal [to award attorneys' fees on the grounds of waiver] was error, because the issue of attorneys' fees was not a triable issue.").

To the extent the Court were to find that a counterclaim *is* needed to pursue the attorneys' fee claim, Defendants hereby request the Court's permission to file amended and/or supplemental pleadings under Rules 13(e), 15(b) and/or 15(d). *See Rissman* 229 F.3d at 588 ("If defendants needed to file a counterclaim, then the district court had ample authority to permit its filing . . . or to treat the issue as if it had been raised in a pleading . . . .").

## II. REQUEST FOR CLARIFICATION REGARDING BARNEY'S RIGHTS TO ASSERT CLAIMS REGARDING OWNERSHIP BENEFITS.

**A. Background.**

OT's board of managers issued three resolutions in 2011 and 2012 (DX229; DX608; DX154) finding Barney in violation of Section 13.17 of the Operating Agreement. (R. 440 at 59.) On the bases of those findings, OT withheld dividend allocations, cash distributions, and information to which Barney was otherwise entitled. (*Id.*; R. 3526:15–23 ("we stopped distributing to Mr. Barney"); DX666 ("you have forfeited the right to receive even [the Section 9.09] information").)

8

### B. The Court's Findings of Fact and Conclusions of Law.

In its Findings of Fact and Conclusions of Law, the Court rejected each of the claims underlying the board resolutions. (R. 440 at 40, 65.) In the portion of its ruling declining to order a buyout of Barney's ownership interest, the Court further stated:

> Of course, Ocean Tomo has sought to deprive Barney of dividends through the arbitration and this litigation. But the arbitrator and this Court have rejected those claims, vindicating Barney's ownership rights. Absent future disputes among the parties (which would not be part of this lawsuit), the Court expects that Barney will receive the benefit of his ownership interest in Ocean Tomo going forward, whether through profit distributions or a mutually agreed upon parting of the ways.

(R. 440 at 79.) However, the Court denied Barney's claim for breach of the Operating Agreement, finding OT's claims "were not frivolous and thus are not evidence of bad faith." (R. 440 at 59–60.) These juxtaposed findings create a potential ambiguity concerning their preclusive effect (if any) on Barney's right to seek reinstatement of the previously withheld ownership benefits. Defendants thus respectfully request clarification.

### C. Any Final Judgment Should be Entered Without Prejudice to Barney's Rights to Assert Claims Relating to OT's Future Actions or Inaction Regarding Barney's Ownership Benefits.

The only possible bases OT had for withholding ownership benefits from Barney under the Operating Agreement were the three board resolutions, the findings of which the Court has rejected. (DX52 §10.07(e); R. 440 at 40, 65, 79.) Barney anticipates that OT will take account of the Court's rulings, and take action restoring to Barney the previously withheld dividend allocations, distributions, and information inspection rights. Barney should not be penalized, and OT should not benefit, from the many years it has taken to vindicate Barney's ownership rights. But, if OT does not take such action, Barney should not be precluded from seeking relief, if necessary, through a separate litigation action. Accordingly, Barney respectfully requests that the Court clarify that any final judgment to be entered in this action will be ***without prejudice*** to

9

Barney's rights to assert claims arising from any failure by OT, following the Court's rejection of the claims underlying its previous resolutions, to restore Barney's ownership benefits.

Dated:  June 7, 2019

Respectfully submitted,

JONATHAN BARNEY and
PATENTRATINGS, LLC

By: */s/ David C. Layden*
　　　One of their attorneys

David C. Layden
Katharine R. Ciliberti
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2019, a copy of the foregoing was served on counsel of record by electronic means pursuant to the Court's Electronic Case Filing (ECF) system.

/s/ David C. Layden
David C. Layden
