UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OCEAN TOMO, LLC, | |
| Plaintiff, | No. 12 C 8450 |
| v. | Judge Thomas M. Durkin |
| PATENTRATINGS, LLC; JONATHAN BARNEY, | |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

After a bench trial, Defendants Jonathan Barney and PatentRatings, LLC filed a motion to amend the Court's judgment and findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 59. R. 460.[1] Defendants also seek costs contending they are prevailing parties, R. 463, and Defendant Barney separately seeks fees and costs pursuant to an agreement with Plaintiff Ocean Tomo, R. 510. For the following reasons, Defendants' motion to amend is denied in part and granted in part; the Court denies costs to Defendants because they are not prevailing parties; and the Court awards fees, costs, and interest to Barney in the amount of $1,035,485.04.

---

[1] Defendants' motion to amend also cites Federal Rules 52 and 60. *See* R. 461. But because Defendants timely seek amendment of the Court's judgment, Rule 59 controls the motion to amend.

**Analysis**

This is a multi-faceted dispute arising out of a partnership to monetize a database of information about patents and a computer program that used the information in the database to rate the patents' potential value. In short, Barney created the database and program through his company PatentRatings; he licensed the database and program to Ocean Tomo; Ocean Tomo became a part-owner of PatentRatings; and Barney became a part-owner of Ocean Tomo.

After conducting 21 trial days spread over ten months; reviewing 380 pages of post-trial briefing; and considering hundreds of pages of exhibits, the Court issued findings of fact and conclusions of law on April 12, 2019. *See* R. 440 (*Ocean Tomo, LLC v. PatentRatings, LLC*, 375 F. Supp. 3d 915 (N.D. Ill. 2019)). This opinion assumes familiarity with those findings and discusses them only to the extent they are relevant to the motions currently before the Court.

The Court's findings addressed eight claims by Ocean Tomo: (1) breach of fiduciary duty (with respect to both (i) the information on Barney's laptop computer and (ii) the NTT deal); (2) violation of the Illinois Trade Secrets Act (laptop); (3) breach of Barney's employment agreement (laptop and NTT deal); (4) conversion (laptop); (5) violation of the Computer Fraud and Abuse Act (laptop); (6) breach of Ocean Tomo's Computer Asset Policy Agreement (laptop); (7) tortious interference (NTT deal); and (8) the patents at issue are invalid, as an affirmative defense to Defendants' claim for breach of the License Agreement. *See* R. 440 at 11.

The findings also addressed nine claims by Defendants: (1) fraudulent inducement (with respect to the 2007 Amendment and Note); (2) breach of the License Agreement (for non-payment of royalties, along with various other allegations); (3) tortious interference (with the NTT deal); (4) breach of the operating agreement (with respect to allocation of the ICAP deal profits); (5) violation of the Computer Fraud and Abuse Act (with respect to the PatentRatings servers); (6) breach of the Supplemental License Agreement; (7) declaratory judgments that the License Agreement and the Supplemental License Agreement are terminated; and (8) Barney's demand that Ocean Tomo repurchase his Ocean Tomo shares pursuant to 805 ILCS 180/35-1(a)(5). *See* R. 440 at 11.

The Court noted that these were "the claims for which the parties specifically [sought] relief in their post-trial briefs," and found that "[a]ny other claims [were] waived." *Id.* The only claims on which the Court found for the complaining party were Defendants' related claims for a declaratory judgment that the License Agreement and the Supplemental License Agreement were terminated. The only relief the Court awarded was (1) the $35,366 Defendants spent to audit Ocean Tomo's royalty payments, and (2) an order that Ocean Tomo deliver to Defendants the computer servers containing the PatentRatings software.

## I.     Motion to Amend

Defendants' motion to amend makes three primary arguments: (1) the Court cited the wrong section of the License Agreement in its findings of fact and conclusions of law; (2) Defendants are owed royalties even though the Court denied

3

their claim for breach of the License Agreement; and (3) the Court wrongly concluded that Ocean Tomo had authority to move the PatentRatings servers from California to Chicago.

### A. Section 10.3 of the License Agreement

Defendants first ask the Court to amend its findings to cite Section 10.3(a) of the 2005 Amendment rather than Section 10.3(b) of the original License Agreement. *See* R. 461 at 3 (referring to R. 440 at 77). The relevant portions of these provisions are identical, and Defendants do not explain why such an amendment is necessary or important. But Ocean Tomo does not object to Defendants' request, *see* R. 476 at 3, so the Court's findings are amended accordingly.

### B. Royalties

At trial, Defendants claimed, based on their interpretation of the License Agreement, that Ocean Tomo owed them unpaid royalties. *See* R. 440 at 20. The Court rejected Defendants' interpretation of the License Agreement and, accordingly, found that Ocean Tomo did not owe any royalties. Defendants now argue the Court should amend its judgment because they are owed certain royalties, even according to the Court's interpretation of the License Agreement. *See* R. 461 at 4-9.

The problem with Defendants' arguments is that they did not make them in their post-trial briefs, and only now raise them in this motion to amend. Defendants never argued in their post-trial briefs that they would be owed royalties even if the Court did not find that Ocean Tomo breached the License Agreement.

4

Perhaps the evidence at trial was sufficient for the Court to make the findings Defendants seek on this motion. But Defendants did not ask the Court to make those findings in their trial briefs. The Court noted the absence of any such claims in issuing its findings. *See* R. 440 at 31 ("[T]he Court understands that Defendants do not seek any unpaid royalties that are not within the scope of the Court's rejection of Defendants' interpretations of the royalty provisions in the license agreement."). Defendants do not now contend that they made these arguments in their trial briefs and that the Court overlooked them.

Defendants also contend that the Court incorrectly found that Ocean Tomo had overpaid royalties based on a misunderstanding of a trial exhibit summarizing an opinion of Defendants' expert. *See* R. 461 at 3-4 (citing R. 440 at 31). It appears that the Court may have misunderstood the exhibit. However, it is unnecessary to determine whether the Court was actually mistaken, because the Court's reference to that exhibit in its decision was part of an alternative and secondary finding that was unnecessary to the Court's conclusion that Ocean Tomo did not breach the License Agreement. *See* R. 440 at 31 (the finding with which Defendants take issue begins with the word "additionally" after the Court had already determined that no royalties were owed). Defendants' argument on this motion to amend does not address or undermine the Court's primary findings and conclusions that Ocean Tomo does not owe royalties because it did not breach the License Agreement as amended.

At bottom, a motion to amend under Rule 59 "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to .

5

. . advance arguments that could and should have been presented to the district court prior to the judgment." *Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Defendants do not argue, as Rule 59 requires, that the Court "committed a manifest error of law or fact," or "that newly discovered evidence precluded entry of judgment." *Barrington Music Prod., Inc. v. Music & Arts Ctr.*, 924 F.3d 966, 968 (7th Cir. 2019). Rather, Defendants ask the Court to make findings beyond those sought in their post-trial briefs. Rule 59 does not permit such amendments, so the Court denies Defendants' motion regarding royalties.

### C. The Servers

The Court found for Ocean Tomo on Defendants' claim that Ocean Tomo violated the Computer Fraud and Abuse Act ("CFAA") by moving the servers containing the PatentRatings database from California to Chicago and disconnecting them. A person violates the CFAA in relevant part if he "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). The statutory phrase "'exceeds authorized access' means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled to obtain or alter." 18 U.S.C. § 1030(e)(6). The Court found that Ocean Tomo's actions did not violate the CFAA because the License Agreement permitted the servers to be moved to Chicago, and that disconnecting the servers did not "alter" the information they contained. *See* R. 440 at 65-66.

Defendants argue that the Court's decision was wrong because the License Agreement only provides that the "PatentRatings Tools," i.e., the "intangible"

software and intellectual property, may be located in Chicago, and says nothing about the "physical" servers themselves. *See* R. 461 at 9. It is true that the relevant provision of the License Agreement does not expressly mention the servers. But the Court interpreted the provision to mean that the servers could be located in Chicago because they are the physical containers for the PatentRatings Tools. In other words, the servers and the PatentRatings Tools travel together.

Furthermore, aside from whether the License Agreement affirmatively authorized Ocean Tomo to move the servers to Chicago, such authorization was implied by the fact that Ocean Tomo possessed the servers and had authority to use them. Although Defendants argue that Ocean Tomo acted "without authorization," *see* R. 461 at 10, they fail to point to any agreement that prevented Ocean Tomo from taking these actions. Without some limitation on Ocean Tomo's rights with respect to the servers, Ocean Tomo's undisputed possession and use of them was not improper. For the same reasons, Defendants' argument that they "revoked" any authorization that Ocean Tomo may have had regarding the servers (*see id.*) does not hold water.

Defendants had the burden to prove their claim for violation of the CFAA by a preponderance of the evidence. As discussed, the claim was not supported by the relevant contracts. And at trial, there was testimony on both sides of the question of Ocean Tomo's authority with respect to the servers. The totality of that testimony amounted to a "he said, he said" situation. That testimony was at best "fifty-fifty," and Defendants needed the evidence to be more than 50% in their favor to meet their

7

preponderance burden. The Court found that the evidence did not rise to this level, so this part of Defendants' motion to amend is also denied.

## II. Fees and Costs Under the Operating Agreement

In its findings of fact and conclusions of law, the Court ordered supplemental briefing on whether the Operating Agreement required Ocean Tomo to pay the attorney's fees and costs Barney incurred defending the claims Ocean Tomo brought against him (as opposed to fees incurred to defend PatentRatings or to prosecute claims Defendants brought against Ocean Tomo, which are not compensable under the Operating Agreement). *See* R. 440 at 81. After supplemental briefing, the Court issued an opinion finding that the Operating Agreement provides for such fees and costs and permitting Barney to seek them. *See* R. 458 (*Ocean Tomo, LLC v. PatentRatings, LLC*, 2019 WL 5101607, at *1 (N.D. Ill. Oct. 11, 2019)). Barney filed a motion for fees and costs, *see* R. 510, which Ocean Tomo largely opposes.

### A. Standard

Due to its "superior understanding of the litigation," the Court has considerable "discretion in determining the amount of a fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The Court must "'provide a reasonably specific explanation for all aspects of a fee determination,'" but its explanation "need not be lengthy." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 651 (7th Cir. 2011) (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 558 (2010)). "The party seeking an award of fees" has the burden to "submit evidence supporting the hours worked and rates

8

claimed." *Hensley*, 461 U.S. at 433. The Court may reduce the hours calculation "[w]here the documentation of hours is inadequate." *Id.*

### B. Analysis

Ocean Tomo does not challenge the rates charged by Barney's counsel. *See* R. 525 at 6-7. Nor does Ocean Tomo dispute that Barney paid $1,693,258 in fees. Ocean Tomo's primary argument is that Barney has shown that only $69,865.00 of the fees can be attributed to the claims Ocean Tomo brought against him. Specifically, Ocean Tomo argues that the billing records of Barney's counsel do not provide adequate information to identify which charges are for Barney's defense of Ocean Tomo's claims, as opposed to fees for work on behalf of PatentRatings or fees for prosecuting Barney's counterclaims.

But as Barney points out, such detailed billing records are not necessary for the Court to properly apportion fees to Barney's defense. As the Supreme Court has held, district courts may engage in "rough justice" in apportioning fees. *See Fox v. Vice*, 563 U.S. 826, 838 (2011). Certainly, Barney is required to produce billing records to justify his fee request. *See Fidelity and Deposit Co. v. Krebs Engineers*, 859 F.2d 501, 508 (7th Cir. 1988). But he is not required to produce billing records that would enable the Court to apportion fees based on a line-by-line analysis. Courts "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838; *see also Rexam Bev. Can Co. v. Bolger*, 620 F.3d 718, 737, 739 (7th Cir. 2009) (affirming district court's application of "practical solutions" to apportioning fees); *Isovolta Inc. v. ProTrans Int'l, Inc.*, 2011

9

WL 4102580, at *677 (S.D. Ind. Sept. 14, 2011) (apportioning fees among defendants "[b]ased on [the court's] overall sense of the suit").

Furthermore, a line-by-line analysis is impractical in this case because it is almost ten years in the making and involves nearly 20 different claims. *See Nichols v. Longo & Assocs., Ltd.*, 2021 WL 2815878, at *5 (7th Cir. July 7, 2021) ("district courts need not undertake a line-by-line inquiry when the voluminous nature of a petition makes doing so impractical"). It is not surprising that Barney's counsel found it nearly impossible to determine on a minute-by-minute basis what work was dedicated to Barney's defense and what work was dedicated to the rest of the case. This would be true even in real time, let alone years after the fact. Indeed, as the Court noted in its findings of fact and conclusions of law, "[s]ome of the parties' claims overlap factually, and some of the claims also serve as defenses." R. 440 at 12. Any apportionment of fees among claims and defenses so closely related necessarily has at least an element of artificiality to it. *See Fox*, 563 U.S. at 838 (trial courts are not required "to achieve auditing perfection").

Since a line-by-line analysis of the relevant billing records is neither required nor possible, the only option is an imperfect apportionment of fees according to the Court's sense of the weight of Ocean Tomo's claims against Barney relative to the other claims in the case. The Court begins by simply counting the claims and noting when they became a part of the case. In the initial pleadings in 2012, Ocean Tomo brought one claim against Defendants together and four claims against Barney alone, while Defendants brought four counterclaims against Ocean Tomo. In an amended

10

pleading on January 13, 2015, Defendants added a fifth counterclaim. And on May 1, 2017, Ocean Tomo served Defendants with an expert report stating the Barney could be liable for $100 million in damages. *See* R. 382-1. The parties took discovery on this additional potential liability and presented evidence at trial about it. Later in the middle of the ten-month period during which the trial occurred, Ocean Tomo filed a motion to amend the pleadings to add three claims seeking the $100 million in damages. The Court denied that motion on June 5, 2018, after the trial ended. *See* R. 395.

Not all the claims in this case are created equal. Ocean Tomo initially brought four claims against Barney. But they were not so much different *claims* as they were different *legal theories* all seeking relief for Barney's alleged misuse of the laptop Ocean Tomo issued to him. By contrast, Defendants brought five claims, each addressing a different aspect of the parties' relationship: fraudulent inducement, royalties, the ICAP deal, the NTT deal, rights to the servers. Defendants' claims were more complicated and carried greater potential liability than Ocean Tomo's initial claims.

The landscape of the case changed around May 1, 2017 when Ocean Tomo began pursuing three additional claims with potential liability of $100 million. With the tally now at four claims against Barney, one claim against PatentRatings, and five claims against Ocean Tomo, these additional claims largely balanced the weight of claims on each side through the end of the trial and the Court's denial of Ocean Tomo's motion to amend its complaint.

11

With the claims weighted in this way, the Court finds the following. First, Barney is entitled to one-seventh of the total fees Defendants' incurred before May 1, 2017, when Ocean Tomo's claims against Barney were only one of the seventh claims at issue in the case ($1,116,585.00 divided by 7 = $159,512.14). *See* R. 519-3. He is then entitled to four-tenths of the fees incurred between May 1, 2017 and June 8, 2018, when Ocean Tomo added significant claims to the case ($1,559,996.25 multiplied by 0.40 = $623,998.50). *See id.* And he is again entitled to one-seventh of the total fees incurred starting on June 8, 2018, after the Court dismissed those claims from the case ($396,522.50 divided by 7 = $56,646.07). *See id.* This results in a total of $840,156.71 in fees that Barney may recover.

This amount is a little more than 27% of the total $3,073,103.75 in defense fees. Thus, the Court awards 27% of the total $139,920.26 in defense costs, or $37,778.47. The Court also awards 27% of the $583,518 in prejudgment interest Defendants seek, or $157,549.86.[2]

This award is less than the $1,346,995 Barney seeks of the $1,693,258 fees he paid. But the only basis for this request is his counsel's analysis of the bills Barney paid. This analysis was done with reference to the line-item descriptions, but without explanation as to why certain line-items referred to Barney's counterclaims and other

---

[2] The Seventh Circuit has held that courts may calculate prejudgment interest by applying the relevant interest rate at the time the fees were charged, or by applying each attorney's current hourly rate retroactively to the number of hours charged. *See Mathur v. Bd. of Trustees of S. Ill. Univ.*, 317 F.3d 738, 744-45 (7th Cir. 2003). The Court finds the use of historic rates to be more accurate and hence fairer. The Court uses the interest calculated by Defendants and provided to the Court by email to all parties on July 2, 2021.

did not. As Ocean Tomo correctly argues, this amounts to a "take my word for it" argument the Court must reject.

Furthermore, Barney's request to recover 79.5% of the fees he paid, and 43.8% of the total defense fees, is facially implausible. As discussed, Ocean Tomo's claims against Barney were a fraction of the claims at issue for much of the case. Ocean Tomo substantially increased the stakes immediately before and through trial. But even then, Ocean Tomo's claims were never more than 50% of the case. Thus, the Court has apportioned a little less than half the Defendants' fees from that period to Barney's defense of Ocean Tomo's claims. In the Court's view, a total fee award just south of 30% of what Defendants spent on the entire case, and a little less than half of what Barney spent himself, accurately depicts the weight of Ocean Tomo's claims against Barney in this case. Barney's claim for 79.5% of what he paid, and 43.8% of the total, is untethered from the facts.

But so is Ocean Tomo's argument that Barney is entitled to only $67,068 or at most $251,270.99. The argument for $67,068 (or about 2% of the fees Defendants paid in total) must be rejected out of hand. Although Ocean Tomo's claims were a small part of the case for the first few years, assigning them a weight of 2% makes it difficult to believe that Ocean Tomo would bring the case in the first place. It is simply not plausible that Ocean Tomo would file and vigorously prosecute at great expense a federal lawsuit over a dispute in which it only held a 2% stake.

Ocean Tomo also argues that $251,270.99 must be the cap on Barney's fees because that is the amount Defendants' counsel billed to Barney directly, with the

remainder billed to PatentRatings. But Ocean Tomo does not dispute that Barney actually paid $1,693,258 in fees, regardless of which defendant received the initial bill. Furthermore, Ocean Tomo also does not materially dispute that the reason Barney paid fees that were billed to PatentRatings was because Ocean Tomo demanded that he do so. As a part owner of PatentRatings, Ocean Tomo did not want to be financing Barney's defense of Ocean Tomo's claims. During the course of the case, Ocean Tomo demanded that PatentRatings pay only for its defense and counterclaims and not for Barney's defense and counterclaims. Ocean Tomo now insinuates that Barney "ran the meter" and paid those fees with the expectation of recouping them once the case was over. But the Court's decision is based on weighing the claims, not the amount Barney—perhaps unilaterally—decided to pay. This ensures that Barney will not recover an undue portion of the fees.[3]

## III.  Prevailing Party Costs

Under Federal Rule of Civil Procedure 54(d)(1), costs "should be allowed to the prevailing party." In cases where a party prevails on some claims but not others, costs

---

[3] Ocean Tomo contends that PatentRatings will ultimately reimburse Barney for any fees he paid that the Court does not order Ocean Tomo to pay, whether through an indemnification agreement or repayment of loans. *See* R. 525 at 22; R. 530 at 4. Ocean Tomo highlights this possibility primarily to undermine Barney's argument that the fees he actually paid are evidence of the fees he should be awarded. As discussed, the Court's analysis here does not rely on that evidence or argument. And to the extent Ocean Tomo means to insinuate that there is a risk of double collection, Ocean Tomo could argue that it is not required to pay those fees because any indemnity by PatentRatings would mean that Barney did not "actually incur" those fees, as the relevant provision in the Operating Agreement requires. In any event, Ocean Tomo only alleges that this could happen in the future, so the Court cannot address it now. To the extent such a dispute arises in the future, it will be the subject matter of a separate lawsuit before a different court.

are appropriate for a party "who prevails as to the substantial part of the litigation." *Testa v. Village of Mundelein*, 89 F.3d 443, 447 (7th Cir. 1996); *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1015 (7th Cir. 1985); *The Medicines Co. v. Mylan Inc.*, 2017 WL 4882379, at *3 (N.D. Ill. Oct. 30, 2017). A district court enjoys "wide discretion in determining and awarding reasonable costs." *Testa*, 89 F.3d at 447.

Whether a party prevailed as to a "substantial part" of the case is necessarily relative to the case as a whole. The absolute or relative amount of monetary relief awarded—i.e., relative to the amount of damages originally sought—is one indication of whether a party prevailed as to a substantial part of the case, but it is not the only factor. The number of claims prevailed upon, and their significance to the case, are also relevant to this analysis. *See Cont'l Vineyard LLC v. Dzierzawski*, 2020 WL 7227285, at *1 (N.D. Ill. Dec. 8, 2020).

In this case, the Court awarded some monetary and injunctive relief to Defendants and none to Ocean Tomo. Defendants cite cases in which courts found a "substantial" victory based on judgments of smaller absolute and relative values compared to the relief awarded to Defendants in this case. *See* R. 481 at 4. But while these cases establish that the Court is within its discretion to find that Defendants won a substantial part of this case, they do not demonstrate why the Court *should* make that finding. In other words, Defendants do not make a persuasive argument as to why the relief they received is indicative of a substantial victory in the context of this case. Such analysis is particularly necessary here because Defendants won

15

what amounts to only one claim when they asserted eight or nine claims total. *See Springer v. Ethicon, Inc.*, 2018 WL 1453553, at \*12 (N.D. Ill. Mar. 23, 2018) (citing cases denying costs when the plaintiff won only some claims against some defendants).

Defendants' primary claims were for: unpaid royalties; tortious interference with the NTT deal; breach of the operating agreement with respect to allocation of the ICAP deal profits; violation of the Computer Fraud and Abuse Act with respect to the PatentRatings servers; and Barney's demand that Ocean Tomo repurchase his Ocean Tomo shares. Defendants did not win any of these claims. The Court awarded relief to Defendants because Ocean Tomo violated the audit provisions of the License Agreement, and because Ocean Tomo began pursuing a competing patent ratings program such that the License Agreement was effectively terminated. This is less a victory for Defendants, and more a finding that the parties' business relationship has ended. In any event, it is not a "substantial" part of the claims Defendants brought in this case.

To the extent Defendants argue that the attorney's fees awarded constituted part of the "relief" relevant to determining whether they are prevailing parties, the Court disagrees. The fees awarded pursuant to the Operating Agreement are akin to statutory fee shifting. As the Court explained in its order finding that Barney had a contractual right to fees and costs in this case, fees awarded "for work done during the case" do not need to be pled and are not part of the damages for Defendants' claims. *See* R. 458 (*Ocean Tomo, LLC v. PatentRatings, LLC*, 2019 WL 5101607, at

16

*1 (N.D. Ill. Oct. 11, 2019) (quoting *Rissman v. Rissman*, 229 F.3d 586, 588 (7th Cir. 2000))). Of course, such fees are normally awarded to the "prevailing party." *See Rissman*, 229 F.3d at 588. But the fees are not taken into account in determining *whether* a party prevailed. Barney may have prevailed on Ocean Tomo's claims against him. But he and PatentRatings also lost almost all the claims they brought against Ocean Tomo. Thus, for the reasons discussed, Defendants are not prevailing parties and the Court will not award costs under Rule 54.

## Conclusion

Therefore: Defendants' motion to amend [460] is denied in part and granted in part in accordance with this order; Defendants' motion for costs [463] is denied; and Barney's motion for fees and costs pursuant to the Operating Agreement [510] is granted to the extent that the Court awards Barney $840,156.71 in fees, $37,778.47 in costs, and $157,549.86 in interest, for a total of $1,035,485.04.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: July 27, 2021